# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA
### Miami Division

CASE NO.

04-20314

EDWARD LIPUMA, on Behalf of
Himself and All Others Similarly
Situated and on Behalf of
the General Public,

        Plaintiff,

v.

CIV-UNGARO-

AMERICAN EXPRESS COMPANY, a New York
Corporation, AMERICAN EXPRESS TRAVEL
RELATED SERVICES COMPANY, INC., a New York
Corporation and AMERICAN EXPRESS CENTURION
BANK, a New York Corporation,

        Defendants.

MAGISTRATE JUDGE
BROWN

_____/

## NOTICE OF REMOVAL OF CIVIL ACTION

Pursuant to 28 U.S.C. §§ 1441 and 1446, defendants American Express Company,

American Express Related Services Company, Inc. and American Express Centurion Bank

(collectively "American Express") file this notice of removal and state:

    1.      On August 19, 2003, plaintiff commenced this putative class action against

American Express in the Circuit Court for the Eleventh Judicial Circuit in and for Miami-Dade

County where it was assigned Case No. 03-19365 CA 09. The action involves a controversy

relating to foreign currency transactions by American Express cardholders.

    2.      The original complaint comprised two causes of action including alleged violation

of Florida's Unfair and Deceptive Trade Practices Act and common law unjust enrichment. The

original complaint did not include any claims under federal law.



3.     On February 10, 2004, Plaintiff filed and served his amended complaint, which raised for the first time a cause of action under the federal Truth-in-Lending Act, 15 U.S.C. § 1601, et seq.

4.     Pursuant to 28 U.S.C. § 1331, this Court now has original subject matter jurisdiction over this action because Plaintiff has alleged a claim arising under federal law.

5.     Pursuant to 28 U.S.C. § 1441(c), this entire action may be removed, including Plaintiff's state law claims, to allow this Court to determine all of the issues.

6.     Pursuant to 28 U.S.C. § 1446(a), copies of all process, pleadings and orders served on American Express in this action are attached hereto as Composite Exhibit A.

7.     Pursuant to 28 U.S.C. § 1446(d), a copy of this notice of removal will be filed with the state court promptly after its filing in this Court.

Dated: February 10, 2004

STROOCK & STROOCK & LAVAN LLP
Counsel for Defendants
200 South Biscayne Boulevard
3160 Wachovia Financial Center
Miami, Florida 33131-5323
Telephone: (305) 358-9900
Facsimile: (305) 789-9302

By: _____
      Richard B. Simring
      (Florida Bar No. 890571)
          rsimring@stroock.com
      Richard E. Landman
          Florida Bar No. 149713
          rlandman@stroock.com

-2-

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that a true and correct copy of the foregoing was served by facsimile and U.S. mail this 10th day of February, 2004, on **Thomas A. Tucker Ronzetti, Esq.**, Kozyak Tropin & Throckmorton, P.A., Counsel for Plaintiff, 200 South Biscayne Boulevard, Suite 2800, Miami, FL 33131; and **Bruce E. Gerstein, Esq.**, Garwin, Bronzaft, Gerstein & Fisher, LLP, Co-Counsel for Plaintiff, 1501 Broadway, Room 1416, New York, NY 10036.

Richard E. Landman

SSL-MIAl 30112896v1

-3-



# CT System

**Service of Process Transmittal Form**

Plantation, Florida

08/26/2003

Via Federal Express (2nd Day)

TO: Paul Helmberg
Mandel, Weisman, Helmberg, Brodo & Griffin, P.A.
2101 Corporate Blvd. NW
Suite 300
The Boca Corporate Center
Boca Raton, FL 33431

RE:    **PROCESS SERVED IN FLORIDA**

FOR    American Express Travel Related Services Company, Inc. Domestic State: NY

ENCLOSED ARE COPIES OF LEGAL PROCESS RECEIVED BY THE STATUTORY AGENT OF THE ABOVE COMPANY AS FOLLOWS:

1. TITLE OF ACTION:          Edward Lipuma, et al. Ptfs. vs American Express Company, etc., et al including American
                             Express Travel Related Services, Inc., etc., Dfts.

2. DOCUMENT(S) SERVED:       Summons, Complaint

3. COURT:                    Miami-Dade County Circuit Court, FL
                             Case Number 03-18365-CA-09

4. NATURE OF ACTION:         Class action; deceptive and unfair trade practices; imposing a hidden 2% transaction fee on
                             cardholders for purchases of goods or services which are denominated in non-U.S. currency;
                             seeking restitution, damages and injunctive relief

5. ON WHOM PROCESS WAS SERVED:   CT Corporation System, Plantation, Florida

6. DATE AND HOUR OF SERVICE:     By Process server on 08/26/2003 at 10:29

7. APPEARANCE OR ANSWER DUE:     Within 20 days

8. ATTORNEY(S):              Adam M. Moskowitz
                             (305) 372-1800
                             2800 Wachovia Financial Center
                             200 South Biscayne Boulevard
                             Miami, FL 33131-2335

9. REMARKS:    Trial by jury demanded. // Even though Complaint shows as indicated above in Title of Action, Summons
               commends service on American Express Travel Related Services Company, Inc. // This confirms our
               telephone call and fax (documents) to: One of your office. (Fax 561-886-0304)

                                           SIGNED     CT Corporation System
                                           PER        Anne Boutier /TB
                                           ADDRESS    1200 South Pine Island Road
                                                      Plantation, FL 33324
                                                      SOP WS 0006847829

Information contained on this transmittal form is recorded for C T Corporation System's record keeping purposes only and to permit quick reference for
the recipient. This information does not constitute a legal opinion as to the nature of action, the amount of damages, the answer date, or any information that
can be obtained from the documents themselves. The recipient is responsible for interpreting the documents and for taking the appropriate action.



EXHIBIT
Composite
"A"

IN THE CIRCUIT COURT OF THE 11ᵀᴴ
JUDICIAL CIRCUIT IN AND FOR
MIAMI-DADE COUNTY, FLORIDA

CASE NO: 03-19365 CA 09

EDWARD LIPUMA and RAFAEL
A. BERGOLLA, on Behalf of
Themselves and All Others Similarly
Situated and on Behalf of the General
Public,

        Plaintiffs,

v.

AMERICAN EXPRESS COMPANY,
a New York Corporation, AMERICAN
EXPRESS TRAVEL RELATED SERVICES,
INC., a New York Corporation and
AMERICAN EXPRESS CENTURION BANK,
a New York Corporation,

        Defendants.

/

**CIVIL ACTION SUMMONS**  S.O.P.

Name: Anne Boutilier
Date: 8-26-03  Time: 10:20
P.S. ___ Corsuch Maldonado
Print/Sign Name

Certified to The Circuit Court of
17 Judicial Circuit Cert #438

TO:    American Express Travel Related Services Company, Inc.
        c/o its Registered Agent, CT Corporation System
        1200 South Pine Island Road
        Plantation, Florida 33324

**IMPORTANT**

A lawsuit has been filed against you. You have 20 calendar days after this summons is served on you to file a written response to the attached Complaint in this Court. A phone call will not protect you; your written response, including the above case number and named parties, must be filed if you want the Court to hear your case. If you do not file your response on time, you may lose the case, and your wages, money, and property may thereafter be taken without further warning from the Court. There are other legal requirements. You may want to call an attorney right away. If you do not know an attorney, you may call an attorney referral service or a legal aid office (listed in the phone book).

If you choose to file a written response yourself, at the same time you file your written response to the Court, located at:

> Dade County Courthouse
> Clerk of Courts
> Room 138
> 73 West Flagler Street
> Miami, Florida 33130

You must also mail or take a carbon copy or photocopy of your written response to the "Plaintiff/Plaintiff's Attorney" listed below.

Plaintiffs' Attorneys:

> Adam M. Moskowitz, Esq.
> Thomas A. Tucker Ronzetti, Esq.
> Kozyak Tropin & Throckmorton, P.A.
> 2800 Southeast Financial Center
> 200 South Biscayne Boulevard
> Miami, Florida 33131-2305
> Telephone: (305) 372-1800
> Facsimile: (305) 372-3508

THE STATE OF FLORIDA

TO EACH SHERIFF OF THE STATE: You are commanded to serve this Summons and a copy of the Complaint in this lawsuit on the above-named Defendant.

| CLERK OF COURTS | By: _____ HATTIE STREETER _____ DEPUTY CLERK | Court Seal | Date AUG 2 2 2003 |
| --- | --- | --- | --- |

2

Post-It® Fax Note   7671

To    Gina
Co./Dept.
Phone #
Fax # 561-979-0304

Date
From    Rinilse
Co.
Phone # 954-473-5503
Fax #

**Service of Process Transmittal Form**

Plantation, Florida

04/25/2003

Via Federal Express (2nd Day)

Mandel, Weisman, Hamburg, Brode & Griffin, P.A.
2101 Corporate Blvd. NW
Suite 300
The Bess Corporate Center
Boca Raton, FL 33431

RE:    **PROCESS SERVED IN FLORIDA**

FOR    American Express Company   Domestic state: NY

ENCLOSED ARE COPIES OF LEGAL PROCESS RECEIVED BY THE STATUTORY AGENT OF THE ABOVE COMPANY AS FOLLOWS:

1. TITLE OF ACTION:    Edward Lipuma, et al, Pltfs, vs American Express Company, etc., et al, Dfts.

2. DOCUMENT(S) SERVED:    Summons, Complaint

3. COURT:    Miami-Dade County Circuit Court, FL
              Case Number 03-12065-CA-09

4. NATURE OF ACTION:    Class action; deceptive and unfair trade practices; imposing a hidden 2% transaction fee on cardholders for purchases of goods or services which are denominated in non U.S. currency; seeking restitution, damages and injunctive relief

5. ON WHOM PROCESS WAS SERVED:    CT Corporation System, Plantation, Florida

6. DATE AND HOUR OF SERVICE:    By Process server on 06/25/2003 at 10:20

7. APPEARANCE OR ANSWER DUE:    Within 20 days

8. ATTORNEY(S):    Adam M. Moskowitz
                   (305) 372-1800
                   2800 Wachovia Financial Center
                   200 South Biscayne Boulevard
                   Miami, FL 33131-2336

9. REMARKS:    Trial by jury demanded // This confirms our telephone call and fax (documents) to: Gina of your office. (Fax 561-983-0304)

SENDER    CT Corporation System

FOR
ADDRESS    Anne Beuttell /TB
           1200 South Pine Island Road
           Plantation, FL 33324
           SOP WS D008047651

Information contained on this transmittal form is recorded by CT Corporation System's record keeping purposes only and is permit quick reference for the recipient. This information does not constitute a legal opinion as to the nature of action, the amount of damages, the answer date, or any information that can be obtained from the documents themselves. The recipient is responsible for interpreting the documents and for taking the appropriate action.

200301672

IN THE CIRCUIT COURT OF THE 11TH
JUDICIAL CIRCUIT IN AND FOR
MIAMI-DADE COUNTY, FLORIDA

CASE NO: 03-19365 CA 09

EDWARD LIPUMA and RAFAEL
A. ULRGOLLA, on Behalf of
Themselves and All Others Similarly
Situated and on Behalf of the General
Public,

     Plaintiffs,

v.

AMERICAN EXPRESS COMPANY,
a New York Corporation, AMERICAN
EXPRESS TRAVEL RELATED SERVICES,
INC., a New York Corporation and
AMERICAN EXPRESS CENTURION BANK,
a New York Corporation,

     Defendants.

**CIVIL ACTION SUMMONS**

S.O.P.

Name _Anne Bouthiler_

Date _8-26-03_  Time _10:20_

P.S _W. Consuela Maldonado_

     Print/Sign Name

Certified in The Circuit Court of

_17_  Judicial Circuit Cert # _438_

TO: American Express Company
c/o its Registered Agent, CT Corporation System
1200 South Pine Island Road
Plantation, Florida 33324

**IMPORTANT**

    A lawsuit has been filed against you. You have 20 calendar days after this summons is served on you to file a written response to the attached Complaint in this Court. A phone call will not protect you; your written response, including the above case number and named parties, must be filed if you want the Court to hear your case. If you do not file your response on time, you may lose the case, and your wages, money, and property may thereafter be taken without further warning from the Court. There are other legal requirements. You may want to call an attorney right away. If you do not know an attorney, you may call an attorney referral service or a legal aid office (listed in the phone book).

If you choose to file a written response yourself, at the same time you file your written response to the Court, located at:

Dade County Courthouse
Clerk of Courts
Room 13N
73 West Flagler Street
Miami, Florida 33130

You must also mail or take a carbon copy or photocopy of your written response to the "Plaintiff/Plaintiff's Attorney" listed below.

Plaintiffs' Attorneys:

Adam M. Moskowitz, Esq.
Thomas A. Tucker Ronzetti, Esq.
Kozyak Tropin & Throckmorton, P.A.
2800 Southeast Financial Center
200 South Biscayne Boulevard
Miami, Florida 33131-2305
Telephone: (305) 372-1800
Facsimile: (305) 372-3508

THE STATE OF FLORIDA

TO EACH SHERIFF OF THE STATE: You are commanded to serve this Summons and a copy of the Complaint in this lawsuit on the above-named Defendant.

| CLERK OF COURTS | By: | HATTIE STREETER | Court Seal | Date |
|---|---|---|---|---|
| | | DEPUTY CLERK | | AUG 2 2 2003 |

2



**CT System**

Service of Process Transmittal Form
Plantation, Florida

08/26/2003

Via Federal Express (2nd Day)

TO: Paul Heimberg
Mandel, Weisman, Heimberg, Brode & Griffin, P.A.
2101 Corporate Blvd. NW
Suite 300
The Boca Corporate Center
Boca Raton, FL 33431

RE: **PROCESS SERVED IN FLORIDA**

FOR American Express Centurion Services Corporation Domestic State: De

ENCLOSED ARE COPIES OF LEGAL PROCESS RECEIVED BY THE STATUTORY AGENT OF THE ABOVE COMPANY AS FOLLOWS:

1. TITLE OF ACTION: Edward Lipuma, et al, Pltfs. vs American Express Company, etc., et al, Dfts. // To: American Express Centurion Services Corporation

2. DOCUMENT(S) SERVED: Summons, Complaint

3. COURT: Miami-Dade County Circuit Court, FL
Case Number 03-18355-CA-09

4. NATURE OF ACTION: Class action; deceptive and unfair trade practices; imposing a hidden 2% transaction fee on cardholders for purchase of goods or services which are denominated in non-U.S. currency; seeking restitution, damages and injunctive relief

5. ON WHOM PROCESS WAS SERVED: CT Corporation System, Plantation, Florida

6. DATE AND HOUR OF SERVICE: By Process server on 08/26/2003 at 10:20

7. APPEARANCE OR ANSWER DUE: Within 20 days

8. ATTORNEY(S): Adam M. Moskowitz
(305) 372-1800
2800 Wachovia Financial Center
200 South Biscayne Boulevard
Miami, FL 33131-2336

9. REMARKS: Trial by jury demanded. // Please be aware American Express Centurion Services Corporation is not named as a party defendant in Complaint // This confirms our telephone call and fax (documents) to: Gina of your office. (Fax 561-869-0304)

SIGNED CT Corporation System

FOR
ADDRESS Anne Beutfiler /TB
1200 South Pine Island Road
Plantation, FL 33324
SOP WS 0006647660

Information contained on this transmittal form is recorded for C T Corporation System's record keeping purposes only and to permit quick reference for the recipient. This information does not constitute a legal opinion as to the nature of action, the amount of damages, the answer date, or any information that can be obtained from the documents themselves. The recipient is responsible for interpreting the documents and for taking the appropriate action.

IN THE CIRCUIT COURT OF THE 11ᵀᴴ
JUDICIAL CIRCUIT IN AND FOR
MIAMI-DADE COUNTY, FLORIDA

CASE NO: 03-19365 CA 09

EDWARD LIPUMA and RAFAEL
A. BERGOLLA, on Behalf of
Themselves and All Others Similarly
Situated and on Behalf of the General
Public,

      Plaintiffs,

v.

AMERICAN EXPRESS COMPANY,
a New York Corporation, AMERICAN
EXPRESS TRAVEL RELATED SERVICES,
INC., a New York Corporation and
AMERICAN EXPRESS CENTURION BANK,
a New York Corporation,

      Defendants.

_____/

CIVIL ACTION SUMMONS    S.O.P.

Name _Ann Brutbilier_
Date _8-25-03_ Time _10:30_
P.S. _Off Cons/Ida Maldonado_
Print/Sign Name
Certified in The Circuit Court of
17 Judicial Circuit Cert # 432

TO:   American Express Centurion Services Corporation
     c/o its Registered Agent, CT Corporation System
     1200 South Pine Island Road
     Plantation, Florida 33324

## IMPORTANT

A lawsuit has been filed against you. You have 20 calendar days after this summons is served on you to file a written response to the attached Complaint in this Court. A phone call will not protect you; your written response, including the above case number and named parties, must be filed if you want the Court to hear your case. If you do not file your response on time, you may lose the case, and your wages, money, and property may thereafter be taken without further warning from the Court. There are other legal requirements. You may want to call an attorney right away. If you do not know an attorney, you may call an attorney referral service or a legal aid office (listed in the phone book).

If you choose to file a written response yourself, at the same time you file your written response to the Court, located at:

Dade County Courthouse
Clerk of Courts
Room 138
73 West Flagler Street
Miami, Florida 33130

You must also mail or take a carbon copy or photocopy of your written response to the "Plaintiff/Plaintiff's Attorney" listed below.

Plaintiffs' Attorneys:

Adam M. Moskowitz, Esq.
Thomas A. Tucker Ronzetti, Esq.
Kozyak Tropin & Throckmorton, P.A.
2800 Southeast Financial Center
200 South Biscayne Boulevard
Miami, Florida 33131-2305
Telephone: (305) 372-1800
Facsimile: (305) 372-3508

THE STATE OF FLORIDA

TO EACH SHERIFF OF THE STATE: You are commanded to serve this Summons and a copy of the Complaint in this lawsuit on the above-named Defendant.

| CLERK OF COURTS | By: | HATTIE STREETER | Court Seal | Date |
| | | DEPUTY CLERK | | AUG 2 2 2003 |

2

IN THE CIRCUIT COURT OF THE
11th JUDICIAL CIRCUIT IN AND
FOR MIAMI-DADE COUNTY,
FLORIDA

EDWARD LIPUMA and RAFAEL A.
BERGOLLA, on Behalf of Themselves
and All Others Similarly Situated and
on Behalf of the General Public,

      Plaintiff,

v.

AMERICAN EXPRESS COMPANY, a New
York Corporation, AMERICAN EXPRESS
TRAVEL RELATED SERVICES, INC., a
New York Corporation and AMERICAN
EXPRESS CENTURION BANK, a New
York Corporation,

      Defendants.

CASE NO: 03-19365CA09

CLASS REPRESENTATION

## COMPLAINT

1.     Plaintiffs, Edward Lipuma and Rafael A. Bergolla, on behalf of themselves and, pursuant to Florida Rule of Civil Procedure 1.220, all others similarly situated and on behalf of the general public, by and through their undersigned attorneys, bring this action against defendants American Express Company, American Express Travel Related Services, Inc., and American Express Centurion Bank (collectively, "American Express") and hereby allege the following.

## INTRODUCTION AND OVERVIEW

2.     This is a civil action seeking restitution, damages, injunctive relief and other relief arising out of the unlawful actions of American Express in imposing a hidden 2% transaction fee on its cardholders for purchases of goods or services which are denominated in non-U.S. currency.

LAW OFFICES EDZTAR TROPIN & THROCKMORTON, P.A.
3800 WACHOVIA FINANCIAL CENTER, 200 SOUTH BISCAYNE BOULEVARD, MIAMI, FLORIDA 33131 · TEL (305) 372-1800

Despite the fact that American Express touts the "global acceptance" of its cards that "open[] doors for cardholders at millions of establishments . . . around the world," American Express never discloses the existence or amount of this fee (referred to herein as the "foreign currency transaction fee") in cardholder billing statements or its applications or solicitations to prospective cardholders. Indeed, American Express actively conceals the foreign currency transaction fee from its cardholders by embedding the amount of the fee in the transaction amount, which is shown on the cardholder's bill in U.S. dollars. Thus, because the 2% fee and the transaction are combined on the cardholder's bill, there is no indication on the billing statement that American Express imposes the foreign currency transaction fee.

## JURISDICTION AND VENUE

3.  This Court has jurisdiction over this action pursuant to Florida Statutes § 26.012.

4.  Venue is proper in Miami-Dade County (the "County") pursuant to Florida Statutes § 47.051. The defendants are foreign corporations doing business in the State of Florida. Upon information and belief, the defendants have an agent or representative in the County, and the cause of action accrued in the County. The defendants issue credit cards in substantial number to residents of the County and acquire transactions from a substantial number of merchants in the County, and have collected a substantial amount of the foreign currency transaction fees from cardholders in the County.

## PARTIES

5.  Plaintiffs Edward Lipuma and Rafael A. Bergolla are residents of the State of Florida and of the County of Miami-Dade. Plaintiffs also brings this action as representative of the proposed class defined herein. Plaintiffs incurred a foreign currency transaction fee using his American

2

Express card within the four years preceding this complaint and were charged by and paid a foreign currency transaction fee to American Express.

6.    Defendant American Express Company is a New York corporation doing business in the State of Florida and the County of Miami-Dade.

7.    Defendant American Express Travel Related Services, Inc., a wholly owned subsidiary of American Express Company, is a New York corporation doing business in the State of Florida and the County of Miami-Dade.

8.    Defendant American Express Centurion Bank, a wholly owned subsidiary of American Express Company, is a Utah corporation doing business in the State of Florida and the County of Miami-Dade.

9.    At all times mentioned in the complaint, each of the defendants was an agent of each and every other defendant. In doing the things alleged in this complaint, each defendant was acting within the course and scope of this agency and was acting with the consent, permission and authorization of each of the other defendants.

## FACTUAL ALLEGATIONS

10.    American Express issues credit and charge cards to the general public, including citizens of the state of Florida. In order to facilitate its business, American Express contracts with merchants worldwide to recognize American Express cards as a valid method of payment for their goods and services.

11    An American Express cardholder can use their card to purchase goods and services in two ways. A cardholder can use the line of credit extended by American Express or its agent or agree to pay American Express at a later date, usually determined by receipt of a bill from American

3

Express.[1]

12.    One of American Express's primary selling points to its members as a benefit of cardmembership is its global ubiquity. In promotional materials, American Express claims, "no matter where you go, a network of 1700 offices in 130 countries is there to help." Similarly, American Express touts its cards' "Global Acceptance", which "opens doors for [cardmembers] at millions of establishments . . . around the world."

13.    Similarly, American Express actively markets the utility of the card when traveling abroad. For example, regarding the "Benefits of the Platinum Card", American Express explains "You never travel alone with American Express". "Whether traveling around the world or just around the corner, your Platinum Card is an essential tool." Platinum members are entitled to such benefits as "special privileges and amenities at more than 495 hotels and resorts around the world", "discounted overseas cell phone rental" and "travel emergency assistance" which can, *inter alia*, "quickly refer you to English-speaking medical and legal professionals...arrange for a translator, put you in contact with the nearest U.S. Embassy or Consulate . . . ."

14.    American Express also touts the benefits of its other cards to those who travel internationally. For example, Green and Gold card holders have access to "Global Assist Plus Hotline", "emergency check cashing" "at more than 1,700 American Express Travel service locations worldwide", "Express Cash", which allows access to a line of credit "24 hours a day at more than 500,000 ATMs worldwide", and "emergency card replacement".

15.    A reasonable American Express cardmember would believe that use of his card

---

[1] The American Express cards referenced to in this complaint include both charge cards, e.g. the green card, gold card, platinum card, and credit cards, e.g. the blue card and Optima card.

4

internationally to, *inter alia*, pay for his hotel room, meals, and other goods and services, will not cause him to incur any fee unless he is told otherwise in the card application, solicitations and/or billing statements. However, this is not the case. American Express imposes a hidden 2% foreign currency transaction fee on its cardmembers for purchases of goods and services which are denominated in non-U.S. currency.

16.    American Express cards can be used to make purchases in foreign currency without requiring cardholders to furnish any foreign currency to the merchant. Instead, the cardholder can remit payment in the U.S. dollar equivalent of the purchase to American Express.

17.    On the date a cardholder makes a foreign purchase, American Express converts the purchase amount from foreign currency into U.S. dollars using an exchange rate which American Express unilaterally determines. After converting the amount of the foreign charge to U.S. dollars, American Express adds a 2% foreign currency transaction fee, which it embeds in the transaction amount in U.S. dollars where it is invisible to consumers. Nowhere in the cardholder billing statement does American Express disclose the amount of the foreign currency transaction fee or the fact that it is imposing such a fee. This hidden foreign currency transaction fee is the only fee that is fixed in the transaction amount in this manner.

18.    The business practice of embedding or hiding the foreign currency transaction fee in the transaction amount on billing statements misleads consumers as to the existence and amount of any foreign currency transaction fee because the fee is concealed. American Express has the capability necessary to disclose the foreign currency transaction fee on its billing statements. The monthly billing statement is the most relevant document received by cardholders when it comes to communicating the amount of charges imposed by American Express for the use of the card to

5

purchase goods and services. Consumers expect that if fees are to be charged for the use of the card, those fees will be disclosed on the billing statements. Consumers are very likely to notice, attend to, comprehend and retain information on billing statements which are mailed regularly to cardholders and contain information that consumers know is important to their economic interests. American Express strips the cardholders of the best opportunity to notice and retain information associated with the foreign currency transaction fee by failing to disclose the fee's existence or amount of the monthly bills. Without such notice the consumer is likely to believe, incorrectly, that the foreign currency transaction fee was the result of variations in exchange rates.

19.     Additionally, American Express solicits cardholders and potential cardholders through numerous advertisements, applications, and direct mailings. While American Express discloses in these applications and direct mailings applicable charges and fees that prospective cardholders may incur when using the card, such as late payment fees up to 2.9%, 3% transaction fee on "Express Cash" service transactions, and fees charged by third party service provider affiliated with the "Global Assist Hotline," no mention is made of foreign currency transaction fee. Consumers reviewing solicitations are likely to focus particular attention on terms relating to costs, charges and fees when comparing card plans. Consumers often review credit and charge card solicitations when making a decision whether to apply for a particular card and to compare the advantages and costs of competing card products. Consumers would more likely become informed of American Expresses' foreign currency transaction fee if it were disclosed on solicitations and applications.

20.     Indeed, Congress in an amendment to the Truth In Lending Act, requires card issuers to disclose certain costs of credit in solicitations in what is known as a "Schumer box." Schumer

6

LAW OFFICES DZYAS TROPIN & THEDERMERTON, P.A.
2000 WACHOVIA FINANCIAL CENTER, 200 SOUTH BISCAYNE BOULEVARD, MIAMI, FLORIDA 33131 · TEL. (305) 372-1800

boxes provide for the disclosure of purchase transaction fees. The Schumer box would be a logical place for American Express to disclose the foreign currency transaction fee because that fee is imposed on each foreign purchase.

21.    Moreover, even on its website American Express offers as a "Travel Tool[]" a "currency converter" which converts U.S. dollars to various foreign currencies using the Interbank rate. While American Express states that the converter should be used as a "guide only", cardholders are instructed to call their "local American Express travel office for the latest rates." No mention is made in the "Travel Tool" that American Express will add on a 2% foreign transaction fee.

22.    Multiple disclosures of information to consumers is important to ensuring effective communication of a particular message. Disclosure of the foreign currency transaction fee in billing statements, solicitations and cardholder applications would more likely succeed in informing cardholders about foreign currency transaction fees. However, the only time that the cardholder is notified of the foreign currency transaction fee's existence is its placement in fine print in the middle of the lengthy and verbose American Express Cardmember Agreement.

23.    American Express first presents their Cardmember Agreement after they process the cardmember application and send the card to the cardholder. The Cardmember Agreement is an adhesion contract. American Express reserves the unilateral right to change terms and conditions of the agreement. The Agreement is drafted entirely by American Express, which enjoys superior bargaining power over the cardholder through their wealth of resources, knowledge, and economic power.    Consumers have no bargaining or negotiating power whatsoever. American Express imposes the contract on consumers giving them only the choice of adhering to the contract or rejecting it in its entirety.

7

24.     It is important for consumers to know of the existence and amount of American Express' foreign currency transaction fee. The fee directly affects the cost of using an American Express card to purchase goods or services in a foreign currency. The foreign currency transaction fee charged by American Express may be the most significant fee charged by a consumer when he uses his card to purchase goods and services in a foreign currency.

25.     American Express misleads its cardholders and potential cardholders by failing to disclose the foreign currency transaction fee. The foreign currency transaction fee is designed and implemented so that the it will be paid by, but concealed from, American Express cardholders. The foreign currency transaction fee charged to cardholders by American Express is the only fee which it embeds in the transaction amount and which is not separately itemized on the billing statement. Concealing the foreign currency transaction fee causes or is likely to cause injury to consumers and to competition. Consumers cannot make informed decisions without adequate information about the fee, and American Express' business practice of concealing the fees deprives them of price information, to their injury and to the injury of the competitive process.

26.     There is no social or other benefit to obscuring foreign currency transaction fees by embedding them, unnoticed, in the billed transaction amount, and certainly no benefit which would outweigh the injury to consumers and to the competitive process.

### AMERICAN EXPRESS' UNCONSCIONABLE LIMITATION OF REMEDIES IN CARDHOLDER AGREEMENTS

27.     In its cardholder agreements, American Express imposes unconscionable limitations on liability and arbitration provisions ("legal remedies limitations") in an attempt to eviscerate consumers' ability to obtain redress in violation of Florida law, which prohibits the imposition of

8

such unconscionable terms in contracts.

28.     American Express' legal remedies limitations are unlawful, unconscionable and unenforceable as against public policy. The legal remedies limitations are procedurally and substantively unconscionable in scope, operation and effect. Consumers have no meaningful choice with respect to the legal remedies limitations because they are not presented with them until after they applied for the cards. The legal remedies limitations are not set forth on the cards. Rather, the legal remedies limitations are presented on a take-it-only basis as part of a series of non-negotiated adhesionary terms in dense policy cardholder agreements and cardholders are unlikely to read or retain. Thus, the legal remedies limitations are effectively hidden from consumers and are included in pre-determined terms and conditions crafted entirely by American Express with no opportunity for negotiation, modification or waiver. As a result, consumers have no meaningful choice with respect to the legal remedies limitations.

29.     The legal remedies limitations are also substantively unconscionable. By prohibiting class and representative actions once American Express compels arbitration, American Express seeks to eliminate the possibility that a group of its customers might join together to seek relief that would be impractical for any of them to obtain alone. This is an advantage that inures only to American Express because American Express would have no need or basis to litigate class claims against consumers. The potential damages recoverable by any consumer in individual proceedings are insubstantial in comparison to the costs associated with recovering those damages. No consumer could attract competent counsel to litigate claims of this magnitude without the availability of the class action device. The filing fees alone would exceed the damages potentially recoverable by a consumer in an individual lawsuit. Class litigation provides the most economically feasible remedy

substantial benefits to both the parties and the Court. The Class is ascertainable and there is a well-defined community of interest in the questions of law or fact alleged since the rights of each Class member were infringed or violated in a similar fashion based upon defendants' uniform conduct. Notice can be provided through records of American Express or by publication, the cost of which is properly imposed upon defendants. The Class consists of thousands of persons and is thus so numerous that joinder of all members is impracticable.

32.     This action satisfies Florida Rule of Civil Procedure 1.220(a)(2), because the Plaintiff representatives' claims raise questions of law and fact common to those raised by each member of the Class. The questions of law or fact common to the Class predominate over questions that may affect particular Class members. Such common questions include:

    a.    whether defendants engaged in a common course of conduct that is likely to deceive Plaintiffs, Class members or the public concerning the foreign currency transaction fee;

    b.    whether the laws of the State of Florida were violated by defendants, as alleged herein, by engaging in the described practices; and

    c.    whether Plaintiffs and Class members are entitled to declaratory, injunctive and other equitable relief.

33.     This action satisfies Florida Rule of Civil Procedure 1.220(a)(3). Plaintiffs' claims are typical of the claims of the members of the Class.

34.     This action satisfies Florida Rule of Civil Procedure 1.220(a)(4). Plaintiffs will fairly and adequately protect the interests of the Class in that they have no interest antagonistic to those of the other Class members. Plaintiffs have retained attorneys experienced in class action and complex litigation, and those attorneys are fully capable of adequately representing the Class.

35.     This action is maintainable as a class action pursuant to Florida Rule of Civil

11

Procedure 1.220(b)(1)(A), because in consistent or varying adjudications concerning individual members of the class would establish incompatible standards of conduct for the defendants.

36. This action is maintainable as a class action pursuant to Florida Rule of Civil Procedure 1.220(b)(2), because the defendants have acted on grounds generally applicable to all class members, making final injunction and declaratory relief concerning the class as a whole appropriate.

37. This action is maintainable as a class action pursuant to Rule of Civil Procedure 1.220(b)(3). As stated above at paragraph 32, common questions of law and fact predominate. A class action is superior to other available methods for the fair and efficient adjudication of this controversy for at least the following reasons:

    a. given the size of individual Class members' claims and the expense of litigating those claims, few, if any, Class members could afford to or would seek legal redress individually for the wrongs defendants committed against them and absent Class members have no substantial interest in individually controlling the prosecution of individual actions;

    b. this action will promote an orderly and expeditious administration and adjudication of the Class claims, economies of time and effort and resources will be fostered and uniformity of decisions will be ensured; and

    c. without a class action, Class members will continue to suffer damages, and defendants' violations of law will proceed without remedy while defendants continue to reap and retain the substantial proceeds of their wrongful conduct.

38. Plaintiffs know of no difficulty that will be encountered in the management of this litigation that would preclude its maintenance as a class action.

### FIRST CAUSE OF ACTION
#### (For Deceptive and Unfair Trade Practices)

39. Plaintiffs incorporate by reference the allegations set forth in the preceding paragraphs. These claims are brought by the Plaintiffs and on behalf of the Class against all

22

defendants.

40.     The Florida Deceptive and Unfair Practices Act ("FDUTPA"), Florida Statutes §§ 501.201-501.213, prohibits deceptive and unfair trade practices. Section 501.204(1), Florida Statutes, states: "Unfair methods of competition, unconscionable acts or practices, and unfair or deceptive or practices in the conduct of any trade or commerce are hereby declared unlawful." Section 501.211(1), Florida Statutes, states: "Without regard to any other remedy or relief to which a person is entitled, anyone aggrieved by a violation of this part may bring an action to obtain a declaratory judgment that an act or practice violates this part and to enjoin a person who has violated, is violating, or is otherwise likely to violate this part." Section 501.211(2), Florida Statutes, states in part: "In any action brought by a person who has suffered a loss as a result of a violation of this part, such person may recover actual damages, plus attorney's fees and court costs as provided in s. 501.2105."

41.     Defendants committed unfair and deceptive business practices in violation of FDUTPA by failing to adequately disclose the existence of the foreign currency transaction fee. Defendants have inserted vague and misleading language into the agreements. Defendants have also misled consumers by failing to disclose the foreign currency transaction fee in advertising, solicitations, consumers' monthly statements or any other periodic statement.

42.     Defendants' unfair and deceptive business acts or practices described herein present a continuing threat to all consumers and members of the public in that defendants systematically impose the foreign currency transaction fee in a misleading manner on millions of consumers depriving them of millions of dollars each year.

43.     The legal remedies limitations in cardholder agreements are unlawful, unfair and

13

unenforceable.

44.   Defendants' practice of embedding and concealing the foreign currency transaction fee by only disclosing its existence in small print, prolix cardholder agreements, and failing to separately disclose the foreign currency transaction fee in solicitations and periodic billing statements, where consumers are most likely to attend to, notice or comprehend the fee and other costs of credit, violates FDUTPA. Such conduct is likely to deceive Class members and the general public as to the existence and amount of the foreign currency transaction fee.

45.   As a direct and proximate result of the Defendants' violations of FDUTPA, the Plaintiffs and the Class members have suffered losses, and are entitled to their actual damages, as well as costs, attorney's fees and other relief.

## SECOND CAUSE OF ACTION
### (For Unjust Enrichment)

46.   Plaintiffs incorporate by reference the allegations set forth in paragraphs 1 - 38. These claims are brought by the Plaintiffs and on behalf of the Class against all Defendants.

47.   In paying the foreign currency transaction fee, the Plaintiffs and the Class conferred a benefit upon the Defendants, who have knowledge of that benefit.

48.   The Defendants have accepted and retained the foreign currency transaction fees and all benefits of those fees.

49.   The Defendants have retained the foreign currency transaction fees and the benefits of those fees under circumstances under inequitable circumstances because, among other reasons detailed above, the foreign currency transaction fee is hidden, misleading, and not a genuine cost caused by exchange rates.

14

50.   As a result of the Defendants' unjust enrichment, the Plaintiffs and the Class are entitled to a constructive trust upon, or restitution of, all the foreign currency transaction fees paid and all benefits conferred by those fees (i.e. interest received).

PRAYER FOR RELIEF

51.   Plaintiffs on behalf of the general public and on behalf of the Class pray for judgment and relief against defendants as follows:

(A)   For an order declaring this a class action;

(B)   For an order declaring the section of American Express cardholder agreements that purport to limit defendants' legal liabilities and the remedies and access to courts of cardholders unconscionable and void as a matter of law;

(C)   For an order enjoining defendants from continuing to engage, use or employ their practice of charging and collecting the unconscionable and illegal % foreign currency transaction fee;

(D)   For an order enjoining defendants from charging any type of foreign currency transaction fee without providing a clear obvious and comprehensive notice that such a fee will be charged, including notice of such a fee on any monthly statement which includes charges made in foreign countries;

(E)   For an order requiring defendants to fund a corrective advertising campaign in order to remedy defendants' wrongful conduct;

(F)   For an order awarding a constructive trust upon and/or restitution of the monies defendants wrongfully acquired by imposing the unconscionable foreign currency transaction fee on Florida consumers who used the card, plus a reasonable rate of interest, so as to restore all moneys

15

wrongfully acquired by defendants' unfair, deceptive and unlawful business practices to those consumers forced to pay the unconscionable fee;

(G) For attorney's fees as allowed by law pursuant to Section 501.2105, Florida Statutes, and/or equity;

(H) For interest as prescribed by law;

(I) For costs of this suit; and

(J) For such other and further relief as the court deems just, equitable and proper.

## JURY DEMAND

Plaintiffs demand a trial by jury of all issues so triable.

DATED: _August 19, 2003_

KOZYAK TROPIN & THROCKMORTON, P.A.
Attorneys for Plaintiffs
2800 Wachovia Financial Center
200 South Biscayne Boulevard
Miami, Florida 33131-2335
Telephone: (305) 372-1800
Telecopier: (305) 372-3508

By: _____
Adam M. Moskowitz, FBN No. 984280
Thomas A. Tucker Ronzetti, FBN No. 965723

and

GARWIN, BRONZAFT, GERSTEIN & FISHER, L.L.P.
Bruce E. Gerstein, Esq.
Kevin Landau, Esq.
1501 Broadway - Room 1416
New York, New York 10036
Tel: (212) 398-0055
Fax (212) 764-6620

16

LAW OFFICES KOZYAK TROPIN & THROCKMORTON, P.A. • MIAMI, FLORIDA 33131 • TEL. (305) 372-1800
2800 WACHOVIA FINANCIAL CENTER, 200 SOUTH BISCAYNE BOULEVARD

TOTAL P.26



IN THE CIRCUIT COURT OF THE 11TH
JUDICIAL CIRCUIT, IN AND FOR
MIAMI DADE COUNTY, FLORIDA

CIVIL DIVISION

CASE NO. 03-19365 CA 09

EDWARD LIPUMA and RAFAEL A.
BERGOLLA, on Behalf of Themselves and
All Others Similarly Situated and on Behalf of
the General Public,

                    Plaintiffs,

v.

AMERICAN EXPRESS COMPANY, a New York
Corporation, AMERICAN EXPRESS TRAVEL
RELATED SERVICES COMPANY, INC., a New York
Corporation and AMERICAN EXPRESS CENTURION
BANK, a New York Corporation,

                    Defendants.

_____/

THE ORIGINAL FILED

ON  OCT 2 7 2003

IN THE OFFICE OF
CIRCUIT COURT DADE CO. FL

## MOTION FOR PROTECTIVE ORDER

Pursuant to Rule 1.280(c), Florida Rules of Civil Procedure, defendants American

Express Company, American Express Related Services Company, Inc. and American Express

Centurion Bank move for protection against discovery propounded by plaintiffs and state:

1.      The complaint in this action was filed on August 26, 2003.

2.      The complaint alleges that the defendants failed sufficiently to disclose "fees" that

were allegedly charged in connection with credit card purchases made in foreign countries.

3.      Count I of the complaint alleges violation of the Florida Deceptive and Unfair

Trade Practices Act. Count II alleges unjust enrichment.

4.     Defendants answered the complaint on October 15, 2003 and asserted, among other things, that plaintiffs are bound by arbitration provisions included in their American Express cardholder agreements (collectively, the "Arbitration Provision") and cannot proceed with this action in Court.

5.     Defendants are preparing and soon will be filing a motion to stay this action and to compel arbitration. Defendants have so notified counsel for plaintiffs.

6.     Notwithstanding that the arbitration issue has yet to be decided by the Court, on September 23, 2003, Plaintiffs served their first set of interrogatories and request for production of documents, the responses to which are due for service on October 28, 2003.

7.     In addition, on October 13, 2003, Plaintiffs served their first notice of taking the deposition of the corporate representative(s) of American Express Travel Related Services Company, Inc. The deposition is scheduled for November 10, 2003.

8.     These three discovery requests are premature because this Court has not yet determined whether to compel arbitration. In the event that the Court compels arbitration (which we believe would be the correct result here), then the discovery requests would be moot because all issues pertaining to discovery, including whether there is any right to take discovery, would need to be addressed by the arbitration panel. In addition, under all applicable laws, there is a danger that by responding to discovery, the party so responding may be deemed to have waived its right to compel arbitration. Thus, the defendants may be irreparably harmed if required to respond to discovery at this time.

2

9.     The Arbitration Provision (which is included in the copy of the Cardholder

Agreement attached to the deposition notice at issue) provides, in pertinent part:

> **Arbitration**: This Arbitration Provision sets forth the circumstances and procedures under which Claims (as defined below) may be arbitrated instead of litigated in court.
>
> As used in this Arbitration Provision, the term "Claim" means any claim, dispute or controversy between you and us arising from or relating to the Cardmember Agreement…or the relationship resulting from the Agreement…including the validity, enforceability or scope of this Arbitration Provision, the Agreement or any prior agreement.
>
> \* \* \* \* \*
>
> Any Claim shall be resolved upon the election by you or us, by arbitration pursuant to this Arbitration Provision and the code of procedures of the national arbitration organization to which the Claim is referred in effect at the time the Claim is filed.
>
> \* \* \* \* \*
>
> IF ARBITRATION IS CHOSEN BY ANY PARTY WITH RESPECT TO A CLAIM, NEITHER YOU NOR WE WILL HAVE THE RIGHT TO LITIGATE THAT CLAIM IN COURT OR HAVE A JURY TRIAL ON THAT CLAIM, OR **TO ENGAGE IN PRE-ARBITRATION DISCOVERY** EXCEPT AS PROVIDED FOR IN THE CODE OF PROCEDURES OF THE NAF, JAMS OR AAA, AS APPLICABLE.
>
> \* \* \* \* \*
>
> This Arbitration Provision is made pursuant to a transaction involving interstate commerce, and shall be governed by the Federal Arbitration Act, 9 U.S.C. Sections 1 – 16, as it may be amended.

(emphasis added).

3

10.     Thus, pursuant to the express terms of the Arbitration Provision, not only are the

Plaintiffs obligated to arbitrate their dispute in this action, but also they are expressly prohibited

from engaging in "PRE-ARBITRATION DISCOVERY." Plaintiffs' discovery requests are

therefore entirely inconsistent with the Arbitration Provision at issue.

11.     Arbitration is a favored means of dispute resolution and contractual provisions

requiring arbitration are routinely enforced under applicable law.

12.     The Arbitration Provision here is governed by the Federal Arbitration Act,

9 U.S.C. §§ 1-16 (the "FAA"), because the Arbitration Provision was made pursuant to a

transaction involving interstate commerce.  Id. at § 2.

13.     In addition, the Arbitration Provision itself provides that it shall be governed by

the FAA.

14.     It is well established that the FAA "creates a presumption in favor of

arbitrability." Paladino v. Avnet Computer Techs., Inc. 134 F.3d 1054, 1057 (11th Cir. 1998).

The FAA constitutes "a congressional declaration of a liberal federal policy favoring arbitration

agreements, notwithstanding any state substantive or procedural policies to the contrary." Moses

H. Cone Memorial Hosp. v. Mercury Constr. Corp., 460 U.S. 1, 24 (1983). "[T]he basic purpose

of the FAA is to overcome courts' refusals to enforce agreements to arbitrate." Allied –Bruce

Terminix Companies, Inc. v. Dobson, 513 U.S. 265, 270 (1994).  Indeed, a federal district court

faced with nearly identical claims based on foreign currency conversion practices in connection

with credit cards recently held that such claims, like plaintiffs' here, were subject to arbitration

4

pursuant to the arbitration agreement contained in the cardholders' credit card agreements. In Re Currency Conversion Fee Litig., 265 F. Supp. 2d 385, 416 (S.D.N.Y. 2003).

15.     Courts have also held, however, that a party may be deemed to have waived its right to arbitrate if the party "**substantially participates in litigation to a point inconsistent with an intent to arbitrate and this participation results in prejudice to the opposing party.**" Morewitz v. West of England Ship Owners Mut. Protection and Indem. Assoc., 62 F.3d 1356, 1366 (11th Cir. 1995). Prejudice has been found in situations where the party seeking arbitration allows the opposing party to undergo the types of litigation expenses that arbitration was designed to alleviate. Id.; see also Puchner v. Drexel Burnham Lambert, Inc., 498 So. 2d 550 (Fla. 3d DCA 1986) (holding that a brokerage house waived its right to compel arbitration due in part to substantial engagement in court proceedings and discovery).

16.     Here, if the defendants were required to respond to interrogatories, respond to production requests, or appear for deposition, then there is a danger that the defendants would be deemed to have "substantially participated" in litigation to an extent inconsistent with their intent to arbitrate. Additionally, if the defendants responded to discovery and raised appropriate objections, then plaintiffs would arguably be forced to incur litigation expenses that the Arbitration Provision was designed to prevent and therefore plaintiffs could argue that they were prejudiced by being forced to litigate discovery objections.

17.     In short, if the defendants were required to respond to discovery at this point in the proceeding, then their responses might be construed as a waiver of their right to compel arbitration.

5

18.     As a result of the foregoing, discovery should be postponed until the Court

determines whether this action is subject to arbitration.

WHEREFORE, the Defendants respectfully request that this Court enter a protective

order protecting the defendants from all discovery pending this Court's ruling on the defendant's

motion to compel arbitration and awarding such further relief as the Court deems just and proper.

Dated:  October 28, 2003                    Respectfully submitted,

                                            STROOCK & STROOCK & LAVAN LLP
                                            Attorneys for Defendants
                                            200 South Biscayne Boulevard
                                            3160 Wachovia Financial Center
                                            Miami, Florida 33131-5323
                                            Telephone:  (305) 358-9900
                                            Facsimile:  (305) 789-9302


                                            By: _____
                                                Richard B. Simring
                                                   Florida Bar No. 890571
                                                      rsimring@stroock.com
                                                Richard E. Landman
                                                   Florida Bar No. 149713
                                                      rlandman@stroock.com


6

CASE NO. 03-19365 CA 09

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that a true and correct copy of the foregoing was served by facsimile and U.S. mail this 28th day of October, 2003, on **Thomas A. Tucker Ronzetti, Esq.**, Kozyak Tropin & Throckmorton, P.A., Counsel for Plaintiffs, 200 South Biscayne Boulevard, Suite 2800, Miami, FL 33131; and **Bruce E. Gerstein, Esq.**, Garwin, Bronzaft, Gerstein & Fisher, LLP, Co-Counsel for Plaintiffs, 1501 Broadway, Room 1416, New York, NY 10036.

Richard E. Landman

SSL-MIA1 30110206v3

7

IN THE CIRCUIT COURT OF THE
ELEVENTH JUDICIAL CIRCUIT, IN AND
FOR MIAMI-DADE COUNTY, FLORIDA

EDWARD LIPUMA and RAFAEL A.
BERGOLLA, on Behalf of Themselves
and All Others Similarly Situated and
on Behalf of the General Public,

CASE NO: 03-19365 CA 09

CLASS REPRESENTATION

      Plaintiff,

v.

AMERICAN EXPRESS COMPANY, a New
York Corporation, AMERICAN EXPRESS
TRAVEL RELATED SERVICES, INC., a
New York Corporation and AMERICAN
EXPRESS CENTURION BANK, a New
York Corporation,

      Defendants.

_____/

## NOTICE OF HEARING

**PLEASE TAKE NOTICE** that Plaintiff has set down for hearing the following and all

parties are required to appear:

| | |
|---|---|
| **Matter:** | **Motion for Protective Order** |
| **Date:** | **Wednesday, November 5, 2003** |
| **Time:** | **8:30 a.m.** |
| **Place:** | **Honorable Marc Schumacher**<br>**Miami-Dade County Courthouse**<br>**73 West Flagler Street, Room 625**<br>**Miami, Florida 33130** |

AMERICAN WITH DISABILITIES ACT OF 1990

In accordance with the Americans With Disability Act of 1990, persons needing a special accommodation to participate in this proceeding should contact the Court ADA Coordinator/Ellis D. Pettigrew, no later than 7 days prior to the proceeding at (305) 375-2006 (voice) or (305) 375-2007 (TDD).

Respectfully submitted this _____ day of October 2003.

**KOZYAK TROPIN & THROCKMORTON, P.A.**
200 South Biscayne Boulevard, Suite 2800
Miami, Florida 33131
Telephone: (305) 372-1800/Facsimile: (305) 372-3508

By: _____
        Adam M. Moskowitz, FBN: 984280
        Thomas A. Tucker Ronzetti, FBN: 965723

## CERTIFICATE OF SERVICE

WE HEREBY CERTIFY that a true and correct copy of the above and foregoing was mailed

by regular U.S. Mail to: Stroock & Stroock & Lavan LLP, Richard E. Landman, 200 South Biscayne

Boulevard, 3160 Wachovia Financial Center, Miami, Florida 33131-2385 on this 29th day of October

2003.

3224.101/231508.1

2

IN THE CIRCUIT COURT OF THE 11TH
JUDICIAL CIRCUIT, IN AND FOR
MIAMI DADE COUNTY, FLORIDA

CIVIL DIVISION

CASE NO. 03-19365 CA 09

EDWARD LIPUMA and RAFAEL A.
BERGOLLA, on Behalf of Themselves and
All Others Similarly Situated and on Behalf of
the General Public,

              Plaintiffs,

v.

AMERICAN EXPRESS COMPANY, a New York
Corporation, AMERICAN EXPRESS TRAVEL
RELATED SERVICES COMPANY, INC., a New York
Corporation and AMERICAN EXPRESS CENTURION
BANK, a New York Corporation,

              Defendants.

_____/

## MOTION FOR PROTECTIVE ORDER

Pursuant to Rule 1.280(c), Florida Rules of Civil Procedure, defendants American

Express Company, American Express Related Services Company, Inc. and American Express

Centurion Bank move for protection against discovery propounded by plaintiffs and state:

1.      The complaint in this action was filed on August 26, 2003.

2.      The complaint alleges that the defendants failed sufficiently to disclose "fees" that

were allegedly charged in connection with credit card purchases made in foreign countries.

3.      Count I of the complaint alleges violation of the Florida Deceptive and Unfair

Trade Practices Act. Count II alleges unjust enrichment.

4.      Defendants answered the complaint on October 15, 2003 and asserted, among other things, that plaintiffs are bound by arbitration provisions included in their American Express cardholder agreements (collectively, the "Arbitration Provision") and cannot proceed with this action in Court.

5.      Defendants are preparing and soon will be filing a motion to stay this action and to compel arbitration. Defendants have so notified counsel for plaintiffs.

6.      Notwithstanding that the arbitration issue has yet to be decided by the Court, on September 23, 2003, Plaintiffs served their first set of interrogatories and request for production of documents, the responses to which are due for service on October 28, 2003.

7.      In addition, on October 13, 2003, Plaintiffs served their first notice of taking the deposition of the corporate representative(s) of American Express Travel Related Services Company, Inc. The deposition is scheduled for November 10, 2003.

8.      These three discovery requests are premature because this Court has not yet determined whether to compel arbitration. In the event that the Court compels arbitration (which we believe would be the correct result here), then the discovery requests would be moot because all issues pertaining to discovery, including whether there is any right to take discovery, would need to be addressed by the arbitration panel. In addition, under all applicable laws, there is a danger that by responding to discovery, the party so responding may be deemed to have waived its right to compel arbitration. Thus, the defendants may be irreparably harmed if required to respond to discovery at this time.

2

STROOCK & STROOCK & LAVAN LLP · MIAMI · NEW YORK · LOS ANGELES
WACHOVIA FINANCIAL CENTER  200 SOUTH BISCAYNE BLVD., SUITE 3160 MIAMI, FL 33131-5323
TEL 305 358 1900 FAX 305 789 9302 WWW.STROOCK.COM

9.      The Arbitration Provision (which is included in the copy of the Cardholder

Agreement attached to the deposition notice at issue) provides, in pertinent part:

> **Arbitration:** This Arbitration Provision sets forth the
> circumstances and procedures under which Claims (as defined
> below) may be arbitrated instead of litigated in court.
>
> As used in this Arbitration Provision, the term "Claim" means any
> claim, dispute or controversy between you and us arising from or
> relating to the Cardmember Agreement…or the relationship
> resulting from the Agreement…including the validity,
> enforceability or scope of this Arbitration Provision, the
> Agreement or any prior agreement.
>
> ＊ ＊ ＊ ＊ ＊
>
> Any Claim shall be resolved upon the election by you or us, by
> arbitration pursuant to this Arbitration Provision and the code of
> procedures of the national arbitration organization to which the
> Claim is referred in effect at the time the Claim is filed.
>
> ＊ ＊ ＊ ＊ ＊
>
> IF ARBITRATION IS CHOSEN BY ANY PARTY WITH
> RESPECT TO A CLAIM, NEITHER YOU NOR WE WILL
> HAVE THE RIGHT TO LITIGATE THAT CLAIM IN COURT
> OR HAVE A JURY TRIAL ON THAT CLAIM, OR **TO
> ENGAGE IN PRE-ARBITRATION DISCOVERY** EXCEPT
> AS PROVIDED FOR IN THE CODE OF PROCEDURES OF
> THE NAF, JAMS OR AAA, AS APPLICABLE.
>
> ＊ ＊ ＊ ＊ ＊
>
> This Arbitration Provision is made pursuant to a transaction
> involving interstate commerce, and shall be governed by the
> Federal Arbitration Act, 9 U.S.C. Sections 1 – 16, as it may be
> amended.

(emphasis added).

3

10. Thus, pursuant to the express terms of the Arbitration Provision, not only are the Plaintiffs obligated to arbitrate their dispute in this action, but also they are expressly prohibited from engaging in "PRE-ARBITRATION DISCOVERY." Plaintiffs' discovery requests are therefore entirely inconsistent with the Arbitration Provision at issue.

11. Arbitration is a favored means of dispute resolution and contractual provisions requiring arbitration are routinely enforced under applicable law.

12. The Arbitration Provision here is governed by the Federal Arbitration Act, 9 U.S.C. §§ 1-16 (the "FAA"), because the Arbitration Provision was made pursuant to a transaction involving interstate commerce. Id. at § 2.

13. In addition, the Arbitration Provision itself provides that it shall be governed by the FAA.

14. It is well established that the FAA "creates a presumption in favor of arbitrability." Paladino v. Avnet Computer Techs., Inc. 134 F.3d 1054, 1057 (11th Cir. 1998). The FAA constitutes "a congressional declaration of a liberal federal policy favoring arbitration agreements, notwithstanding any state substantive or procedural policies to the contrary." Moses H. Cone Memorial Hosp. v. Mercury Constr. Corp., 460 U.S. 1, 24 (1983). "[T]he basic purpose of the FAA is to overcome courts' refusals to enforce agreements to arbitrate." Allied –Bruce Terminix Companies, Inc. v. Dobson, 513 U.S. 265, 270 (1994). Indeed, a federal district court faced with nearly identical claims based on foreign currency conversion practices in connection with credit cards recently held that such claims, like plaintiffs' here, were subject to arbitration

4

CASE NO. 03-19365 CA 09

pursuant to the arbitration agreement contained in the cardholders' credit card agreements. In Re

Currency Conversion Fee Litig., 265 F. Supp. 2d 385, 416 (S.D.N.Y. 2003).

15.     Courts have also held, however, that a party may be deemed to have waived its

right to arbitrate if the party "**substantially participates in litigation to a point inconsistent**

**with an intent to arbitrate and this participation results in prejudice to the opposing**

**party.**" Morewitz v. West of England Ship Owners Mut. Protection and Indem. Assoc., 62 F.3d

1356, 1366 (11th Cir. 1995). Prejudice has been found in situations where the party seeking

arbitration allows the opposing party to undergo the types of litigation expenses that arbitration

was designed to alleviate. Id.; see also Puchner v. Drexel Burnham Lambert. Inc., 498 So. 2d

550 (Fla. 3d DCA 1986) (holding that a brokerage house waived its right to compel arbitration

due in part to substantial engagement in court proceedings and discovery).

16.     Here, if the defendants were required to respond to interrogatories, respond to

production requests, or appear for deposition, then there is a danger that the defendants would be

deemed to have "substantially participated" in litigation to an extent inconsistent with their intent

to arbitrate. Additionally, if the defendants responded to discovery and raised appropriate

objections, then plaintiffs would arguably be forced to incur litigation expenses that the

Arbitration Provision was designed to prevent and therefore plaintiffs could argue that they were

prejudiced by being forced to litigate discovery objections.

17.     In short, if the defendants were required to respond to discovery at this point in

the proceeding, then their responses might be construed as a waiver of their right to compel

arbitration.

5

CASE NO. 03-19365 CA 09

18.     As a result of the foregoing, discovery should be postponed until the Court

determines whether this action is subject to arbitration.

WHEREFORE, the Defendants respectfully request that this Court enter a protective

order protecting the defendants from all discovery pending this Court's ruling on the defendant's

motion to compel arbitration and awarding such further relief as the Court deems just and proper.

Dated:  October 28, 2003                          Respectfully submitted,

                                                  STROOCK & STROOCK & LAVAN LLP
                                                  Attorneys for Defendants
                                                  200 South Biscayne Boulevard
                                                  3160 Wachovia Financial Center
                                                  Miami, Florida 33131-5323
                                                  Telephone:  (305) 358-9900
                                                  Facsimile:  (305) 789-9302


                                                  By: _____
                                                      Richard B. Simring
                                                      Florida Bar No. 890571
                                                          rsimring@stroock.com
                                                      Richard E. Landman
                                                      Florida Bar No. 149713
                                                          rlandman@stroock.com

STROOCK & STROOCK & LAVAN LLP · MIAMI · NEW YORK · LOS ANGELES
WACHOVIA FINANCIAL CENTER, 200 SOUTH BISCAYNE BLVD., SUITE 3160 MIAMI, FL 33131-5323
TEL 305 358 9900 FAX 305 789 9302 WWW.STROOCK.COM

CASE NO. 03-19365 CA 09

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing was served by facsimile and U.S. mail this 28ᵗʰ day of October, 2003, on **Thomas A. Tucker Ronzetti, Esq.,** Kozyak Tropin & Throckmorton, P.A., Counsel for Plaintiffs, 200 South Biscayne Boulevard, Suite 2800, Miami, FL 33131; and **Bruce E. Gerstein, Esq.,** Garwin, Bronzaft, Gerstein & Fisher, LLP, Co-Counsel for Plaintiffs, 1501 Broadway, Room 1416, New York, NY 10036.

Richard E. Landman

SSL-MIA1 30110206v3

7

STROOCK & STROOCK & LAVAN LLP · MIAMI · NEW YORK · LOS ANGELES
WACHOVIA FINANCIAL CENTER, 200 SOUTH BISCAYNE BLVD., SUITE 3160 MIAMI, FL 33131-5323
TEL 305 358 9900 FAX 305 789 9302 WWW.STROOCK.COM

IN THE CIRCUIT COURT OF THE
ELEVENTH JUDICIAL CIRCUIT, IN AND
FOR MIAMI-DADE COUNTY, FLORIDA

EDWARD LIPUMA and RAFAEL A.
BERGOLLA, on Behalf of Themselves
and All Others Similarly Situated and
on Behalf of the General Public,

CASE NO: 03-19365 CA 09

CLASS REPRESENTATION

        Plaintiff,

v.

AMERICAN EXPRESS COMPANY, a New
York Corporation, AMERICAN EXPRESS
TRAVEL RELATED SERVICES, INC., a
New York Corporation and AMERICAN
EXPRESS CENTURION BANK, a New
York Corporation,

        Defendants.

_____/

## RE-NOTICE OF HEARING
### (Per Defendant's Counsel's Request)

**PLEASE TAKE NOTICE** that Plaintiff has set down for hearing the following and all

parties are required to appear:

| | |
|---|---|
| **Matter:** | **Motion for Protective Order** |
| **Date:** | **Monday, November 17, 2003** |
| **Time:** | **8:30 a.m.** |
| **Place:** | **Honorable Marc Schumacher**<br>**Miami-Dade County Courthouse**<br>**73 West Flagler Street, Room 625**<br>**Miami, Florida 33130** |

AMERICAN WITH DISABILITIES ACT OF 1990

In accordance with the Americans With Disability Act of 1990, persons needing a special accommodation to participate in this proceeding should contact the Court ADA Coordinator/Ellis D. Pettigrew, no later than 7 days prior to the proceeding at (305) 375-2006 (voice) or (305) 375-2007 (TDD)

Respectfully submitted this _5ᵗʰ_ day of November 2003.

**KOZYAK TROPIN & THROCKMORTON, P.A.**
200 South Biscayne Boulevard, Suite 2800
Miami, Florida 33131
Telephone: (305) 372-1800/Facsimile: (305) 372-3508

By: _____
     Adam M. Moskowitz, FBN: 984280
     Thomas A. Tucker Ronzetti, FBN: 965723

## CERTIFICATE OF SERVICE

WE HEREBY CERTIFY that a true and correct copy of the above and foregoing was mailed by regular U.S. Mail to: Stroock & Stroock & Lavan LLP, Richard E. Landman, 200 South Biscayne Boulevard, 3160 Wachovia Financial Center, Miami, Florida 33131-2385 on this _5ᵗʰ_ day of November 2003.

3224/101/231508 2

2

IN THE CIRCUIT COURT OF THE 11TH
JUDICIAL CIRCUIT, IN AND FOR
MIAMI DADE COUNTY, FLORIDA

CIVIL DIVISION

CASE NO. 03-19365 CA 09

EDWARD LIPUMA and RAFAEL A.
BERGOLLA, on Behalf of Themselves and
All Others Similarly Situated and on Behalf of
the General Public,

                   Plaintiffs,

v.

AMERICAN EXPRESS COMPANY, a New York
Corporation, AMERICAN EXPRESS TRAVEL
RELATED SERVICES COMPANY, INC., a New York
Corporation and AMERICAN EXPRESS CENTURION
BANK, a New York Corporation,

                   Defendants.
_____/

## MOTION FOR PROTECTIVE ORDER

Pursuant to Rule 1.280(c), Florida Rules of Civil Procedure, defendants American

Express Company, American Express Related Services Company, Inc. and American Express

Centurion Bank move for protection against discovery propounded by plaintiffs and state:

1.     The complaint in this action was filed on August 26, 2003.

2.     The complaint alleges that the defendants failed sufficiently to disclose "fees" that

were allegedly charged in connection with credit card purchases made in foreign countries.

3.     Count I of the complaint alleges violation of the Florida Deceptive and Unfair

Trade Practices Act. Count II alleges unjust enrichment.

4.      Defendants answered the complaint on October 15, 2003 and asserted, among other things, that plaintiffs are bound by arbitration provisions included in their American Express cardholder agreements (collectively, the "Arbitration Provision") and cannot proceed with this action in Court.

5.      Defendants are preparing and soon will be filing a motion to stay this action and to compel arbitration. Defendants have so notified counsel for plaintiffs.

6.      Notwithstanding that the arbitration issue has yet to be decided by the Court, on September 23, 2003, Plaintiffs served their first set of interrogatories and request for production of documents, the responses to which are due for service on October 28, 2003.

7.      In addition, on October 13, 2003, Plaintiffs served their first notice of taking the deposition of the corporate representative(s) of American Express Travel Related Services Company, Inc. The deposition is scheduled for November 10, 2003.

8.      These three discovery requests are premature because this Court has not yet determined whether to compel arbitration. In the event that the Court compels arbitration (which we believe would be the correct result here), then the discovery requests would be moot because all issues pertaining to discovery, including whether there is any right to take discovery, would need to be addressed by the arbitration panel. In addition, under all applicable laws, there is a danger that by responding to discovery, the party so responding may be deemed to have waived its right to compel arbitration. Thus, the defendants may be irreparably harmed if required to respond to discovery at this time.

2

CASE NO. 03-19365 CA 09

9.    The Arbitration Provision (which is included in the copy of the Cardholder

Agreement attached to the deposition notice at issue) provides, in pertinent part:

> Arbitration: This Arbitration Provision sets forth the circumstances and procedures under which Claims (as defined below) may be arbitrated instead of litigated in court.
>
> As used in this Arbitration Provision, the term "Claim" means any claim, dispute or controversy between you and us arising from or relating to the Cardmember Agreement...or the relationship resulting from the Agreement...including the validity, enforceability or scope of this Arbitration Provision, the Agreement or any prior agreement.
>
> \* \* \* \* \*
>
> Any Claim shall be resolved upon the election by you or us, by arbitration pursuant to this Arbitration Provision and the code of procedures of the national arbitration organization to which the Claim is referred in effect at the time the Claim is filed.
>
> \* \* \* \* \*
>
> IF ARBITRATION IS CHOSEN BY ANY PARTY WITH RESPECT TO A CLAIM, NEITHER YOU NOR WE WILL HAVE THE RIGHT TO LITIGATE THAT CLAIM IN COURT OR HAVE A JURY TRIAL ON THAT CLAIM, OR **TO ENGAGE IN PRE-ARBITRATION DISCOVERY** EXCEPT AS PROVIDED FOR IN THE CODE OF PROCEDURES OF THE NAF, JAMS OR AAA, AS APPLICABLE.
>
> \* \* \* \* \*
>
> This Arbitration Provision is made pursuant to a transaction involving interstate commerce, and shall be governed by the Federal Arbitration Act, 9 U.S.C. Sections 1 – 16, as it may be amended.

(emphasis added).

3

STROOCK & STROOCK & LAVAN LLP · MIAMI · NEW YORK · LOS ANGELES
WACHOVIA FINANCIAL CENTER, 200 SOUTH BISCAYNE BLVD., SUITE 3160 MIAMI, FL 33131-5323
TEL 305.358.1600 FAX 305.789.9302 WWW.STROOCK.COM

10.     Thus, pursuant to the express terms of the Arbitration Provision, not only are the

Plaintiffs obligated to arbitrate their dispute in this action, but also they are expressly prohibited

from engaging in "PRE-ARBITRATION DISCOVERY." Plaintiffs' discovery requests are

therefore entirely inconsistent with the Arbitration Provision at issue.

11.     Arbitration is a favored means of dispute resolution and contractual provisions

requiring arbitration are routinely enforced under applicable law.

12.     The Arbitration Provision here is governed by the Federal Arbitration Act,

9 U.S.C. §§ 1-16 (the "FAA"), because the Arbitration Provision was made pursuant to a

transaction involving interstate commerce. Id. at § 2.

13.     In addition, the Arbitration Provision itself provides that it shall be governed by

the FAA.

14.     It is well established that the FAA "creates a presumption in favor of

arbitrability." Paladino v. Avnet Computer Techs., Inc. 134 F.3d 1054, 1057 (11th Cir. 1998).

The FAA constitutes "a congressional declaration of a liberal federal policy favoring arbitration

agreements, notwithstanding any state substantive or procedural policies to the contrary." Moses

H. Cone Memorial Hosp. v. Mercury Constr. Corp., 460 U.S. 1, 24 (1983). "[T]he basic purpose

of the FAA is to overcome courts' refusals to enforce agreements to arbitrate." Allied –Bruce

Terminix Companies, Inc. v. Dobson, 513 U.S. 265, 270 (1994). Indeed, a federal district court

faced with nearly identical claims based on foreign currency conversion practices in connection

with credit cards recently held that such claims, like plaintiffs' here, were subject to arbitration

4

pursuant to the arbitration agreement contained in the cardholders' credit card agreements. In Re Currency Conversion Fee Litig., 265 F. Supp. 2d 385, 416 (S.D.N.Y. 2003).

15.     Courts have also held, however, that a party may be deemed to have waived its right to arbitrate if the party "**substantially participates in litigation to a point inconsistent with an intent to arbitrate and this participation results in prejudice to the opposing party.**" Morewitz v. West of England Ship Owners Mut. Protection and Indem. Assoc., 62 F.3d 1356, 1366 (11th Cir. 1995). Prejudice has been found in situations where the party seeking arbitration allows the opposing party to undergo the types of litigation expenses that arbitration was designed to alleviate. Id.; see also Puchner v. Drexel Burnham Lambert, Inc., 498 So. 2d 550 (Fla. 3d DCA 1986) (holding that a brokerage house waived its right to compel arbitration due in part to substantial engagement in court proceedings and discovery).

16.     Here, if the defendants were required to respond to interrogatories, respond to production requests, or appear for deposition, then there is a danger that the defendants would be deemed to have "substantially participated" in litigation to an extent inconsistent with their intent to arbitrate. Additionally, if the defendants responded to discovery and raised appropriate objections, then plaintiffs would arguably be forced to incur litigation expenses that the Arbitration Provision was designed to prevent and therefore plaintiffs could argue that they were prejudiced by being forced to litigate discovery objections.

17.     In short, if the defendants were required to respond to discovery at this point in the proceeding, then their responses might be construed as a waiver of their right to compel arbitration.

CASE NO. 03-19365 CA 09

18.    As a result of the foregoing, discovery should be postponed until the Court

determines whether this action is subject to arbitration.

WHEREFORE, the Defendants respectfully request that this Court enter a protective

order protecting the defendants from all discovery pending this Court's ruling on the defendant's

motion to compel arbitration and awarding such further relief as the Court deems just and proper.

Dated: October 28, 2003                              Respectfully submitted,

STROOCK & STROOCK & LAVAN LLP
Attorneys for Defendants
200 South Biscayne Boulevard
3160 Wachovia Financial Center
Miami, Florida 33131-5323
Telephone: (305) 358-9900
Facsimile: (305) 789-9302

By: _____
    Richard B. Simring
    Florida Bar No. 890571
    rsimring@stroock.com
Richard E. Landman
    Florida Bar No. 149713
    rlandman@stroock.com

6

CASE NO. 03-19365 CA 09

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing was served by facsimile and U.S. mail this _28th_ day of October, 2003, on **Thomas A. Tucker Ronzetti, Esq.,** Kozyak Tropin & Throckmorton, P.A., Counsel for Plaintiffs, 200 South Biscayne Boulevard, Suite 2800, Miami, FL 33131; and **Bruce E. Gerstein, Esq.,** Garwin, Bronzaft, Gerstein & Fisher, LLP, Co-Counsel for Plaintiffs, 1501 Broadway, Room 1416, New York, NY 10036.

Richard E. Landman

SSL-MIA1 30110206v3

7

IN THE CIRCUIT COURT OF THE
11th JUDICIAL CIRCUIT IN AND
FOR MIAMI-DADE COUNTY,
FLORIDA

EDWARD LIPUMA and RAFAEL A.
BERGOLLA, on Behalf of Themselves
and All Others Similarly Situated and
on Behalf of the General Public,

CASE NO: 03-19365 CA 09

CLASS REPRESENTATION

      Plaintiff,

v.

AMERICAN EXPRESS COMPANY, a New
York Corporation, AMERICAN EXPRESS
TRAVEL RELATED SERVICES, INC., a
New York Corporation and AMERICAN
EXPRESS CENTURION BANK, a New
York Corporation,

      Defendants.

_____/

## PLAINTIFFS' RESPONSE IN OPPOSITION TO
## DEFENDANTS' MOTION FOR PROTECTIVE ORDER

      Five days after initial discovery in this case was required to be produced, the Defendants

opted instead to move for a protective order. They claim the Plaintiffs cannot receive discovery

because at some point the Defendants will move to compel arbitration. But, as the Plaintiffs alleged

in detail in their complaint, the Defendants' arbitration agreement – one term of many in the small

text, take-it-or-leave-it agreement the Defendants use to prevent consumer protection lawsuits like

this – is plainly unconscionable. Florida case law *uniformly* holds that the Plaintiffs are entitled to

the discovery that was propounded on this issue. The Court should accordingly deny the Defendants'

motion for protective order.

3224.101/231341.1

## I.   Background

Plaintiffs, holders of American Express credit cards, are suing as class representatives to recover foreign currency transaction fees illegally charged by the Defendants on their cardholders for purchases of goods and services which are denominated in non-U.S. currency.  To prevent this claim from going forward, the Defendants are seeking to stay the case and compel arbitration.

The Plaintiffs contend that the arbitration provisions contained in the American Express cardmember agreements are unconscionable and unenforceable.  The agreements are adhesion contracts, forced on consumers of unequal bargaining power on a take-it-or-leave-it basis.  *See* Complaint at ¶ 27.   The arbitration and class action waiver provisions are substantively unconscionable because they unlawfully limit the legal remedies available to consumers and act to improperly insulate American Express from liability.  *See id.* at ¶ 28.

The Defendants' attempts to thwart discovery are unwarranted and obstructionist.  The discovery requests were served on the Defendants on September 23, 2003.  Accordingly, the Defendants were required to respond to those requests by no later than October 23, 2003.  Their only response came in the form of a Motion for Protective Order, five days after the responses were due. These tactics are evidence of the Defendants' attempts to deprive the Plaintiffs of discovery to which they are clearly entitled.

## II.   Discussion

The law in Florida makes clear that the Plaintiffs are entitled to conduct discovery on the issue of, *inter alia*, whether the parties entered into a valid arbitration agreement, prior to the Court resolving the Defendants' motion to compel arbitration.  Such discovery will enable Plaintiffs to demonstrate that the arbitration provisions contained in the American Express cardmember

LAW OFFICES KOZYAK TROPIN & THROCKMORTON, P. A.
2800 WACHOVIA FINANCIAL CENTER, 200 SOUTH BISCAYNE BOULEVARD, MIAMI, FLORIDA 33131 • TEL. (305) 372-1800

agreements are unconscionable and, therefore, unenforceable.

In ruling on a motion to compel arbitration, a court must consider: (1) whether the parties have entered into a valid arbitration agreement; (2) whether an arbitrable issue exists; and (3) whether the right to arbitration has been waived. *See Seifert v. U.S. Home Corp.*, 750 So. 2d 633, 636 (Fla. 1999). When a factual dispute exists as to any one of these elements, a court must hear and resolve that dispute in an evidentiary hearing. *See Travelers Ins. Co. v. Irby Constr. Co., Inc.*, 816 So. 2d 829, 830 (Fla. 3d DCA 2002).

In the present case, a dispute exists as to whether the parties have entered into a valid arbitration agreement. As the Plaintiffs have alleged in the Complaint, the Defendants' arbitration provisions contained in the cardmember agreements are unconscionable, defeat the very purpose of Florida's Deceptive and Unfair Practices Act, and are therefore not valid. To demonstrate unconscionability, the Plaintiffs must be permitted to conduct discovery with regard to the Defendants' practices and dealings with potential customers as they relate to the cardmember agreements. Uniformly, Florida case law so holds.

In *Chapman v. King Motor Co. of South Florida*, 833 So. 2d 820, 821 (Fla. 4th DCA 2002), the Fourth District, presented with a similar situation, reversed the trial court's order requiring the parties to arbitrate before they had the opportunity to conduct discovery and have an evidentiary hearing on the issue of the unconscionability of the arbitration clause. The court stated that "[a]ppellants' allegations of procedural unconscionability also raise issues of fact requiring an evidentiary hearing." *Id. See also Belisouth Mobility LLC v. Christopher*, 819 So. 2d 171, 173 (Fla. 4th DCA 2002) (holding that an evidentiary hearing was required prior to resolution of motion to compel arbitration ); *Travelers Ins.*, 816 So. 2d at 830 (remanding case "for an expedited evidentiary

LAW OFFICES KOZYAK TROPIN & THROCKMORTON, P.A.

2800 WACHOVIA FINANCIAL CENTER, 200 SOUTH BISCAYNE BOULEVARD, MIAMI, FLORIDA 33131 · TEL (305) 372-1800

hearing to make a determination as to the nature and extent of the right to compel arbitration . . .").

This is precisely the type of evidence that Plaintiffs are seeking in discovery. This discovery will reveal that potential cardmembers have no opportunity to bargain over the arbitration provisions, and are forced to accept the terms of the agreements on a take-it-or-leave-it basis. These facts, and others which will be revealed through discovery, will establish that the arbitration provisions are unconscionable.

The Defendants do not offer a single authority to suggest that Plaintiffs are not entitled to such discovery, because none exists. Instead, Defendants state that the arbitration provision is governed by the FAA which favors arbitration of claims and that the arbitration provision precludes plaintiff from conducting pre-arbitration discovery. However, Defendants argument puts the cart before the horse by presuming a valid, controlling arbitration agreement. The issue of validity of an arbitration clause is an issue of state contract law. *See Powertel, Inc. v. Bexley*, 743 So.2d 570, 574 (Fla. 1st DCA 1999). Section 2 of the FAA states that an arbitration clause can be invalidated on such grounds as exist "at law or in equity for the revocation of a contract." Thus, generally applicable contract defenses, "such as fraud, duress or unconscionability, may be applied to invalidate arbitration agreements without contravening [the Federal Arbitration Act]." *Id.* As noted above, Plaintiffs seek discovery in order to establish the unconscionability of the arbitration provision and Florida Courts require that this determination be based on an evidentiary record. Defendants citation to the FAA and arbitration provision are therefore irrelevant.

The Defendants also contend that, should they comply with their discovery obligations, they risk waiving their ability to move to compel arbitration. *See* Motion for Protective Order at ¶ 15. Defendants' argument misses the point. The Plaintiffs have not argued and are not arguing waiver.

LAW OFFICES KOZYAK TROPIN & THROCKMORTON, P A
2800 WACHOVIA FINANCIAL CENTER, 200 SOUTH BISCAYNE BOULEVARD, MIAMI, FLORIDA 33 31 · TEL (305) 372-1800

Instead, the Plaintiffs have pled that the arbitration provision is unconscionable, contrary to public policy, and so unenforceable, and simply ask for the discovery to which they are entitled, in order to prove their position.

### III.   Conclusion

The Defendants' obstructionist efforts to avoid discovery on the issue of arbitrability are not supported by the law. Binding precedent requires discovery and an evidentiary hearing on any factually disputed matters relating arbitrability. In this case, a factual dispute exists as to whether a valid arbitration agreement exists. Accordingly, the Plaintiffs are entitled to conduct discovery on the issue of arbitrability prior to the Court ruling on the propriety of arbitration. Plaintiffs respectfully request that this Court deny the Defendants' Motion for Protective Order, require the Defendants to answer the Plaintiffs' discovery requests within 20 days and appear for their properly noticed deposition, and grant such other relief as the Court deems just.

Respectfully submitted this $\underline{3l}$ day of October, 2003.

KOZYAK TROPIN & THROCKMORTON, P.A.
200 South Biscayne Boulevard, Suite 2800
Miami, Florida 33131
Telephone: (305) 372-1800/Facsimile: (305) 372-3508

By: _____
    Adam M. Moskowitz, FBN: 984280
    Thomas A. Tucker Ronzetti, FBN: 965723
    John Gravante, III, FBN: 617113

GARWIN, BRONZAFT, GERSTEIN & FISHER, LLP
Bruce E. Gerstein, Esq.
Kevin Landau, Esq.
1501 Broadway, Room 1416
New York, New York 10036

## CERTIFICATE OF SERVICE

WE HEREBY CERTIFY that a true and correct copy of the above and foregoing was mailed by regular U.S. Mail to: Richard Simring, Esq., Stroock & Stroock & Lavan LLP, 200 South Biscayne Boulevard, 3160 Wachovia Financial Center, Miami, Florida 33131-2385 on this _3/_ day of September, 2003.

By: _____

3224/101/231341 1

6

833 So.2d 820
27 Fla. L. Weekly D2594
(Cite as: 833 So.2d 820)

Page 1

**H**

District Court of Appeal of Florida,
Fourth District.

John CHAPMAN and Terry G. VILLAIRE,
Appellants,
v.
KING MOTOR COMPANY OF SOUTH
FLORIDA, a Florida corporation, Appellee.

No. 4D01-4993.

Dec. 4, 2002.
Rehearing Denied Jan. 16, 2003.

Automobile purchasers filed complaint against automobile dealership for violations of Motor Vehicle Retail Sales Finance Act, Deceptive and Unfair Trade Practices Act, and for fraud and deceit. The Seventeenth Judicial Circuit Court, Broward County, Leroy H. Moe, J., entered order requiring parties to arbitrate without allowing for evidentiary hearing on issue of unconscionability of arbitration agreement. Purchasers appealed. The District Court of Appeal, Warner, J., held that purchasers were entitled to evidentiary hearing on unconscionability of arbitration agreement.

Reversed and remanded.

West Headnotes

[1] Arbitration ☞23.11
33k23.11 Most Cited Cases

Automobile purchasers were entitled to evidentiary hearing to determine whether arbitration agreement contained in documents signed during purchase was unconscionable, insofar as it required purchasers to waive certain legal remedies including consumer rights under Deceptive and Unfair Trade Practices Act.

[2] Arbitration ☞6.2
33k6.2 Most Cited Cases

To support a finding of unconscionability sufficient to invalidate an arbitration clause, the court must find that the contract is both procedurally and substantively unconscionable.

*821 Sharon C. Degnan and Diane H. Tutt of Diane H. Tutt, P.A., Plantation, for appellants.

Ricardo A. Reyes of Tobin & Reyes, P.A., Boca Raton and Nancy W. Gregoire of Bunnell, Woulfe, Kirschbaum, Keller, McIntyre & Gregoire, P.A., Fort Lauderdale, for appellee.

WARNER, J.

In this appeal, appellants/plaintiffs challenge the trial court's order requiring the parties to arbitrate their case before they had the opportunity to conduct discovery and have an evidentiary hearing on the issue of the unconscionability of the arbitration clause. Because we conclude that an evidentiary hearing is required, we reverse.

Appellants filed a complaint for violations of the Motor Vehicle Retail Sales Finance Act, the Florida Deceptive and Unfair Trade Practices Act, and for fraud and deceit in connection with the purchase of an automobile from defendant. They further alleged that the arbitration agreement contained in the documents they signed was unconscionable. Without an evidentiary hearing, the trial court ordered the case to arbitration.

[1][2] A trial court's decision on the validity of an arbitration agreement is a matter of contract interpretation subject to de novo review. See Ocwen Fed. Bank FSB v. LVWD, Ltd., 766 So.2d 248, 249 (Fla. 4th DCA 2000). To support a finding of unconscionability sufficient to invalidate an arbitration clause, the court must find that the contract is both procedurally and substantively unconscionable. See Powertel, Inc. v. Bexley, 743 So.2d 570, 574 (Fla. 1st DCA 1999). On its face, the terms of the arbitration provision in this case reveal similar concerns as to its substantive unconscionability as were found in Powertel where it required appellants to waive certain legal remedies, including their consumer rights under the Deceptive and Unfair Trade Practices Act. See id. at 576. See also Bellsouth Mobility LLC v. Christopher, 819 So.2d 171, 173 (Fla. 4th DCA 2002). Appellants' allegations of procedural unconscionability also raise issues of fact requiring an evidentiary hearing.

Copr. © West 2003 No Claim to Orig. U.S. Govt. Works

833 So.2d 820                                                                        Page 2
27 Fla. L. Weekly D2594
(Cite as: 833 So.2d 820)

We therefore reverse and remand for the court to
conduct an evidentiary hearing *822 on the validity
of the arbitration clause.

STEVENSON and TAYLOR, JJ., concur.

833 So.2d 820, 27 Fla. L. Weekly D2594

END OF DOCUMENT

Copr. © West 2003 No Claim to Orig. U.S. Govt. Works

IN THE CIRCUIT COURT OF THE 11TH
JUDICIAL CIRCUIT, IN AND FOR
MIAMI-DADE COUNTY, FLORIDA

CIVIL DIVISION

CASE NO. 03-19365 CA 09

EDWARD LIPUMA, et al.,

         Plaintiffs,

v.

AMERICAN EXPRESS COMPANY, et al.,

         Defendants.

_____/



## AGREED ORDER

**THIS CAUSE CAME** before the Court on the Motion For Protection filed by the

defendants. The Court having been advised that the parties agree to the entry of this Order and

being otherwise duly advised in the premises hereby **ORDERS AND ADJUDGES:**

    1.    The motion for protection is granted in part and denied in part as set forth below.

    2.    Defendants may contend that plaintiffs are required to arbitrate the claims

asserted in this action on an individual basis pursuant to cardmember agreements.

    3.    The parties have agreed to engage in limited discovery regarding whether the

arbitration provision at issue is a valid agreement to arbitrate.

    4.    The court orders that engaging in such limited discovery does not constitute a

waiver of rights by the defendants in respect of their anticipated motion to compel arbitration and

plaintiffs shall not oppose any motion to compel arbitration on the ground that engaging in

discovery constituted a waiver of such rights.

CASE NO. 03-19365 CA 09

5.      Plaintiffs propounded document requests and interrogatories on September 23, 2003 and requests for admission on October 30, 2003.  On or before December 8, 2003, Defendants shall serve responses and/or objections to those discovery requests.

6.      On or before December 15, 2003, Defendants shall make available, in accordance with Rule 1.350, Florida Rules of Civil Procedure, the documents responsive to those production requests to which it does not object.

**DONE AND ORDERED** in Chambers at Miami, Miami-Dade County, Florida, this _____ day of November, 2003.

**Conformed Copy**

NOV 17 2003

**Marc Schumacher**
**Circuit Court Judge**

_____
Marc Schumacher
Circuit Court Judge

Copies furnished to all counsel of record

SSL-MIA1-30110746v4

2

714 152 099

IN THE CIRCUIT COURT OF THE
ELEVENTH JUDICIAL CIRCUIT, IN
AND FOR MIAMI-DADE COUNTY,
FLORIDA

EDWARD LIPUMA and RAFAEL A.
BERGOLLA, on Behalf of Themselves
and All Others Similarly Situated and
on Behalf of the General Public,

CASE NO: 03-19365 CA 09

CLASS REPRESENTATION

       Plaintiff,

v.

AMERICAN EXPRESS COMPANY, a New
York Corporation, AMERICAN EXPRESS
TRAVEL RELATED SERVICES COMPANY,
INC., a New York Corporation and AMERICAN
EXPRESS CENTURION BANK, a New
York Corporation,

       Defendants

_____/

## PLAINTIFFS' FIRST REQUEST FOR
## ADMISSIONS REGARDING ARBITRABILITY ISSUES

Plaintiffs, by and through undersigned counsel and pursuant to Rule 1.370(a) of the Florida

Rules of Civil Procedure, propound the following requests for admission to be admitted or denied

within 30 days.

### I. DEFINITIONS AND INSTRUCTIONS

1.    "Agreement" means "The Fidelity American Express® Cardmember Agreement

American Express Cardmembership," a copy of which is attached.

2.    "Arbitration Provision" means the provision entitled "Arbitration" in the

Agreement.

3.      "Cardmember" has the same meaning as it has in the Agreement, but relates specifically, to the extent that is possible, to persons whose billing address is in the State of Florida.

4.      "Claim" or "Claims" has the same meaning as it has in the Agreement.

5.      "Class Action Provisions" means those provisions in the Agreement referring to class claims, including but not limited to the provisions that state:

> (1)      "YOU WILL NOT HAVE THE RIGHT TO PARTICIPATE IN A REPRESENTATION CAPACITY OR AS A MEMBER OF ANY CLASS OF CLAIMANTS PERTAINING TO ANY CLAIM SUBJECT TO ARBITRATION."

> (2)      "There shall be no right or authority for any Claims to be arbitrated on a class action basis or on bases involving Claims brought in a purported representative capacity on behalf of the general public, other Cardmembers or other persons similarly situated".

6.      "Documents" means any document or documents in your custody, possession, or control, including, but not limited to, any printed, written, records, taped, electronic, graphic, photographic, or other tangible matter from whatever source, however produced or reproduced, whether in draft or otherwise, whether sent or receiver or neither, including the original, all amendments and addenda and any nonidentical copy (whether different from the original because of notes made on or attached to such copy or otherwise) of any and all writings, correspondence, letters, telegrams, telex communications, cables, notes, notations, releases, agreements, contracts, books, pamphlets, studies, minutes of meetings, recordings, or other memorials of any type of personal or telephone conversations, meetings or conferences (including, but not limited to, telephone bills and long distance charge slips), reports, analyses, evaluations, estimates, projections, forecasts, receipts, statements, accounts, books of account, diaries, calendars, desk pads, appointment books, stenographer's notebooks, transcripts, ledgers, registers, work-sheets, journals, statistical

records, cost sheets, summaries, lists, tabulations, digests, cancelled or uncancelled checks or drafts, vouchers, charge slips, invoices, purchase orders, hotel charges, accountant's reports, financial statements, newspapers, periodical or magazine materials, and any material underlying, supporting or used in the preparation of any documents.

7.    "American Express" means the American Express Company and, where applicable, any predecessors and/or successors in interest, present and former parents, subsidiaries, divisions and affiliates, and present and former directors, employers, employees, attorneys, agents, other representatives and all other persons acting under their control or on their behalf.

8.    "General Purpose Cards" include credit cards and charge cards.

9.    "Credit Cards" means general purpose cards which give borrowers a revolving line of credit and let them borrow against it, carrying a balance with an agreed-upon interest rate.

10.    "Charge Cards" means general purpose cards which require a full payment of the charge by the due date.

11.    A "cardholder" is a person or business which has been issued a general purpose card.

12.    A "Florida cardholder" is a cardholder whose billing address is in the State of Florida.

13.    A "Potential Florida Cardholder" is a person who has applied for or is seeking an American Express General Purpose Card, and who has a Florida billing address.

14.    A "foreign currency transaction" is a transaction by a person, as defined herein, using a general purpose card to purchase goods and/or services in a foreign currency.

15.    A "foreign currency surcharge" is any fee levied by any Defendants to purchase goods and/or services in currencies of foreign countries ("foreign currency")

16.    "Foreign Currency Provision" means the provision entitled "Transactions Made in Foreign Currencies" in the Agreement.

17.    "You" and "your" mean the defendant responding to these Requests, and, where applicable, any predecessors and/or successors in interest, present and former parents, subsidiaries, divisions and affiliates, and present and former directors, employers, employees, attorneys, agents, other representatives and all other persons acting under their control or on their behalf.

18.    "Person" means natural persons, proprietorships, public or private corporations, partnerships, trusts, joint ventures, groups, associations, organizations or other legal entities, including representatives of any such person or persons.

19.    "Communication" means the transmission, sending and/or receipt of information of any kind by and/or through any means including, but not limited to speech, writings, language (computer, foreign or otherwise), computer electronics of any kind (including, but not limited to "e-mail"), magnetic tape, videotape, photographs, graphs, symbols, signs, magnetic and/or optical disks, "floppy disks," compact discs, CD-ROM discs, sound, radio and/or video signals, telecommunication, telephone, teletype, facsimile, telegram, microfilm, microfiche, photographic film of all type and/or other media of any kind. The term "communication" also includes, without limitation, all "documents" (as defined herein) and all inquiries, discussions, conversations, negotiations, agreements, understandings, meetings, notices, requests, responses, demands, complaints, and/or press, publicity or trade releases.

20.    "Meeting," "meet," or "met" means any assembly, convocation, encounter, or contemporaneous presence of two or more persons for any purpose, whether planned or not planned, arranged or scheduled in advance during which a communication of any kind occurred and shall

include, but not limited to, formal gatherings, conversations, video conferences, and telephone calls.

21.    "Marketing" or "market" means all activities involved in the distribution of a product including, without limitation, advertising, locating and contacting prospective customers, attempting to sell, making sales presentations, selling, preparing and submitting bids, shipping products, servicing customers and the supervision and management of the same.

22.    Words used in the plural include the singular, and words used in the singular include the plural.

23.    The words "and" and "or" shall be used interchangeably and interpreted in the most inclusive manner possible.

24.    The requests for admissions encompass all terms of Rule 1.370 of the Florida Rules of Civil Procedure, and the Defendants are reminded that, "when good faith requires that a party qualify an answer or deny only part of the matter of which an admission is requested, the party shall specify so much of it as is true and qualify or deny the remainder." Fla. R. Civ. P. 1.370(a).

## II.  RELEVANT TIME PERIOD

Unless otherwise indicated, these requests relate to the period between January 1, 1998 and the present (the "relevant time period"). Your responses should reflect information for that entire period.

## III.  REQUESTS FOR ADMISSIONS

1      American Express has not allowed any Florida Cardholders to modify the terms of the Agreement

2.     American Express has not allowed any Florida Cardholders to modify the Arbitration Provision of the Agreement.

3.      American Express has not allowed any Florida Cardholders to modify the Class Action Provisions of the Agreement.

4.      American Express has not allowed any Florida Cardholders to modify the Foreign Currency Provision.

5.      American Express has not allowed any Potential Florida Cardholders to modify the terms of the Agreement.

6.      American Express has not allowed any Potential Florida Cardholders to modify the Arbitration Provision of the Agreement.

7.      American Express has not allowed any Potential Florida Cardholders to modify the Class Action Provisions of the Agreement.

8.      American Express has not allowed any Potential Florida Cardholders to modify the Foreign Currency Provision of the Agreement.

9.      American Express has not allowed any Florida Cardholders to negotiate the terms of the Agreement

10.     American Express has not allowed any Florida Cardholders to negotiate the Arbitration Provision of the Agreement.

11.     American Express has not allowed any Florida Cardholders to negotiate the Class Action Provisions of the Agreement.

12.     American Express has not allowed any Florida Cardholders to negotiate the Foreign Currency Provision of the Agreement.

13.     American Express has not allowed any Potential Florida Cardholders to negotiate the terms of the Agreement

14.     American Express has not allowed any Potential Florida Cardholders to negotiate the Arbitration Provision of the Agreement

15.     American Express has not allowed any Potential Florida Cardholders to negotiate the Class Action Provisions of the Agreement.

16.     American Express has not allowed any Potential Florida Cardholders to negotiate the Foreign Currency Provision of the Agreement.

17.     American Express has not issued a Credit Card to a Florida Cardholder who refused to agree to any provision in the Agreement.

18.     American Express has not issued a Credit Card to a Florida Cardholder who refused to agree to the Arbitration Provision in the Agreement.

19.     American Express has not issued a Credit Card to a Florida Cardholder who refused to agree to the Class Action Provisions of the Agreement.

20      American Express has not issued a Credit Card to a Florida Cardholder who refused to agree to the Foreign Currency Provision of the Agreement.

21.     American Express has not issued a Charge Card to a Florida Cardholder who refused to agree to any provision in the Agreement.

22.     American Express has not issued a Charge Card to a Florida Cardholder who refused to agree to the Arbitration Provision in the Agreement.

23.     American Express has not issued a Charge Card to a Florida Cardholder who refused to agree to the Class Action Provisions of the Agreement.

24.     American Express has not issued a Charge Card to a Florida Cardholder who refused to agree to the Foreign Currency Provision of the Agreement.

25.    All  Credit Cards issued  by American Express in Florida contained the Arbitration Provision in the Agreement.

26.    All Credit Cards issued by American Express in Florida contained the Class Action Provisions in the Agreement.

27.    All Credit Cards issued by American Express in Florida contained the Foreign Currency Provision in the Agreement.

28.    All Charge Cards issued by American Express in Florida contained the Arbitration Provision in the Agreement.

29.    All Charge Cards issued by American Express in Florida contained the Class Action Provisions in the Agreement.

30.    All  Charge Cards  issued by American  Express  in Florida  contained the Foreign Currency Provision in the Agreement.

Respectfully submitted this __30ᵗʰ__ day of October, 2003.

**KOZYAK TROPIN & THROCKMORTON, P.A.**
200 South Biscayne Boulevard, Suite 2800
Miami, Florida 33131
Telephone: (305) 372-1800/Facsimile:  (305) 372-3508

By: _____
Adam M. Moskowitz, FBN: 984280
Thomas A. Tucker Ronzetti, FBN: 965723
John Gravante, III, FBN: 617113

**GARWIN, BRONZAFT, GERSTEIN & FISHER, LLP**
Bruce E. Gerstein, Esq.
Kevin Landau, Esq.
1501 Broadway, Room 1416
New York, New York 10036

## CERTIFICATE OF SERVICE

WE HEREBY CERTIFY that a true and correct copy of the above and foregoing was mailed by regular U.S. Mail to: Richard Simring, Esq., Stroock & Stroock & Lavan LLP, 200 South Biscayne Boulevard, 3160 Wachovia Financial Center, Miami, Florida 33131-2385 on this 30th day of October, 2003.

By: _____

3224/101/230848.2

IN THE CIRCUIT COURT OF THE 11TH
JUDICIAL CIRCUIT, IN AND FOR
MIAMI DADE COUNTY, FLORIDA

CIVIL DIVISION

CASE NO. 03-19365 CA 09

EDWARD LIPUMA and RAFAEL A.
BERGOLLA, on Behalf of Themselves and
All Others Similarly Situated and on Behalf of
the General Public,

                 Plaintiffs,

v.

AMERICAN EXPRESS COMPANY, a New York
Corporation, AMERICAN EXPRESS TRAVEL
RELATED SERVICES COMPANY, INC., a New York
Corporation and AMERICAN EXPRESS CENTURION
BANK, a New York Corporation,

                 Defendants.



## ANSWER

Defendants American Express Company ("AEC"), American Express Travel Related

Services Company, Inc. ("AETRS"), and American Express Centurion Bank ("AECB")

(collectively, "Defendants") hereby answer the Complaint dated August 19, 2003 (the

"Complaint") filed herein by plaintiffs Edward Lipuma ("Lipuma") and Rafael A. Bergolla

("Bergolla") (collectively, "Plaintiffs"), on behalf of themselves and purportedly on behalf of all

others similarly situated and the general public, as follows:[1]

    1.    Answering Paragraph 1 of the Complaint, Defendants admit that Plaintiffs purport

to file this action on behalf of themselves and purportedly on behalf of all other similarly situated

persons, although Defendants deny that class action treatment is appropriate in this action.

---

[1]    The defendants will be moving to compel arbitration, and by filing this answer the defendants do
not waive their rights to so move.

2.     Answering Paragraph 2 of the Complaint, Defendants allege that, in connection with charges incurred by American Express cardmembers with American Express cards in foreign currencies, AETRS and AECB convert such charges into U.S. dollars on the date it is processed by AETRS, AECB or their agents at rates set by AETRS and/or AECB based on an interbank, tourist or (where required by law) official rate, increased by 1% to 2%, which rate may vary from rates in effect on the date of the transactions. Defendants further allege that the currency conversion described above is expressly disclosed in the Cardmember Agreements that are forwarded to American Express cardmembers with their American Express cards and that set forth the terms and conditions governing the cardmembers' use of their cards. Defendants further allege that the currency conversion described above is neither disclosed in, nor required to be disclosed in, periodic billing statements, applications or solicitations. Except as expressly alleged herein, Defendants deny the allegations contained in Paragraph 2 of the Complaint.

3.     Answering Paragraph 3 of the Complaint, Defendants deny the allegations contained therein.

4.     Answering Paragraph 4 of the Complaint, Defendants admit that Plaintiffs purport to establish venue in Miami-Dade County (the "County"). Defendants deny that AEC is "doing business" in the State of Florida and that any cause of action accrued in the County. Defendants admit that AETRS and AECB issue credit cards to residents of the County and acquire transactions from merchants in the County. Except as expressly admitted herein, Defendants deny the allegations contained in Paragraph 4 of the Complaint.

STROOCK & STROOCK & LAVAN LLP • MIAMI • NEW YORK • LOS ANGELES
WACHOVIA FINANCIAL CENTER, 200 SOUTH BISCAYNE BLVD., SUITE 3100 MIAMI, FL 33131-5323
TEL 305.358.9900 FAX 305.789.9302 WWW.STROOCK.COM

5.      Answering Paragraph 5 of the Complaint, Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations therein and on that basis deny such allegations.

6.      Answering Paragraph 6 of the Complaint, Defendants admit that AEC is a New York Corporation.  Except as expressly admitted herein, Defendants deny the allegations contained in Paragraph 6 of the Complaint.

7.      Answering Paragraph 7 of the Complaint, Defendants admit the allegations contained therein.

8.      Answering Paragraph 8 of the Complaint, Defendants allege that AECB, a wholly owned subsidiary of AEC, is a Utah industrial loan corporation doing business in the State of Florida and the County of Miami-Dade.  Except as expressly alleged herein, Defendants deny the allegations contained in Paragraph 8 of the Complaint.

9.      Answering Paragraph 9 of the Complaint, Defendants deny the allegations contained therein.

10.     Answering Paragraph 10 of the Complaint, Defendants allege that AETRS and AECB issue credit and charge cards to the general public, including citizens of the State of Florida, and that AETRS directly or indirectly contracts with merchants worldwide to accept American Express cards.  Except as expressly alleged herein, Defendants deny the allegations contained in Paragraph 10 of the Complaint.

11.     Answering Paragraph 11 of the Complaint, Defendants allege that AETRS and AECB issue various credit and charge card products with varying payment options.  Except as

3

expressly alleged herein, Defendants deny the allegations contained in Paragraph 11 of the Complaint.

12.    Answering Paragraphs 12, 13 and 14 of the Complaint, Defendants allege that different written materials are utilized to promote various, valuable services provided to cardmembers of AETRS and AECB, which materials speak for themselves.  Except as expressly alleged herein, Defendants deny the allegations contained in Paragraphs 12, 13 and 14 of the Complaint.

13.    Answering Paragraph 15 of the Complaint, Defendants deny the allegations contained therein.

14.    Answering Paragraph 16 of the Complaint, Defendants allege that American Express cardmembers making charges in foreign currencies are not required to furnish any foreign currency to the merchant, but rather, can remit payment to AETRS or AECB in U.S. dollars subject to the currency conversion expressly disclosed in American Express cardmember agreements.  Except as expressly alleged herein, Defendants deny the allegations contained in Paragraph 16 of the Complaint.

15.    Answering Paragraph 17 of the Complaint, Defendants allege that AETRS, AECB or their agents convert American Express card charges made in foreign currencies to U.S. dollars based on the currency conversion expressly disclosed in American Express cardmember agreements, which currency conversion rate is favorable to American Express cardmembers. Except as expressly alleged herein, Defendants deny the allegations contained in Paragraph 17 of the Complaint.

4

16.     Answering Paragraph 18 of the Complaint, Defendants deny the allegations contained therein.

17.     Answering Paragraph 19 of the Complaint, Defendants allege that various advertisements and applications are utilized to solicit potential cardmembers for AETRS and AECB and that such advertisements and applications contain various required disclosures, which do not include the currency conversion that is expressly disclosed in American Express cardmember agreements.  Except as expressly alleged herein, Defendants deny the allegations contained in Paragraph 19 of the Complaint.

18.     Answering Paragraph 20 of the Complaint, Defendants allege that the federal Truth in Lending Act speaks for itself.  Defendants deny the remaining allegations contained in Paragraph 20 of the Complaint.

19.     Answering Paragraph 21 of the Complaint, Defendants allege that the "currency converter" set forth on www.americanexpress.com speaks for itself.  Except as expressly alleged herein, Defendants deny the allegations contained in Paragraph 21 of the Complaint.

20.     Answering Paragraph 22 of the Complaint, Defendants allege that AETRS and AECB expressly disclose the currency conversion of foreign charges in American Express cardmember agreements.  Except as expressly alleged herein, Defendants deny the allegations contained in Paragraph 22 of the Complaint.

21.     Answering Paragraph 23 of the Complaint, Defendants allege that cardmembers receive their cardmember agreements concurrent with, and prior to utilizing, their American Express cards.  Defendants further allege that potential cardmembers of American Express have other options in the marketplace to obtain a credit or charge card and have the option of rejecting

5

American Express cards.  Except as expressly alleged herein, Defendants deny the allegations

contained in Paragraph 23 of the Complaint.

22.     Answering Paragraphs 24, 25 and 26 of the Complaint, Defendants deny the

allegations contained therein.

23.     Answering Paragraph 27 of the Complaint, Defendants allege that American

Express cardmember agreements contain valid and enforceable arbitration agreements governed

by the Federal Arbitration Act.  Except as expressly alleged herein, Defendants deny the

allegations contained in Paragraph 27 of the Complaint, including without limitation the

allegations that Defendants utilize "legal remedies limitations" in American Express cardmember

agreements.

24.     Answering Paragraphs 28 and 29 of the Complaint, Defendants deny the

allegations contained therein.

25.     Answering Paragraphs 30 and 31 of the Complaint, Defendants lack knowledge or

information sufficient to form a belief as to the truth of the allegations therein because the copy

of the Complaint served upon Defendants is missing page 10 and on that basis denies such

allegations.  If appropriate, Defendants will serve an amended Answer upon being served with a

copy of page 10 of the Complaint.

26.     Answering Paragraphs 32, 33, 34, 35, 36, 37 and 38 of the Complaint, Defendants

deny the allegations contained therein.

27.     Answering Paragraph 39 of the Complaint, Defendants incorporate by reference

herein their responses to Paragraphs 1 through 38 to Plaintiffs' Complaint as contained in this

Answer.

6

28.     Answering Paragraph 40 of the Complaint, Defendants allege that the provisions of the Florida Deceptive and Unfair Trade Practices Act ("FDUTPA") speak for themselves and respectfully submit all questions of law to the Court.

29.     Answering Paragraphs 41, 42, 43, 44 and 45 of the Complaint, Defendants deny the allegations contained therein.

30.     Answering Paragraph 46 of the Complaint, Defendants incorporate by reference herein their responses to Paragraphs 1 through 45 to Plaintiffs' Complaint as contained in this Answer.

31.     Answering Paragraphs 47 and 48 of the Complaint, Defendants allege that Plaintiffs and other American Express cardmembers have made payments to AETRS and AECB on their American Express card accounts, including with respect to charges made in foreign currencies.  Except as expressly alleged herein, Defendants deny the allegations contained in Paragraphs 47 and 48 of the Complaint.

32.     Answering Paragraphs 49 and 50 of the Complaint, Defendants deny the allegations contained therein.

**FIRST AFFIRMATIVE DEFENSE**
CONTRACTUAL ARBITRATION PURSUANT TO 9 U.S.C. §§ 1-16

(To All Causes of Action)

33.     Plaintiffs, and the persons they purport to represent, are bound by arbitration agreements included in American Express cardmember agreements that require arbitration on an individual basis of any disputes related to their accounts.  Defendants fully intend to assert their rights thereunder, and expressly reserve their right to do so.

7

CASE NO. 03-19365 CA 09

## SECOND AFFIRMATIVE DEFENSE
FAILURE TO STATE A CAUSE OF ACTION

(To All Causes of Action)

34.     The Complaint, and each cause of action alleged therein, fails to state a cause of action against Defendants.

## THIRD AFFIRMATIVE DEFENSE
STATUTE OF LIMITATIONS

(To All Causes of Action)

35.     Plaintiffs' causes of action against Defendants, as set forth in the Complaint, are barred by the applicable statutes of limitation.

## FOURTH AFFIRMATIVE DEFENSE
LACHES

(To All Causes of Action)

36.     Plaintiffs, or any person they purport to represent, unreasonably delayed taking action in connection with the claims alleged in the Complaint, causing substantial prejudice to Defendants, and any claims therefore are barred by the doctrine of laches.

## FIFTH AFFIRMATIVE DEFENSE
GOOD FAITH/REASONABLE COMMERCIAL STANDARDS

(To All Causes of Action)

37.     Defendants at all times acted in good faith and in accordance with reasonable commercial standards, thus precluding any recovery by Plaintiffs, or any person they purport to represent, against Defendants.

8

CASE NO. 03-19365 CA 09

## SIXTH AFFIRMATIVE DEFENSE
FAILURE TO MITIGATE

(To All Causes of Action)

38.     Although Defendants deny that Plaintiffs, or any person they purport to represent, have suffered any damages, to the extent that any damages have been suffered, Plaintiffs, or any person they purport to represent, have failed to mitigate those damages.

## SEVENTH AFFIRMATIVE DEFENSE
ESTOPPEL

(To All Causes of Action)

39.     By reason of the course of conduct of Plaintiffs, or any person they purport to represent, in connection with the claims alleged in the Complaint, Plaintiffs, or any person they purport to represent, are estopped from obtaining the relief sought, or any relief whatsoever.

## EIGHTH AFFIRMATIVE DEFENSE
WAIVER

(To All Causes of Action)

40.     Plaintiffs' Complaint, and each purported cause of action therein, is barred by the conduct, actions and inactions of Plaintiffs, or any person they purport to represent, which constitute a waiver of any rights Plaintiffs, or any person they purport to represent, might have in relation to such claims.

## NINTH AFFIRMATIVE DEFENSE
INDEPENDENT, INTERVENING CONDUCT

(To All Causes of Action)

41.     Any damage sustained by Plaintiffs, or any person they purport to represent, was the direct and proximate result of the independent, intervening, negligent and unlawful conduct

9

of independent third parties or their agents, and not any act or omission on the part of Defendants.

### TENTH AFFIRMATIVE DEFENSE
COMPARATIVE/CONTRIBUTORY NEGLIGENCE

(To All Causes of Action)

42.     Defendants are not legally responsible with respect to the restitution, disgorgement and/or damages that may be claimed by Plaintiffs, or any person they purport to represent, as a result of the matters alleged in the Complaint. However, if Defendants found to be legally responsible in any manner, then Defendants allege that their legal responsibilities are not the sole and proximate cause of the harm to Plaintiffs, or any person they purport to represent, and the amount awarded, if any, is to be apportioned in accordance with the fault and legal responsibility of all parties, persons and entities, or the agents, servants and employees of such parties, persons and entities, who contributed to and/or caused said harm, according to proof presented at the time of trial.

### ELEVENTH AFFIRMATIVE DEFENSE
SETOFF

(To All Causes of Action)

43.     By reason of the course of conduct of Plaintiffs, or any person they purport to represent, in connection with the claims alleged in the Complaint, Defendants are entitled to a setoff with respect to all of the matters alleged in the Complaint.

10

## TWELFTH AFFIRMATIVE DEFENSE
UNCLEAN HANDS

(To All Causes of Action)

44.     The Complaint, and each purported cause of action therein, is barred by the doctrine of unclean hands.

## THIRTEENTH AFFIRMATIVE DEFENSE
CONSENT

(To All Causes of Action)

45.     Plaintiffs, or any person they purport to represent, consented to, and acquiesced in, Defendants' purported conduct, including by agreeing to the terms of their cardmember agreements, thus barring recovery on the Complaint, and each purported cause of action therein.

## FOURTEENTH AFFIRMATIVE DEFENSE
RATIFICATION

(To All Causes of Action)

46.     The Complaint, and each purported cause of action therein, is barred by the conduct, actions and inactions of Plaintiffs, or any person they purport to represent, under the doctrine of ratification.

## FIFTEENTH AFFIRMATIVE DEFENSE
FEDERAL PREEMPTION

(To All Causes Of Action)

47.     The Complaint, and each purported cause of action therein against Defendants, is barred to the extent that they are preempted by federal or state statutes, regulations or regulatory action.

11

## SIXTEENTH AFFIRMATIVE DEFENSE
IMPROPER CLASS ACTION

(To All Causes Of Action)

48.     This action is not properly brought as a class action in that, among other things, Plaintiffs are not proper class representatives, common questions of fact and law do not predominate, Plaintiffs' claims are not typical of the claims of the purported class and a class action is not superior to other available methods for the fair and efficient adjudication of this controversy.

## SEVENTEENTH AFFIRMATIVE DEFENSE
ADEQUATE REMEDIES AT LAW

(To All Causes Of Action)

49.     The Complaint's prayers for equitable relief are barred because Plaintiffs and/or the persons on whose behalf they purport to bring this action has or have adequate remedies at law.

## EIGHTEENTH AFFIRMATIVE DEFENSE
CHOICE OF LAW

(To All Causes Of Action)

50.     Plaintiffs' claims, which are based solely on Florida law, are barred by the choice-of-law provisions contained in the respective agreements between AETRS and/or AECB, on the one hand, and Plaintiffs and/or the persons they purport to represent, on the other.

STROOCK & STROOCK & LAVAN LLP · MIAMI · NEW YORK · LOS ANGELES
WACHOVIA FINANCIAL CENTER, 200 SOUTH BISCAYNE BLVD., SUITE 3160, MIAMI, FL 33131-5323
TEL 305.358.9900 FAX 305.789.9302

CASE NO. 03-19365 CA 09

### NINETEENTH AFFIRMATIVE DEFENSE
INAPPLICABLITY OF FDUTPA

(To The First Cause Of Action)

51.     To the extent Plaintiffs' claims, or the claims of those persons they purport to represent, are not based on consumer transactions, Plaintiffs' claims are barred under the FDUTPA.

### TWENTIETH AFFIRMATIVE DEFENSE
NO VIOLATION OF THE TRUTH-IN-LENDING ACT

(To All Causes of Action)

52.     The allegations in the Complaint do not constitute a violation of the federal Truth-in-Lending Act, 15 U.S.C. Section 1601, et seq., and therefore Defendants' alleged conduct was not unlawful.

WHEREFORE, Defendants demand:

(1)     that the Court issue an Order compelling Plaintiffs to arbitration on an individual basis and staying this action; or

(2)     judgment dismissing the complaint with prejudice and granting all further relief that the Court deems just and proper.

13

CASE NO. 03-19365 CA 09

## JURY TRIAL DEMAND

In the event this Court does not compel Plaintiffs to arbitrate their claims on an individual basis,

Defendants demand a trial by jury on all issues so triable.

Dated: October 15, 2003

Respectfully submitted,

STROOCK & STROOCK & LAVAN LLP
Attorneys for Defendants
200 South Biscayne Boulevard
3160 Wachovia Financial Center
Miami, Florida 33131-5323
Telephone: (305) 358-9900
Facsimile: (305) 789-9302

By:
Richard B. Simring
Florida Bar No. 890571
rsimring@stroock.com
Richard E. Landman
Florida Bar No. 149713
rlandman@stroock.com

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that a true and correct copy of the foregoing was served by

facsimile and U.S. mail this 15 day of October, 2003, on **Thomas A. Tucker Ronzetti, Esq.,**

Kozyak Tropin & Throckmorton, P.A., Counsel for Plaintiffs, 200 South Biscayne Boulevard,

Suite 2800, Miami, FL 33131; and **Bruce E. Gerstein, Esq.,** Garwin, Bronzaft, Gerstein &

Fisher, LLP, Co-Counsel for Plaintiffs, 1501 Broadway, Room 1416, New York, NY 10036.

Richard B. Simring

STROOCK & STROOCK & LAVAN LLP · MIAMI · NEW YORK · LOS ANGELES
WACHOVIA FINANCIAL CENTER, 200 SOUTH BISCAYNE BLVD., SUITE 3160, MIAMI, FL 33131-5323
TEL 305.358.9900 · FAX 305.789.9302 · WWW.STROOCK.COM

IN THE CIRCUIT COURT OF THE
11th JUDICIAL CIRCUIT IN AND
FOR MIAMI-DADE COUNTY,
FLORIDA

EDWARD LIPUMA and RAFAEL A.
BERGOLLA, on Behalf of Themselves
and All Others Similarly Situated and
on Behalf of the General Public,

      Plaintiff,

v.

AMERICAN EXPRESS COMPANY, a New
York Corporation, AMERICAN EXPRESS
TRAVEL RELATED SERVICES, INC., a
New York Corporation and AMERICAN
EXPRESS CENTURION BANK, a New
York Corporation,

      Defendants.

CASE NO: 03-19365 CA 09

CLASS REPRESENTATION

_____/

### PLAINTIFFS' REPLY TO DEFENDANTS' AFFIRMATIVE DEFENSES

Plaintiffs, through undersigned counsel and pursuant to Florida Rule of Civil Procedure
1.100(a), reply to the Defendants' affirmative defenses as follows:

    1.      Replying to Defendants' First Affirmative Defense, Plaintiffs allege that they are not
bound by the arbitration provisions in the American Express cardmember agreements because those
provisions are unconscionable and unenforceable.

    2.      Replying to Defendants' Thirteenth Affirmative Defense, Plaintiffs allege that they
did not consent to or acquiesce in Defendants' conduct, despite the provisions in cardmember
agreements, because such conduct is deceptive and unfair as more fully described in the Complaint.

Respectfully submitted this 24th day of October, 2003.

**KOZYAK TROPIN & THROCKMORTON, P.A.**
200 South Biscayne Boulevard, Suite 2800
Miami, Florida 33131
Telephone: (305) 372-1800/Facsimile: (305) 372-3508

By: _____
    Adam M. Moskowitz, FBN: 984280
    Thomas A. Tucker Ronzetti, FBN: 965723
    John Gravante, III, FBN 617113

**GARWIN, BRONZAFT, GERSTEIN & FISHER, LLP**
Bruce E. Gerstein, Esq.
Kevin Landau, Esq.
1501 Broadway, Room 1416
New York, New York 10036

## CERTIFICATE OF SERVICE

WE HEREBY CERTIFY that a true and correct copy of the above and foregoing was mailed by regular U.S. Mail to: Richard Simring, Esq., Stroock & Stroock & Lavan LLP, 200 South Biscayne Boulevard, 3160 Wachovia Financial Center, Miami, Florida 33131-2385 on this 24th day of October, 2003.

By: _____
    John Gravante, III

3224 101 231214 1

IN THE CIRCUIT COURT OF THE 11TH
JUDICIAL CIRCUIT, IN AND FOR
MIAMI-DADE COUNTY, FLORIDA

EDWARD LIPUMA and RAFAEL A.
BERGOLLA, on Behalf of Themselves
and All Others Similarly Situated and
on Behalf of the General Public,

CASE NO: 03-19365 CA 09

CLASS REPRESENTATION

       Plaintiff,

v.

AMERICAN EXPRESS COMPANY, a
New York Corporation, AMERICAN
EXPRESS TRAVEL RELATED
SERVICES COMPANY, INC., a New York
Corporation and AMERICAN
EXPRESS CENTURION BANK, a New
York Corporation,

      Defendants.

_____/

## PLAINTIFFS' FIRST NOTICE OF TAKING
## CORPORATE REPRESENTATIVE DEPOSITION (VIDEOTAPED)

PLEASE TAKE NOTICE that the undersigned, counsel for the Plaintiffs, will take the

videotaped deposition of those persons designated by Defendant, American Express Travel Related

Services Company, Inc., pursuant to Florida Rule of Civil Procedure 1.310(b)(6), to testify regarding

the matters defined and stated below, at the following date, time and place.

**DATE AND TIME:**              November 10, 2003, at 10:00 a.m.

**PLACE FOR DEPOSITION:**      **Kozyak, Tropin & Throckmorton, P.A.**
                                 **200 South Biscayne Boulevard**
                                 **2800 First Union Financial Center**
                                 **Miami, Florida 33131**

The deposition will take place upon oral examination before Cook Reporting, a notary public,

or some other officer duly authorized by law to take depositions. The deposition will continue from

day to day until completed. The deposition will be videotaped, and is being taken for the purpose of discovery, for use at trial, or both of the foregoing, or for such other purposes as are permitted under the applicable and governing rules.

### Definitions

A.   "Agreement" means "The Fidelity American Express® Cardmember Agreement American Express Cardmembership," a copy of which is attached.

B.   "Arbitration Provision" means the provision entitled "Arbitration" in the Agreement.

C.   "Cardmember" has the same meaning as it has in the Agreement, but relates specifically, to the extent that is possible, to persons whose billing address is in the State of Florida.

D.   "Claim" or "Claims" has the same meaning as it has in the Agreement.

E.   "Class Action Provisions" means those provisions in the Agreement referring to class claims, including but not limited to the provisions that state:

(1)   "YOU WILL NOT HAVE THE RIGHT TO PARTICIPATE IN A REPRESENTATIVE CAPACITY OR AS A MEMBER OF ANY CLASS OF CLAIMANTS PERTAINING TO ANY CLAIM SUBJECT TO ARBITRATION."

(2)   "There shall be no right or authority for any Claims to be arbitrated on a class action basis or on bases involving Claims brought in a purported representative capacity on behalf of the general public, other Cardmembers or other persons similarly situated".

F.   "Foreign Currency Surcharge" is any fee levied by you to purchase goods and/or services in currencies of foreign countries.

G.   "You" or "your" refers to Defendant, American Express Travel Related Services Company, Inc., and its legal successors or predecessors.

### Matters on Which Examination is Requested

Plaintiffs request that you produce the person or persons designated by you to have the most knowledge concerning the following matters

2

1.   The manner in which notice of the Agreement's terms, including the Arbitration Provision and the Class Action Provisions, is provided to consumers in Florida.

2.   Your policies concerning a Florida cardholder's or prospective Florida cardholder's ability to negotiate or modify the terms of the Agreement, including the Arbitration Provision and the Class Action Provisions.

3.   Your policies concerning your ability to negotiate or modify the terms of the Agreement.

4.   The meaning, intent, policies, and goals regarding the Arbitration Provision.

5.   The meaning, intent, policies, and goals regarding the Class Action Provisions.

6.   The nature and amounts of any Claims, by Florida cardholders and otherwise, regarding a Foreign Currency Surcharge.

7.   The nature and number of arbitrations, by Florida cardholders and otherwise, that have occurred regarding a Foreign Currency Surcharge.

Respectfully submitted this _13_ day of October, 2003.

> **KOZYAK TROPIN & THROCKMORTON, P.A.**
> 200 South Biscayne Boulevard, Suite 2800
> Miami, Florida 33131
> Telephone: (305) 372-1800/Facsimile. (305) 372-3508
>
> By: _____
> Adam M. Moskowitz, FBN: 984280
> Thomas A. Tucker Ronzetti, FBN: 965723
>
> **GARWIN, BRONZAFT, GERSTEIN & FISHER, LLP**
> Bruce E. Gerstein, Esq.
> Kevin Landau, Esq.
> 1501 Broadway, Room 1416
> New York, New York 10036

3

## CERTIFICATE OF SERVICE

WE HEREBY CERTIFY that a true and correct copy of the above and foregoing was sent via facsimile transmission and U.S. Mail to: Richard E. Simring. Esq., Stroock & Stroock & Lavan LLP, 200 South Biscayne Boulevard, 3160 Wachovia Financial Center, Miami, Florida 33131-2385 on this 13 day of October, 2003.

3224.101 229151.1

4

# The Fidelity American Express® Cardmember Agreement
## American Express Cardmembership

*Please read this Agreement thoroughly, because when you use, sign or use the American Express Card including its renewals or replacement Cards issued to you, you agree to the terms of this Agreement. You have received and entered into a Customer Agreement with Fidelity Brokerage Services LLC together with its affiliates "Fidelity", and have received the materials describing The Fidelity Account (the "Account"). The Card offers you a direct link to your Account. When you use the Card, you will have access to your Collected Balance in your Account. Collected Balance means the total funds Account received less, if applicable, margin loan value in your Account. This amount does not include any uncollected security trades or pending transactions (e.g., checks written on the Account, debit card purchases, etc.) that have not yet been posted to your Account.*

This Agreement covers electronic fund transfers that arise from your use of the Card to purchase goods and services and to obtain cash through the Express Cash Program offered by American Express Centurion Bank or its affiliates (the "Program"). The words "other options" refer to electronic payment transfer options and/or other cash and American Express Travelers Cheque access which American Express may make available from time to time.

Since you asked us to issue the Card to access your Account, you are the Basic Cardmember. If the Account is a joint Account, or you wish to authorize another person to access the Account, you may request that we issue Cards on the Account to such other person. If we do, those persons are called Additional Cardmembers. The term "Card" refers to the American Express Card issued to you and all other American Express Cards issued to access your Account.

## Using the Card

We welcome you to use the Card to purchase goods and services from establishments accepting the Card and to obtain cash from your Account at authorized locations. In this Agreement, both purchases and cash transactions are referred to as charges or transactions. Where permitted, you may be able to obtain Travelers Cheques, Gift Cheques, foreign currency and other payment products with your Account. We will be repaid from your Account after the end of each monthly billing cycle for all Card purchase transactions charged to your Card during the monthly billing cycle. We will be repaid on a daily basis for all cash and cash substitutes obtained with your Card.

You are responsible for paying all amounts charged with your Card by either you or any Additional Cardmember, which include, without limitation, purchases, amounts guaranteed by use of the Card, and all fees associated with use of the Card. You are also responsible for paying all transactions where you or an Additional Cardmember showed an intent to incur a charge, even if you have not signed a charge form or presented the Card.

You may not permit any other person to use the Card issued to you. However, you are responsible for payment of all charges made with Cards issued on your Account, even if you have let someone else use the Card. You agree to notify us at once if the Card is lost or stolen or you suspect your Account is being used without your permission.

In connection with purchase transactions, you agree to use the Card only for legitimate purchases of goods or services and not for the purpose of obtaining cash from an establishment or else we have authorized the establishment to provide access to funds in your Account. Where permitted, you may be able to obtain Travelers Cheques, Gift Cheques, foreign currency and other payment products with your Account. We will not be responsible if any establishment refuses to honor the Card or for any other problem you may have with such establishment. You may return a purchase to an establishment accepting the Card for credit to your Account, if that establishment permits such returns, but not for a cash refund. Remember that outside the United States, returns are usually more restricted.

Each charge is evaluated in light of your spending and payment patterns on all your Cards and your Account, and of our affiliates', the Collected Balance available in your Account less the amount of any Card transactions which have been authorized by us but which have not yet been paid, and our experience with other creditors. We reserve the right to deny any request for authorization for a charge for any reason. We may also reject additional information from you at any time.

You should not charge purchases to the Card, or use the Card to request cash, in excess of the Collected Balance available in your Account. If you do make charges or request cash in excess of the Collected Balance available in your Account, the amount of such excess will be immediately due and payable to us.

If you provide authorization to a merchant to bill charges on a recurring basis to your Card ("Recurring Charge[s]"), and if a replacement Card has been issued to you (because, for example, your Card has been lost, stolen, canceled, upgraded or renewed), then we may provide such merchant with your current Card status, Card number, and/or expiration date in order to permit the merchant to continue to bill the Recurring Charge to your current Card until you satisfy us and the merchant that you have withdrawn your authorization.

## Additional Cards

Additional Cardmembers do not have a contractual relationship with us. Any Additional Card may be canceled by you or us. Additional Cards issued on your Account must be used in a manner consistent with this Agreement. You also authorize us to discuss the status of charges with Additional Cardmembers. We may, at our discretion, pursue Additional Cardmembers for payment of their own charges if you fail to pay those charges.

## Annual Fees

The annual Basic Card fee for the Fidelity American Express Platinum Card® is $320 (usually $395) as long as you maintain your Account. The annual fee for each additional Fidelity American Express Platinum Card® is $175. The fee for each additional Gold Card is paid for by Fidelity as long as you maintain your Account (usually $45). The annual fee for each Card is increased by $5 if the address of the Account is outside the U.S.

## Renewal of Cards and Cancellation

The Card will be valid within the time period embossed on the Card. We will issue you renewal or replacement Cards before the current Card expires and we will continue to do so until your Account or your relationship with us is canceled. We will bill renewal fees for Card annually at the rates then in effect.

We may revoke your right to use the Card at any time. We can do this whether or not you have breached the Agreement and without giving you notice. If we revoke the Card and you have not breached this Agreement, we will refund a portion of any annual Card fee upon request. We may advise establishments accepting the Card that the Card issued to you has been canceled. If we cancel the Card or it expires, you may no longer use it and you must return it to us or, if we request, to an establishment that accepts the Card.

In addition to any other actions we may take under this Agreement, any Card may be suspended or canceled at our sole discretion for any reasons, subject to applicable law, at any time, with or without cause and without giving you notice. Any such action on our part will not cancel your obligation to pay or arrange for the payment of the amounts due us under this Agreement as in effect at the time of such cancellation or suspension.

## Monthly Statements

Transactions will be reflected on the monthly statement for your Account. We will not send you a separate transaction statement.

## Payments

We will notify Fidelity each day of any cash transactions made with the Card. At the end of each monthly billing cycle, we will notify them of the amount of purchases made with the Card during that monthly billing cycle ending that day. Once Fidelity receives this information received from us, it will send us funds from your Account, in an amount which equals your outstanding charges as of that day. Fidelity will obtain the funds first from your Account, by redeeming the core account which you authorize us to pay for your Card transactions, and second, should these sources prove insufficient from your margin availability. By accepting the Card you authorize us to notify Fidelity of transactions made with your Card and authorize Fidelity to transfer funds from your Account to repay us for these transactions. We reserve the right to process charges electronically by transmitting the amount of the check, the routing number, account number and check serial number to your bank. If we choose to resolve this option, by submitting a check or payment you authorize American Express to initiate an electronic debit from your account. Please refer to your check or statement for more complete details.

Subject to applicable law, we reserve the right to apply your payments and credits to your outstanding balance, and other fees or charges in any order at our discretion.

## Late Fees

If the assets in your Account are not sufficient to pay for all Card transactions, and you do not place sufficient funds in your Account to cover such transactions by the last day of the next billing cycle, we will open an account ("Reserve Account") for you in an amount equal to the total of all outstanding charges on your Card that remain unpaid at the end of that billing cycle. The amount will be immediately due to us at the time we establish your Reserve Account.

If such amounts owed to us remain unpaid on the closing dates of three consecutive billing cycles and thereafter, on each closing date that such amount due remains unpaid, we may assess a fee of the greater of $30 or 2.9% of the delinquent amount (Iowa $15; Puerto Rico $0).

Upon demand, you must pay us for amounts owed to us in your Reserve Account, in U.S. currency, with a draft or a check drawn on a U.S. bank and payable in U.S. dollars, or with a negotiable instrument payable in U.S. dollars and clearable through the U.S. banking system or with an electronic payment device clearable through the U.S. banking system. If we decide to accept payment made in some other form, your payment will not be credited until it is converted into one of the forms described in the previous sentence. We may charge you any costs we incur in converting your payment. You may not pay us with a check drawn on a line of credit that we have issued to you pursuant to a separate agreement with us or any of our affiliates unless we have authorized you to do so. If any payment made on your Reserve Account is not honored for its full amount, we may charge your Reserve Account $29, unless otherwise provided by applicable law.

We may accept late payments, partial payments or any payments marked as being payment in full or as being settlement of any dispute without losing any of our rights under this Agreement or under the law. If we accept such payments, this does not mean we agree to change this Agreement in any way.

You agree to pay all court costs plus attorney's fees of 15% of the then unpaid balance if we must refer your Reserve Account to an attorney who is not our employee, subject to the law of your jurisdiction.

## Transactions Made in Foreign Currencies

If you initiate a transaction in a foreign currency, it will be converted into U.S. dollars on the date it is processed by us or our agents at a rate set by us based on an interbank, tourist or (where required by law) official rate, increased in each instance by up to 2%. This rate may differ from rates in effect on the date of your transactions. Transactions converted by establishments (such as airlines) will be billed at the rates such establishments use.

## Benefits and Services

Subject to the law of your jurisdiction, we reserve the right to add, modify or delete any benefit or service offered with the Card at any time without notice to you.

## Insurance

If you use the Card to pay insurance premiums, you give us permission to pay those premiums for you when due. You agree to repay us according to the terms of this Agreement. You must tell us in writing if you no longer wish us to pay any premiums for you. If your account is canceled, we will stop paying those premiums for you.

## Arbitration

This Arbitration Provision sets forth the circumstances and procedures under which Claims (as defined below) may be arbitrated instead of litigated in court.

As used in this Arbitration Provision, the term "Claim" means any claim, dispute or controversy between you and us arising from or relating to the Cardmember Agreement (the "Agreement") and/or related to prior agreement that you may have had with us or the relationships resulting from the Agreement or any prior agreement, including the validity, enforceability or scope of this Arbitration Provision, the Agreement or any prior agreement. "Claim" includes claims of every kind and nature, including but not limited to initial claims, counterclaims, cross-claims and third party claims and claims based on contract, tort, fraud and other intentional

"Claim" is to be given the broadest possible meaning and includes, by way of example and without limitation, any claim, dispute or controversy that arises from or relates to (a) the related or prior agreement, or any balances on the Account, (b) advertisements, promotions or oral or written statements related to the Account, goods or services financed under the Account or the terms of financing (c) the benefits and services related to Cardmembership (including free benefit programs, enrollment services and rewards programs), and (d) your application for the Account. We shall not elect to use arbitration under the Arbitration Provision for any individual Claim that you properly file and pursue in a small claims court of your state or municipality so long as the Claim is pending only in that court.

Any Claim shall be resolved upon the election by you or us, by arbitration pursuant to this Arbitration Provision and the code of procedures of the national arbitration organization to which the Claim is referred in effect at the time the Claim is filed. Claims shall be referred to either the National Arbitration Forum ("NAF"), JAMS/Endispute ("JAMS"), or the American Arbitration Association ("AAA"), as selected by the party electing to use arbitration. If a selection by us of one of these organizations is unacceptable to you, you shall have the right within 30 days after you receive notice of our election to select either of the organizations listed to serve as arbitrator administrator. For a copy of the procedures, to file a Claim or for other information about these organizations, contact them as follows:

- The NAF at P.O. Box 50191, Minneapolis, MN 55404, phone 1-800-474-2371, website at www.arbitration-forum.com.
- JAMS at 1920 Main Street, Suite 300, Los Angeles, CA 92614; phone 1-800-448-1660; website: www.jamsadr.com
- AAA, at 335 Madison Avenue, New York, NY 10017; website: www.adr.org.

IF ARBITRATION IS CHOSEN BY ANY PARTY WITH RESPECT TO A CLAIM, NEITHER YOU NOR WE WILL HAVE THE RIGHT TO LITIGATE THAT CLAIM IN COURT OR HAVE A JURY TRIAL ON THAT CLAIM, OR TO ENGAGE IN PRE-ARBITRATION DISCOVERY EXCEPT AS PROVIDED FOR IN THE CODE OF PROCEDURES OF THE NAF, JAMS OR AAA, AS APPLICABLE. FURTHER, YOU WILL NOT HAVE THE RIGHT TO PARTICIPATE IN A REPRESENTATIVE CAPACITY OR AS A MEMBER OF ANY CLASS OF CLAIMANTS PERTAINING TO ANY CLAIM SUBJECT TO ARBITRATION. EXCEPT AS SET FORTH BELOW, THE ARBITRATOR'S DECISION WILL BE FINAL AND BINDING. NOTE THAT OTHER RIGHTS THAT YOU WOULD HAVE IF YOU WENT TO COURT MAY ALSO NOT BE AVAILABLE IN ARBITRATION.

There shall be no right or authority for any Claims to be arbitrated on a class action basis or on bases involving Claims brought in a purported representative capacity on behalf of the general public, other Cardmembers or other persons similarly situated; provided however, that the claimant's individual Claim would be subject to this Arbitration Provision. Furthermore, Claims brought by or against a Cardmember(s) of one Account may not be joined or consolidated in the arbitration with Claims brought by or against any other Cardmember(s) of any other Account, unless otherwise agreed to in writing by all parties. Any arbitration hearing that you attend shall take place in the federal judicial district of your residence. At your written request, we will consider in good faith making a temporary advance of all or part of the filing, administrative and/or hearing fees for any Claim you initiate as to which you or we seek arbitration. At the conclusion of the arbitration, the arbitrator will decide who will ultimately be responsible for paying the filing, administrative and/or hearing fees in connection with the arbitration. For any Claims you initiate against us as to which either you or we have elected to use arbitration, we will be responsible to reimburse you for filing, administrative and/or hearing fees you incur, including for any appeal, if and to the extent such fees exceed the amount they would have been (such amount to be determined by the arbitrator) if the Claim had been brought in the state or federal court which is closest to your billing address and would have jurisdiction over the Claim.

This Arbitration Provision is made pursuant to a transaction involving interstate commerce, and shall be governed by the Federal Arbitration Act, 9 U.S.C. Sections 1-16, as it may be amended (the "FAA"). The arbitrator shall apply applicable substantive law consistent with the FAA and applicable statutes of limitations and shall honor claims of privilege recognized at law and, at the timely request of either party, shall provide a brief written explanation of the basis for the award. In conducting the arbitration proceeding, the arbitrator shall not apply the Federal or any state rules of civil procedure or rules of evidence. In addition, the parties' rights to exchange information pursuant to the Code, either party may submit a request to the arbitrator for a copy of the request and the other party. If the arbitrator grants the scope of requests,

objections to the arbitrator with a copy of the objections provided to the requesting party, within fifteen (15) days of the requesting party's notice. The granting or denial of either party's request will be in the sole discretion of the arbitrator who shall notify the parties of his/her decision within twenty (20) days of the objecting party's submission. Judgment upon the award rendered by the arbitrator may be entered in any court having jurisdiction. The arbitrator's decision will be final and binding, except for any right of appeal provided by the FAA and/or if the amount of the award exceeds $100,000, any party can appeal that award to a three-arbitrator panel administered by the NAF, JAMS or AAA, as applicable, which shall reconsider de novo any aspect of the initial award requested by the appealing party. The appealing party shall have thirty (30) days from the date of entry of the written arbitration award to notify the arbitration organization that it is exercising the right of appeal. The appeal shall be filed with the arbitration organization in the form of a dated writing. The arbitration organization will then notify the other party that the award has been appealed. The arbitration organization will appoint a three-arbitrator panel who will conduct an arbitration pursuant to its code of procedures and issue its decision within one hundred and twenty (120) days of the date of the appellant's written notice. The decision of the panel shall be by majority vote and shall be final and binding. The costs of such an appeal will be borne by the appealing party regardless of the outcome of the appeal.

As used in the Arbitration Provision, the terms "we" and "us" shall for all purposes mean American Express Travel Related Services Company, Inc., American Express Centurion Bank, as applicable, all of their parents, wholly or majority owned subsidiaries, affiliates, licensees, predecessors, successors, assigns, and any purchaser of your Reserve Account; and all of their agents, employees, directors and representatives. In addition, "we" or "us" shall mean any third party providing any product, service or benefit in connection with the Card (including, but not limited to credit bureaus, merchants who honor the Card issued to access an Account, third parties who provide or participate in free benefit programs, enrollment services and rewards programs, credit insurance companies, debt collectors and all of their agents, employees, directors and representatives) if, and only if, such third party is named as a co-defendant with us in a Claim asserted by you. As solely used in this Arbitration Provision, the terms "you" or "yours" shall mean all persons or entities approved by us to use the Card, including, but not limited to, all persons or entities contractually obligated under the Agreement or any prior agreement you may have had with us and all Additional Cardmembers.

This Arbitration Provision shall survive termination of your Account as well as voluntary payment of the debt in full by you, any legal proceeding by us to collect a debt owed by you, any bankruptcy by you and any sale by us of any debt arising from your Reserve Account. If any portion of this Arbitration Provision is deemed invalid or unenforceable under any law or statute, consistent with the FAA, it shall not invalidate the remaining portions of this Arbitration Provision, the Agreement or any prior agreement you may have had with us, each of which shall be enforceable regardless of such invalidity. In the event of a conflict or inconsistency between the NAF Code and this Arbitration Provision, this Arbitration Provision shall govern.

**Note for California Residents**
This Arbitration Provision shall not apply to you unless and until you use the Card after we notify you in writing that it is applicable in California.

**Privacy**
Consumer Reports – You authorize us and our affiliates to make whatever credit investigations we deem appropriate and to obtain and exchange any information we may receive from consumer reports and other sources.

We may ask consumer reporting agencies for consumer reports of your credit history. Upon request, we will tell you whether a consumer report was requested and the name and address of the agency that furnished it.

Information concerning your Card may be furnished by us to consumer reporting agencies, banks or other creditors. If any statement we send you remains unpaid for one billing cycle, adverse credit information may appear on your consumer report and the consumer reports of any Additional Cardmembers on your Card. If you believe information we have furnished about your Card to a consumer reporting agency is inaccurate, you should write to us at: American Express Credit Bureau Unit, P.O. Box 297871, Ft. Lauderdale, FL 33329-7871 and identify the specific information you believe is inaccurate.

credit report, relevant facts and information may be submitted to a credit reporting agency if you fail to fulfill the terms of your Agreement.

Information Provided to Affiliates and Marketing Partners – We may exchange any information we receive about you with our affiliates, including any credit or other information we may obtain from your application or consumer reports. You may direct us not to share with our affiliates and subsidiaries certain credit information (other than transaction or experience information) about you or any Additional Cardmember(s) by writing to us at: American Express, P.O. Box 7852, Ft. Lauderdale, FL 33329. Please include your Card number and indicate if your request applies to any Additional Cardmember(s) as well. We may also exchange information about you with our marketing partners.

Telephone Monitoring – From time to time we may monitor telephone calls between us to assure the quality of our customer service.

Mailing Lists – We may use information you have provided to us on your initial application and in surveys, information derived from how you use the Card, and information from external sources, including consumer reports, for marketing activities (including mailing lists), by us and our affiliates. We may share transaction or experience information about you, and information from your application, with our marketing partners. If at any time you wish to have your name and address removed from such lists, please call 1-800-297-8378. For Cardmembers who use our website, please refer to our Customer Internet Privacy Statement at www.americanexpress.com to learn how to inform us of your preferences regarding e-mail offers from American Express.

Use of Card at Federal Government Agencies – American Express has entered into contracts which enable the Card to be accepted at certain federal government agencies and departments ("Agencies"). As with Card transactions at commercial establishments, when you choose to use your Card at an Agency certain Charge information is necessarily collected by American Express. Charge information from Card transactions at Agencies may be used for processing Charges and payments, billing and collections activities and may be aggregated for reporting, analysis and marketing activities. Additional routine uses of Charge information by Agencies are published periodically in the Federal Register.

I authorize Fidelity to release certain account information to American Express for the purpose of approving Card transactions. This information includes, but is not limited to, your total Collected Balance.

For $750,000 coverage, the Rewards Plus Gold Card, and the extended payment account offered in conjunction with the foregoing, issued by American Express.

**Changing This Agreement – Assignment**
We may change the terms of or add new terms to this Agreement at any time, including, but not limited to, changes which affect existing balances, in accordance with applicable laws. We may also assign Centurion Accounts and our rights under this Agreement to our affiliates or to some other entity at any time.

**Applicable Law**
**This Agreement is governed by the laws of the State of Utah and applicable federal law.**

**Note for Ohio Residents**
The Ohio laws against discrimination require that all creditors make credit equally available to all credit-worthy customers, and that credit reporting agencies maintain separate credit histories on each individual upon request. The Ohio Civil Rights Commission administers compliance with this law.

## Agreement Between Cardmember and American Express Travel Related Services Company, Inc. Concerning Electronic Fund Transfer Services

An electronic fund transfer under this Agreement includes all purchase transactions using the Card and any transfer of funds which is initiated through an electronic terminal, a telephone, a computer or magnetic tape for the purpose of authorizing a debit or credit to your Account. An electronic fund transfer is also involved when you authorize deposits or withdrawals to or from your Account.

This Agreement governs your participation in the Cash Access Program offered by American Express (the "Program"). Your Card will enable you to purchase merchandise and services and obtain cash from Automated Teller Machines ("ATMs") operated by any bank or financial institution that participates in the Program, and to obtain American Express Travelers Cheques ("Cheques") and cash, where available, directly from American Express Dispensers. Participating in the Program may also enable you to obtain cash and/or Cheques (including at times American Express Gift Cheques) through other means that we may make available. Such Automated Teller Machines and American Express Dispensers are hereinafter referred to as Machines, and a transaction made with the Card at a Machine or through other available means is hereinafter referred to as a transaction. The Program may also enable you to participate in other options

**Personal Identification Number**

In connection with your participation in the Program, we have issued to you or allowed you to choose your own Personal Identification Number ("PIN"). Each time you wish to obtain cash or Cheques at a Machine, you must supply your PIN and use or present the Card. To ensure that no unauthorized transactions are made under the Program, you should take all reasonable precautions to prevent any other person from learning your PIN or using the Card. For example, never keep any material containing your PIN attached to or with the Card. Other options may or may not require the use of a PIN.

**Limit on the Frequency or Amounts of Electronic Fund Transfers**

Each charge to your Card is evaluated in light of your spending and payment patterns on all your Cards and other relationships with us and our affiliates, the assets available in your Account less the amount of any Card transactions which have been authorized by us, but which have not yet been paid, your experience with other creditors, and your personal resources known to us. We reserve the right to deny any request for authorization for a charge for any reason. We may also request additional information from you at any time.

Purchases above certain amounts and transactions in cash or cash substitutes made by use of your Card require our prior approval. Our prior approval may be required in the other circumstances as well. These approvals are called authorizations. We may limit the number of authorizations we will give on any one day. At times when our authorization system is not fully working, we may not be able to give our approval for large transactions, even though they would not exceed the assets and credit available in your Account. These restrictions are for security reasons which we cannot explain in detail.

The limit on the amount of cash and/or Cheques which you and your Additional Cardmembers may obtain from Machines during any 30-day period under the Program is $10,000 for the Fidelity American Express Platinum Card. Other limits may be imposed at our discretion based upon the status of your Account. Also, the bank operating an ATM may impose its own limits and, for security reasons, the bank or other providers of funds may have additional limits on the number or amount of transactions.

**Payment for Cash or Cheques**

Each time you use your Card to obtain cash or to purchase Travelers Cheques, you authorize us or our agent to draw a check or draft or initiate an automated clearing house ("ACH") or depository transfer check ("DTC") debit in your name on your Account, payable to us or to our agent, in the amount of the transaction. The amount of the transaction shall be the amount of cash you have received and/or the face value of the Cheques, plus any applicable fees or charges. The fees or charges are disclosed in the section of the Agreement entitled "Other Fees." We will present this check, draft, ACH or DTC to Fidelity for payment immediately.

**Other Fees**

Except for Machine transactions, there is no transaction fee for any electronic fund transfer. Cardmembers may be charged a $1.50 fee for each Machine transaction. Machine withdrawals will be deducted daily from your Account and may be subjected to other fees and limits. Any Account which maintains more than $500,000 in assets or Accounts coded as Premium or Private Accounts will not be charged the $1.50 Machine fee. Any Account which maintains between $100,000 and $500,000 in assets will receive up to three (3) free Machine transactions per calendar month, and will be charged the $1.50 fee for each transaction thereafter. All other Accounts will be charged the $1.50 Machine transaction fee. Account assets are calculated each business day and free Machine transactions are extended to the Account the following day. Accounts which do not maintain the stated Account balances may be charged the

responsible for Machine fees other than transactions may assess a fee use of Machines in their network. For Cheque transactions the fee applicable to purchase of Cheques will be 1% of the face value of the Cheques (in your billing currency). The Cheque fee is waived for Fidelity American Express Platinum Card members

If your Card is considered in default for any reason and is canceled, and you request reinstatement, we may charge a re-opening fee of $25 if such request is honored

**Foreign Currency Transactions**

If you initiate a transaction in a foreign currency, it will be converted into U.S. dollars on the date it was processed by us or our agents at a rate set by us based on an interbank, tourist or (where required by law) official rate, increased in each instance by up to 2%. This rate may differ from rates in effect on the date of your transaction. Express Cash transactions in foreign currencies converted by unaffiliated banks or other third parties will be billed at the rates such banks or other third parties use.

**Travelers Cheque Refunds**

You agree that if you obtain or use Cheques, your right to receive a refund or replacement if those Cheques are lost or stolen shall be subject to all of the conditions listed below

- You have signed the Cheques in the upper left corner in permanent ink;
- You have not signed the Cheques in the lower left corner,
- You have not given the Cheques to another person or company to hold or to keep, as part of a confidence game;
- You have not used the Cheques in violation of any law, including as part of an illegal bet, game of chance or other prohibited action;
- Your Cheques have not been taken by court order or by government action,
- You immediately notify us of the loss or theft of the Cheques,
- You report all facts of the loss or theft to us and also to the police if we ask you to,
- You inform us of the serial numbers of the lost or stolen Cheques and the place and date of purchase;
- You complete our refund forms and provide us with acceptable proof of your identity;
- You give us all reasonable information and help requested to make a complete investigation of the loss or theft

We reserve the right to investigate the circumstances of any loss or theft

We cannot stop payment on or refuse to pay any Cheques.

**Written Records of Transactions**

You will receive a receipt at the time of each transaction at a Machine describing the transaction. In addition, Fidelity will send you a monthly statement showing the status of your Account, all transactions, and any charges that were imposed. We will not send you a separate transaction statement

**Liability for Unauthorized Transactions and Advisability of Prompt Reporting**

Tell us AT ONCE if you believe the Card or your PIN has been lost, stolen or used without your permission. Telephoning is the best way of minimizing possible losses. We will not hold you liable for any unauthorized transaction which occurs after you notify us of a loss, theft or possible unauthorized use of the Card or your PIN. In any event, even if you fail to notify us, your liability for any unauthorized transaction or series of related unauthorized transactions shall not exceed $50

If you believe the Card or your PIN has been lost or stolen or that someone has transferred or may transfer money from your Account without permission call

1-800-528-4800

1-910-333-3211 (outside U.S.)

anytime, or write

American Express Credit Department
P.O. Box 53830
Phoenix, Arizona 85072-3830

Outside the United States, you may also contact any American Express Travel Service location to report a loss or theft of the Card or your PIN

**Our Liability for Improper Transactions or Payments**

If your transaction is not completed as you have directed or if we do not complete a transfer to or from your Account on time in the correct amount, we will be liable for your losses or damages

- If, through no fault of ours, you do not have enough money in your Account to complete the transactions;
- If the funds in your Account are subject to legal process or other encumbrance restricting the transaction;
- If the Machine or other location where you are making the transaction does not have enough cash or Cheques.
- If the Machine was not working properly and you knew about the breakdown when you started making the transaction;
- If circumstances beyond our control (such as fire or flood) prevent the transaction, despite reasonable precautions that we have taken; or
- any other exceptions stated in this Agreement

**Business Day**

For purposes of this Agreement, our business days are Monday through Friday. Holidays are not included

**Disclosure of Account Information to Third Parties**

To protect your privacy, we will not disclose any information about your Program transactions to any person, except as follows:

1. as necessary to complete transaction;
2. to verify the existence and condition of the Card Account for a third party, such as a financial institution or credit bureau (or, for Massachusetts residents, a consumer reporting agency as defined in chapter 93 of the Massachusetts General Laws);
3. to comply with government agency or court orders;
4. to our employees, auditors, service providers, attorneys, or collection agents in the course of their duties;
5. to persons authorized by law in the course of their official duties, or
6. if you give us your written permission

**How to Contact Us**

If for any reason you wish to contact us about your participation in the Program, or about transactions relating to the Program, write or call us as follows

Address    American Express Travel Related Services Company, Inc.
Express Cash Operations
P.O. Box 297815
Ft. Lauderdale, FL 33329-7815

Telephone   1-800-CASH-NOW 24 hours a day, seven days a week

For questions about the Card or transactions relating to the Card, write or call us as follows

Address    American Express Centurion Bank
c/o Customer Service
P.O. Box 7814
Ft. Lauderdale, FL 33329-7814

Telephone   1-800-350-0486

**In Case of Errors or Questions about Your Transactions**

All questions about transactions relating to the Card, or your participation in the Program, must be directed to us and not to Fidelity where you have your Account. We are responsible for the Card and for resolving any errors in transactions made with the Card

We will not send you a periodic statement listing the transactions that you made using the Card. The transactions will appear only on the statement issued by Fidelity. Save the receipts you are given when you use the Card and check them against the Account statement you receive from Fidelity. If you have any questions about one of these transactions, write or call us at the number or address given above as soon as you can if you think your statement or receipt is wrong or if you need more information about a transaction listed on your statement or receipt. We must hear from you no later than 60 days after the FIRST Account statement on which the problem or error appeared

1. Tell us your name and your Account number.
2. Describe the error or the transaction you are unsure about, and explain as clearly as you can why you believe it is an error or why you need more information
3. Tell us the dollar amount of the suspected error

If you tell us orally we may require that you send us your complaint or question in writing within ten business days" from the date you notified us

We will determine whether an error occurred within ten business days" after we hear from you and will correct any error promptly. If we need more time, however, we may take up to 45 days to investigate your complaint if it involves a new Account or a transaction initiated outside the United States or a

purchase using the Card. If the purchase or cash advance involve(s) a cash advance, or transaction, we may take up to 45 days to another type of transaction, we may take up to 45 days to investigate. In the case of a transaction involving an Account within 30 days of the first deposit into the Account, we will determine whether an error occurred within 20 business days* after we hear from you and correct any error promptly. If we need more time, however, we may take up to 90 days to investigate such a complaint or question **

If we decide that there was no error, we will send you a written explanation within three business days after we finish our investigation. You may ask for copies of the documents that we used in our investigation. If we determine that there was an error, we will send you a notice informing you that the error has been corrected and that the corrections will be reflected on your next Account statement.

In certain cases, at our discretion, we may instruct Fidelity to provisionally recredit your Account while we conduct our investigation. If we do so, we may redebit your Account if we find that the provisional credit was inappropriate. We will then notify you when we will redebit your Account and the amount to be redebited. You should make certain that your Account has sufficient funds to cover this debit. If it does not, we have the right to collect the amount from you in accordance with this Agreement

**Termination**

We, or any bank or financial institution participating in the Program, may add or remove any or all Machines or extend or limit the services provided at any location without notifying you beforehand. In addition, we may discontinue the Program at any time. We may also revoke your right to participate in the Program, but if we do, we will give you written notice of such revocation. You may terminate your participation in the Program but you must do so by writing to us at the address disclosed in the Section of this Agreement entitled "How to Contact Us."

Your right to participate in the Program will also be terminated if the Card Account is canceled for any reason, or if your participation in the Program is inactive for 18 consecutive months or more. For security reasons, once your Express Cash access has reached an inactive status, your enrollment information will be removed from our records. Your participation in the Program also depends upon the Card Account remaining in good standing

AMERICAN EXPRESS
TRAVEL RELATED SERVICES COMPANY, INC

*[signature]*

Alfred F. Kelly, Jr., President, Consumer Card Services Group

**Note for Massachusetts Residents**
**General Disclosure Statement.** Any documentation provided to you which indicates that an electronic funds transfer was made shall be admissible as evidence of such transfer and shall constitute *prima facie* proof that such transfer was made

The initiation by you of certain electronic fund transfers from your Account will, except as otherwise provided in this Agreement, effectively eliminate your ability to stop payment of the transfer

**Unless otherwise provided in this Agreement, you may not stop payment of electronic fund transfers; therefore, you should not employ electronic access for purchases or services unless you are satisfied that you will not need to stop payment.**

**Optional Limit on Obtaining Cash.** You have the option to request that we limit the total amount of cash that you may obtain from ATMs in a single day to $50. If you elect this option we will take all reasonable steps to comply with your request.

**For Your Safety When Using an ATM, Please Observe the Following:**

If the ATM you are using is inside a building, close the entry door completely upon entering. Individuals who have a legitimate need to gain access to an ATM should have a card. There may be occasions when non-authorized users gain access to an ATM machine that are beyond an individual's control

Put withdrawn cash or Travelers Cheques in a secure place before stepping away from the ATM. Be aware of your surroundings. If you believe you are being watched or followed, cancel your transaction, then go to a well-populated area. If necessary, call the local police

Do not write your PIN number on or near the Card. Do not give your PIN number to anyone else. In case of an emergency, call 911

---

Complaints concerning security at an American Express to Contact Us."

**Note:** *Activity is being recorded by hidden cameras at ATM locations in New York City and/or as required by local regulations*

* For Massachusetts residents, ten calendar days

** For Massachusetts residents, the investigation period is 45 days and the Account will be provisionally recredited

## Premium Global Assist
(Formerly Travel Emergency Assistance)

**Description**
The emergency services herein described are provided to all United States Platinum Card® members, Fidelity American Express Platinum Card® members, and The Centurion℠ Card members, including additional Platinum Card® members, Fidelity American Express Platinum Card® members, and The Centurion℠ Card members with a Card on an Account that has not been suspended or canceled, who are traveling on a trip of ninety (90) days or less, and 100 miles or more from the Card member's American Express U.S. billing address. Additionally, coverage is extended to each of the following members of the Card member's family who are traveling with the Card member: the Card member's spouse, dependent children under the age of 23, and children under the age of 26 who are enrolled in school on a full-time basis

**Note:** *Coverage extends to Family Members of Platinum Card®, Fidelity American Express Platinum Card®, and The Centurion Card supplementary Accounts. Provision of services is subject to verification of coverage eligibility.*

**Access**
Access to the services herein described can be made 24 hours a day by means of the following: within the United States and Canada, via toll-free telephone call to 1-800-345-AMEX (1-800-345-2639), from outside the United States and Canada via a collect telephone call to 1-715-343-7979 or via fax to 1-715-345-1219

**Services**
Premium Global Assist (PGA) shall provide, at no cost except as specifically noted herein, the following emergency services to covered Card members and their Family Members.

A. Pre-Trip information is available to the covered Card member. Information will include the weather report for many destinations, exchange rates, and information concerning customs, inoculations and visa requirements.

B. Emergency Information will be provided via telephone by a PGA Designated Physician or Assistance Coordinator on the PGA Staff, when the Card member is unable to get assistance locally. Information will include the name, local addresses and local telephone numbers of the nearest Medical Service Provider, such as Hospitals and Clinics, Attorneys, or other providers of emergency services such as U.S. consulates or embassies, or American Express® Travel Service Locations** as appropriate and as dictated by the resources available in each country or location. Wherever possible, such information will be provided on two or more emergency services providers. No guarantee is made as to the quality of the emergency service provided, and the final selection of the provider, and any risk, shall be the sole responsibility of the Card member

C. Medical Transport and Evacuation will be provided, at no cost, to the covered Card member or Family Member, to another, more appropriate Medical Facility, when the covered Card member or Family Member is under the care of a local Medical Service provider or Facility and when the PGA-Designated Physician, in consultation with the local Medical Service Provider or Facility, determines that such transport is medically necessary and advisable due to inadequacy of local facilities. Card members will be evacuated to the closest adequate medical facility as determined by American Express. Eligibility for medical transport is contingent upon the covered Card member or Family Member not 1) traveling against physician's advice or 2) traveling with a pre-existing sickness, illness or injury***, or 3) traveling to seek medical treatment. Decisions made by the PGA Designated Physician and the local Medical Service Provider as to 1) the medical need for evacuation, transportation, and/or repatriation services; 2) the means and/or timing of any transportation, medical equipment and supplies, and medical personnel to be used in connection therewith; and 3) the selection of the final treatment facility, shall control the medical decisions

---

determining the need for such services. **Very Important:** Any risks and costs for medical transport not authorized and arranged through the PGA Program are solely the responsibility of the Card member and such costs will not be reimbursed. PGA does not cover medical expenses (with the exception of cost incurred during the transport) nor transportation of personal possessions including luggage.

D. Medical Assessment, Coordination and Monitoring of Treatment of the covered Card member or Family Member will continue, by all reasonable means, where medically advisable, until the Card member or Family Member is released from treatment or is sent home. These steps will include an initial follow-up by the PGA-Designated Physician with the local Medical Service Provider or Facility to discuss the preliminary diagnosis and evaluate the recommended treatment, and a contact by the PGA-Designated Physician or Coordinator with the local Medical Service Provider or Facility, and/or the Card member, as frequently as every other day throughout the hospital treatment period to monitor the Card member's or Family Member's progress for the purpose of determining the adequacy and necessity of the treatment being provided.

E. Minimize the Card member's Financial Inconvenience in an Emergency as follows:

1. When the Card member has indicated to the PGA Administrative Coordinator that he/she has health insurance that would cover the services in question, the Administrative Coordinator on Staff will first ask the local Medical Service Provider or Facility to bill the Card member's insurance company and, if the local Medical Service Provider or Facility is unwilling to do that, ask them to bill the Card member directly, rather than requiring the Card member to pay on site.

2. When a local Medical Service Provider or Facility refuses to provide needed medical services to a covered Card member or Family Member without being guaranteed an advanced payment for such services, the PGA Program will, with the Card member's authorization, endeavor to obtain such payment from the Card member's family or other individuals indicated by the Card member, or, with the authorization of the Card member, will guarantee such payment and, if necessary, advance such payment up to a limit of U.S. $5,000 and charge the Card member's Account for the payment amount, subject to charge authorization by American Express

3. If necessary, the PGA Program will endeavor to secure and properly post bail bonds, where available, the bonding cost to be born by the Card member.

F. Other Emergency Transportation Services will be provided to covered Card members in a medical emergency:

1. If a Card member is traveling alone or with a child 16 years old or younger, or if a traveling companion who is not a Family Member has been required to leave the Card member, the PGA Program will arrange and pay for round trip, economy class transportation for a member of the Card member's family to travel to the place of treatment, if it is reasonably anticipated that the covered Card member will be hospitalized for ten (10) consecutive days or more. The PGA Program will not be responsible for the cost of the Family Member's meals or accommodations.

2. If the children covered under the PGA Program, who are 16 years old or younger, are left unattended at the time of the Card member's injury or sickness, the PGA Program will arrange and pay for one way economy-class transportation to return them to their principal residence. (Any additional costs are the responsibility of the Card member.) Should it be necessary for an attendant to accompany the children, the PGA Program will make arrangements for a qualified escort to accompany the children at no cost to the Card member

3. If a decision is made to evacuate a Card member to another Medical Service Facility, the PGA Program will arrange and pay for one-way, economy class, transportation for one other covered Family Member traveling with the Card member to the Card member's principal residence, provided that the other Family Member's ticket has become invalid as a result of the Card member's illness or injury

G. Emergency Message Transmission will be made through the best efforts of the PGA Program on behalf of and at the request of the sick or injured Card member to the Card member's immediate family, next of kin, and a reasonable number of business associates.

II. Help in Coordinating the Replacement of Identification Information if lost or stolen. Telephone numbers and addresses of banks or agencies that will be provided through the best efforts of the PGA Program, if these documents have been lost or stolen.

I. In Case of Death of a covered Card member or Family Member while traveling, the PGA Program will provide the necessary administrative services to effect the transportation of the mortal remains of the covered individual back to the Card member's principle place of residence or place of burial, whichever is closer, and will pay all administrative and transportation expenses, and, subject to PGA's approval, the cost of a coffin or other encasement of the remains suitable for travel.

**Note:** The above benefits may be limited or prevented by Act of God, war, civil commotion, labor disputes, unavailability of goods or services, or refusal of permission by local authorities. If you have any questions about the Premium Global Assist Program, please call the Customer Service number on the back of your Card.

### Important Instructions

- Always have your Account number ready when calling PGA
- Please note that the PGA must arrange all medical and covered Family Member's transportation. **PGA will not reimburse you for expenses you incur on your own.**
- Whenever possible, call collect from overseas. In some countries, long distance calls may require operator assistance and collect calls may not be possible in some countries
- When dialing direct, give a phone number and exact location (hotel, city, street, etc.) where you can be reached.

  \* *Does not apply to New York State residents*

  \*\* *Travel Service Locations of American Express Travel Related Services Company, Inc. its affiliates and representatives worldwide*

  \*\*\* *A pre-existing sickness, illness, or injury is any medical condition that has manifested itself, become acute, or was being treated in the 60-day period immediately prior to the start of a trip.*

## Return Protection

### Program Description

Return Protection offers you guaranteed product satisfaction on designated items purchased entirely with an eligible American Express Card. If you try to return a designated item within 90 days from the date of purchase and the merchant won't take it back, American Express will refund the full purchase price, up to $300 per item, excluding shipping and handling, and up to a maximum of $1,000 annually per Cardmember Account.

### How to File a Return Protection Request

Once you have verified that the merchant will not accept the designated item, call 1-800-297-8019 within 90 days of the purchase date to notify us of your request. Within 30 days from the date of your initial call, we need to receive the following

- Original store receipt
- American Express Card record of charge
- Any other items deemed reasonable by us to process your request

Once your request has been approved, you will be instructed to send the purchased item to us within 30 days. Please keep a record of your shipping statement, as you will need to provide proof of shipping in the event that your designated items are not received. You are responsible for the shipping and handling charges for the item. The refund – up to $300 per item and up to a maximum of $1,000 per Cardmember per year – will be reimbursed to you

### Limitations

Purchases must be made in the United States and charged in full on your Card. A refund will not be paid if, on the date we receive your Return Protection Request, or on the date of would-be payment, any amount on your Card Account is past due (for one or more billing cycle(s)) or your Card is canceled. Refunds are limited to $300 per designated item and $1,000 annually per Cardmember Account. The item must be in "like new" condition (not visibly used or worn) and in working order to be eligible. An item is eligible if it may not be returned by the Cardmember to the merchant from which it was originally purchased. Any item purchased from a merchant that has an established return/satisfaction guarantee program which is greater than or equal to the terms of Return Protection, and provides coverage for claim, will not be eligible for a Return Protection Refund. Product rebates, discounts or money received from lowest price comparison program, will be deducted from the original cost of the item. The maximum you will be compensated will not exceed the installment(s) completed retail price.

items not eligible for a refund are animals and living plants; consumable or perishable items with limited life spans (such as perfume, light bulbs, rechargeable batteries), jewelry (including, but not limited to, loose gems, precious stones, metals, and pearls), watches; services and additional costs (such as installation charges, warranties, shipping, or memberships); rare and precious coins; used, altered, rebuilt and refurbished items; custom-built items; cellular phones, pagers; compact discs, digital video discs, mini discs; audiotapes; videotapes; computer software; firmware (such as console games, Nintendo, etc.); maps; books of any kind; health care items (such as blood pressure machines and diabetes equipment); formal wear, tickets of any kind; motorized vehicles (such as cars, trucks, motorcycles, boats, or airplanes) and their parts, land and buildings; firearms; ammunition; negotiable instruments (such as promissory notes, stamps and travelers checks); cash and its equivalent; and items permanently affixed to home, office, vehicles, etc. (such as garage door openers, car alarms)

If you have any questions regarding a Return Protection Request or the Return Protection program, please call our Customer Service Department at 1-800-297-8019.

## Best Value Guarantee

### Program Description

Best Value Guarantee ensures that you pay the lowest price available on covered items purchased entirely with your eligible American Express Card.

Simply use the Card as you normally would, wherever American Express Cards are welcome. If within 60 days, you see an identical item to the one you purchased with the Card advertised in print (i.e., newspaper, magazine, periodical, journal, or store flyer) at a lower price than you originally paid, call 1-800-557-8317 to initiate a request for a refund. You will then be asked to send the dated advertisement, the store receipt and your record of charge to us within 90 days of your purchase. Price comparisons which are found on the Internet do not qualify under this program. We will gladly honor your request for a refund on a savings of $10 or more.

Once your request is approved we'll reimburse the price difference to you – up to $250 per item excluding taxes, shipping, and handling and limited to one refund request per item purchased

### Limitations

Purchases must be made in the United States and charged in full on your American Express Card. A refund will not be paid if, on the date of your request or on the date of would-be payment, any amount on your Card Account is past due (for one or more billing cycle(s)) or your Card Account is canceled. Refunds are limited to $250 per item and $1,000 annually per Card Account.

An identical item is defined as an item that is exactly equal and alike in every way. This includes, but is not limited to, the brand name, model number, materials, workmanship and any associated warranty with that item. Any items that are purchased from a store that already has an established lowest price guarantee program will not be covered under Best Value Guarantee. Store advertisements which reference a discount on all items or types of items do not qualify. For example, an advertisement stating "All store merchandise is 40% off" is not eligible under this program. Items which are sold as an inclusive special offer, such as, but not limited to, a "kit," "package deal" or "bundled item" are not eligible. For example, an advertisement which offers a camcorder with a free tripod and carrying case is not eligible under this program. Rebate and coupon offers are not eligible. Items which have been returned to the merchant are not eligible for coverage. Internet price comparisons refer to any and all electronic communications whose source includes, but is not limited to, websites, electronic mail, promotional facsimiles, or other distribution networks. This program does not apply to any advertisements dated before your purchase or more than 60 days after your purchase. You are entitled to one refund request per item during this timeframe.

Items not covered are animals and living plants, one-of-a-kind items (including antiques, artwork and furs), limited quantity items; items that the advertisement states can be purchased with cash only; demonstration items; going-out-of-business sales items; "discontinued" items; consumable or perishable items with limited life spans (such as, but not limited to, perfume, light bulbs, non-rechargeable batteries); jewelry including, but not limited to, loose gems, precious stones, metals, and pearls; watches; services and additional costs

(such as installation charges, warranties, shipping, taxes, or memberships); refurbished items, cellular phones, pagers, tickets of any kind, travelers checks; motorized vehicles (such as cars, trucks, motorcycles, boats, or airplanes) and their parts; land and buildings, negotiable instruments (such as promissory notes), cash and its equivalent.

If you have any questions regarding the Best Value Guarantee program, please call our Customer Service Department at 1-800-557-8317.

**Note:** Best Value Guarantee is currently not available to International Dollar Accounts within addresses in the continental U.S., Puerto Rico, or the U.S. Virgin Islands.

IN THE CIRCUIT COURT OF THE
ELEVENTH JUDICIAL CIRCUIT, IN AND
FOR MIAMI-DADE COUNTY, FLORIDA

EDWARD LIPUMA and RAFAEL A.
BERGOLLA, on Behalf of Themselves
and All Others Similarly Situated and
on Behalf of the General Public,

CASE NO: 03-19365 CA 09

CLASS REPRESENTATION

     Plaintiff,

v.

AMERICAN EXPRESS COMPANY, a New
York Corporation, AMERICAN EXPRESS
TRAVEL RELATED SERVICES COMPANY,
INC., a New York Corporation and AMERICAN
EXPRESS CENTURION BANK, a New
York Corporation,

     Defendants.

_____/

## PLAINTIFFS' FIRST REQUEST FOR PRODUCTION

Plaintiffs, by and through undersigned counsel and pursuant to Rule 1.350(a) of the Florida

Rules of Civil Procedure, request that Defendants produce and make available for inspection and

duplication, all documents and things specified herein which are in the possession, custody or control

of said Defendants and their agent(s) or attorney(s), as they are kept in their usual course of business,

or organized and labeled to correspond with the categories in this request, within thirty (30) days at

the offices of the undersigned.

## I. DEFINITIONS

1.    "Agreement" means "The Fidelity American Express® Cardmember Agreement

American Express Cardmembership," a copy of which is attached.

2.      "Arbitration Provision" means the provision entitled "Arbitration" in the Agreement.

3.      "Cardmember" has the same meaning as it has in the Agreement, but relates specifically, to the extent that is possible, to persons whose billing address is in the State of Florida.

4.      "Claim" or "Claims" has the same meaning as it has in the Agreement.

5.      "Class Action Provisions" means those provisions in the Agreement referring to class claims, including but not limited to the provisions that state:

(1)      "YOU WILL NOT HAVE THE RIGHT TO PARTICIPATE IN A REPRESENTATION CAPACITY OR AS A MEMBER OF ANY CLASS OF CLAIMANTS PERTAINING TO ANY CLAIM SUBJECT TO ARBITRATION."

(2)      "There shall be no right or authority for any Claims to be arbitrated on a class action basis or on bases involving Claims brought in a purported representative capacity on behalf of the general public, other Cardmembers or other persons similarly situated".

6.      "Documents" means any document or documents in your custody, possession, or control, including, but not limited to, any printed, written, records, taped, electronic, graphic, photographic, or other tangible matter from whatever source, however produced or reproduced, whether in draft or otherwise, whether sent or receiver or neither, including the original, all amendments and addenda and any nonidentical copy (whether different from the original because of notes made on or attached to such copy or otherwise) of any and all writings, correspondence, letters, telegrams, telex communications, cables, notes, notations, releases, agreements, contracts, books, pamphlets, studies, minutes of meetings, recordings, or other memorials of any type of personal or telephone conversations, meetings or conferences (including, but not limited to, telephone bills and long distance charge slips), reports, analyses, evaluations, estimates, projections, forecasts, receipts, statements, accounts, books of account, diaries, calendars, desk pads, appointment

2

books, stenographer's notebooks, transcripts, ledgers, registers, work-sheets, journals, statistical records, cost sheets, summaries, lists, tabulations, digests, cancelled or uncancelled checks or drafts, vouchers, charge slips, invoices, purchase orders, hotel charges, accountant's reports, financial statements, newspapers, periodical or magazine materials, and any material underlying, supporting or used in the preparation of any documents.

7.      "American Express" means the American Express Company and, where applicable, any predecessors and/or successors in interest, present and former parents, subsidiaries, divisions and affiliates, and present and former directors, employers, employees, attorneys, agents, other representatives and all other persons acting under their control or on their behalf.

8.      "General Purpose Cards" include credit cards and charge cards.

9.      "Credit Cards" means general purpose cards which give borrowers a revolving line of credit and let them borrow against it, carrying a balance with an agreed-upon interest rate.

10.     "Charge Cards" means general purpose cards which require a full payment of the charge by the due date.

11.     A "cardholder" is a person or business which has been issued a general purpose card.

12.     A "Florida cardholder" is a cardholder whose billing address is in the State of Florida.

13.     A "foreign currency transaction" is a transaction by a person, as defined herein, using a general purpose card to purchase goods and/or services in a foreign currency.

14.     A "foreign currency surcharge" is any fee levied by any Defendants to purchase goods and/or services in currencies of foreign countries ("foreign currency").

15.     "You" and "your" mean the defendant responding to these Requests, and, where applicable, any predecessors and/or successors in interest, present and former parents, subsidiaries,

3

divisions and affiliates, and present and former directors, employers, employees, attorneys, agents, other representatives and all other persons acting under their control or on their behalf.

16.    "Person" means natural persons, proprietorships, public or private corporations, partnerships, trusts, joint ventures, groups, associations, organizations or other legal entities, including representatives of any such person or persons.

17.    "Communication" means the transmission, sending and/or receipt of information of any kind by and/or through any means including, but not limited to speech, writings, language (computer, foreign or otherwise), computer electronics of any kind (including, but not limited to "e-mail"), magnetic tape, videotape, photographs, graphs, symbols, signs, magnetic and/or optical disks, "floppy disks," compact discs, CD-ROM discs, sound, radio and/or video signals, telecommunication, telephone, teletype, facsimile, telegram, microfilm, microfiche, photographic film of all type and/or other media of any kind.  The term "communication" also includes, without limitation, all "documents" (as defined herein) and all inquiries, discussions, conversations, negotiations, agreements, understandings, meetings, notices, requests, responses, demands, complaints, and/or press, publicity or trade releases.

18.    "Meeting," "meet," or "met" means any assembly, convocation, encounter, or contemporaneous presence of two or more persons for any purpose, whether planned or not planned, arranged or scheduled in advance during which a communication of any kind occurred and shall include, but not limited to, formal gatherings, conversations, video conferences, and telephone calls.

19.    "Marketing" or "market" means all activities involved in the distribution of a product including, without limitation, advertising, locating and contacting prospective customers, attempting to sell, making sales presentations, selling, preparing and submitting bids, shipping products,

4

servicing customers and the supervision and management of the same.

20.     Words used in the plural include the singular, and words used in the singular include the plural.

21.     The words "and" and "or" shall be used interchangeably and interpreted in the most inclusive manner possible.

## II. INSTRUCTIONS

1.     All documents shall be produced in the order they are kept in the ordinary course of business, and shall be produced in their original folders, binders, covers or containers, or facsimile thereof.

2.     These requests relate to all documents which are in your possession, custody or control.

3.     You shall produce the original of each document described below or if the original is not in your custody, then a copy thereof, and in any event, all non-identical copies which differ from the original or from the other copies produced for any reason, including, but not limited to, the making of notes thereon.

4.     If production of documents is withheld on the ground of privilege, as to each such withheld document provide the following information no later than the first date on which documents are produced:

        (1)     which privilege is claimed;

        (2)     a precise statement of the facts upon which said claim of privilege is based;

        (3)     the following information describing each purportedly privileged document:

                i.     Its nature, e.g., agreement, letter, memorandum, tape, etc.;

5

ii.    The date is was prepared;

iii.   The date it bears;

iv.    The date it was sent;

v.     The date it was received;

vi.    The identity of the person preparing it;

vii.   The identity of the person sending it;

viii.  The identity of each person to whom it was sent or was to have been sent, including all addresses and all recipients of copies; and

ix.    A statement as to whom each identified person represented or purported to represent at all relevant times; and

d.    a description of the place where each copy of that document is kept, including the title or description of the file in which said document may be found and the location of such file.

4.    Documents shall be produced in such fashion as to identify the department, branch or office in whose possession they were located and, where applicable, the natural person in whose possession they were found and the business address of each document's custodian(s).

5.    Whenever a document is not produced in full or is produced in redacted form, so indicate on the document and state with particularity the reasons or reasons it is not being produced in full and describe with particularity those portions of the document which are not being produced.

6.    If a document responsive to these requests was at any time in your possession, custody or control but is no longer available for production, as to each such document state the following information:

A.    Whether the document is missing or lost;

B.    Whether the document has been destroyed;

6

C.     Whether the document has been transferred or delivered to another person and if so, at whose request;

D.     Whether the document has been otherwise disposed of; and

E.     The circumstances surrounding the disposition of the document and the date of its disposition.

8.     No document request shall be construed to include individual transactional documents, unless otherwise specified.

### III.  RELEVANT TIME PERIOD

Unless otherwise indicated, these requests relate to the period between January 1, 1998 and the present (the "relevant time period").  Your responses should reflect information for that entire period.  Where your responses relate to only a portion of that period, indicate the date or dates to which your response relates.

### IV.  REQUESTS FOR THE PRODUCTION OF DOCUMENTS AND THINGS

REQUEST NO. 1:

Documents sufficient to identify the job descriptions and identities of all persons whose duties include supervisory or policy-making responsibilities relating to any foreign currency surcharge.

REQUEST NO. 2:

All documents, regardless of date, relating to any meeting of your Board of Directors, operations committee(s), security committee(s), executive committee(s), or any other committee(s), sub-committees, working groups or any other group during which any foreign currency surcharge was discussed, reviewed or referenced, including but not limited to all

7

meeting notes, agendas, presentations, summaries and or minutes, including all supporting materials referenced in such documents.

REQUEST NO. 3:

All documents, regardless of date, created during the period that any foreign currency surcharge has been levied on cardholders, relating to your policies with respect to foreign currency transactions by your cardholders, including but not limited to the creation and imposition of any related fees and/or charges.

REQUEST NO. 4:

All documents concerning your decision to create and impose your foreign currency surcharge.

REQUEST NO. 5:

All documents, regardless of date, which identify or discuss any agreement regarding your foreign currency surcharge.

REQUEST NO. 6:

Documents sufficient to identify the date on which you commenced charging your cardholders a foreign currency surcharge.

REQUEST NO. 7:

All documents relating to any meeting concerning the decision to impose and the implementation of your foreign currency surcharge.

REQUEST NO. 8:

Documents sufficient to identify the manner in which you notified and or informed any of your cardholders of your imposition of bank foreign currency surcharge.

8

REQUEST NO. 9:

All documents which identify or describe your policies and procedures governing any foreign currency surcharge.

REQUEST NO. 10:

Without regard to date, all documents which identify or relate to any complaints and/or criticisms made to you by any Florida cardholders about any foreign currency surcharge.

REQUEST NO. 11:

All documents which identify or describe your policies and procedures governing any foreign currency surcharge transactions, including the conversion of foreign currency into United States dollars.

REQUEST NO. 12:

Documents sufficient to identify your policies and procedures concerning the settlement and payment or credit to you of your foreign currency surcharge.

REQUEST NO. 13:

All documents, not otherwise responsive to any other request, relating to your policies concerning your foreign currency surcharge.

REQUEST NO. 14:

All documents which identify or relate to any complaints and/or criticisms made to you by any of your Florida cardholders about your foreign currency surcharge.

REQUEST NO. 15:

All documents, not otherwise responsive to any other request, relating to any communications between you and any person, other than a cardholder, concerning any foreign

LAW OFFICES KOZYAK TROPIN & THROCKMORTON, P.A.

2800 WACHOVIA FINANCIAL CENTER, 200 SOUTH BISCAYNE BOULEVARD, MIAMI, FLORIDA 33131 • TEL. (305) 372-1800

currency surcharge.

REQUEST NO. 16:

Documents sufficient to identify any promotional, marketing and/or advertising materials that disclose the foreign currency surcharge, including but not limited to letters, brochures, advertisements, newsletters, solicitations, disclosure statements or similar documents.

REQUEST NO. 17:

All documents which identify, describe or refer to any and all agreements you have with third parties concerning the authorization, processing, settlement, billing, management and/or review of foreign currency transactions.

REQUEST NO. 18:

Documents sufficient to demonstrate the processing of a foreign currency transaction.

REQUEST NO. 19:

All documents which identify or describe your policies concerning the conversion of a monetary amount in a foreign currency into U.S. dollars for the purpose of authorizing, processing, settling, billing, managing and/or reviewing a foreign currency transaction.

REQUEST NO. 20:

Documents sufficient to identify all costs incurred by you relating to foreign currency transactions by your cardholders which are in addition to any costs incurred by you in processing a transaction in the United States.

REQUEST NO. 21:

Documents sufficient to identify the costs incurred by you relating to the prevention and/or occurrence of fraud in foreign currency transactions, including but not limited to any

10

losses suffered by you.

REQUEST NO. 22:

Documents sufficient to identify the interchange rate or any other fee (other than the foreign currency surcharge) charged and/or paid by you on foreign currency transactions.

REQUEST NO. 23:

All of your annual and five-year plans which relate to or address your credit card operations for the period from January 1, 1998 to the present.

REQUEST NO. 24:

All documents, including but not limited to all reports, reviews, evaluations, audits, investigations, studies, forecasts, memoranda, correspondence, data compilations and/or other similar documents, relating to any research or other analyses conducted by or prepared for you (by consultants or anyone else) to determine:

a.     The number of cardholder foreign currency transactions, including the geographic location of such foreign currency transactions;

b.     The dollar volume of cardholder foreign currency transactions, including the dollar:

volume organized by geographic location of such foreign currency transactions; and

c.     The gross revenue and profits derived from cardholder foreign currency transactions.

REQUEST NO. 25:

All documents, including but not limited to all reports, reviews, evaluations, audits, investigations, studies, forecasts, memoranda, correspondence, data compilations and/or other

11

similar documents, relating to any research or other analyses conducted by or prepared for you (by consultants or anyone else) to determine:

    a.    The number of Florida cardholder foreign currency transactions; location of such foreign currency transactions;

    b.    The dollar volume of Florida cardholder foreign currency transactions, and

    c.    The gross revenue and profits derived from Florida cardholder foreign currency transactions, including the amount of gross revenue organized by geographic location of such foreign currency transactions.

REQUEST NO. 26:

    For each year of the relevant time period, documents sufficient to identify your gross revenue, operating profit and net profit margins after all costs, except interest, taxes, depreciation and amortization, for the following:

    a.    Your foreign currency surcharge;

    b.    Late fees;

    c.    Over limit fees; and

    d.    Any other fee charged to cardholders.

REQUEST NO. 27:

    All documents, including but not limited to all reports, reviews, evaluations, audits, investigations, studies and/or similar documents, relating to any research or other analyses prepared by Profit Technologies Corporation concerning the foreign currency surcharge.

REQUEST NO. 28:

    All documents, not otherwise responsive to any other request, relating to any research or

12

other analyses prepared by any outside accounting, auditing or consulting firm, or any other person, concerning any foreign currency surcharge, including but not limited to all reports, reviews, evaluations, audits, investigations, studies and/or other similar documents.

REQUEST NO. 29:

All documents which identify or describe your policies relating to the pricing or other methods used for determining the amount of any foreign currency surcharge levied on cardholders.

REQUEST NO. 30:

Without regard to date, documents sufficient to identify your policy or policies during the period that any foreign currency surcharge has been levied on cardholders, with respect to the retention of documents, including, without limitation, any data stored in computer readable form.

REQUEST NO. 31:

All documents received, served or filed by you in any case in which a foreign currency surcharge was at issue.

REQUEST NO. 32:

Documents sufficient to identify the computer systems you use to store, compose, distribute or route electronic mail.

REQUEST NO. 33:

Documents sufficient to identify and describe all non-program files and computer systems you use to record, store, compute, analyze or retrieve any information referring to or relating to the assessment of any foreign currency surcharge.

13

REQUEST NO. 34:

For each computer system identified in response to the proceeding two Requests, documents sufficient to identify each person who administers that system.

REQUEST NO. 35:

Each form of cardholder agreement containing a foreign currency surcharge.

REQUEST NO. 36:

All documents requested to be identified in, or used to answer, Plaintiffs' First Set of Interrogatories.

REQUEST NO. 37:

Documents describing the way that the Agreement is provided to consumers in Florida.

REQUEST NO. 38:

All documents describing your policies concerning a Cardmember's or prospective Cardmember's ability to negotiate or modify the terms of the Agreement.

REQUEST NO. 39:

Documents describing your policies concerning your ability to negotiate or modify the terms of the Agreement.

REQUEST NO. 40:

All documents describing or relating to the meaning, intent, policies, and goals regarding the Arbitration Provision.

REQUEST NO. 41:

All documents describing or relating to the meaning, intent, policies, and goals regarding the Class Action Provisions.

14

REQUEST NO. 42:

All documents describing or relating to the nature and amounts of any claims regarding a foreign currency surcharge.

REQUEST NO. 43:

All documents relating to any arbitrations that have occurred regarding a foreign currency surcharge.

REQUEST NO. 44:

All documents relating to any court cases that have occurred regarding a foreign currency surcharge.

REQUEST NO. 45:

All documents relating to your policies with respect to (a) imposing fees, late charges or surcharges on cardholders, and (b) informing cardholders of such fees, charges or surcharges.

Respectfully submitted this ⅃3 day of September 2003.

KOZYAK TROPIN & THROCKMORTON, P.A.
200 South Biscayne Boulevard, Suite 2800
Miami, Florida 33131
Telephone: (305) 372-1800/Facsimile: (305) 372-3508

By: _____
         Adam M. Moskowitz, FBN: 984280
         Thomas A. Tucker Ronzetti, FBN: 965723

GARWIN, BRONZAFT, GERSTEIN & FISHER, LLP
Bruce E. Gerstein, Esq.
Kevin Landau, Esq.
1501 Broadway, Room 1416
New York, New York 10036

15

## CERTIFICATE OF SERVICE

WE HEREBY CERTIFY that a true and correct copy of the above and foregoing was

mailed by regular U.S. Mail to: Richard Simring, Esq., Stroock & Stroock & Lavan LLP, 200

South Biscayne Boulevard, 3160 Wachovia Financial Center, Miami, Florida 33131-2385 on this

23 day of September, 2003.

By: _____

3224 101 228881 1

16

IN THE CIRCUIT COURT OF THE
ELEVENTH JUDICIAL CIRCUIT, IN AND
FOR MIAMI-DADE COUNTY, FLORIDA

EDWARD LIPUMA and RAFAEL A.
BERGOLLA, on Behalf of Themselves
and All Others Similarly Situated and
on Behalf of the General Public,

CASE NO: 03-19365 CA 09

CLASS REPRESENTATION

        Plaintiff,

v.

AMERICAN EXPRESS COMPANY, a New
York Corporation, AMERICAN EXPRESS
TRAVEL RELATED SERVICES COMPANY,
INC., a New York Corporation and AMERICAN
EXPRESS CENTURION BANK, a New
York Corporation,

        Defendants.

_____/

## PLAINTIFFS' FIRST SET OF INTERROGATORIES

Plaintiffs hereby propound their First Set of Interrogatories to Defendants to be answered

under oath within (30) thirty days in accordance with Rule 1.340 of the Florida Rules of Civil

Procedure.

Respectfully submitted this _25_ day of September 2003.

**KOZYAK TROPIN & THROCKMORTON, P.A.**
200 South Biscayne Boulevard, Suite 2800
Miami, Florida 33131
Telephone: (305) 372-1800/Facsimile: (305) 372-3508

By: _____

    Adam M. Moskowitz, FBN: 984280
    Thomas A. Tucker Ronzetti, FBN: 965723

## I.   DEFINITIONS OF TERMS AND INSTRUCTIONS

Plaintiffs incorporate by reference, as if fully set forth herein, the Definitions and Instructions as set forth in Plaintiffs' First Request for the Production of Documents.

As an additional instruction, whenever in these Interrogatories there is a request to "identify," "please identify" or "set forth the identity" of an individual, state with respect to such individual: (1) his name; (2) his current business and home addresses, or, if they cannot be ascertained, his last known business and home addresses; (3) his current employer and his current position or title, or, if that cannot be ascertained, his last known employer and his last known position or title.

## II.   RELEVANT TIME PERIOD

Unless otherwise indicated, these interrogatories relate to the period between January 1, 1998 through the present (the "relevant time period"). Your responses should reflect information for that entire period. Where your responses relate to only a portion of that period, indicate the date or dates to which your response relates.

## III. **INTERROGATORIES**

INTERROGATORY NO. 1:

Explain the circumstances where an American Express cardholder is assessed a foreign currency surcharge.

3

INTERROGATORY NO. 2:

Explain how you determine and calculate the amount of a foreign currency surcharge. Please provide an example of such a calculation, identifying all variables.

4

<u>INTERROGATORY NO. 3:</u>

Explain each circumstance when you notify an American Express cardholder about being assessed a foreign currency surcharge, and describe in detail how you notify the cardholder.

5

INTERROGATORY NO. 4:

State how much American Express has assessed in foreign currency surcharges from Florida cardholders, month by month, from January 1, 1998 to the present.

6

INTERROGATORY NO. 5:

For each of the past 5 years, state the number of Florida cardholders who have been assessed a foreign currency surcharge.

7

INTERROGATORY NO. 6:

Identify each of your current and former officers, directors, employees or agents having any policy-making responsibilities for any foreign currency surcharge assessed upon any American Express cardholder, and for each state the time period that person held that job position.

8

INTERROGATORY NO. 7:

Do you permit Florida cardholders to modify the written terms of the Agreement? If so, state each written term you permit Florida cardholders to modify, and identify each Florida cardholder that has received a modification.

INTERROGATORY NO. 8:

Identify each Florida cardholder who has made a claim regarding the foreign currency surcharge.

LAW OFFICES KOZYAK TROPIN & THROCKMORTON, P.A.

2800 WACHOVIA FINANCIAL CENTER, 200 SOUTH BISCAYNE BOULEVARD, MIAMI, FLORIDA 33131 • TEL (305) 372-1800

INTERROGATORY NO. 9:

Identify each person who contributed any information to answer these interrogatories, and for each state the information that person provided.

11

I, _____ _____, SWEAR UNDER PENALTY OF PERJURY THAT

THE FOREGOING ANSWERS TO INTERROGATORIES ARE TRUE AND CORRECT.

DATED: _____, 2003.

SIGNATURE

_____

TITLE

_____

NOTARY:

12

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true copy of the foregoing was served this 25 day of September, 2003 on: Richard E. Landman, Esq., Stroock & Stroock & Lavan LLP, 200 South Biscayne Boulevard, 3160 Wachovia Financial Center, Miami, Florida 33131-2385

Thomas A. Tucker Ronzetti, Esq.

3224/101/228567.1

13

IN THE CIRCUIT COURT OF THE
11th JUDICIAL CIRCUIT, IN AND FOR
MIAMI-DADE COUNTY, FLORIDA

GENERAL JURISDICTION DIVISION

CASE NO. 03-19365 CA 09

EDWARD LIPUMA and
RAFAEL A. BERGOLLA, on Behalf
of Themselves and All Others Similarly
Situated and on Behalf of the General Public,

     Plaintiffs

v.

AMERICAN EXPRESS COMPANY, a
New York Corporation, AMERICAN EXPRESS
TRAVEL RELATED SERVICES, INC., a
New York Corporation and AMERICAN
EXPRESS CENTURION BANK, a New York
Corporation,

     Defendants.

     _____/

## NOTICE OF APPEARANCE

  **PLEASE TAKE NOTICE** that the law firm of Stroock & Stroock & Lavan LLP enters

its appearance as counsel for defendants and requests that copies of all correspondence,

pleadings and any and all documents filed in this action be served upon it at the address listed below.

STROOCK & STROOCK & LAVAN LLP
Counsel for Defendants
200 South Biscayne Boulevard
3160 Wachovia Financial Center
Miami, Florida 33131-2385
Telephone: (305) 358-9900
Facsimile: (305) 789-9302

By: _____
Richard B. Simring
Florida Bar No. 890571
Rsimring@stroock.com
Richard E. Landman
Florida Bar No. 149713
Rlandman@stroock.com

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that a true and correct copy of the foregoing was served by facsimile and U.S. mail this 11th day of September, 2003, on **Adam M. Moskowitz, Esq. and Thomas A. Tucker Ronzetti, Esq.**, Kozyak Tropin & Throckmorton, P.A., 200 South Biscayne Boulevard, Suite 2800, Miami, FL 33131, **Bruce E. Gerstein, Esq. and Kevin Landau, Esq.**, Garwin, Bronzami, Gerstein & Fisher, LLP, 1501 Broadway, Room 1416, New York, NY 10036.

_____
Richard E. Landman

2

STROOCK & STROOCK & LAVAN LLP · MIAMI · NEW YORK · LOS ANGELES
WACHOVIA FINANCIAL CENTER, 200 SOUTH BISCAYNE BLVD., MIAMI, FL 33131-2385
TEL 305 358 9900 FAX 305 789 9302 WWW.STROOCK.COM

IN THE CIRCUIT COURT OF THE
11th JUDICIAL CIRCUIT IN AND
FOR MIAMI-DADE COUNTY,
FLORIDA

EDWARD LIPUMA, on Behalf of Himself          CASE NO: 03-19365 CA 09
and All Others Similarly Situated and
on Behalf of the General Public,             CLASS REPRESENTATION

       Plaintiff,

v.

AMERICAN EXPRESS COMPANY, a New
York Corporation, et al.                     

       Defendants.
_____/

## PLAINTIFF RAFAEL BERGOLLA'S
## NOTICE OF VOLUNTARY DISMISSAL WITHOUT PREJUDICE

Plaintiff, Rafael Bergolla, through undersigned counsel and pursuant to Florida Rule of Civil

Procedure 1.420(a)(1)(A), hereby voluntary dismisses his claims in this action without prejudice.

Respectfully submitted this $10$ day of February 2004.

       KOZYAK TROPIN & THROCKMORTON, P.A.
       Attorneys for Plaintiff
       2800 Wachovia Financial Center
       200 South Biscayne Boulevard
       Miami, Florida 33131-2335
       Telephone:   (305) 372-1800/Telecopier:(305) 372-3508

       By:_____
         Adam M. Moskowitz, FBN: 984280
         Thomas A. Tucker Ronzetti, FBN: 965723

       and

GARWIN, BRONZAFT, GERSTEIN & FISHER, L.L.P.
Bruce E. Gerstein, Esq.
Kevin Landau, Esq.
1501 Broadway - Room 1416
New York, New York 10036
Tel: (212) 398-0055
Fax:(212) 764-6620

Of Counsel -

BALLON STOLL BADER & NADLER, P.C.
Irving Bizar, Esq.
1450 Broadway, 14th Floor
New York, New York 10018
Tel: (212) 575-7900
Fax: (212) 764-5060

## CERTIFICATE OF SERVICE

WE HEREBY CERTIFY that a true and correct copy of the above and foregoing was

faxed and mailed by regular U.S. Mail to: Richard Simring, Esq., Stroock & Stroock & Lavan

LLP, 200 South Biscayne Boulevard, 3160 Wachovia Financial Center, Miami, Florida 33131-

2385; and  Julia B. Strickland, Esq. and Scott M. Pearson, Esq., Stroock & Stroock & Lavan

LLP, 2029 Century Park East, Floors 16 & 18, Los Angeles, California 90067-3086, on this 10

day of February 2004.

By: _____

3224/101/235465.1

2

IN THE CIRCUIT COURT OF THE
ELEVENTH JUDICIAL CIRCUIT, IN
AND FOR MIAMI-DADE COUNTY,
FLORIDA

EDWARD LIPUMA, on Behalf of Himself
and All Others Similarly Situated and
on Behalf of the General Public,

CASE NO: 03-19365 CA 09

CLASS REPRESENTATION

     Plaintiff,

v.

AMERICAN EXPRESS COMPANY, a New
York Corporation, et al.,

     Defendants.

_____/

### PLAINTIFF'S NOTICE OF FILING FIRST AMENDED COMPLAINT AND DEFENDANTS' CONSENT TO AMENDMENT

Plaintiff, through undersigned counsel and pursuant to Florida Rule of Civil Procedure

1.190(a), hereby files the attached First Amended Complaint and Defendants' Consent to

Amendment.

Respectfully submitted, this _10_ day of February, 2004.

KOZYAK TROPIN & THROCKMORTON, P.A.
*Attorneys for Plaintiff*
200 South Biscayne Boulevard, Suite 2800
Miami, Florida 33131
Telephone: (305) 372-1800/Facsimile:  (305) 372-3508

By: _____

     Adam M. Moskowitz, FBN: 984280
     Thomas A. Tucker Ronzetti, FBN: 965723
     John Gravante, III, FBN: 617113

3224 101 234016 1

LAW OFFICES KOZYAK TROPIN & THROCKMORTON, P.A.
2800 WACHOVIA FINANCIAL CENTER 200 SOUTH BISCAYNE BOULEVARD MIAMI FLORIDA 33131 • TEL (305) 372-1800

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the above and foregoing was faxed and mailed by regular U.S. Mail to: Richard Simring, Esq., Stroock & Stroock & Lavan LLP, 200 South Biscayne Boulevard, 3160 Wachovia Financial Center, Miami, Florida 33131-2385; and Julia B. Strickland, Esq. and Scott M. Pearson, Esq., Stroock & Stroock & Lavan LLP, 2029 Century Park East, Floors 16 & 18, Los Angeles, California 90067-3086 on this *10* day of February, 2004.

By: _____

## DEFENDANTS' CONSENT TO AMENDMENT

Pursuant to Florida Rule of Civil Procedure 1.190(a), Defendants consent to the Plaintiffs'

filing of the First Amended Complaint, on this ___9___ day of February, 2004.

> **STROOCK & STROOCK & LAVAN LLP**
> *Attorneys for Defendants*
> 200 South Biscayne Boulevard
> 3160 Wachovia Financial Center
> Miami, Florida 33131
> Telephone: (305) 358-9900/Facsimile: (305)789-9302
>
> By: _____
>     Richard B. Simring, FBN: 890571
>     Richard E. Landman, FBN: 149713

Of counsel:

**Julia B. Strickland, Esq.**
**Scott M. Pearson, Esq.**
**Stroock & Stroock & Lavan LLP**
**2029 Century Park East, Floors 16 & 18**
**Los Angeles, California 90067-3086**

IN THE CIRCUIT COURT OF THE
11th JUDICIAL CIRCUIT IN AND
FOR MIAMI-DADE COUNTY,
FLORIDA

EDWARD LIPUMA, on Behalf of Himself
and All Others Similarly Situated and
on Behalf of the General Public,

     Plaintiff,

v.

AMERICAN EXPRESS COMPANY, a New
York Corporation, et al.

     Defendants.

_____/

CASE NO: 03-19365 CA 09

CLASS REPRESENTATION

THE ORIGINAL FILED
ON FEB 1 0 2004

## FIRST AMENDED COMPLAINT

1.    Plaintiff, Edward LiPuma, on behalf of himself and all others similarly situated and on behalf of the general public, by and through his undersigned attorneys, brings this action against defendants American Express Company, American Express Travel Related Services, Inc., and American Express Centurion Bank (collectively, "American Express"), and hereby alleges the following

### INTRODUCTION AND OVERVIEW

2.    This is a civil action seeking restitution, damages, injunctive relief and other relief arising out of the unlawful foreign currency conversion practices of American Express, including imposing a hidden 2% transaction fee on its cardholders for purchases of goods or services which are denominated in non-U.S. currency.  Despite the fact that American Express touts the "global acceptance" of its cards that "open[] doors for cardholders at millions of establishments . . . around

3224 101 215454 1

e world," American Express never discloses the existence or amount of this fee (referred to herein

the "foreign currency transaction fee") in cardholder billing statements or its applications or

licitations to prospective cardholders. Indeed, American Express actively conceals the foreign

urrency transaction fee from its cardholders by embedding the amount of the fee in the transaction

mount, which is shown on the cardholder's bill in U.S. dollars. Thus, because the 2% fee and the

ansaction are combined on the cardholder's bill, there is no indication on the billing statement that

American Express imposes the foreign currency transaction fee. American Express also fails to

dequately disclose the foreign currency conversion rates it applies to transactions.

**JURISDICTION AND VENUE**

3.      This Court has jurisdiction over this action pursuant to Florida Statutes § 26.012.

4.      Venue is proper in Miami-Dade County (the "County") pursuant to Florida Statutes

§ 47.051. The defendants are foreign corporations doing business in the State of Florida, and

nationwide. Upon information and belief, the defendants have an agent or representative in the

County, and the cause of action accrued in the County. The defendants issue credit cards in

substantial numbers to residents of the County and acquire transactions from a substantial number

of merchants in the County, and have collected a substantial amount of the foreign currency

transaction fees from cardholders in the County.

**PARTIES**

5.      Plaintiff Edward LiPuma is a resident of the State of Florida and of the County of

Miami-Dade. Plaintiff also brings this action as representative of the proposed class defined herein.

Plaintiff incurred charges in foreign currency transaction fees using his American Express cards

within the four years preceding this complaint and was charged by and paid foreign currency

LAW OFFICES KOZYAK TROPIN & THROCKMORTON, P A

WACHOVIA FINANCIAL CENTER 200 SOUTH BISCAYNE BOULEVARD, MIAMI, FLORIDA 33131 • TEL (305) 372-1800

transaction fees to American Express.

6.    Defendant American Express Company is a New York corporation doing business in the State of Florida and the County of Miami-Dade.  American Express Company has major operations facilities in South Florida.

7.    Defendant American Express Travel Related Services, Inc., a wholly owned subsidiary of American Express Company, is a New York corporation doing business in the State of Florida and the County of Miami-Dade.

8.    Defendant American Express Centurion Bank, a wholly owned subsidiary of American Express Company, is a Utah corporation doing business in the State of Florida and the County of Miami-Dade.

9.    At all times mentioned in the complaint, each of the defendants was an agent of each and every other defendant.  In doing the things alleged in this complaint, each defendant was acting within the course and scope of this agency and was acting with the consent, permission and authorization of each of the other defendants.

## FACTUAL ALLEGATIONS

10.    American Express issues credit and charge cards to the general public.  In order to facilitate its business, American Express contracts with merchants worldwide to recognize American Express cards as a valid method of payment for their goods and services.

11.    An American Express cardholder can use their card to purchase goods and services in two ways.  A cardholder can use the line of credit extended by American Express or its agent or agree to pay American Express at a later date, usually determined by receipt of a bill from American

LAW OFFICES KOZYAK TROPIN & THROCKMORTON, P.A.
FINANCIAL CENTER 200 SOUTH BISCAYNE BOULEVARD  MIAMI, FLORIDA 33131 • TEL (305) 372-1800

Express.[1]

12.     One of American Express's primary selling points to its members as a benefit of cardmembership is its global ubiquity.  In promotional materials, American Express claims, "no matter where you go, a network of 1700 offices in 130 countries is there to help."  Similarly, American Express touts its cards' "Global Acceptance", which "opens doors for [cardmembers] at millions of establishments . . . around the world."

13.     Similarly, American Express actively markets the utility of the card when traveling abroad.  For example, regarding the "Benefits of the Platinum Card", American Express explains "You never travel alone with American Express."  "Whether traveling around the world or just around the corner, your Platinum Card is an essential tool."  Platinum members are entitled to such benefits as "special privileges and amenities at more than 495 hotels and resorts around the world," "discounted overseas cell phone rental" and "travel emergency assistance" which can, *inter alia*, "quickly refer you to English-speaking medical and legal professionals . . . arrange for a translator, put you in contact with the nearest U.S. Embassy or Consulate . . . ."

14.     American Express also touts the benefits of its other cards to those who travel internationally.  For example, Green and Gold card holders have access to "Global Assist Plus Hotline," "emergency check cashing" "at more than 1,700 American Express Travel service locations worldwide," "Express Cash," which allows access to a line of credit "24 hours a day at more than 500,000 ATMs worldwide," and "emergency card replacement."

15.     A reasonable American Express cardmember would believe that use of his card

---

[1] The American Express cards referenced in this complaint include both charge cards, e.g. the green card, gold card, platinum card, and credit cards, e g  the blue card and Optima card.

LAW OFFICES PODHURST ORSECK & THROCKMORTON, P A
2800 WACHOVIA FINANCIAL CENTER  200 SOUTH BISCAYNE BOULEVARD  MIAMI, FLORIDA 33131 • TEL (305)372-1800

internationally to, *inter alia*, pay for his hotel room, meals, and other goods and services, will not cause him to incur any fee unless he is told otherwise in the card application, solicitations and/or billing statements. However, this is not the case. American Express imposes a hidden 2% foreign currency transaction fee on its cardmembers for purchases of goods and services which are denominated in non-U.S. currency.

16.     American Express cards can be used to make purchases in foreign currency without requiring cardholders to furnish any foreign currency to the merchant. Instead, the cardholder can remit payment in the U.S. dollar equivalent of the purchase to American Express.

17.     On the date a cardholder makes a foreign purchase, American Express converts the purchase amount from foreign currency into U.S. dollars using an exchange rate which American Express unilaterally determines and which is not adequately disclosed. After converting the amount of the foreign charge to U.S. dollars, American Express adds a 2% foreign currency transaction fee, which it embeds in the transaction amount in U.S. dollars where it is invisible to consumers. Nowhere in the cardholder billing statement does American Express disclose how it selects conversion rates, the amount of the foreign currency transaction fee, or the fact that it is imposing such a fee. This hidden foreign currency transaction fee is the only fee that is fixed in the transaction amount in this manner.

18.     The business practice of embedding or hiding the foreign currency transaction fee in the transaction amount on billing statements misleads consumers as to the existence and amount of any foreign currency transaction fee because the fee is concealed. American Express has the capability necessary to disclose its currency conversion methodology and the foreign currency transaction fee on its billing statements. The monthly billing statement is the most relevant

LAW OFFICES KOZYAK TROPIN & THROCKMORTON, P.A.
2525 PONCE DE LEON, FINANCIAL CENTER, 200 SOUTH BISCAYNE BOULEVARD, MIAMI, FLORIDA 33131 • TEL (305) 372-1800

ocument received by cardholders when it comes to communicating the amount of charges imposed

y American Express for the use of the card to purchase goods and services. Consumers expect that

fees are to be charged for the use of the card, those fees will be disclosed on the billing statements.

onsumers are very likely to notice, attend to, comprehend and retain information on billing

tatements which are mailed regularly to cardholders and contain information that consumers know

s important to their economic interests. American Express strips the cardholders of the best

pportunity to notice and retain information associated with its foreign currency conversion practices

y failing to disclose these practices, including the fee's existence and or amount of the fee, on

monthly bills. Without such notice, the consumer is likely to believe, among other things, that the

foreign currency transaction fee was the result of variations in exchange rates.

19.     Additionally, American Express solicits cardholders and potential cardholders

through numerous advertisements, applications, and direct mailings. While American Express

discloses in these applications and direct mailings applicable charges and fees that prospective

cardholders may incur when using the card, such as late payment fees up to 2.9%, 3% transaction

fee on "Express Cash" service transactions, and fees charged by third party service providers

affiliated with the "Global Assist Hotline," no mention is made of the foreign currency transaction

fee and the methodology for selecting foreign exchange rates. Consumers reviewing solicitations

are likely to focus particular attention on terms relating to costs, charges and fees when comparing

card plans. Consumers often review credit and charge card solicitations when making a decision

whether to apply for a particular card and to compare the advantages and costs of competing card

products. Consumers would more likely become informed of American Expresses' foreign currency

conversion practices if they were disclosed on solicitations and applications.

LAW OFFICES KOZYAK TROPIN & THROCKMORTON, P A.
                 NATIC AL CENTER  200 SOUTH B SCAYNE BOULEVARD  MIAMI, FLORIDA 33131 · TEL (305) 372-1800

20.    Indeed, Congress, in an amendment to the Truth In Lending Act, requires card issuers to disclose certain costs of credit in solicitations in what is known as a "Schumer box." Schumer boxes provide for the disclosure of purchase transaction fees. The Schumer box would be a logical place for American Express to disclose the foreign currency transaction fee because that fee is imposed on each foreign purchase.

21.    Moreover, even on its website American Express offers as a "Travel Tool[]" a "currency converter" which converts U.S. dollars to various foreign currencies using the Interbank rate. While American Express states that the converter should be used as a "guide only," cardholders are instructed to call their "local American Express travel office for the latest rates." No mention is made in the "Travel Tool" that American Express will add on a 2% foreign transaction fee.

22.    Multiple disclosures of information to consumers are important to ensuring effective communication of a particular message. Disclosure of the foreign currency transaction fee in billing statements, solicitations, and cardholder applications would more likely succeed in informing cardholders about foreign currency transaction fees. However, the only time that the cardholder is notified of the foreign currency transaction fee's existence or American Express's Conversion practices is in fine print in the middle of the lengthy and verbose American Express Cardmember Agreement.

23.    It is important for consumers to know American Express' foreign currency conversion methodology and of the existence and amount of American Express' foreign currency transaction fee. The fee directly affects the cost of using an American Express card to purchase goods or services in a foreign currency. The foreign currency transaction fee charged by American Express may be the most significant fee charged by a consumer when he uses his card to purchase goods and services

LAW OFFICES KOZYAK TROPIN & THROCKMORTON, P.A.
2800 WACHOVIA FINANCIAL CENTER, 200 SOUTH BISCAYNE BOULEVARD, MIAMI, FLORIDA 33131 • TEL (305) 372-1800

in a foreign currency.

24.     American Express misleads its cardholders and potential cardholders by failing to disclose the foreign currency transaction fee and its foreign currency conversion methodology.  The foreign currency transaction fee is designed and implemented so that the it will be paid by, but concealed from, American Express cardholders.  The foreign currency transaction fee charged to cardholders by American Express is the only fee which it embeds in the transaction amount and which is not separately itemized on the billing statement.  Concealing the foreign currency transaction fee and the methodology for selecting foreign exchange rates causes or is likely to cause injury to consumers and to competition.  Consumers cannot make informed decisions without adequate information about American Express' foreign currency conversion practices, and American Express' business practice of concealing the foreign currency fees and rates deprives consumers of price information, to their injury and to the injury of the competitive process.

25.     There is no social or other benefit to obscuring foreign currency transaction fees by embedding them, unnoticed, in the billed transaction amount, and certainly no benefit which would outweigh the injury to consumers and to the competitive process.

## AMERICAN EXPRESS' UNCONSCIONABLE LIMITATION OF REMEDIES IN CARDHOLDER AGREEMENTS

26.     In its cardholder agreements, American Express imposes unconscionable limitations on liability and arbitration provisions ("legal remedies limitations") in an attempt to eviscerate consumers' ability to obtain redress in violation of Florida law, which prohibits the imposition of such unconscionable terms in contracts.

27.     American Express' legal remedies limitations are unlawful, unconscionable and

unenforceable as against public policy. The legal remedies limitations are procedurally and substantively unconscionable in scope, operation and effect. Consumers have no meaningful choice with respect to the legal remedies limitations because they are not presented with them until after they have applied for the cards. The legal remedies limitations are not set forth on the cards. Rather, the legal remedies limitations are presented on a take-it-only basis as part of a series of non-negotiated adhesionary terms in dense policy cardholder agreements that cardholders are unlikely to read or retain. Thus, the legal remedies limitations are effectively hidden from consumers and are included in pre-determined terms and conditions drafted entirely by American Express with no opportunity for negotiation, modification, or waiver. As a result, consumers have no meaningful choice with respect to the legal remedies limitations.

28.     The legal remedies limitations are also substantively unconscionable. By prohibiting class and representative actions once American Express compels arbitration, American Express seeks to eliminate the possibility that a group of its customers might join together to seek relief that would be impractical for any of them to obtain alone. This is an advantage that inures only to American Express because American Express would have no need or basis to litigate class claims against consumers. The potential damages recoverable by any consumer in individual proceedings are insubstantial in comparison to the costs associated with recovering those damages. No consumer could attract competent counsel to litigate claims of this magnitude without the availability of the class action device. The filing fees alone would exceed the damages potentially recoverable by a consumer in an individual lawsuit. Class litigation provides the most economically feasible remedy for the kind of claim that has been asserted here. The prospect of class litigation ordinarily has some deterrent effect on a service provider, but such effect would be removed by operation of the

arbitration provision in the legal remedies limitations. The arbitration provisions and limitations of damages and remedies set forth in the legal remedies limitations purport to require consumers to arbitrate any disputes if any party, i.e., American Express, so chooses. The legal remedies limitations also purport to preclude consumers from joining other disputes in any arbitration and also preclude any class-wide resolution of the arbitrated dispute. Moreover, American Express can seek to compel a cardholder to arbitrate even if it has brought a legal proceeding against the cardholder to collect a debt. In addition, the legal remedies limitations also unfairly purport to vest American Express with unbridled discretion to change any and all applicable terms and conditions, at any time.

## CLASS REPRESENTATION ALLEGATIONS

29.      This action is brought on behalf of Plaintiff individually and, pursuant to Florida Rule of Civil Procedure 1.220, on behalf of all American Express cardmembers and account holders with U.S. billing addresses who incurred a charge denominated in a foreign currency, and paid that charge in U.S. dollars, during the time period between March, 1997 and the present (the "Class"). Excluded from the Class are (1) American Express and its officers, affiliates, directors, employees and the immediate family members of its officers, directors and employees, and (2) all cardmembers who negotiated (or on whose behalf was negotiated) a foreign currency conversion methodology for their American Express account(s).

30.      This action is properly brought as a class action. This action satisfies the requirements of Florida Rule of Civil Procedure 1.220(a)(1). The Class is composed of tens of thousands of persons geographically dispersed throughout the nation, the joinder of whom in one action is impracticable. The disposition of Plaintiff and Class members' claims in a class action will provide substantial benefits to both the parties and the Court. The Class is ascertainable and there

LAW OFFICES KOZYAK TROPIN & THROCKMORTON, P.A.
100 SOUTH BISCAYNE BOULEVARD, MIAMI, FLORIDA 33131 • TEL (305) 372-1800

is a well-defined community of interest in the questions of law or fact alleged since the rights of each Class member were infringed or violated in a similar fashion based upon defendants' uniform conduct. Notice can be provided through records of American Express or by publication, the cost of which is properly imposed upon defendants. The Class consists of thousands of persons and is thus so numerous that joinder of all members is impracticable.

31.     This action satisfies Florida Rule of Civil Procedure 1.220(a)(2), because the representative Plaintiff's claims raise questions of law and of fact common to those raised by each member of the Class. The questions of law or fact common to the Class predominate over questions that may affect particular Class members. Such common questions include:

a.      whether defendants engaged in a common course of conduct that is likely to deceive Plaintiff, Class members, or the public concerning the foreign currency transaction fee and the methodology for selecting foreign exchange rates;

b.      whether through their practices and the foreign currency transaction fee the defendants violated the Truth in Lending Act;

c.      whether through their practices and the foreign currency transaction fee the defendants violated the Florida Deceptive and Unfair Trade Practices Act, and other similar deceptive and unfair trade practices acts to the extent applicable;

d.      whether through their practices and the foreign currency transaction fee the defendants committed a breach of contract with the Class members;

e.      whether through their practices and the foreign currency transaction fee the defendants were unjustly enriched; and

f.      whether Plaintiff and Class members are entitled to declaratory, injunctive and other equitable relief

32.     This action satisfies Florida Rule of Civil Procedure 1.220(a)(3). Plaintiff's claims are typical of the claims of the members of the Class

3224 101 235454 1                                11

33.     This action satisfies Florida Rule of Civil Procedure 1.220(a)(4).  Plaintiff will fairly and adequately protect the interests of the Class in that he has no interest antagonistic to those of the other Class members.  Plaintiff has retained attorneys experienced in class action and complex litigation, and those attorneys are fully capable of adequately representing the Class.

34.     This action is maintainable as a class action pursuant to Florida Rule of Civil Procedure 1.220(b)(1)(A), because inconsistent or varying adjudications concerning individual members of the Class would establish incompatible standards of conduct for the defendants.

35.     This action is maintainable as a class action pursuant to Florida Rule of Civil Procedure 1.220(b)(2), because the defendants have acted on grounds generally applicable to all Class members, making final injunction and declaratory relief concerning the Class as a whole appropriate.

36.     This action is maintainable as a class action pursuant to Rule of Civil Procedure 1.220(b)(3) in that common questions of law and fact predominate.  A class action is superior to other available methods for the fair and efficient adjudication of this controversy for at least the following reasons:

    a.    given the size of individual Class members' claims and the expense of litigating those claims, few, if any, Class members could afford to or would seek legal redress individually for the wrongs defendants committed against them and absent Class members have no substantial interest in individually controlling the prosecution of individual actions;

    b.    this action will promote an orderly and expeditious administration and adjudication of the Class claims, economies of time and effort and resources will be fostered and uniformity of decisions will be ensured; and

    c.    without a class action, Class members will continue to suffer damages, and defendants' violations of law will proceed without remedy while defendants continue to reap and retain the substantial proceeds of their wrongful conduct.

LAW OFFICES KOZYAK TROPIN & THROCKMORTON, P.A

2800 WACHOVIA FINANCIAL CENTER, 200 SOUTH BISCAYNE BOULEVARD, MIAMI, FLORIDA 33131 • TEL. (305) 372-1800

37.     Plaintiff knows of no difficulty that will be encountered in the management of this litigation that would preclude its maintenance as a class action.

## FIRST CAUSE OF ACTION
### (For Deceptive and Unfair Trade Practices)

38.     Plaintiff incorporates by reference the allegations set forth in the preceding paragraphs.  These claims are brought by the Plaintiff and on behalf of the Class against all defendants.

39.     The Florida Deceptive and Unfair Practices Act, ("FDUTPA"), Florida Statutes §§ 501.201-501.213, prohibits deceptive and unfair trade practices.  Plaintiffs bring this action based on FDUTPA and all other deceptive and unfair trade practice acts ("DUTPAs") in other jurisdictions, to the extent applicable.

40.     Defendants committed unfair and deceptive business practices by failing to adequately disclose the existence of the foreign currency transaction fee and the methodology for selecting foreign exchange rates.  Defendants have inserted vague and misleading language into the Agreements.  Defendants have also misled consumers by failing to disclose the foreign currency transaction fee and other foreign currency conversion practices in advertising, solicitations, consumers' monthly statements, or any other periodic statement.

41.     Defendants' unfair and deceptive business acts and practices described herein present a continuing threat to all consumers and members of the public in that defendants systematically convert foreign currency transactions, and impose the foreign currency transaction fee in a misleading manner on millions of consumers depriving them of millions of dollars each year.

42.     The legal remedies limitations in cardholder agreements are unlawful, unfair and

LAW OFFICES KOZYAK TROPIN & THROCKMORTON, P.A.
2800 WACHOVIA FINANCIAL CENTER  200 SOUTH BISCAYNE BOULEVARD  MIAMI  FLORIDA 33131 • TEL. (305) 372-1800

unenforceable.

43.    Defendants' practice of embedding and concealing the foreign currency transaction fee by only disclosing its existence in small print, prolix cardholder agreements, and failing to separately disclose the foreign currency conversion practices including the foreign currency transaction fee in solicitations and periodic billing statements, where consumers are most likely to attend to, notice, or comprehend the fee and other costs of credit, violates FDUTPA, and to the extent applicable, all other DUTPAs in other jurisdictions. Such conduct is likely to deceive Class members and the general public as to the rates used to convert foreign currency transactions and the existence and amount of the foreign currency transaction fee.

44.    As a direct and proximate result of the Defendants' violations, the Plaintiff and the Class members have suffered losses, and are entitled to their actual damages, as well as costs, attorney's fees and other relief.

## SECOND CAUSE OF ACTION
### (For Unjust Enrichment)

45.    Plaintiff incorporates by reference the allegations set forth in paragraphs 1 - 37. These claims are brought by the Plaintiff and on behalf of the Class against all Defendants.

46.    In paying foreign currency conversion charges, including the foreign currency transaction fee, the Plaintiff and the Class conferred a benefit upon the Defendants, who have knowledge of that benefit.

47.    The Defendants have accepted and retained the fees and benefits from their foreign currency conversion practices.

48.    The Defendants have retained the foreign currency transaction fees and the benefits

LAW OFFICES KOZYAK TROPIN & THROCKMORTON, P.A.
2800 WACHOVIA FINANCIAL CENTER, 200 SOUTH BISCAYNE BOULEVARD, MIAMI, FLORIDA 33131 • TEL. 305/372-1800

of those fees and other foreign currency conversion practices under inequitable circumstances because, among other reasons detailed above, the foreign currency conversion methodology is not adequately disclosed and the foreign currency transaction fee is hidden, misleading, and not a genuine cost caused by exchange rates.

49.     As a result of the Defendants' unjust enrichment, the Plaintiff and the Class are entitled to a constructive trust upon, or restitution of, all the foreign currency transaction fees paid and all benefits conferred by those fees (i.e., interest received) and other foreign currency conversion practices.

## THIRD CAUSE OF ACTION
### (Violation of the Truth in Lending Act, 15 U.S.C. §§ 1600, *et seq.*)

50.     Plaintiff incorporates by reference the allegations set forth in paragraphs 1 - 37. These claims are brought by the Plaintiff and on behalf of the Class against all Defendants.

51.     The Defendants are obligated to comply with the disclosure requirements of the Truth in Lending Act and the regulations promulgated thereunder, including Regulation Z.

52.     15 U.S.C. § 1637(c)(1)(A)(ii)(III) provides that credit and charge card applications and solicitations shall disclose "any transaction charge imposed in connection with the use of the card to purchase goods and services." Regulation Z requires the disclosure of "any transaction charge imposed for the use of the card for purchases" in applications and solicitations. 12 C.F.R. § 226.5a(b)(4).

53.     The Defendants have violated the Act and Regulation Z by, among other things, failing to disclose the foreign currency surcharge and other foreign currency conversion practices in any of the applications and solicitations provided to consumers.

LAW OFFICES KOZYAK TROPIN & THROCKMORTON, P.A.
2800 WACHOVIA FINANCIAL CENTER, 200 SOUTH BISCAYNE BOULEVARD, MIAMI, FLORIDA 33131 · TEL (305) 372-1800

54.     Regulation Z also requires the Defendants to disclose on cardmembers' monthly statements "[t]he amounts, itemized and identified by type, of any charges other than finance charges debited to the account during the billing cycle." 12 C.F.R. § 226.7(h).

55.     The Defendants have systematically violated this obligation by failing to inform cardmembers on their monthly statements that the Defendants impose a 2% foreign currency conversion fee on all foreign purchases of goods and services and also by failing to disclose other foreign currency conversion practices.

56.     As a result of the Defendants' violations of TILA, the Plaintiff and the Class members have suffered losses, and are entitled to their actual damages, injunctive relief, as well as costs, attorney's fees and other relief.

### FOURTH CAUSE OF ACTION
**(Breach of Contract)**

57.     Plaintiff incorporates by reference the allegations set forth in paragraphs 1 - 37. These claims are brought by the Plaintiff on behalf of the Class against all Defendants.

58.     The Plaintiff and Class Members entered into contracts with Defendants. Pursuant to these contracts, Defendants had a duty to adequately disclose their foreign currency conversion methodology, including the imposition of the foreign currency transaction fee. Defendants also had a duty of good faith and fair dealing in their performance of their contractual obligations. Defendants breached their duties by failing to disclose the fee and rate-setting methodology. As a result, the Plaintiff and Class Members have suffered damages.

### PRAYER FOR RELIEF

59.     Plaintiff, on behalf of the general public and on behalf of the Class, prays for

LAW OFFICES KOZYAK TROPIN & THROCKMORTON, P.A.
2800 WACHOVIA FINANCIAL CENTER 200 SOUTH BISCAYNE BOULEVARD MIAMI, FLORIDA 33131 · TEL (305) 372-1800

judgment and relief against Defendants as follows:

(A)     For an order declaring this a class action;

(B)     For an order declaring the section of American Express cardholder agreements that purport to limit Defendants' legal liabilities and the remedies and access to courts of cardholders unconscionable and void as a mater of law;

(C)     For an order enjoining Defendants from failing adequately to disclose their foreign currency conversion practices and continuing to engage, use, or employ their practice of charging and collecting the unconscionable and illegal 2% foreign currency transaction fee;

(D)     For an order enjoining Defendants from charging any type of foreign currency transaction fee without providing a clear, obvious, and comprehensive notice that such a fee will be charged, including notice of such a fee on any monthly statement which includes charges made in foreign countries;

(E)     For an order requiring Defendants to fund a corrective advertising campaign in order to remedy Defendants' wrongful conduct;

(F)     For an order awarding a constructive trust upon and/or restitution of the monies Defendants wrongfully acquired through their foreign currency conversion practices, including imposing the unconscionable foreign currency transaction fee on consumers who used the card, plus a reasonable rate of interest, so as to restore all moneys wrongfully acquired by Defendants' unfair, deceptive and unlawful business practices to those affected consumers;

(G)     For attorney's fees as allowed by law pursuant to Section 501.2105, Florida Statutes, and/or equity;

(H)     For interest as prescribed by law;

LAW OFFICES KOZYAK TROPIN & THROCKMORTON, P.A.
2800 WACHOVIA FINANCIAL CENTER, 200 SOUTH BISCAYNE BOULEVARD, MIAMI, FLORIDA 33131 • TEL (305) 372-1800

(I)    For costs of this suit; and

(J)    For such other and further relief as the Court deems just, equitable, and proper.

### JURY DEMAND

Plaintiffs demand a trial by jury on all issues so triable.

Respectfully submitted this _10_ day of February 2004.

KOZYAK TROPIN & THROCKMORTON, P.A.
Attorneys for Plaintiff
2800 Wachovia Financial Center
200 South Biscayne Boulevard
Miami, Florida 33131-2335
Telephone:    (305) 372-1800/Telecopier:(305) 372-3508

By:_____
    Adam M. Moskowitz, FBN: 984280
    Thomas A. Tucker Ronzetti, FBN: 965723

and

GARWIN, BRONZAFT, GERSTEIN & FISHER, L.L.P.
Bruce E. Gerstein, Esq.
Kevin Landau, Esq.
1501 Broadway - Room 1416
New York, New York 10036
Tel: (212) 398-0055
Fax:(212) 764-6620

Of Counsel -

BALLON STOLL BADER & NADLER, P.C.
Irving Bizar, Esq.
1450 Broadway, 14th Floor
New York, New York 10018
Tel: (212) 575-7900
Fax: (212) 764-5060

## CERTIFICATE OF SERVICE

WE HEREBY CERTIFY that a true and correct copy of the above and foregoing was faxed

and mailed by regular U.S. Mail to: Richard Simring, Esq., Stroock & Stroock & Lavan LLP, 200

South Biscayne Boulevard, 3160 Wachovia Financial Center, Miami, Florida 33131-2385; and Julia

B. Strickland, Esq. and Scott M. Pearson, Esq., Stroock & Stroock & Lavan LLP, 2029 Century Park

East, Floors 16 & 18, Los Angeles, California 90067-3086, on this _10_ day of February 2004.

By: _____

\*-JS 44   (Rev. 3/99)

# CIVIL COVER SHEET

The JS-44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet.   (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)

## I. (a) PLAINTIFFS

EDWARD LIPUMA on Behalf of Himself and All Others Similarly Situated and on Behalf of the General Public

## DEFENDANTS

04 - 20314

American Express Company, American Express Travel Related Services Company, Inc., and American Express Centurion Bank

**(b)** County of Residence of First Listed Plaintiff
(EXCEPT IN U.S. PLAINTIFF CASES)

County of Residence of First Listed
(IN U.S. PLAINTIFF CASES ONLY)
NOTE:  IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE
LAND INVOLVED

Dade 04 - 20314 CN WUBB

**(c)** Attorney's (Firm Name, Address, and Telephone Number)

Thomas A. Tucker Ronzetti, Esq.
Kozyak Tropin & Throckmorton
200 South Biscayne Blvd., Suite 2800
Miami, FL 33131
Telephone: 305-372-1800

Bruce E. Gerstein, Esq.
Garwin, Bronzaft Gerstein & Fisher
1501 Broadway, Room 1416
New York, NY 10036
Telephone: 212-398-0055

Attorneys (If Known)

Richard B. Landman, Esq.
Stroock & Stroock & Lavan
3180 Wachovia Financial Center
200 South Biscayne Boulevard
Miami, Florida 33131-5323
Telephone: (305) 358-9900

UNGARO-BENAGES

MAGISTRATE JUDGE
BROWN

## II. BASIS OF JURISDICTION   (Place an "X" in One Box Only)

- [ ] 1 U.S. Government Plaintiff
- [x] 3 Federal Question (U.S. Government Not a Party)
- [ ] 2 U.S. Government Defendant
- [ ] 4 Diversity (Indicate Citizenship of Parties in Item III)

## III. CITIZENSHIP OF PRINCIPAL PARTIES (Place an "X" in One Box for Plaintiff
(For Diversity Cases Only)                              and One Box for Defendant)

|                                      | PTF | DEF |                                                  | PTF | DEF |
|--------------------------------------|-----|-----|--------------------------------------------------|-----|-----|
| Citizen of This State                | [ ] 1 | [ ] 1 | Incorporated or Principal Place of Business In This State | [ ] 4 | [ ] 4 |
| Citizen of Another State             | [ ] 2 | [ ] 2 | Incorporated and Principal of Business In Another State | [ ] 5 | [ ] 5 |
| Citizen or Subject of a Foreign Country | [ ] 3 | [ ] 3 | Foreign Nation                                   | [ ] 6 | [ ] 6 |

## IV. NATURE OF SUIT   (Place an "X" in One Box Only)

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| [ ] 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | [ ] 610 Agriculture | [ ] 422 Appeal 28 USC 158 | [ ] 400 State Reapportionment |
| [ ] 120 Marine | [ ] 310 Airplane | [ ] 362 Personal Injury - Med. Malpractice | [ ] 620 Other Food & Drug | | [ ] 410 Antitrust |
| [ ] 130 Miller Act | [ ] 315 Airplane Product Liability | [ ] 365 Personal Injury - Product Liability | [ ] 625 Drug Related Seizure of Property 21 USC 881 | [ ] 423 Withdrawal 28 USC 157 | [ ] 430 Banks and Banking |
| [ ] 140 Negotiable Instrument | [ ] 320 Assault, Libel & Slander | [ ] 368 Asbestos Personal Injury Product Liability | [ ] 630 Liquor Laws | **PROPERTY RIGHTS** | [ ] 450 Commerce/ICC Rates/etc. |
| [ ] 150 Recovery of Overpayment & Enforcement of Judgment | [ ] 330 Federal Employers' Liability | | [ ] 640 R.R. & Truck | [ ] 820 Copyrights | [ ] 460 Deportation |
| [ ] 151 Medicare Act | [ ] 340 Marine | **PERSONAL PROPERTY** | [ ] 650 Airline Regs. | [ ] 830 Patent | [ ] 470 Racketeer Influenced and Corrupt Organizations |
| [ ] 152 Recovery of Defaulted Student Loans (Excl. Veterans) | [ ] 345 Marine Product Liability | [ ] 370 Other Fraud | [ ] 660 Occupational Safety/Health | [ ] 840 Trademark | [ ] 810 Selective Service |
| [ ] 153 Recovery of Overpayment of Veteran's Benefits | [ ] 350 Motor Vehicle | [ ] 371 Truth in Lending | [ ] 690 Other | **SOCIAL SECURITY** | [ ] 850 Securities/Commodities/Exchange |
| [ ] 160 Stockholders' Suits | [ ] 355 Motor Vehicle Product Liability | [ ] 380 Other Personal Property Damage | **LABOR** | [ ] 861 HIA (1395ff) | [ ] 875 Customer Challenge 12 USC 3410 |
| [ ] 190 Other Contract | [ ] 360 Other Personal Injury | [ ] 385 Property Damage Product Liability | [ ] 710 Fair Labor Standards Act | [ ] 862 Black Lung (923) | [ ] 891 Agricultural Acts |
| [ ] 195 Contract Product Liability | | | [ ] 720 Labor/Mgmt. Relations | [ ] 863 DIWC/DIWW (405(g)) | [ ] 892 Economic Stabilization Act |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | | [ ] 864 SSID Title XVI | [ ] 893 Environmental Matters |
| [ ] 210 Land Condemnation | [ ] 441 Voting | [ ] 510 Motions to Vacate Sentence | [ ] 730 Labor/Mgmt. Reporting & Disclosure Act | [ ] 865 RSI (405(g)) | [ ] 894 Energy Allocation Act |
| [ ] 220 Foreclosure | [ ] 442 Employment | **Habeas Corpus:** | [ ] 740 Railway Labor Act | **FEDERAL TAX SUITS** | [ ] 895 Freedom of Information Act |
| [ ] 230 Rent Lease & Ejectment | [ ] 443 Housing/Accommodations | [ ] 530 General | [ ] 790 Other Labor Litigation | [ ] 870 Taxes (U.S. Plaintiff or Defendant) | [ ] 900 Appeal of Fee Determination Under Equal Access to Justice |
| [ ] 240 Torts to Land | [ ] 444 Welfare | [ ] 535 Death Penalty | [ ] 791 Empl. Ret. Inc. Security Act | [ ] 871 IRS - Third Party 26 USC 7609 | [ ] 950 Constitutionality of State Statutes |
| [ ] 245 Tort Product Liability | [ ] 440 Other Civil Rights | [ ] 540 Mandamus & Other | | | [ ] 890 Other Statutory Actions |
| [ ] 290 All Other Real Property | | [ ] 550 Civil Rights | | | |
| | | [ ] 555 Prison Condition | | | |

## V. ORIGIN   (PLACE AN "X" IN ONE BOX ONLY)

- [ ] 1 Original Proceeding
- [x] 2 Removed from State Court
- [ ] 3 Remanded from Appellate Court
- [ ] 4 Reinstated or Reopened
- [ ] 5 Transferred from another district (specify)
- [ ] 6 Multidistrict Litigation
- [ ] 7 Appeal to District Judge from Magistrate Judgment

## VI. CAUSE OF ACTION
(Cite the U.S. Civil Statute under which you are filing and write brief statement of cause
Do not cite jurisdictional statutes unless diversity.)

Federal Truth-in-Lending Act, 15 U.S.C. § 1601, et seq.

## VII. REQUESTED IN COMPLAINT:
[x] CHECK IF THIS IS A CLASS ACTION DEMAND
UNDER F.R.C.P. 23

CHECK YES only if demanded in complaint:
JURY DEMAND:  [ ] Yes  [x] No

## VIII. RELATED CASE(S)   (See instructions)
IF ANY

JUDGE _____   DOCKET NUMBER _____

DATE  2/10/04

SIGNATURE OF ATTORNEY OF RECORD
Richard E. Landman

**FOR OFFICE USE ONLY**

RECEIPT # ___   AMOUNT  $150.00   APPLYING IFP  96411   JUDGE ___   MAG JUDGE ___

02/10/04