UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
Miami Division

EDWARD LIPUMA, on Behalf
of Himself and All Others
Similarly Situated and on
Behalf of the General Public,

Plaintiff,

v.

AMERICAN EXPRESS COMPANY,
a New York Corporation, *et al.*,

Defendants.

_____ /

CASE NO: 04-20314-CIV-Ungaro-Benages

Magistrate Judge Brown

CLASS ACTION

## JOINT MOTION FOR PRELIMINARY APPROVAL OF SETTLEMENT AND INCORPORATED MEMORANDUM OF LAW

The parties, through undersigned counsel and pursuant to Rule 23(e) of the Federal Rules of Civil Procedure, move for the Court to enter their proposed Order Preliminarily Approving Class Action Settlement, providing for Notice and Enjoining Prosecution of Released Claims, a copy of which is attached as Exhibit A. In support of this motion, the parties state:

1.     The Class Representative Plaintiff and Defendants have entered into a Stipulation of Settlement (the "Settlement"), a copy of which is attached as Exhibit B.

2.     The parties respectfully request that the Court grant preliminary approval of the Settlement, which is fair, adequate, and reasonable; conditionally certify the class as described herein for purposes of effectuating the Settlement; approve and order notice as described in the Settlement; enjoin the prosecution of actions brought by, and on behalf of, settlement class members asserting the claims to be released by the Settlement; set a final fairness hearing; and grant such further relief as the Court deems just.

## I. BACKGROUND

### A.     The Instant Action

This national class action arises out of the alleged unlawful foreign currency conversion

practices of defendants American Express Company, American Express Travel Related Services Company, Inc., and American Express Centurion Bank (collectively, "American Express" or "AmEx"), including imposing what Plaintiff contends is a hidden 2% "foreign currency surcharge"[1] on its cardmembers every time they use their charge or credit card to purchase goods or services in non-U.S. dollar denominated currencies.  The Plaintiff is suing AmEx on behalf of himself and all similarly situated cardmembers nationwide under various state deceptive trade acts, the Truth in Lending Act ("TILA"), breach of contract, and unjust enrichment.  Plaintiff seeks restitution, damages, injunctive relief, and other relief arising out of AmEx's foreign currency conversion practices.

When a U.S. cardmember uses his American Express card to purchase goods and services in a foreign currency, AmEx converts the foreign charge to U.S. dollars for billing and payment purposes.  In so doing, AmEx utilizes a conversion rate, which generally is based on wholesale "interbank" rates selected by American Express, and then increased up to 2%.  During the period at issue, AmEx's cardmember agreements[2] have generally provided for this conversion (with slight variations) as follows:

### TRANSACTIONS MADE IN FOREIGN COUNTRIES

If you initiate a transaction in a foreign currency, it will be converted into U.S. dollars on the date it is processed by us or our agents at a rate set by us based on an interbank, tourist or (where required by law) official rate, increased in each instance by 2%.  This rate may differ from rates in effect on the date of your transaction.  Transactions converted by establishments (such as airlines) will be billed at the rates such establishments use.

Plaintiff contends that AmEx should, but does not, disclose the existence or amount of the 2% foreign currency surcharge in cardmember billing statements and other materials.  Currently,

---

[1]    AmEx disputes that this characterization is accurate.

[2]    The vast majority of AmEx's cardmember agreements, which generally contain choice-of-law provisions providing for the application of either New York or Utah law, as well as applicable federal law, also contain an arbitration provision requiring binding arbitration on an individual basis at the election of the cardmember or AmEx.  This arbitration provision on its face purports to preclude the cardmember from pursuing arbitration on a class or representative basis.  Plaintiff contends that the arbitration provision is unconscionable and unenforceable.

AmEx's billing statements generally only reflect the amount of the charge in foreign currency and the corresponding amount of the converted charge in U.S. dollars. In addition, Plaintiff contends that AmEx fails adequately to disclose the conversion rates it applies to foreign currency transactions.

AmEx denies that it has any liability in the action and contends that neither Plaintiff nor any other cardmember has suffered harm as alleged by Plaintiff. AmEx has asserted numerous defenses in the action, including, among others: (i) that it properly discloses its foreign currency conversion practices in the cardmember agreements; (ii) that cardmembers actually benefit from AmEx's foreign currency conversion practices based on its use of conversion rates to which cardmembers would not otherwise have access; (iii) that the disclosures sought by Plaintiff are not required under applicable law and would serve no purpose or benefit for the cardmember; (iv) that the foreign currency conversion rate utilized by AmEx is not subject to any federal or state regulation; and (v) that the arbitration provision in AmEx's cardmember agreements precludes the action from going forward on a class basis, as already determined by an Illinois state court in a similar competing class action.

## B. Settlement Negotiations

In November 2003, a hearing took place in a similar AmEx litigation in New York.[3] During that hearing, the judge instructed the parties to consider settling the AmEx litigation. Consequently, AmEx approached plaintiffs' counsel here and in New York about a global settlement of their litigation in this forum.[4] The parties decided on mediation as a means of conducting negotiations, and retained the Hon. Herbert L. Stern, a former Federal judge and U.S. Attorney, to serve as mediator. In preparation for the mediation, AmEx provided Plaintiffs' counsel with thousands of pages of documents about its foreign currency conversion practices, deposition transcripts from a related case, and other discovery materials. In addition, AmEx provided Plaintiff access to two key witnesses whom Plaintiff's counsel interviewed extensively. Class Counsel questioned the witnesses

---

[3] The New York case is *Bildstein v. American Express Co*, No. 1029-03 (N.Y. Sup. Ct.). Irving Bizar, Esq., who represents the plaintiff in *Bildstein*, is of counsel in this action, and is a signatory to the Settlement.

[4] Other similar actions are pending against AmEx by individuals in Illinois, Texas, New York and California. None of those cases have been certified as class actions.

3

about, among other things, AmEx's costs associated with the foreign transaction fee, the processing of foreign transactions, marketing, disclosure, and regulatory issues.

In December 2003, once Class Counsel's informal discovery was complete, the parties submitted mediation statements and materials to Judge Stern. After two days of intensive negotiations, and with the able assistance of Judge Stern, they agreed upon the general terms of a settlement for the nationwide class. The parties then spent the next two months in near daily negotiations over the particular terms of the settlement, resulting in the stipulation now before the Court.

## C. The Settlement

The Settlement between Plaintiff and American Express is the result of months of hard-fought negotiations between the parties. It remedies the concerns regarding disclosure that are at the heart of this litigation, and provides a substantial monetary fund of $66 million.

### 1. Changes in Disclosures

American Express has agreed, that so long as the practice continues, it will revise its disclosures relating to its foreign currency conversion practices, including the 2% fee. The form of both the monthly billing statement and the cardmember agreement are to be changed. When a charge in foreign currency appears on a billing statement, American Express will conspicuously print the following disclosure on the same page: "Foreign currency conversion rate is base rate plus 2%. See page 2 for details." Each charge in foreign currency on the statement will be marked with asterisks to direct the cardmember's attention to the disclosure.

American Express has agreed to disclose in detail how conversion rates are determined, and prominently disclose the 2% charge in bold type. The cardmember agreement will now state:

TRANSACTIONS MADE IN FOREIGN CURRENCIES

If you incur a Charge in a foreign currency, it will be converted into U.S. dollars on the date it is processed by us or our agents. Unless a particular rate is required by applicable law, you authorize us to choose a conversion rate that is acceptable to us for that date. Currently, the conversion rate we use for a Charge in a foreign currency is no greater than (a) the highest official conversion rate published by a government agency, or (b) the

4

> highest interbank conversion rate identified by us from customary banking
> sources, on the conversion date or the prior business day, **in each instance
> increased by 2%**. This conversion rate may differ from rates in effect on
> the date of your Charge. Charges converted by establishments (such as
> airlines) will be billed at the rates such establishments use.

Language similar to that in the cardmember agreement will be printed on the reverse of periodic billing statements. These new disclosures ensure that class members will be alerted to the charge each time they have made a purchase in foreign currency.

### 2.    Cash Settlement and Charitable Contribution

American Express has agreed to a settlement amount of $66,000,000. This payment includes a $500,000.00 charitable contribution which represents the statutory damages provided for in the Truth in Lending Act. After the $500,000 charitable contribution and attorney's fees and expenses of up to $11 million are paid, Settlement Class Members, through a claims process, will be eligible to receive cash payments or credits up to the remaining settlement amount (i.e., $54,500,000). In addition, American Express has agreed to further donate up to an additional $1,500,000 should the submitted claims be less than the remaining settlement amount. AmEx has also agreed to pay all costs of notice and claims administration, which are substantial in this nationwide class action. The remainder of the settlement amount, if any, will revert to American Express.

As discussed in more detail below, this settlement is fair and reasonable, and clearly satisfies all the requirements for preliminary approval under Rule 23 of the Federal Rules of Civil Procedure.

## II. THE COURT SHOULD GRANT PRELIMINARY
## APPROVAL TO THE PROPOSED SETTLEMENT.

Preliminary approval is the first of a two-step process for approval of a proposed class action settlement under Rule 23 of the Federal Rules of Civil Procedure. In this first step, the Court simply determines whether the proposed settlement falls within the range of possible approval and whether it is reasonable to issue notification to class members of the settlement's terms. In the second step, after notice to the class and an opportunity for absent class members to object or otherwise be heard, the Court will determine whether to grant final approval of the settlement as fair and reasonable

under Federal Rule of Civil Procedure 23. *See Manual for Complex Litigation (Third)* §30.41 (1995); Alba Conte & Herbert B. Newberg, 4 *Newberg on Class Actions*, § 11.25 (4th ed. 2002).

Preliminary approval of a proposed class action settlement does not involve a determination of the merits of the proposed settlement or affect the substantive rights of any class member. The purpose of preliminary approval is solely to communicate the proposed settlement to the class, to review and approve the proposed form of notice to the class, and to authorize the manner and form of dissemination of the notice. *See Manual for Complex Litigation (Third)* § 30.41, at 236–37 (1995) ("If the preliminary evaluation of the proposed settlement does not disclose grounds to doubt its fairness or other obvious deficiencies . . . and [the settlement] appears to fall within the range of possible **approval, the court should direct** that notice" issue and should schedule a final approval hearing). Thus, if a proposed settlement could possibly be approved and it appears to be the product of informed, arm's-length negotiations, it should be approved for purposes of setting the fairness hearing and notifying the class. *See In re NASDAQ Market-Makers Antitrust Litig.*, 176 F.R.D. 99, 102 (S.D.N.Y. 1997). "There is usually an initial presumption of fairness when a proposed settlement, which was negotiated at arms length by counsel for the class, is presented for court approval." *Newberg in Class Actions*, §11.41 (4th ed. 2002).

The proposed Settlement clearly satisfies all of the factors required for preliminary approval under Rule 23 of the Federal Rules of Civil Procedure. First, the Settlement is the product of an informed arms-length negotiation. Only with the assistance of an experienced mediator, former Federal Judge Herbert Stern, were the parties able to begin to reach an agreement. Even after that, near daily negotiations were required. Negotiations did not begin until after Class Counsel had litigated the case and conducted informal investigation and interviews which established a sound basis for settlement. The Settlement also remains contingent upon satisfactory confirmatory discovery.

Second, the Settlement falls within the range of possible approval. The Settlement provides for effectively complete equitable relief, and a substantial monetary recovery. Given the difficulties

Plaintiff would have to overcome if he were to litigate this case,[5] the recovery under the terms of the Settlement is necessarily fair and reasonable. Accordingly, the Settlement should be preliminarily approved and notification of the Settlement's terms should be issued to the Class as provided by this motion.

## III. THE CLASS SHOULD BE CONDITIONALLY CERTIFIED FOR PURPOSES OF THE SETTLEMENT.

To warrant class certification, the Plaintiff is required to satisfy the four elements of Rule 23(a) and at least one element of Rule 23(b), of the Federal Rules of Civil Procedure. Class certification is committed to the sound discretion of the trial court. *See Hines v. Widnall*, 334 F.3d 1253, 1255 (11th Cir. 2003). However, "in any doubtful case . . . any error, if there is to be one, should be committed in favor of allowing a class action." *CV Reit, Inc. v. Levy*, 144 F.R.D. 690, 695 (S.D. Fla. 1992) (quoting *Eisenberg v. Gagnon*, 766 F.2d 770, 785 (3d Cir.) *cert. denied*, 474 U.S. 946 (1985)). Several cases have allowed class certification in circumstances similar to ours, where litigation has arisen from credit card practices that have affected a class of account holders. *See, e.g., Roper v. Consurre, Inc.*, 578 F.2d 1106 (5th Cir. 1978); *Mangone v. First USA Bank*, 206 F.R.D. 222 (S.D. Ill. 2001); *Spark v. MBNA Corp.*, 178 F.R.D. 431 (D. Del. 1998).

## A. The Settlement Class Satisfies the Requirements of Rule 23(a).

Rule 23(a) contains four prerequisites for class certification: (1) numerosity, (2) commonality, (3) typicality, and (4) adequacy. The establishment of these elements is essential to obtain certification of a class. *See, e.g., Allapattah Servs., Inc. v. Exxon Corp.*, 333 F.3d 1248, 1260 (11th Cir. 2003).[6]

---

[5]     As discussed above, American Express has raised various defenses to Plaintiff claims which could limit or eliminate any recovery.

[6]     In the litigation context, AmEx would oppose class certification. A settlement class, however, does not present the issues of manageability which apply to a litigated class. *See AmChem Prods, Inc v Windsor*, 117 S. Ct. 2231, 2248 (1997). AmEx has stipulated to class certification for settlement purposes only.

7

1.    **The Proposed Class of Cardholders is Numerous.**

The Plaintiff Class plainly satisfies the numerosity requirement of Rule 23(a).  The numerosity requirement considers whether joinder of claims among individuals would be "impracticable." Fed. R. Civ. P. 23(a)(1).  "Impracticable does not mean 'impossible.'" *Sandlin v. Shapiro & Fishman*, 168 F.R.D. 662, 666 (M.D. Fla. 1996) (quoting *Robidoux v. Celani*, 987 F.2d 931, 935 (2d Cir. 1993)). There is no threshold or specific number at which joinder is impracticable. *See Cox v. American Cast Iron Pipe Co.*, 784 F.2d 1546, 1553 (11th Cir. 1986). "Generally less than twenty-one is inadequate, more than forty adequate, with numbers in between varying according to other factors." *Id.* (citations omitted).

Here, there are clearly members of the class in numbers sufficient to satisfy Rule 23(a)(1). There are millions of class members. "There is no definite standard as to the size of a given class, and Plaintiff's estimate need only be reasonable." *Hammett v. American Bankers Ins. Co.*, 203 F.R.D. 690, 694 (S.D. Fla. 2001). The numerosity requirement is easily satisfied.

2.    **The Class Representative Plaintiff's Claims Present Questions of Law and Fact that are Common to the Class.**

To establish commonality, the Plaintiff need only meet a minimal threshold showing that resolution of common questions affects all or a significant number of class members. *See Perez v. Metabolife Intern., Inc.*, 218 F.R.D. 262, 270 (S.D. Fla. 2003) ("the commonality requirement is not a high threshold and generally only requires one common question of law or fact").  Class certification should not be denied merely because the claim of one or more class representatives arises in a factual context that varies somewhat from that of the other class members. The focus should be on whether the representative's claim arises from the same course of conduct that gives rise to the remaining claims, and whether the claims are based on the same legal theory. *See Kennedy v. Tallant*, 710 F.2d 711, 717 (11th Cir. 1983); *Brown v. SCI Funeral Servs. of Florida, Inc.*, 212 F.R.D. 602, 604 (S.D. Fla. 2003).

Courts have recognized commonality as a basis for certification in claims such as those here, that arise from identical contracts or contractual provisions. *See Brink v. First Credit Res.*, 185 F.R.D. 567, 570 (D. Ariz. 1999) (holding, in case against credit card company, that commonality

8

requirement was satisfied because "relief for each potential class member depends upon the common legal issue of whether Defendant violated one or more sections of the FDCPA when it mailed the credit card certificate to Plaintiffs"); *Spark*, 178 F.R.D. at 435 (commonality requirement satisfied in action against credit card company for unfair and deceptive practices where "[e]ach of the proposed plaintiffs' claims stem from the same general representation by [defendant], and the issues for each of these plaintiffs will be identical").

In the present case, each member of the Plaintiff Class has claims arising from the identical acts of AmEx. Plaintiff alleges that each of the Class members was subjected to the same course of conduct by AmEx -- the same foreign currency conversion practices, similar cardmember agreements, similar billing statements. All were subject to the foreign currency conversion practices of AmEx, including the foreign currency surcharge, in the same fashion, and the resolution of their claims will turn on common factual and legal issues. Accordingly, the commonality requirement is satisfied in this case.

### 3.    The Plaintiff's Claims are Typical of Those Presented by the Class.

The Class also satisfies Rule 23(a)(3), which requires that the claims be typical of the claims of other members of the putative class. In determining typicality, courts examine whether the defendant engaged in a common course of conduct against the purported class. *See Cheney v. Cyberguard Corp.*, 213 F.R.D. 484, 493 (S.D. Fla. 2003) ("[M]inor factual differences do not render a claim atypical if the claim arises from (sic) similar course of conduct giving rise to the claims of the class members."). Plaintiffs' claims need only be typical, not identical. *See Phillips v. Joint Legislative Committee on Performance*, 637 F.2d 1014, 1024 (5th Cir. 1981). The mere presence of factual distinctions will not defeat typicality. *See Kornberg v. Carnival Cruise Lines, Inc.*, 741 F.2d 1332 (11th Cir. 1984); *Pottinger v. City of Miami*, 720 F. Supp. 955, 959 (S.D. Fla. 1998); *CV Reit*, 144 F.R.D. at 697 ("Typicality is satisfied where the interests of the named parties arise from the same course of conduct that gave rise to the claims of the class they seek to represent and are based upon the same legal theories").

The Plaintiff satisfies the typicality requirement of Rule 23(a)(3). Plaintiff's claims are typical because they arise from the same event, conduct or practice giving rise to the claims of absent

9

Class members, and seek the same relief. Here, the claims of the Representative Plaintiff and each of the Class members is predicated on the foreign currency conversion practices of AmEx, including the alleged undisclosed 2% foreign currency surcharge. The issue is whether the claim of the Plaintiff and the claims of the Class members are so interrelated that the interests of the Class members will be fully and adequately protected. Factual variations (such as the actual number of Foreign Transaction Fees incurred) will not render a representative's claim atypical.

### 4. Plaintiff and Class Counsel Will Fairly and Adequately Represent the Interests of the Class.

The adequacy of representation requirement under Rule 23(a)(4) requires a two-prong analysis: (1) adequacy of the representative plaintiff, and (2) adequacy of class counsel. Each prong is satisfied here. The named Plaintiff is an adequate representative. "'Adequacy of representation' means that the class representative has common interests with unnamed class members and will vigorously prosecute the interests of the class through qualified counsel." *Piazza v. Ebsco Indus., Inc.*, 273 F.3d 1341, 1346 (11th Cir. 2001). Adequacy of representation embodies concerns which fall into two categories: whether the class representative will competently, responsibly, and vigorously prosecute the suit, and whether the relationship of the representative plaintiff's interests to those of the absent class members is such that there is not likely to be a divergence in viewpoint or goals in the conduct of the suit. *See Davenport v. Gerber Prods. Co.*, 125 F.R.D. 116 (E.D. Pa. 1989) (quoting *Bogosian v. Gulf Oil Corp.*, 561 F.2d 434 (3d Cir. 1977)).

The named Class representative, Edward LiPuma, fully satisfies the requirements for adequacy. Mr. LiPuma has interests in this litigation which are fully aligned with the Class – at all material times he has had an American Express card, he has made many purchases abroad using the card, he has (allegedly) been misled by the Defendants' acts into paying the foreign currency surcharge and other amounts, and he obviously wants to change the Defendants' practices and recover just compensation for the Defendants' alleged illegal actions. Mr. LiPuma -- a professor at the University of Miami and published author -- has competently, responsibly, and vigorously prosecuted this suit.

The second prong of the adequacy test relates to the qualifications of class counsel. There is no issue about their qualifications here. Class counsel are experienced practitioners who have litigated class action cases before this Court and elsewhere, and are fully capable of prosecuting this case. *See* Ex. C, Exs. 1 & 2. The adequacy prong has been met.

**B.   The Settlement Class Satisfies the Requirements of Rule 23(b)(3).**

Certification of the Class is appropriate because questions of law or fact common to the members of the Class predominate over any questions affecting only individual members, and a class action is superior to other available methods for the fair and efficient adjudication of the case. *See* Fed. R. Civ. P. Rule 23(b)(3). "Confronted with a request for settlement-only class certification, a district court need not inquire whether the case, if tried, would present intractable management problems, for the proposal is that there be no trial." *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 620 (1997).

Courts routinely certify TILA class actions with pendent state law claims. *See Fabricant v. Sears Roebuck*, 202 F.R.D. 310, 317 (S.D. Fla. 2001) (certifying TILA and pendent state law class because "Plaintiff alleges that Defendant provided the same disclosures to all class members and that those disclosures violated TILA. These common issues predominate."); *Mangone v. First USA Bank*, 206 F.R.D. 222, 236 (S.D. Ill. 2001); *Whitford v. First Nationwide Bank*, 147 F.R.D. 135, 142 (W.D. Ky. 1992). *See also In re Prudential Ins. Co. of America Sales Practices Litig.*, 148 F.3d 283, 315 (3d Cir. 1998) (certifying a nationwide settlement class asserting claims for, *inter alia*, unjust enrichment and violation of state consumer protection laws); *In re Warfarin Sodium Antitrust Litig.*, 212 F.R.D. 231, 249-50 (D. Del. 2002) (certifying nationwide class for settlement purposes on claims of unjust enrichment and consumer protection laws because "so far as differences between state laws impact only on case management, these differences are irrelevant to certification of a settlement class."); *Singer v. AT&T Corp.*, 185 F.R.D. 681, 691-92 (S.D. Fla. 1998) (certifying nationwide class for unjust enrichment because the potential application of varying state laws did not preclude class certification although it may cause trial problems; specifically holding that "at least two of [plaintiff]'s claims, breach of contract and unjust enrichment, are universally recognized causes of action that are materially the same throughout the United States.").

11

Accordingly, because common questions of law and fact predominate over individual questions, and a class action is the superior vehicle for resolving the Plaintiffs' claims, Rule 23(b)(3) is satisfied.

## C. The Scope of the Class

The proposed Class is defined as all former or current American Express cardmembers and accountholders with U.S. billing addresses who incurred a charge denominated in a foreign currency, and paid that charge in U.S. dollars, during the time period between March 28, 1997 and [date of preliminary approval], and who did not negotiate (or on whose behalf there was not negotiated) a foreign currency conversion methodology for their American Express account(s). *See* Settlement ¶ 1.20.

## IV.  THE COURT SHOULD APPROVE THE PROPOSED NOTICE PROGRAM.

Rule 23(e) provides that "notice of the proposed dismissal or compromise [of a class action] shall be given to all members of the class in such manner as the court directs." The purpose of notice is to "afford members of the class due process which, in the context of the Rule 23(b)(3) class action, guarantees them the opportunity to be excluded from the class action and not be bound by any subsequent judgment." *Peters v. National R.R. Passenger Corp.*, 966 F.2d 1483, 1486 (D.C. Cir. 1992); (citing *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 173-74 (1974)). Accordingly, the notice provided to the Class must fairly inform class members of the terms of the proposed settlement and their options. *See Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 314-15 (1950); *Twigg v. Sears Roebuck & Co.*, 153 F.3d 1222, 1226 (11th Cir. 1998); *Gottlieb v. Wiles*, 11 F.3d 1004, 1012-13 (10th Cir. 1993).

The notice program proposed here clearly meets this standard. The Class will receive mailed notice sent to the last known address of Settlement Class members whose accounts are reasonably accessible electronically. (Settlement Stip. ¶ 3.2) The parties will also post notices on websites. (*Id.* ¶ 3.3) Amex will provide a toll-free number to facilitate requests for mailed notices and claims. (*Id.*

¶ 3.4) And the parties will publish notice in regional and national newspapers, using a $300,000 budget. (*Id.* ¶ 3.5) The notice program is thus reasonably calculated to notify the Class of the Settlement, and therefore easily satisfies the standards required.

In addition, the contents of the notice are sufficient. Rule 23(c) requires the notice to fairly describe the litigation and the proposed settlement and its legal significance. *See, e.g., Twigg,* 153 F.3d at 1088 (5th Cir. 1977)) ("[The notice] must also contain an adequate description of the proceedings written in objective, neutral terms, that, in so far as possible, may be understood by the average absentee class member[.]"); *Bennett v. Behring Corp.,* 96 F.R.D. 343, 353 (S.D. Fla. 1982), *aff'd,* 737 F.2d 982 (11th Cir. 1984) ("It is not the function of the settlement notice to fully inform the class of all the details of the settlement, but merely to put class members on notice of the general parameters of the settlement and to inform them of where information as to specifics may be obtained.").

The proposed notice describes the Settlement, the conditionally certified Settlement Class, and the procedural status of the litigation; summarizes the plan of distribution, and advises Class members of their rights under Rule 23(b)(3), including the right to be heard as to the reasonableness and fairness of the Settlement and the right to opt out of the Class. The notice also sets forth the total consideration that the Settling Defendants have agreed to pay to the Class. Finally, it outlines the process by which the proposed Settlement and Class Counsel's motion for attorneys' fees, reimbursement of expenses, and proposed incentive award of up to $10,000 for the Class Representative Plaintiff may be approved by the Court, and explains the consequences of inclusion and exclusion from the Class.

The parties propose the following schedule for the provision of notice, applying for fees, costs, and an incentive award, filing of objections, and the holding of the hearing on final approval, provided that the Court preliminarily approves the settlement:

      a.    No later than June 2004: Dissemination of notice to the Class via First Class Mail on or before this date;

      b.    No later than June 2004: Publication of Summary Notice;

13

c.      July 30, 2004: Objections to the Proposed Settlement filed with, and received by, the Clerk of Court, United States District Court for the Southern District; and received by Plaintiff's Lead Counsel on or before this date;

d.      20 days before Fairness Hearing: Submission of Plaintiff's Lead Counsel's motion for final approval of the Settlement, application for attorneys' fees and expenses and application for an incentive award for Plaintiff; and

a.      TBD: The Fairness Hearing.

## V.    THE COURT SHOULD STAY COMPETING ACTIONS TO FACILITATE AN EFFICIENT AND EXPEDITIOUS SETTLEMENT APPROVAL PROCESS.

Paragraph 15 of the proposed Preliminary Approval Order stays all competing litigation brought by or on behalf of Settlement Class Members nationwide to protect the jurisdiction of the Court and to ensure orderly and efficient resolution of class certification and settlement approval issues. This stay provision is authorized under the All Writs Act, 28 U.S.C. Section 1651(a), which provides, in pertinent part, that federal courts "may issue all writs necessary or appropriate in aid of their respective jurisdictions and agreeable to the usages and principles of law." 28 U.S.C. § 1651(a); *see Henson v. CIBA-GEIGY Corp.*, 261 F.3d 1065, 1068 (11th Cir. 2001) ("[A] district court has the authority under the Act to enjoin a party to litigation before it from prosecuting an action in contravention of a settlement agreement over which the district court has retained jurisdiction").

The All Writs Act "confers 'extraordinary powers' upon federal courts." *In re Managed Card Litig.*, 236 F. Supp. 2d 1336, 1339 (S.D. Fla. 2002) (quoting *ITT Cmty. Dev. Corp. v. Barton*, 569 F.2d 1351, 1358 (5th Cir. 1978)), *aff'd*, No. 02-16965 (11th Cir. Jan. 29, 2004). Indeed, numerous federal courts across the nation have issued injunctions under the All Writs Act staying or enjoining state court actions involving the same subject matter from proceeding based on settlements

14

or judgments entered in federal court.  *See, e.g., Henson*, 261 F.3d at 1068-71; *Demint v. Nationsbank Corp.*, 208 F.R.D. 639, 644 n. 8 (M.D. Fla. 2002); *Gross v. Barnett Bank, Inc.*, 934 F. Supp. 1340, 1345-46 (M.D. Fla. 1995); *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1025 (9th Cir. 1998) (affirming district court's issuance of injunction staying state court class actions in connection with preliminary approval of settlement class); *In re Diet Drugs*, 282 F.3d 220, 236-39 (3d Cir. 2002); *In re The Prudential Ins. Co. of Am. Sales Practices Litig.*, 261 F.3d 355, 366 (3rd Cir. 2001); *Hillman v. Webley*, 115 F.3d 1461, 1468 (10th Cir. 1997) ("[S]ome federal courts . . . have utilized the Act to issue orders in the class action enjoining class members from pursuing state court actions that would conflict with the settlement order."); *White v. National Football League*, 41 F.3d 402, 409 (8th Cir. 1994); *In re Baldwin-United Corp.*, 770 F.2d 328, 335 (2d Cir. 1985); *White v. Eagle-Picher Indus., Inc. (In re Joint Eastern & Southern Dist. Asbestos Litig.)*, 134 F.R.D. 32, 37 (E.D.N.Y. & S.D.N.Y. 1990) ("Whether viewed as an affirmative grant of power to the courts or an exception to the Anti-Injunction Act, the All Writs Act permits courts to certify a national class action and to stay pending federal and state cases brought on behalf of class members.").

Based on the foregoing authorities, the stay in the Preliminary Approval Order plainly is proper.  Indeed, the proposed language is no broader than that expressly approved in *Hanlon v. Chrysler Corp. See* 150 F.3d at 1018.  The Settlement typifies the complicated, comprehensive class action settlement, involving a substantial amount of time and expenditure of resources, which requires a nationwide stay of all competing actions brought on behalf of class members in all forums in order to proceed to an orderly conclusion.  If competing claims in other courts were to be actively litigated while the Settlement is under consideration, this Court's ability to oversee the Settlement approval process could be jeopardized.  *See, e.g., In re Baldwin-United*, 770 F.2d at 333 (noting that "the existence of actions in the state court would jeopardize its ability to rule on the settlements, would substantially increase the cost of litigation, would create a risk of conflicting results, and would prevent the plaintiffs from benefiting from any settlement already negotiated or from reaching a new and improved settlement in federal court").

Moreover, the stay would be in effect for only the limited period between preliminary and final approval and will not materially prejudice any Class member who does not desire to participate

15

in the Settlement; the stay would be lifted as to any Class members who elect to exercise their opt-out rights. The stay merely maintains the status quo for a limited time, allowing the proposed Settlement to be considered calmly and without the distraction of litigation of competing claims and the risk of potentially conflicting rulings by other courts. In contrast, failing to stay competing actions may seriously prejudice the settlement by threatening to unravel the substantial negotiations that the parties contend have yielded an efficient, fair, comprehensive, and final resolution of the issues and claims presented.

## VI. CONCLUSION

The Settlement before the Court is fair, adequate and reasonable, and certainly within the range of reasonableness sufficient for preliminary approval. Conditional class certification is appropriate, and the proposed notice program is well calculated to inform absent Class members of their rights. Accordingly, Representative Plaintiff respectfully requests that the Court enter an Order, in the form attached as Exhibit A:

(i)    preliminarily approving the Settlement embodied in the Stipulation and Agreement of Settlement attached as Exhibit B;

(ii)   authorizing Plaintiff's Lead Counsel to enter into the Settlement on behalf of the Plaintiff Class, and to bind them all to the duties and obligations contained therein, including the releases provided for in the Settlement, subject to final approval by the Court following the settlement hearing;

(iii)  approving the form and program of Class notice described in the stipulation of Settlement;

(iv)   approving the form of Proof of Claim form and Release attached as Exhibit A-3 to the Settlement;

(v)    scheduling a hearing before the Court to determine whether the proposed settlement should be given final approval;

(vi)   staying competing actions brought by or on behalf of settlement class members; and

16

(vii)    approving the timetable set forth in the Settlement for giving notice to the Class,
submissions of proofs of claims, disseminations of Class Notice, and other relevant
deadlines.

Respectfully submitted this _13_ day of February, 2004.

> KOZYAK TROPIN & THROCKMORTON, P.A.
> Attorneys for Plaintiff
> 200 South Biscayne Boulevard, Suite 2800
> Miami, Florida 33131-2335
> Telephone: (305) 372-1800/Telecopier: (305) 372-3508
>
> By:_____
> Adam M. Moskowitz
> Florida Bar No. 984280
> Thomas A. Tucker Ronzetti
> Florida Bar No. 965723
>
>
> GARWIN, BRONZAFT, GERSTEIN & FISHER, L.L.P.
> Co-counsel for Plaintiff
> 1501 Broadway - Room 1416
> New York, New York 10036
> Tel: (212) 398-0055
> Fax:(212) 764-6620
> Bruce E. Gerstein, Esq.
> Kevin Landau, Esq.
>
> Of Counsel - BALLON STOLL BADER & NADLER, P.C.
> Irving Bizar, Esq.
> 1450 Broadway, 14th Floor
> New York, New York 10018
> Tel: (212) 575-7900
> Fax: (212) 764-5060
>
>
> and

17

STROOCK & STROOCK & LAVAN LLP

*Attorneys for Defendants*
200 South Biscayne Boulevard
3160 Wachovia Financial Center
Miami, Florida 33131
Telephone: (305) 358-9900/Facsimile: (305)789-9302

By: _____
      Richard B. Simring, FBN: 890571
      Richard E. Landman, FBN: 149713

Of Counsel -  Stroock & Stroock & Lavan LLP
           Julia B. Strickland, Esq.
           Scott M. Pearson, Esq.
           Andrew W. Moritz, Esq.
           2029 Century Park East, Floors 16 & 18
           Los Angeles, California 90067-3086

3224/101/2344071

# Exhibit A

IN THE UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF FLORIDA

CASE NO. 04-20314-CIV-UNGARO-BENAGES

| | |
|---|---|
| EDWARD LIPUMA, On Behalf of Himself ) and All Others Similarly Situated, and On Behalf of the General Public, ) ) Plaintiffs, ) ) vs. ) ) AMERICAN EXPRESS COMPANY, a ) New York Corporation, AMERICAN ) EXPRESS TRAVEL RELATED ) SERVICES COMPANY, INC., a New York ) Corporation and AMERICAN EXPRESS ) CENTURION BANK, a New York ) Corporation, ) ) Defendants. ) | CLASS ACTION |

**[PROPOSED] ORDER PRELIMINARILY APPROVING CLASS ACTION SETTLEMENT, PROVIDING FOR NOTICE AND ENJOINING PROSECUTION OF RELEASED CLAIMS**

WHEREAS, a putative class action is pending in the Court entitled Edward LiPuma, et al. vs. American Express Company, et al., Case No. 04-20314-CIV-Ungaro-Benages (the "LiPuma Action"); and

WHEREAS, the parties having made application, pursuant to Federal Rule of Civil Procedure 23(e), for an order approving the settlement of the LiPuma Action, in accordance with a Stipulation and Agreement of Settlement dated as of February ___, 2004 (the "Stipulation" or the "Agreement"), which, together with the Exhibits annexed thereto, sets forth the terms and conditions for a proposed settlement of the LiPuma Action and for dismissal of the LiPuma Action with prejudice upon the terms and conditions set forth therein (the "Settlement"); and

WHEREAS, as a condition of the Settlement, the Representative Plaintiff on behalf of himself individually and on behalf of each of the Settlement Class Members has agreed to release all claims arising under federal, state or common law as specified in the Release; and

WHEREAS, the injunction set forth in Paragraph 15 of this Order is a material term of the Settlement and an essential component of the consideration for which Defendants negotiated; and

WHEREAS, the Court having read and considered the Stipulation and the Settlement; and

WHEREAS, all defined terms contained herein shall have the same meanings as set forth in the Stipulation;

**NOW THEREFORE, IT IS HEREBY ORDERED:**

1.     For purposes of this Settlement only, the Court has jurisdiction over the subject matter of the LiPuma Action and personal jurisdiction over the parties and each of the Settlement Class Members described below.

2.      Pursuant to Federal Rule of Civil Procedure 23(b)(3), the Court
preliminarily certifies, solely for purposes of effectuating this Settlement, a
"Settlement Class" defined as:

> All former or current American Express cardmembers or
> accountholders with U.S. billing addresses who incurred
> a charge denominated in a foreign currency, and paid that
> charge in U.S. dollars, during the time period between
> March 28, 1997 and [date of preliminary approval], and
> who did not negotiate (or on whose behalf there was not
> negotiated) a foreign currency conversion methodology
> for their American Express account(s).

Excluded from the Settlement Class are:  those persons who opt out of the
Settlement Class pursuant to the procedure set forth in Paragraph 10 below.  The
term "Settlement Class Member" means and refers to any person and/or entity who
falls within the definition of the Settlement Class.

3.      The Court designates plaintiff Edward LiPuma as a representative of
the Settlement Class ("Representative Plaintiff"), and it designates Adam M.
Moskowitz, Esq., Thomas A. Tucker Ronzetti, Esq., and their firm, Kozyak Tropin
& Throckmorton, P.A., and Bruce E. Gerstein, Esq., Kevin Landau, Esq., and their
firm, Garwin, Bronzaft, Gerstein & Fisher, LLP, as Class Counsel ("Class
Counsel").  The Court authorizes the Representative Plaintiff and Class Counsel to
enter into the Agreement on behalf of the Settlement Class, and to bind them all to
the duties and obligations contained therein, subject to final approval by the Court
of the Settlement.  The Representative Plaintiff and Class Counsel, on behalf of the
Settlement Class, are authorized to take all appropriate action required or permitted
to be taken by the Settlement Class pursuant to this Agreement to effectuate its
terms.

so23470313

4.    With respect to the Settlement Class, this Court preliminarily finds for settlement purposes only that: (a) the Settlement Class Members are so numerous that joinder of all Settlement Class Members in the LiPuma Action is impracticable; (b) there are questions of law and fact common to the Settlement Class which predominate over any individual questions; (c) the claims of the Representative Plaintiff are typical of the claims of the Settlement Class; (d) the Representative Plaintiff and Class Counsel fairly and adequately represent and protect the interests of all of the Settlement Class Members; and (e) a class action is superior to other available methods for the fair and efficient adjudication of the instant controversy.

5.    The Court does hereby preliminarily approve the Stipulation and the Settlement as being fair, adequate and reasonable as to the Settlement Class Members, subject to further consideration at the Fairness Hearing (as defined in paragraph 6 below).

6.    A hearing (the "Fairness Hearing") shall be held before this Court at _____ a.m. on _____, 2004, at the United States District Court, 301 North Miami Avenue, Miami, Florida 33128, to determine: whether the proposed settlement of the LiPuma Action on the terms and conditions provided for in the Settlement is fair, adequate and reasonable as to the Settlement Class Members and should be approved by the Court; whether a Final Approval Order and Judgment as provided for in the Stipulation should be entered; and to determine the amount of fees and expenses that should be awarded to Class Counsel, and of the incentive award to the Representative Plaintiff, as proposed in the Stipulation.

7.    The Court approves, as to form and content, the Mailed Notice, Claim Form and the Publication Notice annexed as Exhibits 1, 2 and 3 hereto, as well as the Settlement Website (as defined in paragraph 8(c) below) and toll-free telephone number, established to provide Settlement Class Members with information about

3

the Settlement, the Mailed Notice and Claim Form.  Furthermore, the Court finds that the mailing of the Mailed Notice and Claim Form, the distribution of the Publication Notice and the establishment of the Settlement Website and toll-free telephone number substantially in the manner and form set forth in Paragraph 8 below meet the requirements of Federal Rule of Civil Procedure 23, and of due process, and is the best notice practicable under the circumstances and shall constitute due and sufficient notice to all persons entitled thereto.

8.     Notice of the proposed Settlement shall be provided as follows:

(a)     Not later than June 31, 2004, American Express and/or the Claims Administrator shall cause the Mailed Notice, along with the Claim Form, to be mailed to the last known address of all Settlement Class Members whose accounts can be identified through reasonably accessible electronic records available to American Express, except those Settlement Class Members with Closed and Inactive Accounts for which American Express no longer maintains addresses in reasonably accessible electronic form, or whose accounts have been written off by American Express and/or have been in collection and/or have been sold for purposes of collection, who shall receive Publication Notice.  At its option, American Express may provide the Mailed Notice and Claim Form either as a message printed in the first pages of the Settlement Class Member's periodic statement or as a separate mailing.  No skip-trace or re-mailing of returned mail will be required.

4

(b)     American Express and/or the Claims Administrator
shall cause the Publication Notice to be published in
accordance with the schedule set forth in Exhibit 4
hereto.

(c)     American Express and/or the Claims Administrator
shall create an Internet website (the "Settlement
Website") which will publish the Stipulation, the
Mailed Notice and the Claim Form, and provide
information as to how Settlement Class Members may
submit a Claim Form pursuant to the Settlement. The
Settlement Website will be separate and distinct from,
and not linked to, American Express's website. Class
Counsel will post on its own website(s) the Mailed
Notice, the Claim Form, public records in their
discretion and other materials approved by American
Express. No other materials relating to the Litigation
shall be posted on the website(s) of Class Counsel.

(d)     American Express or the Claims Administrator will
also create a toll-free number to receive calls from
Settlement Class Members who wish to request a
Mailed Notice and/or a Claim Form. The toll-free
number will not be an American Express customer
service number and, at American Express's option, will
not be staffed by live operators. To the extent that
scripts or other materials are prepared for use by the
Claims Administrator, they shall be subject to the
approval of Class Counsel regarding the content of such

50234703\13

scripts and materials.  The obligations created by this
Paragraph, as well as paragraph 8(c) above, shall expire
on the last date on which claims may be submitted
pursuant to the Settlement.

(e)    At least ten calendar days prior to the Fairness Hearing,
American Express and/or the Claims Administrator
shall file with the Court proof, by affidavit or
declaration, that notice has been completed in
accordance with the terms of this Preliminary Approval
Order.

9.    All Settlement Class Members who do not request exclusion from the
Settlement pursuant to the procedure described in Paragraph 10 below shall be
bound by all determinations and judgments in the LiPuma Action concerning the
Settlement, whether favorable or unfavorable to Settlement Class Members,
including, but not limited to, the validity, binding nature and effectiveness of the
releases set forth in the Stipulation.

10.    Any person falling within the definition of the Settlement Class who
desires to request exclusion from the Settlement Class shall do so by mailing to the
Claims Administrator a request for exclusion that includes a statement requesting
to be excluded from the settlement of the LiPuma Action, the requesting party's
name, **address and account number(s)**, and that is personally signed by the person
requesting exclusion.  No request for exclusion will be valid unless it is made in
the manner described in the Mailed Notice.  Requests for exclusion from the
Settlement Class must be postmarked by _____ , 2004 in order to be valid.

11.    Any Settlement Class Member may enter an appearance in the LiPuma
Action, at his or her own expense, individually or through counsel of his or her

6

own choice. All Settlement Class Members who do not enter an appearance will be deemed to have been represented by Class Counsel.

12.    Any Settlement Class Member may appear and show cause if he or she has any reason why the proposed settlement of the LiPuma Action should or should not be approved as fair, adequate and reasonable, why a judgment should or should not be entered thereon, why attorneys' fees and expenses should or should not be awarded to Class Counsel, or why the incentive award should or should not be allowed; provided, however, that no Settlement Class Member shall be heard, and no objection may be considered, unless, no later than _____, 2004, the Settlement Class Member files with the Court and serves on Class Counsel and American Express's counsel at the addresses set forth in the Mailed Notice and the Publication Notice a written statement of the objection, as well as the specific reason(s), if any, for the objection, including any legal support the Settlement Class Member wishes to bring to the Court's attention. Any Settlement Class Member who does not make his or her objection within the time and manner set forth in this Paragraph 12 shall be deemed to have waived such objection and shall be foreclosed forever from making any objection to the fairness, adequacy or reasonableness of the proposed Settlement, to the award of attorneys' fees and expenses to Class Counsel, and to the incentive award to the Representative Plaintiff.

13.    All further motions and papers in support of the Settlement, including responses to any objections, and any application by Class Counsel for attorneys' fees and expenses, shall be filed and served no later than ten (10) calendar days before the Fairness Hearing.

14.    All reasonable costs incurred in providing Class Notice, as well as in administering the Settlement, shall be paid by American Express as set forth in the Stipulation. In the event the Settlement is not approved by the Court, or otherwise

7

fails to become effective, neither the Representative Plaintiff nor Class Counsel shall have any obligation to American Express for the costs of Class Notice.

15.   All proceedings in this LiPuma Action and all Released Claims, as described in the Stipulation, currently being asserted by or on behalf of any Settlement Class Member in any forum are ordered stayed until final determination, except as may be necessary to implement the Settlement or comply with the terms of the Stipulation.  The proceedings stayed by this Order include, but are not limited to: (i) Arumbula, et al. v. American Express Company, et al., District Court of Cameron County, Texas, Case No. 2003-05-2448-D; (ii) Bildstein, et al. v. American Express Company, et al., Supreme Court of Queens County, New York, Index No. 15029-03; (iii) Environmental Law Foundation, et al. v. American Express Company, et al., Superior Court of California, County of Alameda, Case No. BG03089146; (iv) Fuentes v. American Express Travel Related Services Company, Inc and American Express Company, District Court of Hidalgo County, Texas, Case No. C-848-03-B; (v) Janowitz v. American Express Company, et al., Circuit Court of Cook County, Illinois; Case No. 03CH15385; (vi) Rubin v. American Express Company and American Express Travel Related Services Company, Inc., Circuit Court of Madison County, Illinois, Case No. 03-L-530; (vii) Wick v. American Express Company, et al., Circuit Court of Cook County, Illinois, Case No 03CH07811; and (viii) Paul v. American Express Company, et al., Superior Court of California, County of Orange, Case No. 04cc00015.  Pending final determination of whether the Settlement should be approved, neither the Representative Plaintiff nor any Settlement Class Member, either directly, representatively or in any other capacity, nor any person or entity allegedly acting on behalf of Settlement Class Members, shall commence or prosecute against American Express, or against any of the other Released Persons, any action or proceeding in any court or tribunal asserting any of the Released

Claims as described in the Settlement Agreement, provided, however, that this stay shall not apply to individual claims of any Settlement Class Members who timely exclude themselves in a manner that complies with Paragraph 10 of this Preliminary Approval Order.  This stay is necessary to protect and effectuate the Settlement, this Preliminary Approval Order, and this Court's flexibility and authority to effectuate this Settlement and to enter Final Judgment when appropriate and is ordered in aid of this Court's jurisdiction and to protect its judgments pursuant to 28 U.S.C. sections 1651(a) and 2283.

16.    The Court reserves the right to adjourn or continue the date of the Fairness Hearing without further notice to Settlement Class Members, and retains jurisdiction to consider all further applications arising out of or connected with the Settlement.  The Court may approve or modify the Settlement without further notice to Settlement Class Members.

    **IT IS SO ORDERED.**


DATED:                        _____

                              HON. URSULA UNGARO-BENAGES
                              UNITED STATES DISTRICT JUDGE

9

# Exhibit B

# IN THE UNITED STATES DISTRICT COURT

# FOR THE SOUTHERN DISTRICT OF FLORIDA

## CASE NO. 04-20314-CIV-UNGARO-BENAGES

|  |  |
|---|---|
| EDWARD LIPUMA, On Behalf of Himself and All Others Similarly Situated, and On Behalf of the General Public,<br><br>Plaintiff,<br><br>vs.<br><br>AMERICAN EXPRESS COMPANY, a New York Corporation, AMERICAN EXPRESS TRAVEL RELATED SERVICES COMPANY, INC., a New York Corporation and AMERICAN EXPRESS CENTURION BANK, a New York Corporation,<br><br>Defendants. | <u>CLASS ACTION</u> |

## STIPULATION AND AGREEMENT OF SETTLEMENT

S023852769

This Stipulation and Agreement of Settlement (the "Stipulation" or the "Agreement") is entered into by and among the following Settling Parties (as defined herein), subject to approval of the Court: (i) representative plaintiff Edward LiPuma (the "Representative Plaintiff") on behalf of himself individually and on behalf of each of the Settlement Class Members (as defined below in paragraph 1.21), on the one hand, and American Express Company, American Express Centurion Bank and American Express Travel Related Services Company, Inc. (collectively, "American Express" or "Defendants"), on the other. The Stipulation is intended by the Settling Parties to fully, finally and forever resolve, discharge and settle the Released Claims (as defined in Paragraph 1.16), upon and subject to the terms and conditions hereof.

## I.    THE LITIGATION

On or about August 23, 2003, plaintiffs Edward LiPuma, et al. filed a class action Complaint in the Circuit Court of the 11th Judicial Circuit in and for Miami-Dade County, State of Florida, captioned Edward LiPuma, et al. v. American Express Company, et al. (Case No. 03-19365-CA-09) (the "LiPuma Action"), alleging causes of action for violation of the Florida Deceptive and Unfair Trade Practices Act, Florida Statutes Sections 501.201-501.213 ("FDUTPA"), and unjust enrichment based on allegations challenging Defendants' foreign currency conversion practices, including the assessment and disclosure of a 1-2% foreign currency conversion rate adjustment (the "FX Rate Adjustment") imposed in connection with purchases made in foreign (non-U.S.) currencies by American Express cardmembers using their American Express charge and credit cards, which plaintiffs characterize as a "foreign currency transaction fee."

On December 15-16, 2003, the parties through counsel attended a mediation before the Honorable Herbert J. Stern, a former United States Attorney and United States District Judge. Also attending the mediation was Irving Bizar, Esq., as counsel in Bildstein v. American Express Co., No. 1029-03 (New York Supreme Court), another putative class action case challenging the same conduct at issue in

- 2 -

the LiPuma Action.  The mediation resulted in the parties reaching an agreement in principle.

The Representative Plaintiff is filing a First Amended Complaint, alleging causes of action for:  (i) violation of the FDUTPA and the unfair and deceptive acts and practices ("UDAP") statutes of all other states; (ii) unjust enrichment; (iii) violation of the Federal Truth-in-Lending Act ("TILA"); and (iv) breach of contract, arising out of Defendants' foreign currency conversion practices.  Defendants are removing the LiPuma Action to the United States District Court for the Southern District of Florida (the "Court").  The captioned action is defined herein as the "Litigation."

## II.   DEFENDANTS' DENIALS OF WRONGDOING AND LIABILITY

Defendants have denied and continue to deny each and all of the claims and contentions alleged by the Representative Plaintiff and the Settlement Class Members (as defined below in paragraph 1.21) in the Litigation.  Defendants expressly have denied and continue to deny all charges of wrongdoing or liability against them arising out of any of the conduct or acts alleged, or that could have been alleged, in the Litigation.  Defendants also have denied and continue to deny, inter alia, the allegations that the Representative Plaintiff or the Settlement Class Members have suffered damage and that the Representative Plaintiff or the Settlement Class Members were harmed in any way by the conduct alleged in the Litigation.

Nonetheless, Defendants have concluded that further conduct of the Litigation would be protracted and expensive, and that it is desirable that the Litigation be fully and finally settled in the manner and upon the terms and conditions set forth in this Stipulation.  Defendants also have taken into account the uncertainty and risks inherent in any litigation, especially in complex cases like the Litigation.  Defendants have, therefore, determined that it is desirable and beneficial to them that the Litigation be settled in the manner and upon the terms and conditions set forth in this Stipulation.

- 3 -

III.   **CLAIMS OF THE REPRESENTATIVE PLAINTIFF AND BENEFITS OF SETTLEMENT**

The Representative Plaintiff believes that the claims asserted in the Litigation have merit. However, the Representative Plaintiff, on behalf of himself and the Settlement Class Members, and Class Counsel (as defined below in paragraph 1.3) recognize and acknowledge the expense and length of continued proceedings necessary to prosecute the Litigation against the Defendants through trial and subsequent appeals. The Representative Plaintiff and Class Counsel also have taken into account the uncertain outcome and the risk of any litigation, especially in complex actions such as the Litigation, as well as the difficulties and delays inherent in such litigation. The Representative Plaintiff and Class Counsel also are mindful of the inherent problems of proof under and possible defenses to the violations asserted in the Litigation. The Representative Plaintiff and Class Counsel believe that the settlement set forth in this Stipulation confers substantial benefits upon Settlement Class Members. Based on their evaluation, the Representative Plaintiff and Class Counsel have determined that the settlement set forth in the Stipulation is fair, reasonable and in the best interests of the Representative Plaintiff and the Settlement Class Members.

IV.   **TERMS OF SETTLEMENT**

NOW, THEREFORE, IT IS HEREBY STIPULATED AND AGREED by and among the Representative Plaintiff (for himself and the Settlement Class Members) and the Defendants that, subject to the approval of the Court, the Litigation and the Released Claims shall be finally and fully compromised, settled and released, and the Litigation shall be dismissed with prejudice, as to all Settling Parties, upon and subject to the terms and conditions of the Stipulation, as follows.

1.   **Definitions**

As used in the Stipulation the following terms have the meanings specified below:

S023X577\9

1.1    "Active Account" means an account with respect to which American Express is sending periodic account statements to the holder of the account.

1.2    "American Express" or "Defendants" means, collectively, American Express Company, American Express Travel Related Services Company, Inc. and American Express Centurion Bank.

1.3    "Class Counsel" means:  (i) Kozyak Tropin & Throckmorton, P.A., Adam M. Moskowitz, Esq. and Thomas A. Tucker Ronzetti, Esq., 2800 Northeast Financial Center, 200 South Biscayne Boulevard, Miami, Florida 33131-2305, (305) 372-1800 (ph), (305) 372-3508 (fax); and (ii) Garwin, Bronzaft, Gerstein & Fisher, L.L.P., Bruce E. Gerstein, Esq. and Kevin Landau, Esq., 1501 Broadway, Suite 1416, New York, New York 10036, (212) 398-0955 (ph) and (212) 764-6620 (fax).

1.4    "Class Notice" means all types of notice to the Settlement Class as contemplated herein.

1.5    "Class Period" means the time period between and including March 28, 1997 and the date of preliminary approval of the Settlement.

1.6    "Claim Form" means the Claim Form pursuant to which Settlement Class Members can submit claims, a copy of which is attached hereto as Exhibit A.

1.7    "Claim Period" means the period of time, limited to ninety (90) days, in which a Settlement Class Member may submit a Valid Claim in order to receive a Settlement Payment, as set forth in the Class Notice and below.  The last day of the Claim Period, which will be specified in the Class Notice, will be no earlier than 90 days after the later of (a) the last date on which the Mailed Notice is to be mailed and (b) the last date on which the Publication Notice is published.

1.8    "Closed Account" means an account that no longer may be used in credit or charge card transactions.

1.9    "Effective Date" means the first date on which all of the events and conditions specified in Paragraph 6.1 of the Stipulation have occurred and been met.

- 5 -

1.10  "Final" means: (i) the date of final affirmance on an appeal of the Judgment, the expiration of the time for a petition for or a denial of a writ of certiorari to review the Judgment or, if certiorari is granted, the date of final affirmance of the Judgment following review pursuant to that grant; or (ii) the date of final dismissal of any appeal from the Judgment or the final dismissal of any proceeding on certiorari to review the Judgment; or (iii) if no appeal is filed, the expiration date of the time for the filing or noticing of any appeal from the Court's Judgment approving the Stipulation substantially in the form of Exhibit B attached hereto, i.e., thirty (30) days after entry of the Judgment, such that the Judgment represents a final and binding judgment with respect to the Litigation.  Any proceeding or order, or any appeal or petition for a writ of certiorari, pertaining solely to an application for attorneys' fees and expenses, shall not in any way delay or preclude the Judgment from becoming Final.  However, distribution of the Settlement Amount will be delayed in the event of an appeal concerning any attorneys' fees, expenses and/or incentive award that have been allowed or disallowed.

1.11  "FX Rate Adjustment" means the 1%-2% increase in the currency conversion rate selected by American Express pursuant to its cardmember agreements.

1.12  "FX Amount" means the monetary amount paid by a Settlement Class Member as a result of the FX Rate Adjustment imposed by American Express between February 1, 1999 (the earliest date on which required data is reasonably available) and the end of the Class Period.

1.13  "Inactive Account" means an account with respect to which American Express is not sending periodic account statements to the holder of the account.

1.14  "Judgment" means the Judgment to be rendered by the Court, substantially in the form attached hereto as Exhibit B.

1.15   "Open Account" means an account that may be used in credit or charge card transactions.

1.16   "Released Claims" means the claims released by this Stipulation, as set forth in Paragraphs 4.1 and 4.2 below.

1.17   "Released Persons" means each and all of the Defendants and each of their present and former and direct and indirect parent companies, affiliates, subsidiaries, agents, successors, predecessors-in-interest, and/or any financial institutions, corporations, trusts, or other entities that may hold or have held any interest in any account or any receivables relating to any account, or any receivables or group of receivables, or any interest in the operation or ownership of American Express, and all of the aforementioned's respective officers, directors, employees, attorneys, vendors (including processing facilities) and assigns.

1.18   "Representative Plaintiff" means Edward LiPuma.

1.19   "Settlement" means the settlement terms set forth in this Stipulation of Settlement.

1.20   "Settlement Class" means:  all former or current American Express cardmembers or accountholders with U.S. billing addresses who incurred a charge denominated in a foreign currency, and paid that charge in U.S. dollars, during the time period between March 28, 1997 and [date of preliminary approval], and who did not negotiate (or on whose behalf there was not negotiated) a foreign currency conversion methodology for their American Express account(s).

1.21   "Settlement Class Member" means a person and/or entity who falls within the definition of the Settlement Class.

1.22   "Settlement Amount" means the total amount of $66,000,000.00.

1.23   "Settlement Costs" means the sum of:  (i) any award of attorneys' fees and expenses to Class Counsel; and (ii) any incentive award to the Representative Plaintiff.

50238577v9

1.24 "Settling Parties" means, collectively, each of the Defendants and the Representative Plaintiff, on behalf of himself and the Settlement Class Members.

1.25 "Settlement Payment" means the amount to be paid in respect of Valid Claims submitted by Settlement Class Members.

1.26 "Valid Claim" means a claim that is submitted via a properly completed Claim Form, contains the information reasonably necessary for American Express and the Claims Administrator to validate the claim as set forth in the Claim Form, and is verified by American Express and the Claims Administrator subject to review by Class Counsel. By way of example, and without limitation, a claim is not valid if American Express and/or the Claims Administrator determines from American Express's records that the claimant did not have an account or incur a charge in foreign currency during the Class Period.

## 2. The Settlement

### a. Settlement Amount

2.1 In complete and final settlement of the Litigation, in addition to implementing the disclosure changes discussed below and paying for the costs of Class Notice and settlement administration, American Express agrees to pay the Settlement Amount of $66,000,000.00 on the terms set forth herein. American Express may deposit the Settlement Amount into an interest-bearing account within thirty (30) days of the date of notice of entry of an Order and Judgment approving the Settlement or, in the alternative, simple interest shall accrue on the Settlement Amount on the basis of actual days elapsed using a 360-day calendar and the 1-month LIBOR rate (British Bankers' Association) for the day immediately preceding each monthly period during which interest accrues, beginning thirty (30) days after the date of notice of entry of an Order and Judgment approving the Settlement. The initial LIBOR determination date will be on the first business day immediately preceding the first monthly accrual period. LIBOR will reset monthly thereafter on the business day immediately preceding each monthly accrual period.

**b.     Charitable Contributions**

2.2     American Express will make a $500,000.00 contribution to a charity or charities to be agreed upon by the Settling Parties and approved by the Court (the "Initial Charitable Contribution"). The Initial Charitable Contribution will be made from the Settlement Amount on behalf of Settlement Class Members who do not receive a Settlement Payment. The Initial Charitable Contribution shall be deemed to represent class action statutory damages to the full extent authorized by the Truth in Lending Act, 15 U.S.C. Section 1601, et seq., with respect to all claims alleged in the Litigation. In addition, to the extent that the Aggregate Claim Amount (as described below) is less than the Settlement Amount (plus any accrued interest minus the Initial Charitable Contribution and Settlement Costs), American Express shall donate an additional $1,500,000.00 (or such lesser amount as is necessary to reach the Settlement Amount) to a charity or charities to be agreed upon by the Settling Parties and approved by the Court (the "Additional Charitable Contribution") on behalf of Settlement Class Members who do not receive a Settlement Payment.

**c.     Payments to Settlement Class Members**

2.3     In order to receive a Settlement Payment, Settlement Class Members must submit claims using the Claim Form (attached hereto as Exhibit A) which requires information sufficient to identify the Settlement Class Member's account (i.e., name, current address, social security number and account number) and a statement under penalty of perjury that the Settlement Class Member is or was an American Express cardmember and used his or her card for purchases or cash advances in foreign currency during the Class Period.

2.4     American Express will make a Settlement Payment to each Settlement Class Member who submits a Valid Claim, provided that the account of such Settlement Class Member has not, at any time prior to the date of the payment, been written off by American Express as a result of non-payment. Settlement Payments payable to Settlement Class Members will be calculated as follows:

- 9 -

(i)     For Settlement Class Members whose account was opened after February 1, 1999, the Settlement Payment shall be an amount equal to 100% of the FX Amount incurred by the Settlement Class Member on his or her American Express account between February 1, 1999 (the earliest date on which required data is reasonably available) and the end of the Class Period.  American Express will determine this amount from its records; claimants shall not be required to submit documentation or make calculations.  Only one payment shall be made for each such account.

(ii)     For Settlement Class Members whose account was opened before February 1, 1999, the Settlement Payment shall be an amount equal to 100% of the FX Amount incurred by the Settlement Class Member on his or her American Express account between February 1, 1999 and the end of the Class Period.  In addition, because American Express does not have readily accessible records regarding amounts paid by cardmembers in respect to the FX rate adjustment prior to February 1, 1999, each claimant whose account was open and incurred a charge in foreign currency between March 28, 1997 and January 31, 1999 may claim a flat amount of $15.00, which, in the absence of reasonably available account-specific data, represents a reasonable settlement amount the Settling Parties have agreed upon to compensate Settlement Class Members for the period from March 28, 1997 through February 1, 1999.  Only one payment shall be made for each such account.

(iii)    For Settlement Class Members whose account was closed prior to February 1, 1999, the Settlement Payment shall be a flat amount of $15.00. Only one payment shall be made for each such account.

2.5     In the event that the aggregate amount of all Settlement Payments to be made to Settlement Class Members submitting Valid Claims (the "Aggregate Claim Amount") is more than the Settlement Amount (plus any accrued interest and minus the Initial Charitable Contribution and Settlement Costs), the Settlement Payment for each Settlement Class Member shall be decreased on a *pro rata* basis.  Under no

5023857769

circumstances shall the amount paid by Defendants pursuant to this Agreement exceed $66,000,000.00 plus accrued interest and the amounts paid for Class Notice and settlement administration.

2.6    In order to be eligible to receive a Settlement Payment, a Settlement Class Member must timely submit a Valid Claim within the Claim Period. Claims are to be submitted by mail or, if determined to be feasible and cost-effective by the Claims Administrator, American Express and Representative Plaintiff, via an independent Internet web site. American Express will have no obligation to honor any claims received with a postmark or electronic time stamp dated after the end of the Claim Period, even if such claims otherwise would be Valid Claims. The Settling Parties will not be responsible for confirming the validity of any signature or current address of any Settlement Class Member.

2.7    American Express reserves the right to verify all claims before payment. The Claims Administrator shall send notice to Settlement Class Members whose claims have been rejected providing the reasons for such rejection. Class Members shall have twenty-one (21) days from that date to cure any defect leading to rejection by mailing a corrected Claim Form or other information or documents requested by the Claims Administrator. If a claim is timely submitted during the Claim Period, rejected by the Claims Administrator and then timely cured by the Settlement Class Member, such claim shall be deemed a Valid Claim despite the fact that defects were cured after the Claim Period.

2.8    Class Counsel shall have the right to reasonably review the calculation of Settlement Payments made pursuant to the Settlement. Class Counsel shall be given a summary of claims made by Settlement Class Members, including denials of claims and the reasons therefor, on a periodic basis and no later than forty-five (45) days after the deadline for submitting claims. Class Counsel shall communicate in writing to counsel for American Express any objections to the calculations and denials of claims by facsimile and first-class mail no later than fourteen (14) calendar

- 11 -

days after receipt of reports concerning such claims. The Settling Parties shall meet and confer to resolve any disagreements regarding denied claims no later than fourteen (14) calendar days after service of any such objections. The Court shall retain jurisdiction to resolve any disputes regarding denied claims brought to its attention by the Settling Parties no later than forty-five (45) days after service of any objections by Class Counsel.

2.9   **Settlement Payments** shall be made, at American Express's option, by direct credit to Open or Active Accounts of Settlement Class Members, or by mailing a check to Settlement Class Members. For credits to Open or Active Accounts, identification of the Settlement Payment using the term "foreign currency conversion refund," with or without any additional description, shall be deemed to sufficiently identify the credit. For payments by check, checks will be mailed to the last known address as shown on American Express's reasonably accessible electronic records with respect to that account or, if American Express has no current address, to the address listed on the Claim Form. For a Corporate Card account as to which multiple cards have been issued and individual card holders receive individual periodic statements, each card holder who receives a periodic statement is considered to have a separate account. Distributions from the Settlement Amount for such accounts may be paid either to the corporate holder of the account or to the individual card holder, at American Express's option. No skip-trace or re-mailing of returned mail will be required. Settlement checks will be valid only for a period of one hundred and twenty (120) days after issuance; payment may be stopped on any checks not negotiated within this 120-day period. If American Express did not previously pay from the Settlement Amount an Additional Charitable Contribution of $1,500,000.00, then the net proceeds of checks that were not timely negotiated shall be used to increase the amount of the Additional Charitable Contribution up to a maximum aggregate amount of $1,500,000.00, with any remainder being retained by American Express. If American Express previously paid from the Settlement

Amount an Additional Charitable Contribution of $1,500,000.00, then all net proceeds of checks that were not timely negotiated shall be retained by American Express. Credits or payments made pursuant to this provision shall be deemed to comply with all applicable provisions of the Truth In Lending Act and Regulation Z, including, without limitation, 12 C.F.R. Sections 226.7, 226.8, 226.11 and 226.13, as well as any applicable state law.

2.10  To the extent that the Aggregate Claim Amount is less than the Settlement Amount (plus any accrued interest and minus the Initial Charitable Contribution, the Additional Charitable Contribution and Settlement Costs), the remainder shall be retained by American Express.

### e.  Costs of Class Notice And Claims Administration

2.11  The costs of notice to the Settlement Class shall be borne solely by American Express and shall not be counted as Settlement Costs. The claims process will be administered by Rust Consulting at American Express's sole expense.

### e.  Disclosure Changes

2.12  The parties agree that so long as the related practice continues, American Express will include in its cardmember agreements plain language substantially similar to the following:

TRANSACTIONS MADE IN FOREIGN CURRENCIES

If you incur a Charge in a foreign currency, it will be converted into U.S. dollars on the date it is processed by us or our agents. Unless a particular rate is required by applicable law, you authorize us to choose a conversion rate that is acceptable to us for that date. Currently, the conversion rate we use for a Charge in a foreign currency is no greater than (a) the highest official conversion rate published by a government agency, or (b) the highest interbank conversion rate identified by us from customary banking sources, on the conversion date or the prior business day, **in each instance increased by 2%**. This conversion rate may differ from rates in effect on the date of your Charge. Charges converted by establishments (such as airlines) will be billed at the rates such establishments use.

No later than December 31, 2004, this change in language shall be made and incorporated into cardmember agreements sent to cardmembers. For cardmembers who, prior to the Preliminary Approval of this Agreement, already have received a cardmember agreement with the new language, but without the use of bold type, the bold type will be added to their agreements as part of the next regularly scheduled amendment of **American Express's** cardmember agreements. The Parties further agree that similar language (abbreviated if required by space limitations) will appear on the reverse of periodic billing statements, commencing no later than 30 days after the Effective Date. Furthermore, when a charge in a foreign currency appears on a billing statement, American Express shall print in a conspicuous location on that page of the statement the following disclosure: "Foreign currency conversion rate is base rate plus 2%. Please see page 2 for details." In addition, each charge in a foreign currency on the billing statement shall be marked with an asterisk, dagger or other character that directs the cardmember's attention to the disclosure. (An **example of this billing statement** disclosure is attached hereto as Exhibit F.) **American Express shall implement** this billing practice no later than 30 days after the **Effective Date. Notwithstanding** the deadline of 30 days following the Effective **Date, American Express will use** its best efforts to make these changes to the front **and back of its billing statements** as soon as practicable.

2.13   The Representative Plaintiff and his counsel agree, on behalf of all Settlement Class Members, that these disclosures are adequate and waive claims based on the use of the disclosures, provided that American Express uses and complies with the disclosures and that they accurately describe American Express's practices. The Settlement does not preclude American Express from making changes to the language in its disclosures (a) that American Express reasonably believes are necessary to comply with applicable law or to reflect a future change in its practices or (b) that are more detailed than or in addition to those required by this Agreement.

SO23857769

2.14    American Express agrees that, between the date the Court enters the Notice Order and the date of the Final Order approving the Settlement, it will not increase the amount of the FX Rate Adjustment.

### 3.    Notice of Settlement and Settlement Hearing

3.1    Promptly after execution of this Stipulation, the Settling Parties shall submit the Stipulation together with its Exhibits to the Court and shall apply for entry of an order (the "Notice Order"), substantially in the form and content of the "Order Preliminarily Approving Class Action Settlement and Providing for Notice," attached hereto as Exhibit E, requesting, inter alia, the preliminary approval of the Settlement set forth in this Stipulation, preliminary certification for settlement purposes only of the Settlement Class pursuant to Federal Rule of Civil Procedure 23(b)(3) and approval of the mailing and publication of notice substantially in the form and content of Exhibits A (the "Claim Form"), C (the "Mailed Notice"), and D (the "Publication Notice") attached hereto.

3.2    The Mailed Notice, along with the Claim Form, will be mailed to the last known address of all Settlement Class Members whose accounts can be identified through reasonably accessible electronic records available to American Express, except those Settlement Class Members with Closed and Inactive Accounts for which American Express no longer maintains addresses in reasonably accessible electronic form, or whose accounts have been written off by American Express and/or have been in collection and/or have been sold for purposes of collection, who shall receive Publication Notice. At its option, American Express may provide the Mailed Notice and Claim Form either as a message printed in the first pages of the Settlement Class Member's periodic statement or as a separate mailing. No skip-trace or re-mailing of returned mail will be required.

3.3    Additionally, American Express or the Claims Administrator shall create an Internet website (the "Settlement Website") which will publish this Agreement, the Mailed Notice and the Claim Form, and provide information as to

how Settlement Class Members may submit a Claim Form pursuant to the Settlement. The Settlement Website will be separate and distinct from, and not linked to, American Express's website. Class Counsel will post on its own website(s) the Mailed Notice, the Claim Form, public records in their discretion and other materials approved by American Express. No other materials relating to the Litigation shall be posted on the website of Class Counsel.

3.4    American Express or the Claims Administrator will also create a toll-free number to receive calls from Settlement Class Members who wish to request a Mailed Notice and/or a Claim Form. The toll-free number will not be an American Express customer service number. American Express will have the option, but not the obligation, to staff the toll-free number with live operators. To the extent that scripts or other materials are prepared for use by the Claims Administrator, they shall be subject to the approval of Class Counsel regarding the content of such scripts and materials. The obligations created by this Paragraph, as well as paragraph 3.3 above, shall expire on the last date on which claims may be submitted pursuant to the Settlement.

3.5    The Settling Parties will agree on periodicals of regional and national circulation where the Publication Notice will be published at a total approximate cost of $300,000.00, subject to approval by the Court. Neither the Representative Plaintiff nor his counsel nor American Express's counsel will have any liability for the cost of Publication Notice.

3.6    The cost of Class Notice shall be borne by American Express. Costs incurred by Representative Plaintiff or Class Counsel in connection with the Settlement will not be paid separately by American Express, as these costs are included in the award of attorneys' fees and expenses to Class Counsel.

3.7    The Settling Parties will request that, after Class Notice is given, the Court hold a hearing (the "Settlement Hearing") and finally approve the settlement of the Litigation as set forth herein. At or after the Settlement Hearing, Class Counsel

also will request that the Court approve its application for attorneys' fees and expenses and an incentive award for the Representative Plaintiff.

3.8     A Settlement Class Member may exclude himself, herself or itself from the Settlement Class, by sending a letter to LiPuma Settlement Administrator, P.O. Box ____, Faribault, MN  55021-____, postmarked by no later than a date specified in the Mailed Notice and the Publication Notice which shall be no later than thirty (30) calendar days after the later of the last date on which the Publication Notice is published and the last date on which the Mailed Notice is to be mailed.  The letter must be signed and must include the Settlement Class Member's full name, address and account number(s).  The request must also state:  "I/we request to be excluded from the settlement in <u>LiPuma vs. American Express</u>, U.S. District Court for the Southern District of Florida, Case No. 04-20314-CIV-Ungaro-Benages."  If the account is a joint account, it must be signed by all joint cardholders.  Persons and entities who exclude themselves from the Settlement Class will not be eligible to receive any Settlement Payment, will not be bound by any further orders or judgments entered for or against the Settlement Class, and will preserve their ability to independently pursue any claims they may have against American Express by filing their own lawsuit or arbitration at their own expense.

3.9     Any Settlement Class Member may appear at the Fairness Hearing to argue that the proposed Settlement should not be approved and/or to oppose the application of Class Counsel for an award of attorneys' fees and expenses and the incentive award of the Representative Plaintiff.  However, in order to be heard at the hearing, the Settlement Class Member must make any objection in writing and file it with the Court no later than the last day to opt out of the Settlement Class.  The objection must also be mailed to each of the following, postmarked by the last day to opt out of the Settlement Class:  Class Counsel:  Bruce E. Gerstein, 1501 Broadway, Suite 1416, New York, NY 10036; and Adam M. Moskowitz, Kozyak Tropin & Throckmorton, P.A., 2800 Northeast Financial Center, 200 South Biscayne Blvd.,

Miami, Florida 33131-2305; Counsel to American Express: Julia B. Strickland, Stroock & Stroock & Lavan LLP, 2029 Century Park East, 18th Floor, Los Angeles, CA 90067.

### 4.    Releases

4.1    Upon the Effective Date, as defined in Paragraph 1.9, the Representative Plaintiff and each of the Settlement Class Members, and their respective heirs, executors, administrators, representatives, agents, attorneys, partners, spouses, successors, predecessors-in-interest, assigns, and any authorized users of their accounts, shall be deemed to have, and by operation of the Judgment shall have, fully, finally and forever released, relinquished and discharged any and all rights, duties, obligations, claims (including those that the Representative Plaintiff or any Settlement Class Member does not know or suspect to exist in his, her or its favor at the time of the release which, if known by him, her or it, might have affected his, her or its settlement with and release of the Released Persons, or might have affected his, her or its decision not to object to this settlement), actions, causes of action or liabilities, whether arising under local, state, or federal law, whether by statute, contract, common law or equity, whether known or unknown, suspected or unsuspected, asserted or unasserted, foreseen or unforeseen, actual or contingent, liquidated or unliquidated, as of the Effective Date:  (1) that arise out of or are related in any way to any or all of the acts, omissions, facts, matters, transactions, or occurrences that were directly or indirectly alleged, asserted, described, set forth or referred to in the Litigation including, but not limited to, claims for alleged violations of the Truth in Lending Act (including the Fair Credit Billing Act), state consumer credit or consumer protection statutes, common law prohibiting unfair or deceptive trade practices, breach of contract, fraud, and/or misrepresentation and equity prohibiting unjust enrichment or requiring restitution or disgorgement; and (2) that are, were, or could have arisen out of or been related in any way to Defendants'

foreign currency conversion practices and the disclosures relating thereto. This release does not apply to claims for breach of the Stipulation.

4.2     With respect to the releases set forth in Paragraph 4.1 above, the Settling Parties stipulate and agree that, upon the Effective Date, the Representative Plaintiff shall expressly waive, and each of the Settlement Class Members shall be deemed to have waived, and by operation of the Judgment shall have waived, the provisions, rights and benefits of California Civil Code Section 1542 (and any other applicable law to similar effect), which provides:

> A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS WHICH THE CREDITOR DOES NOT KNOW OR SUSPECT TO EXIST IN HIS FAVOR AT THE TIME OF EXECUTING THE RELEASE, WHICH IF KNOWN BY HIM MUST HAVE MATERIALLY AFFECTED HIS SETTLEMENT WITH THE DEBTOR.

Representative Plaintiff and each of the Settlement Class Members understand and acknowledge the significance of this waiver of California Civil Code Section 1542 and/or of any other applicable law relating to limitations on releases. The Representative Plaintiff and/or Settlement Class Members or their counsel may hereafter discover facts in addition to or different from those which any of them now knows or believes to be true with respect to the subject matter of the Released Claims, but the Representative Plaintiff shall expressly and each Settlement Class Member, upon the Effective Date, shall be deemed to have, and by operation of the Judgment shall have, fully, finally, and forever settled and released any and all Released Claims, known or unknown, suspected or unsuspected, contingent or non-contingent, whether or not concealed or hidden, which now exist, or heretofore have existed upon any theory of law or equity now existing or coming into existence in the future, including, but not limited to, conduct which is negligent, intentional, with or without malice, or a breach of any duty, law or rule, without regard to the subsequent discovery or existence of such different or additional facts. The Representative Plaintiff acknowledges, and the Settlement Class Members shall be deemed by

- 19 -

operation of the Judgment to have acknowledged, that the foregoing waiver was separately bargained for and a key element of the settlement of which this release is a part.

4.3    Upon the Effective Date, as defined in Paragraph 1.9, American Express shall be deemed to have, and by operation of the Judgment shall have, fully, finally, and forever released, relinquished and discharged Representative Plaintiff and Class Counsel from all claims arising out of, in any way relating to, or in connection with the initiation, prosecution and settlement of the Litigation, except for claims for breach of the Stipulation.

4.4    After the Effective Date, and before the payment of any amounts called for by this Agreement, American Express shall file with the Court an application for leave to make all payments and/or credits required by this Agreement.  In such application, American Express with the assistance of the Claims Administrator shall provide a summary of the claims made by Settlement Class Members (including the number of claims made, the number of claims allowed and the number of claims denied), the calculation of interest pursuant to Paragraph 2.1, and the aggregate amounts to be paid pursuant to the Settlement.  Upon entry of an Order substantially in the form attached hereto as Exhibit G (the "Implementation Order"), American Express and the Claims Administrator shall be (a) authorized to distribute the Settlement Amount and interest accrued thereon on the terms set forth herein, and (b) released by the Representative Plaintiff and all Settlement Class Members from all claims that relate to the administration of the Settlement, as more particularly set forth in the Implementation Order.

## 5.    Class Counsel's Attorneys' Fees and Expenses and Incentive Award for the Representative Plaintiff

5.1    Class Counsel may apply for an award of attorneys' fees and expenses in an amount not to exceed $11,000,000.00 plus a proportionate share of any interest accrued on the Settlement Amount, subject to Court approval.  American Express has

agreed not to object to an application by Class Counsel up to this amount.  The attorneys' fees and expenses awarded by the Court, plus the interest earned thereon, shall be paid to Class Counsel within ten (10) days after both the order approving such fees and expenses and the Judgment and Order approving the Settlement become Final.

5.2    In addition, Representative Plaintiff may apply for an incentive award, subject to Court approval, in the amount of $10,000.  The incentive award shall be payable to the Representative Plaintiff within ten (10) days after the date in which such award, the Judgment and the Order approving the Settlement become Final.

5.3    The amount of attorneys' fees and expenses and the incentive award approved by the Court shall be deducted from the Settlement Amount prior to the payment and calculation of individual Settlement Payments to the Settlement Class.  Court approval of the fees, expenses and incentive award is not a condition of the Settlement.

**6.     Conditions of Settlement, Effect of Disapproval, Cancellation or Termination**

6.1    The Effective Date of the Stipulation shall be conditioned on the occurrence of all of the following events:

(a)    The Court has entered the Judgment, or a judgment substantially in the form of Exhibit B attached hereto;

(b)    The Judgment has become Final, as defined in Paragraph 1.10 above; and

(c)    Defendants have not elected to terminate the Settlement pursuant to Paragraph 6.3 below.

6.2    If all of the conditions specified in Paragraph 6.1 are not met, then the Stipulation shall be canceled and terminated subject to Paragraph 8.5, unless Class Counsel and counsel for Defendants mutually agree in writing to proceed with the Stipulation.

SU23857769

6.3    American Express reserves the right to terminate the Settlement if preliminary approval of the Settlement has not been sought by February 13, 2004. In such event, the terms and provisions of the Stipulation shall have no further force and effect with respect to the Settling Parties and shall not be used in the Litigation or in any other proceeding for any purpose, and any judgment or order entered by the Court in accordance with the terms of the Stipulation shall be treated as vacated nunc pro tunc (unless the Judgment has become Final in accordance with the terms hereof). No order of the Court or modification or reversal on appeal of any order of the Court concerning the amount of any attorneys' fees and expenses awarded by the Court to Class Counsel or the incentive award to the Representative Plaintiff shall constitute grounds for cancellation or termination of the Stipulation. If the Effective Date does not occur, or if the Stipulation is terminated pursuant to its terms, neither the Representative Plaintiff nor his counsel shall have any obligation to pay for any costs associated with Class Notice.

## 7.    Confirmatory Discovery

7.1    Class Counsel already have propounded discovery, reviewed documents provided by American Express, reviewed transcripts of depositions of American Express witnesses in a related case, and conducted interviews of American Express personnel. In addition, American Express will provide Class Counsel with confirmatory discovery, including producing documents regarding calculation of the FX Amount and underlying practices and producing corporate representatives for deposition, and documentation upon request, on the following issues: (1) arbitration; (2) damages; (3) practices relating to the 1-2% foreign currency conversion "surcharge"; and (4) recordkeeping relating to FX Amounts. This Settlement is contingent upon Representative Plaintiff's confirmation through this discovery of material factual representations made by American Express during settlement negotiations.

- 22 -

8.    **Miscellaneous Provisions**

8.1    The Settling Parties intend this Settlement to be a final and complete resolution of all disputes between them with respect to the Litigation.  The Settling Parties:  (1) acknowledge that it is their intent to consummate this Stipulation; and (2) agree to cooperate to the extent reasonably necessary to effectuate and implement all terms and conditions of the Stipulation and to exercise their best efforts to accomplish the foregoing terms and conditions of the Stipulation.

8.2    Representative Plaintiff and Class Counsel shall not issue any press release or other public statements regarding the Settlement except in accordance with a court-approved plan for dissemination of notice and as necessary to obtain approval of the settlement by the Court.  No public statements whatsoever will be made prior to application for preliminary approval.  Inquiries from non-Settlement Class Members may be responded to only by reference to information in the public record. This provision shall not prohibit Class Counsel from communicating with Settlement Class Members regarding the Litigation or the Settlement; provided, however, that Representative Plaintiff and Class Counsel must comply with all confidentiality agreements and protective orders in the Litigation.  Any and all drafts of this Stipulation or Settlement and other settlement documents shall remain confidential and shall not be disclosed or duplicated except as necessary to obtain court approval.

8.3    The Settlement compromises claims that were contested and shall not be deemed an admission by any Settling Party as to the merits of any claim or defense. The Settling Parties agree that the Settlement Amount and the other terms of the Settlement were negotiated in good faith by the Settling Parties, and reflect a settlement that was reached voluntarily after a mediation process under the supervision of former United States Attorney and United States District Judge Herbert J. Stern and consultation with competent legal counsel.

8.4    Neither the Stipulation nor the Settlement, including the agreement by American Express to stipulate to a nationwide settlement class, nor any act

- 23 -

performed or document executed pursuant to or in furtherance of the Stipulation or the Settlement: (a) is or may be deemed to be or may be used as an admission of, or evidence of, the validity of any Released Claim, or of any wrongdoing or liability of the Defendants; (b) is or may be deemed to be or may be used as an admission of, or evidence of, any fault or omission of the Defendants in any civil, criminal or administrative proceeding in any court, administrative agency or other tribunal; or (c) is or may be deemed to be a waiver of American Express's right to seek to enforce its arbitration provision in other cases or against persons or entities who opt out of the settlement. Defendants may file the Stipulation and/or the Judgment in any action that may be brought against them in order to support a defense or counterclaim based on principles of res judicata, collateral estoppel, release, good faith settlement, judgment bar or reduction or any other theory of claim preclusion or issue preclusion or similar defense or counterclaim.

8.5 All agreements made and orders entered during the course of the Litigation relating to the confidentiality of information shall survive this Stipulation.

8.6 All of the Exhibits to the Stipulation are material and integral parts hereof and are fully incorporated herein by this reference.

8.7 The Stipulation may be amended or modified only by a written instrument signed by or on behalf of all Settling Parties or their respective successors-in-interest.

8.8 The Stipulation and the Exhibits attached hereto constitute the entire agreement between the Representative Plaintiff and the Settlement Class Members, on the one hand, and Defendants, on the other hand, and supercedes and replaces all prior negotiations and proposed or actual agreements whether written or oral. No representations, warranties or inducements have been made to any party concerning the Stipulation or its Exhibits other than the representations, warranties and covenants contained and memorialized in such documents. Except as otherwise provided herein, each party shall bear its own costs.

S0238577v9

8.9     Each counsel or other person executing the Stipulation or any of its Exhibits on behalf of any party hereto hereby warrants that such person has the full authority to do so.

8.10   The Stipulation may be executed in one or more counterparts. All executed counterparts and each of them shall be deemed to be one and the same instrument. A complete set of executed counterparts shall be filed with the Court.

8.11   The Stipulation shall be binding upon, and inure to the benefit of, the successors and assigns of the Settling Parties.

8.12   This Stipulation has been negotiated among and drafted by all Settling Parties. To the extent there is any uncertainty or ambiguity in the Stipulation, none of the Settling Parties shall be deemed to have caused such uncertainty or ambiguity.

8.13   In the event any one or more of the provisions contained in the Stipulation shall for any reason be held by a court of competent jurisdiction to be invalid, illegal, or unenforceable in any respect, such invalid, illegal, or unenforceable provision shall be ineffective but shall not in anyway invalidate or otherwise affect any other provision.

8.14   The Court shall retain jurisdiction with respect to implementation and enforcement of the terms of the Stipulation, and all Settling Parties submit to the jurisdiction of the Court for purposes of implementing and enforcing the settlement embodied in the Stipulation.

8.15   The Stipulation and the Exhibits hereto shall be considered to have been negotiated, executed and delivered, and to be wholly performed, in the State of New York, and the rights and obligations of the parties to the Stipulation shall be construed and enforced in accordance with, and governed by, the internal, substantive laws of the State of New York without giving effect to that State's choice of law principles.

- 25 -

IN WITNESS WHEREOF, the parties hereto have caused the Stipulation to be executed, dated as of February _lo_ , 2004.


EDWARD LIPUMA


AMERICAN EXPRESS COMPANY


By: _____

Its: _____


AMERICAN EXPRESS CENTURION BANK


By: _____

Its: _____


AMERICAN EXPRESS TRAVEL RELATED SERVICES COMPANY, INC.


By: _____

Its: _____


KOZYAK TROPIN & THROCKMORTON, P.A.
ADAM M. MOSKOWITZ
THOMAS A. TUCKER RONZETTI


By: _____
        Adam M. Moskowitz

Attorneys for Representative Plaintiff

- 26 -

IN WITNESS WHEREOF, the parties hereto have caused the Stipulation to be executed, dated as of February___, 2004.

EDWARD LIPUMA

_____

AMERICAN EXPRESS COMPANY

By: _____ Stuart Alderoty

Its: Chief Litigation Counsel

AMERICAN EXPRESS CENTURION BANK

By: _____ Stuart Alderoty

Its: Chief Litigation Counsel

AMERICAN EXPRESS TRAVEL RELATED SERVICES COMPANY, INC.

By: _____ Stuart Alderoty

Its: Chief Litigation Counsel

KOZYAK TROPIN & THROCKMORTON, P.A.
ADAM M. MOSKOWITZ
THOMAS A. TUCKER RONZETTI

By: _____
      Adam M. Moskowitz

Attorneys for Representative Plaintiff

- 26 -

GARWIN, BRONZAFT, GERSTEIN & FISHER, L.L.P.
BRUCE E. GERSTEIN
KEVIN LANDAU

By: _____
      Bruce E. Gerstein

Attorneys for Representative Plaintiff

BALLON STOLL BADER & NADLER, P.C.
IRVING BIZAR

By: _____
      Irving Bizar

Of Counsel to the Representative Plaintiff

**Approved as to form:**

STROOCK & STROOCK & LAVAN LLP
JULIA B. STRICKLAND
SCOTT M. PEARSON
ANDREW W. MORITZ
MICHAEL B. FISHER

By: _____
      Julia B. Strickland

Attorneys for Defendants

GARWIN, BRONZAFT, GERSTEIN & FISHER, L.L.P.
BRUCE E. GERSTEIN
KEVIN LANDAU


By:_____
          Bruce E. Gerstein

Attorneys for Representative Plaintiff


BALLON STOLL BADER & NADLER, P.C.
IRVING BIZAR


By:_____
          Irving Bizar

Of Counsel to the Representative Plaintiff


Approved as to form:

STROOCK & STROOCK & LAVAN LLP
JULIA B. STRICKLAND
SCOTT M. PEARSON
ANDREW W. MORITZ
MICHAEL B. FISHER


By:_____
          Julia B. Strickland

Attorneys for Defendants

GARWIN, BRONZAFT, GERSTEIN & FISHER, L.L.P.
BRUCE E. GERSTEIN
KEVIN LANDAU


By: _____
          Bruce E. Gerstein

Attorneys for Representative Plaintiff


BALLON STOLL BADER & NADLER, P.C.
IRVING BIZAR


By:_____
          Irving Bizar

Of Counsel to the Representative Plaintiff


Approved as to form:

STROOCK & STROOCK & LAVAN LLP
JULIA B. STRICKLAND
SCOTT M. PEARSON
ANDREW W. MORITZ
MICHAEL B. FISHER

By: _____
          Julia B. Strickland

Attorneys for Defendants

# EXHIBIT A

<u>CLAIM FORM</u>

<u>Edward LiPuma vs. American Express Company, et al.</u>
United States District Court for Southern District of Florida, Case No. 04-20314-CIV-Ungaro-Benages

**INSTRUCTIONS**

* **PROVIDE ALL INFORMATION REQUESTED**

* **SIGN UNDER PENALTY OF PERJURY**

* **MAIL TO:  LiPuma Settlement Administrator, P.O. Box ____, Faribault, MN  55021-1651**

**YOU MUST MAIL YOUR COMPLETED AND SIGNED CLAIM FORM SO THAT IT IS POSTMARKED ON OR BEFORE _____, 2004.**

| | |
|---|---|
| Claimant's Name (First, Middle, Last) | Name on Account (if different) |
| Current Address | Address on Account (if different) |
| City          State    Zip Code | City          State    Zip Code |
| Social Security Number | Account Number (if known) |
| Home Telephone Number (including area code) | Work Telephone Number (including area code) |

**Check all boxes that apply:**

☐    I believe that I incurred a charge in a foreign currency on my American Express card between March 28, 1997 and February 1, 1999.

☐    I believe that I incurred a charge in a foreign currency on my American Express card after February 1, 1999.

I declare under penalty of perjury under the laws of the United States of America that the foregoing information supplied by the undersigned is true and correct and that this Claim Form was executed this _____ day of _____ at _____

(month) (year)                                        (City, State, Country)


(Sign your name here)

**ACCURATE CLAIMS PROCESSING TAKES A SIGNIFICANT AMOUNT OF TIME.**

**THANK YOU FOR YOUR PATIENCE.**

# EXHIBIT B

# IN THE UNITED STATES DISTRICT COURT

# FOR THE SOUTHERN DISTRICT OF FLORIDA

## CASE NO. 04-20314-CIV-UNGARO-BENAGES

|  |  |
|---|---|
| EDWARD LIPUMA, On Behalf of Himself and All Others Similarly Situated, and On Behalf of the General Public, )<br><br>Plaintiffs, )<br><br>vs. )<br><br>AMERICAN EXPRESS COMPANY, a New York Corporation, AMERICAN EXPRESS TRAVEL RELATED SERVICES COMPANY, INC., a New York Corporation and AMERICAN EXPRESS CENTURION BANK, a New York Corporation, )<br><br>Defendants. ) | CLASS ACTION |

## [PROPOSED] FINAL JUDGMENT AND ORDER OF DISMISSAL WITH PREJUDICE

This matter came before the Court for hearing pursuant to the Order of this Court, dated _____, 2004, on the application of the parties for approval of the settlement set forth in the Stipulation and Agreement of Settlement dated as of _____, 2004 (the "Stipulation," the "Agreement" or the "Settlement").  Due and adequate notice having been given to the Settlement Class as required in said Order, and the Court having considered all papers filed and proceedings had herein and otherwise being fully informed in the premises and good cause appearing therefore, IT IS HEREBY ORDERED, ADJUDGED AND DECREED that:

1.    This Judgment incorporates by reference the definitions in the Stipulation, and all terms used herein shall have the same meanings as set forth in the Stipulation.

2.    This Court has jurisdiction over the subject matter of the Litigation and personal jurisdiction over all parties for purposes of the Litigation, including all Settlement Class Members.

3.    Pursuant to Rule 23 of the Federal Rules of Civil Procedure, and due process, this Court hereby approves the Settlement set forth in the Stipulation and finds that the settlement consideration is fair and that said Settlement is, in all respects, fair, just, reasonable and adequate to the Settlement Class.

4.    The following Settlement Class, which this Court previously certified preliminarily, is hereby finally certified for settlement purposes under Rule 23(b)(3) of the Federal Rules of Civil Procedure, the Court having determined that the Settlement is fair, adequate and reasonable, and that the Settlement Class fully satisfies all the applicable requirements of federal law and due process:

> All former or current American Express cardmembers or
> accountholders with U.S. billing addresses who incurred
> a charge denominated in a foreign currency, and paid that
> charge in U.S. dollars, during the time period between

5023477157

March 28, 1997 and [date of preliminary approval], and
who did not negotiate (or on whose behalf there was not
negotiated) a foreign currency conversion methodology
for their American Express account(s).

5.     With respect to the Settlement Class, this Court finds and concludes
that:  (a) the Settlement Class Members are so numerous that joinder of all
Settlement Class Members in the Litigation is impracticable; (b) there are
questions of law and fact common to the Settlement Class which predominate over
any individual questions; (c) the claims of the Representative Plaintiff are typical
of the claims of the Settlement Class; (d) the Representative Plaintiff and Class
Counsel have fairly and adequately represented and protected the interests of all of
the Settlement Class Members; and (e) a class action is superior to other available
methods for the fair and efficient adjudication of the controversy, considering:  (i)
the interests of the Settlement Class Members in individually controlling the
prosecution of the separate actions; (ii) the extent and nature of any litigation
concerning the controversy already commenced by Settlement Class Members; (iii)
the desirability or undesirability of continuing the litigation of these claims in this
particular forum; and (iv) the difficulties likely to be encountered in the
management of the class action.

6.     Except as to any individual claim of those persons (identified on
Exhibit 1 hereto) who have validly and timely requested exclusion from the
Settlement Class, this Court hereby dismisses with prejudice and without costs
(except as otherwise provided in the Stipulation) the Litigation against the
Defendants. As to those persons (identified on Exhibit 1 hereto) who have validly
and timely requested exclusion from the Settlement Class, the Court dismisses the
Litigation without prejudice.

S0234771x7

7.     The Court finds that the Settlement is fair, just, reasonable and adequate as to each of the Settlement Class Members.  The Settlement is hereby finally approved in all respects, and the Settling Parties are hereby directed to perform its terms.

8.     The Representative Plaintiff and each of the Settlement Class Members, and their respective heirs, executors, administrators, representatives, agents, attorneys, partners, spouses, successors, predecessors-in-interest, assigns, and any authorized users of their accounts, shall be deemed to have, and by operation of the Judgment shall have, fully, finally and forever released, relinquished and discharged any and all rights, duties, obligations, claims (including those that the Representative Plaintiff or any Settlement Class Member does not know or suspect to exist in his, her or its favor at the time of the release which, if known by him, her or it, might have affected his, her or its settlement with and release of the Released Persons, or might have affected his, her or its decision not to object to this settlement), actions, causes of action or liabilities, whether arising under local, state, or federal law, whether by statute, contract, common law or equity, whether known or unknown, suspected or unsuspected, asserted or unasserted, foreseen or unforeseen, actual or contingent, liquidated or unliquidated, as of the Effective Date: (1) that arise out of or are related in any way to any or all of the acts, omissions, facts, matters, transactions, or occurrences that were directly or indirectly alleged, asserted, described, set forth or referred to in the Litigation including, but not limited to, claims for alleged violations of the Truth in Lending Act (including the Fair Credit Billing Act), state consumer credit or consumer protection statutes, common law prohibiting unfair or deceptive trade practices, breach of contract, fraud, and/or misrepresentation and equity prohibiting unjust enrichment or requiring restitution or disgorgement; and (2) that are, were, or could have arisen out of or been related in any way to Defendants'

5023477147

foreign currency conversion practices and the disclosures relating thereto. This release does not apply to claims for breach of the Stipulation.

9.      Upon the Effective Date, American Express shall be deemed to have, and by operation of the Judgment shall have, fully, finally, and forever released, relinquished and discharged Representative Plaintiff and Class Counsel from all claims arising out of, in any way relating to, or in connection with the initiation, prosecution and settlement of the Litigation, except for claims for breach of the Stipulation.

10.      The Court finds that the Class Notice provided to Settlement Class Members was the best notice practicable under the circumstances, including the Mailed Notice and the Publication Notice, as required by paragraphs 3.2 and 3.5, respectively, of the Stipulation, as well as the Settlement Website and toll-free telephone number established specifically for this Settlement. Said notices provided the best notice practicable under the circumstances of the proceedings and of the matters set forth therein, including the proposed settlement set forth in the Stipulation, to all persons entitled to such notice, and said notices fully satisfied the requirements of Rule 23 of the Federal Rules of Civil Procedure and the requirements of due process. The Court further finds that credits or payments made to the Settlement Class under the Settlement shall be deemed to comply with all applicable provisions of the Truth In Lending Act and Regulation Z, including, without limitation, 12 C.F.R. Sections 226.7, 226.8, 226.11 and 226.13, as well as any applicable state law.

11.      Any court order regarding the attorneys' fees and expenses and incentive award applications shall in no way disturb or affect this Judgment and shall be considered separate from this Judgment.

12.      Without affecting the finality of this Judgment in any way, this Court hereby retains continuing jurisdiction over: (a) implementation of this Settlement

-4-

and any award or distribution of the Settlement Amount, including interest earned thereon; (b) disposition of the Settlement Amount and any disputes regarding Settlement Payments; (c) hearing and determining applications for attorneys' fees and expenses and an incentive award in the Litigation; and (d) all Settling Parties hereto for the purpose of construing, enforcing and administering the Stipulation.

13.    All Released Claims, as described in the Stipulation, currently being asserted by or on behalf of any Settlement Class Member in any forum are hereby permanently enjoined, except as may be necessary to implement the Settlement or comply with the terms of the Stipulation. The proceedings enjoined by this Order include, but are not limited to: (i) Arumbula, et al. v. American Express Company, et al., District Court of Cameron County, Texas, Case No. 2003-05-2448-D; (ii) Bildstein, et al. v. American Express Company, et al., Supreme Court of Queens County, New York, Index No. 15029-03; (iii) Environmental Law Foundation, et al. v. American Express Company, et al., Superior Court of California, County of Alameda, Case No. BG03089146; (iv) Fuentes v. American Express Travel Related Services Company, Inc and American Express Company, District Court of Hidalgo County, Texas, Case No. C-848-03-B; (v) Janowitz v. American Express Company, et al., Circuit Court of Cook County, Illinois; Case No. 03CH15385; (vi) Rubin v. American Express Company and American Express Travel Related Services Company, Inc., Circuit Court of Madison County, Illinois, Case No. 03-L-530; (vii) Wick v. American Express Company, et al., Circuit Court of Cook County, Illinois, Case No 03CH07811; and (viii) Paul v. American Express Company, et al., Superior Court of California, County of Orange, Case No. 04cc00015. Neither the Representative Plaintiff nor any Settlement Class Member, either directly, representatively or in any other capacity, nor any person or entity allegedly acting on behalf of Settlement Class Members, shall commence or prosecute against American Express, or against any of the other Released

-5-

Persons, any action or proceeding in any court or tribunal asserting any of the Released Claims as described in the Settlement Agreement, provided, however, that this injunction shall not apply to individual claims of any Settlement Class Members who timely exclude themselves in a manner that complies with Paragraph 6 of this Final Judgment. This injunction is necessary to protect and effectuate the Settlement, this Final Judgment and Order of Dismissal, and this Court's flexibility and authority to effectuate this Settlement and to preserve Final Judgment and is ordered in aid of this Court's jurisdiction and to protect its judgments pursuant to 28 U.S.C. sections 1651(a) and 2283.

14.    In the event that the Settlement does not become effective in accordance with the terms of the Stipulation, then this Judgment shall be rendered null and void to the extent provided by and in accordance with the Stipulation and shall be vacated and, in such event, all orders entered and releases delivered in connection herewith shall be null and void to the extent provided by and in accordance with the Stipulation.


IT IS SO ORDERED.


DATED:                    _____

                          HON. URSULA UNGARO-BENAGES
                          UNITED STATES DISTRICT JUDGE

5023477I\2

# EXHIBIT C

## NOTICE OF PROPOSED CLASS ACTION SETTLEMENT AND HEARING THEREON

Edward LiPuma vs. American Express Company, et al.

United States District Court for the Southern District of Florida, Case No. 04-20314-CIV-Ungaro-Benages

TO: ALL FORMER OR CURRENT AMERICAN EXPRESS CARDMEMBERS OR ACCOUNTHOLDERS WITH U.S. BILLING ADDRESSES WHO INCURRED A CHARGE DENOMINATED IN A FOREIGN CURRENCY, AND PAID THAT CHARGE IN U.S. DOLLARS, DURING THE TIME PERIOD BETWEEN MARCH 28, 1997 AND [DATE OF PRELIMINARY APPROVAL], AND WHO DID NOT NEGOTIATE (OR ON WHOSE BEHALF THERE WAS NOT NEGOTIATED) A FOREIGN CURRENCY CONVERSION METHODOLOGY FOR THEIR AMERICAN EXPRESS ACCOUNT(S) (THE "SETTLEMENT CLASS").

### THIS NOTICE MAY AFFECT YOUR RIGHTS — PLEASE READ IT CAREFULLY

This Notice summarizes a proposed class action settlement relating to your charge and/or credit card account(s) with American Express. On _____, 2004, this Court gave preliminary approval to the Settlement. The purpose of this notice is to describe the proposed Settlement and advise you of your rights. The Settlement was reached following arms-length negotiations between counsel for the parties, including mediation before a former federal judge. Class Counsel believes that the Settlement is fair, reasonable, adequate and in the best interests of Settlement Class Members.

**Description of the Litigation:** On February __, 2004, plaintiff Edward LiPuma filed a first amended class action Complaint (the "Complaint") challenging the foreign currency conversion practices of defendants American Express Travel Related Services Company, Inc., American Express Centurion Bank and American Express Company (collectively, "American Express"), including without limitation the assessment and alleged nondisclosure of a 1%-2% rate adjustment or fee imposed in connection with transactions made in foreign currencies (the "FX Rate Adjustment"). In the Complaint, Plaintiff alleges causes of action for: **(i)** violation of the FDUTPA and the unfair and deceptive acts and practices ("UDAP") statutes of all other states, to the extent applicable; **(ii)** unjust enrichment; **(iii)** violation of the Federal Truth-in-Lending Act ("TILA"); and **(iv)** breach of contract. Similar claims have been made in other putative class and representative actions pending in other jurisdictions. American Express denies any wrongdoing, and has asserted numerous defenses to both liability and damages. Among other things, American Express contends that its foreign currency conversion practices are expressly authorized by its agreements with Settlement Class Members. Nonetheless, American Express has agreed to the proposed Settlement to avoid the risk and cost of further litigation. Plaintiff believes that the claims have merit, but that the proposed Settlement is fair, reasonable and in the best interests of Settlement Class Members given the risk and expense of further litigation.

The Court has scheduled a hearing on _____, 2004, at _____ a.m. in _____ of the United States District Court for the Southern District of Florida, 301 N. Miami Ave., Miami, FL 33128, to consider whether to grant final approval of the Settlement (the "Settlement Hearing"). The Settlement Hearing may be adjourned by the Court from time to time without further notice.

**Settlement Terms:** If the Settlement receives final approval, American Express will provide the following relief to the Settlement Class:

*Monetary Consideration:* American Express will pay the Settlement Amount of $66,000,000.00 (the "Settlement Amount") in settlement of the action inclusive of any award of attorneys' fees and expenses and an incentive award to the Representative Plaintiff ("Settlement Costs"). Interest shall accrue on the Settlement Amount following final approval. $500,000.00 of the Settlement Amount (the "Initial Charitable Contribution") shall be donated to charity on behalf of Settlement Class Members who do not receive a settlement payment. After payment from the Settlement Amount of the Initial Charitable Contribution and Settlement Costs, American Express will make a Settlement Payment from the Settlement Amount to each Settlement Class member who submits a timely and valid claim, provided that the Settlement Class member's account has not been written off by American Express as a result of non-payment, as follows: **(i)** for Settlement Class members whose account was opened after February 1, 1999, the Settlement Payment shall be 100% of the amount paid by the Settlement Class member as a result of the FX Rate Adjustment between February 1, 1999 and [the end of the Class Period] (the "FX Amount") based on American Express' records and without any required submission of account documentation, **(ii)** for Settlement Class members whose account was opened before February 1, 1999, the Settlement Payment shall be the FX Amount plus a flat amount of $15.00, which, in the absence of reasonably available account-specific data, based on the economic evidence and discovery, represents a reasonable settlement amount the settling parties have agreed upon to compensate Settlement Class Members for the period from March 28, 1997 through February 1, 1999, and **(iii)** for each Settlement Class Member whose account was closed prior to February 1, 1999, the Settlement Payment shall be a flat amount of $15.00. Only one payment shall be made for each account. For a Corporate Card account as to which multiple cards have been issued and individual card holders receive individual periodic statements, each card holder who receives a periodic statement is considered to have a separate account. Distributions from the Settlement Amount for such accounts may be paid either to the corporate holder of the account or to the individual card holder, at American Express's option

1

To the extent that the aggregate amount claimed in satisfaction of valid claims submitted (the "Aggregate Claim Amount") is more than the Settlement Amount (plus interest and minus the Initial Charitable Contribution and Settlement Costs), Settlement Payments will be decreased on a *pro rata* basis. To the extent that the Aggregate Claim Amount is less than the Settlement Amount (plus interest and minus the Initial Charitable Contribution and Settlement Costs), American Express shall donate to charity an additional $1,500,000.00, or such lesser amount as is necessary to reach the Settlement Amount (plus interest and minus the Initial Charitable Contribution and Settlement Costs). Any remainder shall be retained by American Express.

**TO BE ELIGIBLE FOR A SETTLEMENT PAYMENT**, Settlement Class Members who do not request exclusion must completely fill out, sign and return the accompanying Claim Form. The Claim Form must be mailed to the address listed thereon, postmarked by _____, 2004, and signed under penalty of perjury. American Express has the right to verify all claims. Although failure to properly complete and timely return the Claim Form will preclude you from obtaining any Settlement Payment, if you do not request exclusion, you will be bound by the Settlement and Release referenced herein.

*Additional Consideration.* As additional consideration to the Settlement Class, American Express has agreed (a) to enhance its disclosures regarding its foreign currency conversion practices in its cardmember agreements and periodic statements and (b) to disclose in cardmembers' periodic statements whenever a foreign charge appears on a billing statement that "Foreign currency conversion rate is base rate plus 2%. Please see page 2 for details." In addition, each charge in a foreign currency on the billing statement shall be marked with an asterisk, dagger or other character that directs the cardmember's attention to the disclosure. All costs of notice and administration will be borne by American Express and will not be paid out of the Settlement Amount.

*Attorneys' Fees and Incentive Awards.* Class Counsel intends to apply to the Court for (a) an award of attorneys' fees and expenses in an amount not to exceed $11,000,000 plus interest and (b) an incentive award to the Representative Plaintiff up to $10,000. American Express will not oppose an application up to these amounts. The Settlement is not conditioned upon approval of these amounts.

**Your Rights**:

**Proposed Release and Dismissal**: If the Settlement receives final approval from the Court and you do not opt out, you will release all claims, known or unknown, as of the date the Settlement becomes final: (1) that arise out of or are related in any way to any or all of the acts, omissions, facts, matters, transactions, or occurrences that were directly or indirectly alleged, asserted, described, set forth or referred to in the LiPuma Action including, but not limited to, claims for alleged violations of the Truth in Lending Act (including the Fair Credit Billing Act), state consumer credit or consumer protection statutes, common law prohibiting unfair or deceptive trade practices, breach of contract, fraud, and/or misrepresentation and equity prohibiting unjust enrichment or requiring restitution or disgorgement; and (2) that are, were, or could have arisen out of or been related in any way to American Express's foreign currency conversion practices and the disclosures relating thereto. This release does not apply to claims for breach of the Settlement. The complete release is set forth in the Settlement Agreement.

**Right to Opt Out**: If you do not wish to participate in the Settlement, you may exclude yourself from the Settlement Class ("OPT-OUT") by sending a letter to LiPuma Settlement Administrator, P.O. Box _____, Faribault, MN  55021-1651, **postmarked by no later than _____, 2004**. The letter must be signed and must include your full name, address and account number(s). The request must also state: "I/we request to be excluded from the settlement in LiPuma vs. American Express, U.S. District Court for the Southern District of Florida, Case No. 04-20314-CIV-Ungaro-Benages." If the account is a joint account, it must be signed by all joint cardholders. By electing to "OPT-OUT": (i) you will not be eligible to receive any Settlement Payment; (ii) you will not be bound by any further orders or judgment entered for or against the Settlement Class; and (iii) you will preserve your ability to independently pursue any claims you may have against American Express by filing your own lawsuit or arbitration at your own expense. DO NOT WRITE REQUESTING EXCLUSION IF YOU WISH TO BE ELIGIBLE TO RECEIVE A SETTLEMENT PAYMENT.

**Right to Object**: Any Settlement Class member may appear at the hearing to argue that the proposed Settlement should not be approved and/or to oppose the applications for attorneys' fees and expenses and the incentive award. However, in order to be heard at the hearing, you must make any objection in writing and file it with the Court **no later than _____**. The objection must also be mailed to each of the following and **postmarked on or before _____**. Class Counsel: Bruce E. Gerstein, 1501 Broadway, Suite 1416, New York, NY 10036; and Adam M. Moskowitz, Kozyak Tropin & Throckmorton, P.A., 2800 Northeast Financial Center, 200 South Biscayne Blvd., Miami, Florida  33131-2305, Counsel to American Express: Julia B. Strickland, Stroock & Stroock & Lavan LLP, 2029 Century Park East, 18th Floor, Los Angeles, CA 90067. You need not attend the Settlement Hearing if you do not wish to object. Any person who fails to object in the manner and by the date described above shall be deemed to have waived any objections, and shall be barred forever from raising such objections in this or any other action or proceeding

2

**How To Obtain Additional Information:**  This notice provides only a summary of matters relating to the Settlement.  You may seek the advice and guidance of your own private attorney at your own expense if you wish.  For more detailed information, you may review the Court's file during regular court hours at 301 N. Miami Ave., Miami, FL 33128.  You also may obtain a copy of the complete Settlement Agreement by logging on to www._____.com or by calling 1-800-_____, and you may contact Class Counsel at the address set forth above.  **PLEASE DO NOT CONTACT THE COURT OR AMERICAN EXPRESS.**

Dated: _____, 2004                    By:   The Hon. Ursula Ungaro-Benages
                                                United States District Judge

3

# EXHIBIT D

### NOTICE OF PROPOSED CLASS ACTION SETTLEMENT AND HEARING THEREON
Edward LiPuma vs. American Express Company, et al.
United States District Court for the Southern District of Florida, Case No. 04-20314-CIV-Ungaro-Benages

TO: ALL FORMER OR CURRENT AMERICAN EXPRESS CARDMEMBERS OR ACCOUNTHOLDERS WITH U.S. BILLING ADDRESSES WHO INCURRED A CHARGE DENOMINATED IN A FOREIGN CURRENCY, AND PAID THAT CHARGE IN U.S. DOLLARS, DURING THE TIME PERIOD BETWEEN MARCH 28, 1997 AND [DATE OF PRELIMINARY APPROVAL], AND WHO DID NOT NEGOTIATE (OR ON WHOSE BEHALF THERE WAS NOT NEGOTIATED) A FOREIGN CURRENCY CONVERSION METHODOLOGY FOR THEIR AMERICAN EXPRESS ACCOUNT(S) (THE "SETTLEMENT CLASS").

#### THIS NOTICE MAY AFFECT YOUR RIGHTS — PLEASE READ IT CAREFULLY

This Notice summarizes a proposed class action settlement relating to your charge and/or credit card account(s) with American Express. On _____, 2004, this Court gave preliminary approval to the Settlement. The purpose of this notice is to describe the proposed Settlement and advise you of your rights. The Settlement was reached following arms-length negotiations between counsel for the parties, including mediation before a former federal judge. Class Counsel believes that the Settlement is fair, reasonable, adequate and in the best interests of Settlement Class Members.

If you are a Settlement Class member and you did not receive a notice in the mail, you can obtain a claim form by calling 1-800-_____, or by logging on to www._____.com. The claim form must be completed and returned by mail to the address listed on the claim form, **postmarked no later than _____.**

**Description of the Litigation**: On February __, 2004, plaintiff Edward LiPuma filed a first amended class action Complaint (the "Complaint") challenging the foreign currency conversion practices of defendants American Express Travel Related Services Company, Inc., American Express Centurion Bank and American Express Company (collectively, "American Express"), including without limitation the **assessment and alleged nondisclosure of a 1%-2% rate adjustment or fee imposed in connection with transactions made in foreign currencies (the "FX Rate Adjustment").** In the Complaint, Plaintiff alleges causes of action for: **(i)** violation of the FDUTPA and the unfair and deceptive acts and practices ("UDAP") statutes of all other states, to the extent applicable, **(ii)** unjust enrichment; **(iii)** violation of the Federal Truth-in-Lending Act ("TILA"); and **(iv)** breach of contract. Similar claims have been made in other putative class and representative actions pending in other jurisdictions. American Express denies any wrongdoing, and has asserted numerous defenses to both liability and damages. Among other things, American Express contends that its foreign currency conversion practices are expressly authorized by its agreements with Settlement Class Members. Nonetheless, American Express has agreed to the proposed Settlement to avoid the risk and cost of further litigation. Plaintiff believes that the claims have merit, but that the proposed Settlement is fair, reasonable and in the best interests of Settlement Class Members given the risk and expense of further litigation.

The Court has scheduled a hearing on _____, 2004, at _____ a.m. in ____ of the United States District Court for the Southern District of Florida, 301 N. Miami Ave., Miami, FL. 33128, to consider whether to grant final approval of the Settlement (the "Settlement Hearing"). The Settlement Hearing may be adjourned by the Court from time to time without further notice.

**Settlement Terms**: If the Settlement receives final approval, American Express will provide the following relief to the Settlement Class:

*Monetary Consideration.* American Express will pay the Settlement Amount of $66,000,000.00 (the "Settlement Amount") in settlement of the action inclusive of any award of attorneys' fees and expenses and an incentive award to the Representative Plaintiff ("Settlement Costs"). Interest shall accrue on the Settlement Amount following final approval. $500,000.00 of the Settlement Amount (the "Initial Charitable Contribution") shall be donated to charity on behalf of Settlement Class Members who do not receive a settlement payment. After payment from the Settlement Amount of the Initial Charitable Contribution and Settlement Costs, American Express will make a Settlement Payment from the Settlement Amount to each Settlement Class member who submits a timely and valid claim, provided that the Settlement Class member's account has not been written off by American Express as a result of non-payment, as follows: **(i)** for Settlement Class members whose account was opened after February 1, 1999, the Settlement Payment shall be 100% of the amount paid by the Settlement Class member for the FX Rate Adjustment between February 1, 1999 and [the end of the Class Period] (the "FX Amount") based on American Express' records and without any required submission of account documentation, **(ii)** for Settlement Class members whose account was opened before February 1, 1999, the Settlement Payment shall be the FX Amount plus a flat amount of $15.00, which, in the absence of reasonably available account-specific data, based on the economic evidence and discovery, represents a reasonable settlement amount the settling parties have agreed upon to compensate Settlement Class Members for the period from March 28, 1997 through February 1, 1999, and **(iii)** for each Settlement Class Member whose account was closed prior to February 1, 1999, the Settlement Payment shall be a flat amount of

$15.00. Only one payment shall be made for each account. For a Corporate Card account as to which multiple cards have been issued and individual card holders receive individual periodic statements, each card holder who receives a periodic statement is considered to have a separate account. Distributions from the Settlement Amount for such accounts may be paid either to the corporate holder of the account or to the individual card holder, at American Express's option.

To the extent that the aggregate amount claimed in satisfaction of valid claims submitted (the "Aggregate Claim Amount") is more than the Settlement Amount (plus interest and minus the Initial Charitable Contribution and Settlement Costs), Settlement Payments will be decreased on a *pro rata* basis. To the extent that the Aggregate Claim Amount is less than the Settlement Amount (plus interest and minus the Initial Charitable Contribution and Settlement Costs), American Express shall donate to charity an additional $1,500,000.00, or such lesser amount as is necessary to reach the Settlement Amount (plus interest and minus the Initial Charitable Contribution and Settlement Costs). Any remainder shall be retained by American Express.

**TO BE ELIGIBLE FOR A SETTLEMENT PAYMENT**, Settlement Class Members who do not request exclusion must completely fill out, sign and return the accompanying Claim Form. The Claim Form must be mailed to the address listed thereon, postmarked by _____, 2004, and signed under penalty of perjury. American Express has the right to verify all claims. Although failure to properly complete and timely return the Claim Form will preclude you from obtaining any Settlement Payment, if you do not request exclusion, you will be bound by the Settlement and Release referenced herein.

*Additional Consideration.* As additional consideration to the Settlement Class, American Express has agreed (a) to enhance its disclosures regarding its foreign currency conversion practices in its cardmember agreements and periodic statements and (b) to disclose in cardmembers' periodic statements whenever a foreign charge appears on a billing statement that "Foreign currency conversion rate is base rate plus 2%. Please see page 2 for details." In addition, each charge in a foreign currency on the billing statement shall be marked with an asterisk, dagger or other character that directs the cardmember's attention to the disclosure. All costs of notice and administration will be borne by American Express and will not be paid out of the Settlement Amount.

*Attorneys' Fees and Incentive Awards.* Class Counsel intends to apply to the Court for (a) an award of attorneys' fees and expenses in an amount not to exceed $11,000,000 plus interest and (b) an incentive award to the Representative Plaintiff up to $10,000. American Express will not oppose an application up to these amounts. The Settlement is not conditioned upon approval of these amounts.

## Your Rights

**Proposed Release and Dismissal**: If the Settlement receives final approval from the Court and you do not opt out, you will release all claims, known or unknown, as of the date the Settlement becomes final: (1) that arise out of or are related in any way to any or all of the acts, omissions, facts, matters, transactions, or occurrences that were directly or indirectly alleged, asserted, described, set forth or referred to in the LiPuma Action including, but not limited to, claims for alleged violations of the Truth in Lending Act (including the Fair Credit Billing Act), state consumer credit or consumer protection statutes, common law prohibiting unfair or deceptive trade practices, breach of contract, fraud, and/or misrepresentation and equity prohibiting unjust enrichment or requiring restitution or disgorgement; and (2) that are, were, or could have arisen out of or been related in any way to American Express's foreign currency conversion practices and the disclosures relating thereto. This release does not apply to claims for breach of the Settlement. The complete release is set forth in the Settlement Agreement.

**Right to Opt Out**: If you do not wish to participate in the Settlement, you may exclude yourself from the Settlement Class ("OPT-OUT") by sending a letter to LiPuma Settlement Administrator, P.O. Box _____, Faribault, MN 55021-1651, **postmarked by no later than _____, 2004**. The letter must be signed and must include your full name, address and account number(s). The request must also state "I/we request to be excluded from the settlement in LiPuma vs. American Express, U.S. District Court for the Southern District of Florida, Case No. 04-20314-CIV-Ungaro-Benages." If the account is a joint account, it must be signed by all joint cardholders. By electing to "OPT-OUT": (i) you will not be eligible to receive any Settlement Payment; (ii) you will not be bound by any further orders or judgment entered for or against the Settlement Class; and (iii) you will preserve your ability to independently pursue any claims you may have against American Express by filing your own lawsuit or arbitration at your own expense. DO NOT WRITE REQUESTING EXCLUSION IF YOU WISH TO BE ELIGIBLE TO RECEIVE A SETTLEMENT PAYMENT.

**Right to Object**. Any Settlement Class member may appear at the hearing to argue that the proposed Settlement should not be approved and/or to oppose the applications for attorneys' fees and expenses and the incentive award. However, in order to be heard at the hearing, you must make any objection in writing and file it with the Court **no later than** _____. The objection must also be mailed to each of the following and **postmarked on or before** _____. Class Counsel Bruce E. Gerstein, 1501 Broadway, Suite 1416, New York, NY 10036, and Adam M. Moskowitz, Kozyak Tropin & Throckmorton, P.A., 2800 Northeast Financial Center, 200 South Biscayne Blvd., Miami, Florida 33131-2305, Counsel to American Express: Julia B. Strickland, Stroock

& Stroock & Lavan LLP, 2029 Century Park East, 18th Floor, Los Angeles, CA 90067.  You need not attend the Settlement Hearing if you do not wish to object.  Any person who fails to object in the manner and by the date described above shall be deemed to have waived any objections, and shall be barred forever from raising such objections in this or any other action or proceeding.

**How To Obtain Additional Information:**  This notice provides only a summary of matters relating to the Settlement.  You may seek the advice and guidance of your own private attorney at your own expense if you wish.  For more detailed information, you may review the Court's file during regular court hours at 301 N. Miami Ave., Miami, FL 33128.  You also may obtain a copy of the complete Settlement Agreement by logging on to www._____.com or by calling 1-800-_____, and you may contact Class Counsel at the address set forth above.  **PLEASE DO NOT CONTACT THE COURT OR AMERICAN EXPRESS.**

Dated: _____, 2004

By:   The Hon. Ursula Ungaro-Benages
       United States District Judge

# EXHIBIT E

# IN THE UNITED STATES DISTRICT COURT

## FOR THE SOUTHERN DISTRICT OF FLORIDA

## CASE NO. 04-20314-CIV-UNGARO-BENAGES

|  |  |
|---|---|
| ) | |
| EDWARD LIPUMA, On Behalf of Himself ) | <u>CLASS ACTION</u> |
| and All Others Similarly Situated, and On ) | |
| Behalf of the General Public, ) | |
| ) | |
| Plaintiffs, ) | |
| ) | |
| vs. ) | |
| ) | |
| AMERICAN EXPRESS COMPANY, a ) | |
| New York Corporation, AMERICAN ) | |
| EXPRESS TRAVEL RELATED ) | |
| SERVICES COMPANY, INC., a New York ) | |
| Corporation and AMERICAN EXPRESS ) | |
| CENTURION BANK, a New York ) | |
| Corporation, ) | |
| ) | |
| Defendants. ) | |

# [PROPOSED] ORDER PRELIMINARILY APPROVING CLASS ACTION SETTLEMENT, PROVIDING FOR NOTICE AND ENJOINING PROSECUTION OF RELEASED CLAIMS

WHEREAS, a putative class action is pending in the Court entitled Edward LiPuma, et al. vs. American Express Company, et al., Case No. 04-20314-CIV-Ungaro-Benages (the "LiPuma Action"); and

WHEREAS, the parties having made application, pursuant to Federal Rule of Civil Procedure 23(e), for an order approving the settlement of the LiPuma Action, in accordance with a Stipulation and Agreement of Settlement dated as of February ___, 2004 (the "Stipulation" or the "Agreement"), which, together with the Exhibits annexed thereto, sets forth the terms and conditions for a proposed settlement of the LiPuma Action and for dismissal of the LiPuma Action with prejudice upon the terms and conditions set forth therein (the "Settlement"); and

WHEREAS, as a condition of the Settlement, the Representative Plaintiff on behalf of himself individually and on behalf of each of the Settlement Class Members has agreed to release all claims arising under federal, state or common law as specified in the Release; and

WHEREAS, the injunction set forth in Paragraph 15 of this Order is a material term of the Settlement and an essential component of the consideration for which Defendants negotiated; and

WHEREAS, the Court having read and considered the Stipulation and the Settlement; and

WHEREAS, all defined terms contained herein shall have the same meanings as set forth in the Stipulation;

**NOW THEREFORE, IT IS HEREBY ORDERED:**

1.    For purposes of this Settlement only, the Court has jurisdiction over the subject matter of the LiPuma Action and personal jurisdiction over the parties and each of the Settlement Class Members described below.

1

2.     Pursuant to Federal Rule of Civil Procedure 23(b)(3), the Court preliminarily certifies, solely for purposes of effectuating this Settlement, a "Settlement Class" defined as:

> All former or current American Express cardmembers or
> accountholders with U.S. billing addresses who incurred
> a charge denominated in a foreign currency, and paid that
> charge in U.S. dollars, during the time period between
> March 28, 1997 and [date of preliminary approval], and
> who did not negotiate (or on whose behalf there was not
> negotiated) a foreign currency conversion methodology
> for their American Express account(s).

Excluded from the Settlement Class are:  those persons who opt out of the Settlement Class pursuant to the procedure set forth in Paragraph 10 below.  The term "Settlement Class Member" means and refers to any person and/or entity who falls within the definition of the Settlement Class.

3.     The Court designates plaintiff Edward LiPuma as a representative of the Settlement Class ("Representative Plaintiff"), and it designates Adam M. Moskowitz, Esq., Thomas A. Tucker Ronzetti, Esq., and their firm, Kozyak Tropin & Throckmorton, P.A., and Bruce E. Gerstein, Esq., Kevin Landau, Esq., and their firm, Garwin, Bronzaft, Gerstein & Fisher, LLP, as Class Counsel ("Class Counsel").  The Court authorizes the Representative Plaintiff and Class Counsel to enter into the Agreement on behalf of the Settlement Class, and to bind them all to the duties and obligations contained therein, subject to final approval by the Court of the Settlement.  The Representative Plaintiff and Class Counsel, on behalf of the Settlement Class, are authorized to take all appropriate action required or permitted to be taken by the Settlement Class pursuant to this Agreement to effectuate its terms.

S0214-03-13

4.     With respect to the Settlement Class, this Court preliminarily finds for settlement purposes only that: (a) the Settlement Class Members are so numerous that joinder of all Settlement Class Members in the LiPuma Action is impracticable; (b) there are questions of law and fact common to the Settlement Class which predominate over any individual questions; (c) the claims of the Representative Plaintiff are typical of the claims of the Settlement Class; (d) the Representative Plaintiff and Class Counsel fairly and adequately represent and protect the interests of all of the Settlement Class Members; and (e) a class action is superior to other available methods for the fair and efficient adjudication of the instant controversy.

5.     The Court does hereby preliminarily approve the Stipulation and the Settlement as being fair, adequate and reasonable as to the Settlement Class Members, subject to further consideration at the Fairness Hearing (as defined in paragraph 6 below).

6.     A hearing (the "Fairness Hearing") shall be held before this Court at _____ a.m. on _____, 2004, at the United States District Court, 301 North Miami Avenue, Miami, Florida 33128, to determine: whether the proposed settlement of the LiPuma Action on the terms and conditions provided for in the Settlement is fair, adequate and reasonable as to the Settlement Class Members and should be approved by the Court; whether a Final Approval Order and Judgment as provided for in the Stipulation should be entered; and to determine the amount of fees and expenses that should be awarded to Class Counsel, and of the incentive award to the Representative Plaintiff, as proposed in the Stipulation.

7.     The Court approves, as to form and content, the Mailed Notice, Claim Form and the Publication Notice annexed as Exhibits 1, 2 and 3 hereto, as well as the Settlement Website (as defined in paragraph 8(c) below) and toll-free telephone number, established to provide Settlement Class Members with information about

3

the Settlement, the Mailed Notice and Claim Form.  Furthermore, the Court finds that the mailing of the Mailed Notice and Claim Form, the distribution of the Publication Notice and the establishment of the Settlement Website and toll-free telephone number substantially in the manner and form set forth in Paragraph 8 below meet the requirements of Federal Rule of Civil Procedure 23, and of due process, and is the best notice practicable under the circumstances and shall constitute due and sufficient notice to all persons entitled thereto.

    8.    Notice of the proposed Settlement shall be provided as follows:

        (a)    Not later than June 31, 2004, American Express and/or the Claims Administrator shall cause the Mailed Notice, along with the Claim Form, to be mailed to the last known address of all Settlement Class Members whose accounts can be identified through reasonably accessible electronic records available to American Express, except those Settlement Class Members with Closed and Inactive Accounts for which American Express no longer maintains addresses in reasonably accessible electronic form, or whose accounts have been written off by American Express and/or have been in collection and/or have been sold for purposes of collection, who shall receive Publication Notice.  At its option, American Express may provide the Mailed Notice and Claim Form either as a message printed in the first pages of the Settlement Class Member's periodic statement or as a separate mailing.  No skip-trace or re-mailing of returned mail will be required.

(b)    American Express and/or the Claims Administrator
shall cause the Publication Notice to be published in
accordance with the schedule set forth in Exhibit 4
hereto.

(c)    American Express and/or the Claims Administrator
shall create an Internet website (the "Settlement
Website") which will publish the Stipulation, the
Mailed Notice and the Claim Form, and provide
information as to how Settlement Class Members may
submit a Claim Form pursuant to the Settlement.  The
Settlement Website will be separate and distinct from,
and not linked to, American Express's website.  Class
Counsel will post on its own website(s) the Mailed
Notice, the Claim Form, public records in their
discretion and other materials approved by American
Express.  No other materials relating to the Litigation
shall be posted on the website(s) of Class Counsel.

(d)    American Express or the Claims Administrator will
also create a toll-free number to receive calls from
Settlement Class Members who wish to request a
Mailed Notice and/or a Claim Form.  The toll-free
number will not be an American Express customer
service number and, at American Express's option, will
not be staffed by live operators.  To the extent that
scripts or other materials are prepared for use by the
Claims Administrator, they shall be subject to the
approval of Class Counsel regarding the content of such

50234703v13

scripts and materials.  The obligations created by this Paragraph, as well as paragraph 8(c) above, shall expire on the last date on which claims may be submitted pursuant to the Settlement.

(e)     At least ten calendar days prior to the Fairness Hearing, American Express and/or the Claims Administrator shall file with the Court proof, by affidavit or declaration, that notice has been completed in accordance with the terms of this Preliminary Approval Order.

9.     All Settlement Class Members who do not request exclusion from the Settlement pursuant to the procedure described in Paragraph 10 below shall be bound by all determinations and judgments in the LiPuma Action concerning the Settlement, whether favorable or unfavorable to Settlement Class Members, including, but not limited to, the validity, binding nature and effectiveness of the releases set forth in the Stipulation.

10.     Any person falling within the definition of the Settlement Class who desires to request exclusion from the Settlement Class shall do so by mailing to the Claims Administrator a request for exclusion that includes a statement requesting to be excluded from the settlement of the LiPuma Action, the requesting party's name, address and account number(s), and that is personally signed by the person requesting exclusion.  No request for exclusion will be valid unless it is made in the manner described in the Mailed Notice.  Requests for exclusion from the Settlement Class must be postmarked by _____, 2004 in order to be valid.

11.     Any Settlement Class Member may enter an appearance in the LiPuma Action, at his or her own expense, individually or through counsel of his or her

own choice. All Settlement Class Members who do not enter an appearance will be deemed to have been represented by Class Counsel.

12.    Any Settlement Class Member may appear and show cause if he or she has any reason why the proposed settlement of the LiPuma Action should or should not be approved as fair, adequate and reasonable, why a judgment should or should not be entered thereon, why attorneys' fees and expenses should or should not be awarded to Class Counsel, or why the incentive award should or should not be allowed; provided, however, that no Settlement Class Member shall be heard, and no objection may be considered, unless, no later than _____, 2004, the Settlement Class Member files with the Court and serves on Class Counsel and American Express's counsel at the addresses set forth in the Mailed Notice and the Publication Notice a written statement of the objection, as well as the specific reason(s), if any, for the objection, including any legal support the Settlement Class Member wishes to bring to the Court's attention. Any Settlement Class Member who does not make his or her objection within the time and manner set forth in this Paragraph 12 shall be deemed to have waived such objection and shall be foreclosed forever from making any objection to the fairness, adequacy or reasonableness of the proposed Settlement, to the award of attorneys' fees and expenses to Class Counsel, and to the incentive award to the Representative Plaintiff.

13.    All further motions and papers in support of the Settlement, including responses to any objections, and any application by Class Counsel for attorneys' fees and expenses, shall be filed and served no later than ten (10) calendar days before the Fairness Hearing.

14.    All reasonable costs incurred in providing Class Notice, as well as in administering the Settlement, shall be paid by American Express as set forth in the Stipulation. In the event the Settlement is not approved by the Court, or otherwise

7

fails to become effective, neither the Representative Plaintiff nor Class Counsel shall have any obligation to American Express for the costs of Class Notice.

15.   All proceedings in this LiPuma Action and all Released Claims, as described in the Stipulation, currently being asserted by or on behalf of any Settlement Class Member in any forum are ordered stayed until final determination, except as may be necessary to implement the Settlement or comply with the terms of the Stipulation.  The proceedings stayed by this Order include, but are not limited to:  (i) Arumbula, et al. v. American Express Company, et al., District Court of Cameron County, Texas, Case No. 2003-05-2448-D; (ii) Bildstein, et al. v. American Express Company, et al., Supreme Court of Queens County, New York, Index No. 15029-03; (iii) Environmental Law Foundation, et al. v. American Express Company, et al., Superior Court of California, County of Alameda, Case No. BG03089146; (iv) Fuentes v. American Express Travel Related Services Company, Inc and American Express Company, District Court of Hidalgo County, Texas, Case No. C-848-03-B; (v) Janowitz v. American Express Company, et al., Circuit Court of Cook County, Illinois; Case No. 03CH15385; (vi) Rubin v. American Express Company and American Express Travel Related Services Company, Inc., Circuit Court of Madison County, Illinois, Case No. 03-L-530; (vii) Wick v. American Express Company, et al., Circuit Court of Cook County, Illinois, Case No 03CH07811; and (viii) Paul v. American Express Company, et al., Superior Court of California, County of Orange, Case No. 04cc00015.  Pending final determination of whether the Settlement should be approved, neither the Representative Plaintiff nor any Settlement Class Member, either directly, representatively or in any other capacity, nor any person or entity allegedly acting on behalf of Settlement Class Members, shall commence or prosecute against American Express, or against any of the other Released Persons, any action or proceeding in any court or tribunal asserting any of the Released

50234703533

Claims as described in the Settlement Agreement, provided, however, that this stay shall not apply to individual claims of any Settlement Class Members who timely exclude themselves in a manner that complies with Paragraph 10 of this Preliminary Approval Order. This stay is necessary to protect and effectuate the Settlement, this Preliminary Approval Order, and this Court's flexibility and authority to effectuate this Settlement and to enter Final Judgment when appropriate and is ordered in aid of this Court's jurisdiction and to protect its judgments pursuant to 28 U.S.C. sections 1651(a) and 2283.

16.     The Court reserves the right to adjourn or continue the date of the Fairness Hearing without further notice to Settlement Class Members, and retains jurisdiction to consider all further applications arising out of or connected with the Settlement. The Court may approve or modify the Settlement without further notice to Settlement Class Members.

        IT IS SO ORDERED.


DATED:                                          _____

                            HON. URSULA UNGARO-BENAGES
                            UNITED STATES DISTRICT JUDGE

50234703v13

# EXHIBIT F

**AMERICAN EXPRESS**

**Gold Card**
**Statement of Account**

**110,149**
**Membership Rewards®**
**Points Available**
at 12/23/03
www.americanexpress.com/rewards

| Prepared for | Account Number | Closing Date |
|---|---|---|
| CHARLIE HARTRIDGE | 3715-000000-00000 | 12/23/03 |

Page 1 of 2

**Please Pay By**
**01/07/04**
Please refer to page 2
for important information
regarding your account.

| Previous Balance $ | Payment Activity $ | New Activity $ inc. Adjustments | **New Balance $** |
|---|---|---|---|
| 580.05 | -580.05 | +441.17 | =441.17 |

Your Card will renew next month.

Contact us at www.americanexpress.com or call Customer Service 1-000-0000-0000.

**AUTOMATIC**
**BILL PAYMENT**
**with American Express**

## Pay your Bills Automatically with the Card

Pay everything from your cable and telephone bills to your newspaper subscription automatically with your Card. It's a simple way to consolidate your payments and make sure your bills are paid on time. You will have fewer checks to write and you'll still continue to get a statement from your service provider to keep for your records.

Visit **www.americanexpress.com/abp1** for a list of participating providers, or to learn more. Start benefiting from the convenience and control of Automatic Bill Payment today.

## Activity

*Indicates posting date

**Foreign Currency conversion rate is base rate plus 2%. See page 2 for details.**

| | | Foreign Spending | Amount $ |
|---|---|---|---|
| 11/28/03* | **Payment Received - Thank You** | | -580.05 |

**New Activity for CHARLIE HARTRIDGE**
Card XXXX XXXXX0 00000

| | | Foreign Spending | Amount $ |
|---|---|---|---|
| 12/02/03 | AOL SERVICE  800-679-9444 NY ONLINE SERVICES | | 50.00 |
| 12/04/03 | FOYLES LONDON BOOKS | 20.00 **Pounds Sterling | 35.40 |
| 12/05/03 | OXO BRASSERIE LONDON RESTAURANT | 77.00 **Pounds Sterling | 136.29 |
| | FOOD/BEV | 70.00 | |
| | TIP | 7.00 | |
| 12/05/03 | TICKETMASTER LONDON THEATER TICKETS | 30.00 **Pounds Sterling | 53.10 |
| 12/06/03 | INN ON THE PARK LONDON RESTAURANT | 70.00 **Pounds Sterling | 123.90 |
| | FOOD/BEV | 64.00 | |
| | TIP | 6.00 | |
| 12/06/03 | ODEON CINEMA LONDON MOVIE TICKETS | 24.00 **Pounds Sterling | 42.48 |

**Total of New Activity**       **441.17**

Continued on page 3

✦ Please fold on the perforation below, detach and return with your payment ✦

**Payment Coupon**

| | Account Number |
|---|---|
| | 3715-000000-00000 |

**Please Pay By**
**01/07/04**

Please enter account number on all checks and correspondence.

**Total Amount Due**
**$441.17**

To avoid additional Finance Charges on Purchases, pay New Balance before Payment Due Date

CHARLIE HARTRIDGE
APT 123
115 E 84 ST
NEW YORK NY  10028-1000

Note any address and/or telephone number change on reverse side. Unless you check here, the change will apply to all of your Card Accounts except any Corporate Card Accounts you may have

[ ]

Mail Payment to

AMERICAN EXPRESS
PO BOX 360002
FT LAUDERDALE FL 33336-0002

**1A**

106085144 0003300200000330026 1234

**AMERICAN EXPRESS**

**Gold Card
Statement of Account**

**110,149
Membership Rewards®
Points Available**
at 12/23/03
www.americanexpress.com/rewards

Prepared for
CHARLIE HARTRIDGE

Account Number
3715-000000-00000

Closing Date
12/23/03

Page 1 of 5

**Please Pay By
01/07/04**
Please refer to page 2
for important information
regarding your account.

| Previous Balance $ | Payment Activity $ | New Activity $ inc. Adjustments | **New Balance $** |
|---|---|---|---|
| 580.05 | -580.05 | +882.34 | =882.34 |

Your Card will renew next month.

Contact us at www.americanexpress.com or call Customer Service 1-000-0000-0000.

**AUTOMATIC BILL PAYMENT** with American Express

## Pay your Bills Automatically with the Card

Pay everything from your cable and telephone bills to your newspaper subscription automatically with your Card. It's a simple way to consolidate your payments and make sure your bills are paid on time. You will have fewer checks to write and you'll still continue to get a statement from your service provider to keep for your records.

Visit **www.americanexpress.com/abp1** for a list of participating providers, or to learn more. Start benefiting from the convenience and control of Automatic Bill Payment today.

## Activity
*Indicates posting date

**Foreign Currency conversion rate is base rate plus 2%. See page 2 for details.

| Date | Description | | Foreign Spending | Amount $ |
|---|---|---|---|---|
| 11/28/03* | Payment Received - Thank You | | | -580.05 |

**New Activity for CHARLIE HARTRIDGE**
Card XXXX XXXXX0 00000

| | | | | |
|---|---|---|---|---|
| 12/02/03 | AOL SERVICE  800-679-9444 NY ONLINE SERVICES | | | 50.00 |
| 12/04/03 | THE HOME DEPOT #0420NEWYORK NY HOME IMPROVEMENT STORE | | | 35.40 |
| 12/05/03 | MOOSE NEW YORK NY RESTAURANT | | | 136.29 |
| | FOOD/BEV | 120.29 | | |
| | TIP | 16.00 | | |
| 12/05/03 | SOFT TOUCH CAR WASH NEW YORK NY CAR WASH | | | 53.10 |
| 12/06/03 | SEKKU NEW YORK NY RESTAURANT | | | 123.90 |
| | FOOD/BEV | 110.90 | | |
| | TIP | 13.00 | | |
| 12/06/03 | GAP #0807/THE NEW YORK NY APPAREL/ACCESSORIES | | | 42.48 |

Continued on page 3

↓ Please fold on the perforation below, detach and return with your payment ↓

**Payment Coupon**

Account Number
3715-000000-00000

**Please Pay By
01/07/04**

Please enter account number on all checks and correspondence

To avoid additional Finance Charges on Purchases, pay New Balance before Payment Due Date

**Total Amount Due
$882.34**

CHARLIE HARTRIDGE
APT 123
115 E 84 ST
NEW YORK NY   10028-1000

Note any address and/or telephone number change on reverse side. Unless you check here, the change will apply to all of your Card Accounts, except any Corporate Card Accounts you may have

[ ]

Mail Payment to

AMERICAN EXPRESS
PO BOX 360002
FT LAUDERDALE FL 33336-0002

**1B**

106085144 000330020000330026 1234

| Prepared for | Account Number | Closing Date | |
|---|---|---|---|
| CHARLIE HARTRIDGE | 3715-000000-00000 | 12/23/03 | Page 3 of 5 |

## New Activity continued

**Foreign Currency conversion rate is base rate plus 2%. See page 2 for details.

| | | | Foreign Spending | Amount $ |
|---|---|---|---|---|
| 12/10/03 | RADIO SHACK NEW YORK NY<br>ELECTRICAL GOODS | | | 50.00 |
| 12/14/03 | FOYLES  LONDON<br>BOOKS | | 20 00<br>**Pounds Sterling | 35.40 |
| 12/15/03 | OXO BRASSERIE  LONDON<br>RESTAURANT<br>FOOD/BEV<br>TIP | 70.00<br>7.00 | 77 00<br>**Pounds Sterling | 136.29 |
| 12/15/03 | TICKETMASTER  LONDON<br>THEATER TICKETS | | 30 00<br>**Pounds Sterling | 53.10 |
| 12/16/03 | INN ON THE PARK  LONDON<br>RESTAURANT<br>FOOD/BEV<br>TIP | 64.00<br>6.00 | 70 00<br>**Pounds Sterling | 123.90 |
| 12/16/03 | ODEON CINEMA  LONDON<br>MOVIE TICKETS | | 24 00<br>**Pounds Sterling | 42.48 |

**Total of New Activity**                                                                                     **882.34**

**1B**

# EXHIBIT G

# IN THE UNITED STATES DISTRICT COURT

# FOR THE SOUTHERN DISTRICT OF FLORIDA

## CASE NO. 04-20314-CIV-UNGARO-BENAGES

| | |
|---|---|
| EDWARD LIPUMA, On Behalf of Himself and All Others Similarly Situated, and On Behalf of the General Public, | ) ) ) CLASS ACTION |
| Plaintiffs, | ) ) |
| vs. | ) ) |
| AMERICAN EXPRESS COMPANY, a New York Corporation, AMERICAN EXPRESS TRAVEL RELATED SERVICES COMPANY, INC., a New York Corporation and AMERICAN EXPRESS CENTURION BANK, a New York Corporation, | ) ) ) ) ) ) ) ) |
| Defendants. | ) ) |

## ORDER RE:  DISTRIBUTION OF NET SETTLEMENT FUND

WHEREAS, on _____, 2004, this Court entered its Final Judgment And Order Of Dismissal With Prejudice granting final approval of the Stipulation and Agreement of Settlement (the "Stipulation" or the "Agreement") in the above-captioned class action (the "Litigation"); and

WHEREAS, this Court directed the parties to consummate the terms of the Settlement; and

WHEREAS, this Court retained continuing jurisdiction over the Litigation to consider all further applications arising out of or connected with the Stipulation; and

WHEREAS, capitalized terms used in this Order shall have the meanings ascribed to them in the Stipulation.

NOW THEREFORE, upon due consideration of American Express's application for leave to distribute the Settlement Amount (the "Application"), including the accompanying evidence, and upon all prior proceedings and after due deliberation, it is on this ____ day of _____, 2004:

ORDERED, that the administrative determinations of Rust Consulting (the "Claims Administrator") accepting certain claims and rejecting certain claims as indicated on the schedules of accepted and rejected claims submitted with and described in the _____ Affidavit, be and the same are hereby approved; and it is further

ORDERED, the balance of the Settlement Amount, after deducting the amounts previously allowed under the Stipulation, shall be distributed to Settlement Class Members as proposed in the Application to each such Settlement Class Member as determined by the Claims Administrator in accordance with the plan of allocation set forth in the Stipulation within ninety (90) days of this Order; and it is further

ORDERED, that the Representative Plaintiff and each of the Settlement Class Members, and their respective heirs, executors, administrators, representatives, agents, attorneys, partners, spouses, successors, predecessors-in-interest, assigns, and any authorized users of their accounts, shall be deemed to have, and by operation of

502388526

the Judgment shall have, fully, finally and forever released, relinquished and discharged any and all rights, duties, obligations, claims (including those that the Representative Plaintiff or any Settlement Class Member does not know or suspect to exist in his, her or its favor at the time of the release which, if known by him, her or it, might have affected his, her or its settlement with and release of the Released Persons, or might have affected his, her or its decision not to object to this settlement), actions, causes of action or liabilities against or with respect to the Released Persons, Class Counsel and the Claims Administrator, whether arising under local, state, or federal law, whether by statute, contract, common law or equity, whether known or unknown, suspected or unsuspected, asserted or unasserted, foreseen or unforeseen, actual or contingent, liquidated or unliquidated, as of the date of this Order, that arise out of or are related in any way to the administration of the Settlement including, without limitation to, the review, verification, calculation, tabulation, or any other aspect of the processing of the claims filed herein, or otherwise involved in the administration or distribution of the Settlement Amount. All Settlement Class Members, whether or not they are to receive payment from the Settlement Amount, are barred from making any further claim against the Settlement Amount or American Express beyond the amount allocated to them pursuant to this Order; and it is further

   **ORDERED**, that the Claims Administrator is hereby authorized to discard paper or hard copies of the Proof of Claim forms, supporting documents and magnetic media data not less than one year after the initial distribution of the Net Settlement Amount to Settlement Class Members; and it is further

   **ORDERED**, that this Court retain jurisdiction over any further application or matter which may arise in connection with this Litigation.

   IT IS SO ORDERED

DATED:

                              _____
                              HON. URSULA UNGARO-BENAGES
                              UNITED STATES DISTRICT JUDGE

50238852\6

Exhibit C-1



# FIRM RESUME

**KOZYAK TROPIN & THROCKMORTON, P.A.**
*2800 Wachovia Financial Center*
*200 South Biscayne Boulevard*
*Miami, Florida 33131-2335*
*(305) 372-1800*
*www.kttlaw.com*

## INTRODUCTION

Kozyak Tropin & Throckmorton, P.A. (http://www.kttlaw.com) is an AV rated law firm, which specializes in complex commercial litigation and bankruptcy. KT&T focuses its litigation practice in the areas of complex commercial contract and tort litigation, class actions, and securities fraud. The firm also represents some of the largest companies and lending institutions in the country when they are involved in litigation, workouts, and bankruptcy matters in Florida. KT&T serves as special counsel for a number of local corporations, banks, and prominent individuals. In addition, the firm's attorneys represent clients in matters involving professional malpractice, lender liability, foreclosure, and intellectual property/unfair competition.

We are not a "big firm," but our practice is sophisticated. We both represent and litigate against large corporations and lenders in major matters and we successfully compete and work with firms of all sizes. The firm delivers excellent legal work combined with effective and cost-efficient services to its clients.

John Kozyak, Harley Tropin and Chuck Throckmorton formed Kozyak Tropin & Throckmorton in December 1982, after being members of a full service Miami firm. We wanted to avoid the formal structure of a large firm and concentrate on commercial litigation and bankruptcy. Today our firm consists of 19 lawyers and we anticipate continued, gradual growth. We are selective in the matters we accept and have no desire to be a full service firm, since our experience has shown that our flexible, skilled team, with excellent staff support and contemporary technology, successfully handles the most demanding litigation.

We pride ourselves on litigating effectively and efficiently, but we are equally proud of our ability to analyze cases up front and successfully negotiate settlements with favorable results through alternative dispute resolution. The majority of the firm's work is performed on the basis of competitive hourly rates, but we also accept court appointments and have developed mutually rewarding split fee and full contingency fee agreements with selected clients.

We welcome the opportunity to meet with you, discuss our practice and experience, and explain our proposed approach to your legal matters. Our clients receive excellent, hands-on representation. We will be happy to furnish an extensive list of corporate counsel, lawyers and business people who are familiar with our work and can provide you with additional information.

## OUR CLIENTS AND OUR PRACTICE PHILOSOPHY

We represent some of the largest companies and lending institutions in the country when they are involved in litigation, workouts, and bankruptcy matters in Florida. We also serve as special counsel for a number of local corporations, banks, and prominent individuals. Much of our business comes from referrals from leading national law firms in New York, Chicago, Atlanta, St. Louis, Washington, D.C., Dallas, Philadelphia and other major cities, as well as from local

- 1 -

lawyers. The firm also represents classes of individuals and businesses in complex litigation matters. Following is an overview of our primary areas of practice and representative cases.

## SECURITIES FRAUD AND CLASS ACTION LITIGATION

The firm has developed a recognized expertise in securities fraud, professional malpractice, and class action litigation. Kozyak Tropin currently represents the provider physicians in the nationwide class action suit In Re: Humana, Inc., _Managed Care Litigation_. Harley Tropin is co-lead counsel for the potential class of 600,000 doctors around the country who provide services to patients for eleven of the nation's largest HMOs. The lawsuit alleges that the insurers are liable for committing racketeering violations, breaching contracts, and misrepresenting business practices to the doctors and patients. Other high profile attorneys handling the patient plaintiffs' cases include Mississippi lawyer Richard Scruggs, noted for successfully taking on the tobacco industry, and David Boies of New York, who represented the U.S. government in the Microsoft antitrust trial and Vice President Al Gore in the 2000 presidential election dispute. Further information on this significant litigation can be found at www.HMOLitigation.net.

One other significant case involved _Premium Sales_. In June, 1993, Harley Tropin was appointed Receiver in a securities fraud case brought by the SEC against Premium Sales Corporation, a North Miami Beach grocery diverting company which had been used to perpetuate a multi-billion dollar fraud. In related bankruptcy proceedings, Harley was appointed Chapter 11 Trustee. The U.S. District Court also appointed Harley as Chair of the Steering Committee to coordinate all the litigation resulting from the largest Ponzi scheme in Florida's history. At the time, creditors expected to receive next to nothing, and in 1994, claims were traded for as little as ten cents on the dollar. Through litigation against national law firms, grocers, a bank, and others involved in the fraud, over $160 million was recovered. Although more than $2 billion in claims were filed, the total allowed claims were reduced to approximately $254 million. After the payment of all business operating expenses and professional fees, creditors received more than 62% of their losses, a result which was praised by courts, the Creditors' Committee, the SEC, and the U.S. Trustee's Office.

In FTC v. U.S. Oil & Gas, the U.S. District Court approved the retention of our firm to represent several thousand investors who were defrauded of $55 million. We and our co-counsel recovered more than $48 million, prompting the Federal Trade Commission to advise the Court that this was the most successful case in its history. We also served as co-counsel in a major securities fraud case in Connecticut against a leading brokerage house and the settlement resulted in a _full_ recovery of $15 million for the investors.

Kozyak Tropin & Throckmorton defended a large New Jersey lender in a complex fraud class action and Prudential Insurance Co. in fraud claims related to the General Development Corporation bankruptcy and criminal actions. We also served as co-counsel for a major oil company in a dealer class action.

- 2 -

As counsel for two Costa Rican growers of ornamental plants, Janet Humphreys, Adam Moskowitz, and Detra Shaw-Wilder obtained a jury verdict of $29.5 million in damages against DuPont as a result of problems caused by the Benlate fungicide. This very rewarding verdict marked the culmination of a five-year battle against the world's largest chemical manufacturer.

The firm has served as co-counsel with many national firms in cases pending here in the United States District Court for the Southern District of Florida. In Berman Family Investment et al. v. Greenwich Capital Markets, Inc., the firm has worked with Rosenman & Colin LLP successfully defending a securities fraud litigation before Judge Wilkie D. Ferguson, Jr. In HCM High Yield Opportunity Fund, L.P. et al. vs. Skandinaviska Enskilda Banken et al., the firm has worked with Covington & Burling prosecuting a securities fraud litigation before Judge Adalberto Jordan.

The balance of the firm's litigation work includes complex corporate matters, such as UCC litigation, construction litigation, First Amendment matters, antitrust claims, shareholder actions, fraud, general commercial contracts, franchise agreements, and employment contracts. Kozyak Tropin has represented leading companies such as Knight-Ridder, Inc. in employment litigation, as well as several of its newspapers in First Amendment litigation. Janet Humphreys, a former firm partner, joined Knight-Ridder as Vice President and Associate General Counsel in 1994, returning to the firm in March 1998 to serve in the capacity of counsel.

### BANKRUPTCY

Our firm has played a major role in some of the largest bankruptcy cases filed in Florida in recent years, representing secured and unsecured creditors, committees, debtors, trustees and liquidating trustees. Kozyak Tropin has represented a wide range of clients in bankruptcy matters, including: Lennar Florida Partners, Citibank, N.A., Chase Manhattan Bank, N.A., Barclays Bank, National Westminster Bank, Hills Bros. Coffee, and Georgia-Pacific.

John Kozyak was appointed Chapter 11 Trustee for Financial Federated Title & Trust, Inc. ("FinFed") in October, 1999. FinFed was a massive Ponzi scheme built around the viatical settlement "business," in which the losses are expected to exceed $115 million. The firm has helped John both to recover millions of dollars through fraudulent transfer actions and other proceedings, and to implement a plan of distribution. Prior to bankruptcy, FinFed was indicted, and John negotiated a plea with the U.S. Attorney's Office through which he was appointed as Restitution Receiver, to ensure that the maximum amount of restitution will be available for the victims. More information on this case can be found at our Web site, www.finfedinfo.com.

We represented the Asbestos Property Damage Claimants Committee in the Celotex bankruptcy, which the bankruptcy judge referred to as "Johns Manville squared" because it required analyzing a complex leveraged buyout, together with managing asbestos-related claims which were in the billions of dollars. In Celotex, we actively participated in the settlement of one aspect of the case for more than $350 million, and helped negotiate and structure a consensual

- 3 -

*plan of reorganization which will distribute more than $1 billion. We are still involved in this case as counsel to the Property Damage Advisory Committee.*

*The firm represented Barnett Bank (now Bank of America) in many bankruptcy matters, including the bankruptcy cases relating to* Koger Properties, Inc. *We helped this lender, the debtor, related non-debtors, and the various creditors structure a consensual plan of reorganization involving a merger with another publicly traded company, and the debtor emerged from bankruptcy in less than two years.*

*The firm represented The Prudential Insurance Company in the* General Development Corporation *case, which was one of the largest, most publicized Chapter 11 cases ever filed in Florida. We represented The Marriott Corporation and Westin Hotels in the* Prime Motor Inns/Servico *bankruptcies. Prudential and Marriott were members of the Creditors Committee in the* Prime *case. We represented Chase Manhattan Bank, N.A. as indenture trustee in* Airlift International, *and also represented Barclays Bank and National Westminster Bank, the two largest unsecured creditors and members of the Creditors Committee in* Air Florida. *We represented Teledyne Industries, the largest creditor and the co-proponent of the confirmed plan in* Piper Aircraft. *We have represented the CIT Group/Equipment Financing, Inc., in bankruptcy and UCC matters since 1975. We also routinely represent lenders in foreclosures, replevins, workouts, and receiverships.*

*We also have been retained by some of the most well-known debtors in South Florida to represent them in Chapter 11 reorganizations and to avoid bankruptcy through structured workouts. For example, the firm's bankruptcy partners, John Kozyak, Chuck Throckmorton, and Laurel Isicoff represented Pan American World Airways in its second Chapter 11 bankruptcy case and had a plan confirmed less than four months after the case was filed. The firm's Chapter 11 debtor cases have also included PNV, Inc., Glenbeigh Hospitals, Miami Center Associates, Ltd. (the owner of the Miami Hyatt Regency Hotel), and Future Tech International, Inc. We have also represented a number of prominent, high net-worth individuals who have been required to seek bankruptcy protection to reorganize their offices. The firm has an experienced transactional lawyer, Laurel Isicoff, to assist parties in workouts and transactional aspects of bankruptcy cases including financing and plan documentation.*

*Through the synergies of our bankruptcy and litigation practices, our firm has developed a unique expertise in evaluating and prosecuting litigation claims in bankruptcies and receiverships of insolvent entities and in fraud cases. In the* Premium Sales *case, Harley Tropin coordinated all litigation arising from one of the largest Ponzi schemes in Florida history by serving as Receiver in the SEC securities fraud case, as Chapter 11 Trustee in the bankruptcy case, and as Chair of the Steering Committee. In the* Model Imperial *bankruptcy case, which involved a multi-million dollar fraud by a Boca Raton, Florida perfume distributor, Kozyak Tropin was retained by the Liquidating Trustee to pursue claims against various third parties, including Model's accounting firm and one of its lenders. KT&T obtained a $5 million verdict against a Big Five accounting firm, and the fraudulent transfer claims against the lender were recently*

-4-

*settled after trial for an amount in excess of $4 million. We have been engaged in a number of other major cases around the country to evaluate and investigate potential claims against third parties such as accountants and other professionals, including our retention in the <u>United Companies</u> bankruptcy in Delaware, and the <u>Commercial Financial Services</u> bankruptcy in Oklahoma.*

*Cori Lopez-Castro was a Panel Trustee for four years, and supervises numerous business liquidations on a regular basis. The firm also represents other trustees and is currently representing a Liquidating Trustee in a case against Arthur Andersen.*

### INTELLECTUAL PROPERTY

*Since its inception, the firm has specialized in litigating intellectual property matters, including unfair competition, and trademark and copyright infringement. Kozyak Tropin & Throckmorton also associates as trial counsel in patent infringement cases. The firm has represented, on a select basis, such clients as New York New York Hotel & Casino, Dole Foods, United Distillers, Guinness P.L.C., Dunhill, and ABC Carpet in a variety of cases involving trademark and trade dress infringement, dilution, deceptive trade practices, and trade secret misappropriation. We have prosecuted trademark counterfeiting actions on behalf of such clients as Chanel, Fendi, Gucci, Cartier, Carrera Eyewear, Kodak, and Levi Strauss & Co. Kozyak Tropin regularly handles Florida litigation involving intellectual property for national clients such as Ferrari, Dry Clean USA, Zegna, Van Cleef, Estee Lauder and others. The firm obtained a $2 million dollar jury verdict, including punitive damages, in a trademark and unfair competition case on behalf of the manufacturer of an aerosol defense spray. In addition to its litigation practice, the firm also provides general advice on intellectual property matters for a number of clients.*

### COMMUNITY INVOLVEMENT

*Kozyak Tropin & Throckmorton also is dedicated to helping our community and making our firm a welcoming and diverse workplace. The firm annually awards two $10,000 scholarships to second-year minority students who have demonstrated excellence in the Litigation Skills Program at the University of Miami School of Law. Kozyak Tropin is a proud representative of the diversity of South Florida. In September 2000, the Florida Commission on the State of Women recognized Kozyak Tropin & Throckmorton, P.A. as the Best Florida Employer for Working Women in the small company category consisting of companies with fewer than 50 employees. Additionally, in May 2001, the firm received the Florida Bar Association's First Annual Diversity Award for its commitment to, and results achieved in, diversity, including race, gender, religious, and ethnic background. On an individual basis, the firm's lawyers actively participate in many philanthropic and community service organizations and activities. For example, the University of Miami School of Law has named its minority mentoring program the "John W. Kozyak Minority Mentoring Program" due to John's leadership in ensuring that every minority law student at the University of Miami School of Law has a mentor.*

LAW OFFICES KOZYAK TROPIN & THROCKMORTON, P.A.
2800 WACHOVIA FINANCIAL CENTER, 200 SOUTH BISCAYNE BOULEVARD, MIAMI, FLORIDA 33131 · TEL (305) 372-1800

## *OUR ATTORNEYS*

*Our attorneys, like our firm, are relatively young, and we represent our clients energetically and aggressively. While some of us grew up in Florida, others were attracted to Miami by the unique opportunities of practicing law in a rapidly expanding city with important commercial, financial and trade links to the rest of the nation and Latin America. All of our partners are recognized leaders in their areas of practice. The firm's attorneys are also involved in a wide range of community and bar activities. Several of our attorneys are bilingual and we have ties to all of Miami's multi-cultural ethnic groups.*

*The firm also has five legal assistants with over twenty-five years of combined litigation, bankruptcy, and intellectual property experience. The support staff and all lawyers are equipped with the most modern computer and communications technology. On occasion, we hire staff attorneys, accountants, and exceptional students to provide additional support on major cases.*

## *PARTNERS*

*JOHN W. KOZYAK was born in Champaign, Illinois, and obtained his B.S. degree, cum laude, from the University of Illinois in 1970. He attended Washington University School of Law and the University of Miami Law School, and graduated from the former in 1975, where he served as an editor of the Law Quarterly. He has been recognized in each printing of The Best Lawyers in America, published by Woodword/White, beginning with the 1987 edition, and is also AV rated by Martindale-Hubbell. John represents clients throughout Florida and elsewhere. In 1999 and 2002, he was recognized by the Dade County Bar for his extraordinary commitment to providing pro bono services.*

*Admitted to the Florida Bar in 1975, John is also admitted to practice as a member of the Trial Bar of the United States District Courts for the Southern and Middle Districts of Florida, the United States Courts of Appeals for the Fifth and Eleventh Circuits, the United States Tax Court, and the United States Bankruptcy Court for the Southern and Middle Districts of Florida.*

*John is a former President of the Bankruptcy Bar Association of the Southern District of Florida, and was the Chairman of its CLE Committee for three years. John has been a member of the ABA Business Committee and Secured Creditors Subcommittee since 1981, and the ABA Commercial Financial Services Committee since 1982. He was the Chair and a Vice-Chair of the ABA Business Bankruptcy Committee's Subcommittee on Programs, Publications and Public Relations for more than six years. He has also been a member of the Florida Bar UCC/Bankruptcy Committee since 1981, and was a Florida Bar Grievance Committee Chairman for two years. John is also an ABA Fellow, and in 1992, he was selected as a Fellow in the American Bankruptcy College, which now has fewer than 300 members, including judges and professors.*

- 6 -

*Committed to issues involving the Bar and community, John is also a member of the Cuban-American Bar Association and the Black Lawyers Association, which awarded him a Certificate of Merit in June 2001, for outstanding service as a member of the Law Week Ad Hoc Committee, 2000-2001.*

*John has given many seminars on bankruptcy and foreclosure matters in several states and participates in a number of national and local bankruptcy bar associations. In 1989, he spoke at the National Conference of Bankruptcy Judges on partnership problems in bankruptcy. He has written a number of articles on bankruptcy issues and has been a contributing editor for several years for Norton Bankruptcy Law & Practice, which is published by Clark Boardman Callaghan. For several years, he was a contributing editor of Judges Ginsberg's and Martin's treatise, Bankruptcy: Text, Statutes, Rules, which was published by Prentice Hall and the Aspen Press.*

*In addition, John has served on the Board of Trustees of Fairchild Gardens, the Zoological Society of Miami and the Eleventh Circuit Historical Society, Inc. He has been active in Big Brothers/Big Sisters, Boy Scouts of America, and Florida International University. He is currently a member of the University of Miami's Citizen Advisory Board.*

*He enjoys biking, snow skiing and raising orchids. John and his oldest son climbed Mt. Kilimanjaro in 1999.*

***HARLEY S. TROPIN** was born in Bayside, New York, and obtained his B.A. degree in Political Science from The George Washington University in 1974. In 1977, he graduated cum laude from the University of Miami School of Law, where he was President of the Wig & Robe Society (an honorary legal society), and served as Articles and Comments Editor of the University of Miami Law Review. He is listed in The Best Lawyers in America in the field of commercial litigation, and is also AV rated by Martindale-Hubbell.*

*Admitted to the Florida Bar in 1977, Harley has also been admitted to practice as a member of the Trial Bar of the United States District Court for the Southern District of Florida, the United States Court of Appeals for the Eleventh Circuit, and the United States District Court for the District of Columbia.*

*Harley has served as a member and Vice Chair of The Southern District Bench/Bar Liaison Committee, as a member of the Florida Bar Civil Procedure Rules Committee, and as Co-Chair of the Dade County Bar Association Grievance Committee. He was Chairman of the Federal Courts Committee of the Dade County Bar Association in 1987, and is currently chairman of the Federal Courts Committee of the Florida Bar. He was a member of The Eleventh Circuit Judicial Nominating Commission from 1986-1990, which he chaired in 1989. From 1994-1997, he served as delegate for the Southern District to the Eleventh Circuit Judicial Conference. Harley has served as a member of the Special Coordinating Committee on Professionalism of the American Bar Association, as well as of the American Bar Association Antitrust Committee, the Litigation*

- 2 -

Section of the ABA, the Patent, Trademark and Copyright Committee, and the United States Trademark Association.

Harley regularly lectures in a variety of areas of commercial litigation, including: professional malpractice prosecution, the management of complex litigation, trial advocacy, and intellectual property litigation. He has also participated in several seminars and programs concerning the appointment process of trial judges. He has chaired the NITA/Federal Court program on trial advocacy, and currently teaches trial advocacy at the University of Miami School of Law, where he also serves as Chairman of the University of Miami Law Review Advisory Committee, and a member of the Board of Directors of the University of Miami Law School Alumni Association. He regularly chairs an annual seminar, "Damages in Commercial Litigation." Harley also wrote the injunction chapter for Florida Civil Practice Before Trial, a standard Florida litigation text.

Harley is a member of the Boards of Directors of the Greater Miami Jewish Federation, and of Temple Beth Am. He enjoys skiing, biking, and hiking with his wife and three sons.

**CHARLES W. THROCKMORTON** was born in Norfolk, Virginia. He graduated magna cum laude from Duke University in 1976, with a B.A. degree in history and psychology, and in 1979, obtained his J.D. degree from the University of Virginia School of Law, where he was a member of the Editorial Board of the Virginia Journal of International Law and a member of the Board of Directors of the Virginia Legal Research Group. Chuck is AV rated by Martindale-Hubbell, and has been designated for inclusion in The Best Lawyers in America.

Admitted to the Florida Bar in 1979, Chuck was subsequently admitted to practice before the United States District Courts for the Southern and Middle Districts of Florida, and the United States Courts of Appeals for the Fifth and Eleventh Circuits. Chuck is also a member of the Trial Bar of the United States District Court for the Southern District of Florida.

Chuck is a member of the Bankruptcy Bar Association of the Southern District of Florida, the American Bankruptcy Institute, the ABA Litigation Section, the Commercial Law League of America, and the Florida Bar UCC/Bankruptcy Committee. He is a member of several ABA sub-committees relating to bankruptcy and UCC issues. Chuck frequently lectures on bankruptcy, UCC, and litigation topics.

**KENNETH R. HARTMANN** was born in Monterey, California. He obtained a B.A. degree in psychology from Lafayette College. In 1986, Ken graduated magna cum laude from the University of Miami School of Law, where he served on the Editorial Board of the University of Miami Law Review and was a member of the Order of the Coif (an honorary legal society). He served as a judicial intern for United States District Court Judge Eugene Spellman. Ken currently practices in the areas of commercial and intellectual property litigation, including arbitration and mediation proceedings, and has spoken at numerous seminars on topics within these practice areas. He holds an AV rating from Martindale-Hubbell.

LAW OFFICES KOZYAK TROPIN & THROCKMORTON, P.A.

2800 WACHOVIA FINANCIAL CENTER, 200 SOUTH BISCAYNE BOULEVARD, MIAMI, FLORIDA 33131 • TEL (305) 372-1800

Admitted to the Florida Bar in 1987, Ken also has been admitted to practice before the United States District Courts for the Southern and Middle Districts of Florida and the United States Courts of Appeals for the Eleventh and Federal Circuits. Ken is also a member of the Trial Bar for the United States District Court for the Southern District of Florida.

Ken is a member of the International Trademark Association, the Dade County Bar Association (serving on the federal courts committee), the Florida Academy of Trial Lawyers, the American Trial Lawyers Association and the American Bar Association Litigation and Patent, Trademark and Copyright Sections. He was a Director of the Dade County Trial Lawyers Association from 1996 to 2000. Ken also served on the Florida Bar Code and Rules of Evidence Committee in 1991 and 1992, and since 1997, has been a member of the Business Law Section's Intellectual Property Committee.

Since 1993, Ken has also been an adjunct faculty member of the University of Miami School of Law Litigation Skills Program.

**LAUREL MYERSON ISICOFF** was born in New York City. She graduated cum laude from Barnard College in New York in 1978, with a degree in Spanish. Laurel started law school at New York University before transferring to the University of Miami, where she graduated cum laude in 1982. In addition to being inducted into the Wig and Robe Society, being awarded the Order of the Barristers for outstanding courtroom advocacy and receiving an award as the outstanding advocate in trial procedure, Laurel received the prestigious Roger Sorino Award, an honor bestowed upon only one University of Miami law student each year. She also holds an AV rating from Martindale-Hubbell.

After graduating from law school, Laurel clerked for two years for the Honorable Daniel S. Pearson on the Florida Third District Court of Appeal. She then worked for seven years in the Miami office of Squire Sanders & Dempsey on numerous bankruptcy, foreclosure and workout matters both as a transactional attorney and litigator. Laurel has continued with this practice at our firm where she handles the transactional side of our workouts and bankruptcy matters.

Laurel is admitted to practice before the United States Court of Appeals for the Eleventh Circuit, and the United States District Courts for the Southern and Middle Districts of Florida. In addition to being a member of the American Bar Association, the Dade County Bar Association, and the Florida Bar (admitted in 1982), Laurel is a past President of the Bankruptcy Bar Association of the Southern District of Florida, and currently serves as the chair of the Pro Bono Task Force for the BBA.

Laurel served for many years on the Board of the University of Miami School of Law Alumni Association, and is an inaugural member of the University of Miami School of Law Dean's Circle. In October 2002, Laurel was inducted into Iron Arrow, the highest honor attainable at the University of Miami. In Spring 2002, she was recognized as one of the "Women Who Make a Difference" by Miami Law Women, who recognized Laurel for her service to the community. She has also served on the Board and on the Endowment Committee of Greenfield Day School, a South Dade community day school. Laurel taught the inaugural year of the Bankruptcy

- 9 -

LAW OFFICES KOZYAK TROPIN & THROCKMORTON, P.A.
2800 WACHOVIA FINANCIAL CENTER, 200 SOUTH BISCAYNE BOULEVARD, MIAMI, FLORIDA 33131 · TEL 305/372 1800

*Assistance Clinic at St. Thomas Law School, a program which she helped design, and for which she continues to act as a mentor.*

*Also very active in the community, Laurel has served for the last seven years on the Executive Board of Bet Shira Congregation. She is currently serving as Secretary of Bet Shira and as a Trustee of the Bet Shira Endowment.*

***DAVID P. MILIAN*** *was born in Chicago, Illinois. He received his B.A. degree with honors in 1986, from the University of Florida and graduated in 1989, with honors, from the University of Florida College of Law, where he was Executive Articles Editor for the* Florida Journal of International Law, *a Fellowship Instructor for the law school's Appellate Advocacy program, and recipient of the American Jurisprudence Awards for Torts and Constitutional Law. David is AV rated by Martindale-Hubbell, and practices complex commercial litigation with a focus on commercial fraud, RICO, class actions, professional malpractice, and intellectual property litigation.*

*David was admitted to the Florida Bar in April 1990, and is admitted to practice before the United States District Courts for the Southern and Middle Districts of Florida and the Untied States Court of Appeals for the Eleventh Circuit. David has served on the Board of Directors of the Dade County Bar Association (1998-2001), and on the Florida Bar's Eleventh Judicial Circuit Grievance Committee (1999-2002). He currently serves on the Board of Governors of the Florida Bar (Young Lawyers Division). He is a member of the Section of Litigation of the American Bar Association, the ABA's Trial Practice Committee where David chairs the Website sub-Committee, and the Cuban-American Bar Association. David also chaired the ABA Trial Practice Committee's feature program at the 1998 ABA annual meeting in Toronto.*

***CORALI LOPEZ-CASTRO*** *was born in San Juan, Puerto Rico. She obtained an A.B. degree in 1987 from Brown University. In 1990, Cori graduated* cum laude *from the University of Miami School of Law, where she was the special features editor of the* Inter-American Law Review. *After graduating from law school, Cori specialized in bankruptcy and creditors rights litigation at Kozyak Tropin through 1995. She then relocated to Cleveland and practiced with the firm of Hahn Loeser & Parks for two years, rejoining Kozyak Tropin in September 1997. Cori holds an AV rating from Martindale-Hubbell.*

*Admitted to the Florida Bar in 1990, Cori was a Director of the Cuban-American Bar Association (CABA) from 1997 through 2001, and has also served as CABA's Vice President. Cori was on the Panel of Bankruptcy Trustees for the Southern District of Florida from 1998 through 2002. Recently, she was appointed to the Judicial Campaign Practices Commission, which considers complaints filed by candidates during judicial elections in Miami-Dade County. She is an active member of the American Bar Association and Bankruptcy Bar Association for the Southern District of Florida. She has lectured at ABA meetings as well as at local Bar Association meetings.*

- 10 -

**GAIL A. M<sup>c</sup>QUILKIN** *was born in New York, New York. She obtained a B.S. degree from Juniata College in 1982, and an MBA, cum laude, from the University of Miami in 1983, before pursuing a business career. Gail graduated from the University of Miami School of Law, cum laude, in May 1992. She was a member of the* University of Miami Law Review *and a recipient of American Jurisprudence Awards for Evidence and Civil Procedure. She also interned for former U.S. District Court Judge Thomas Scott, before joining Kozyak Tropin in September 1992. Gail currently serves as the firm's Managing Partner, and practices in the areas of intellectual property litigation (trademark, copyright and patent), trademark registration and licensing, and employment law, as well as in other areas of commercial litigation.*

*Gail became a member of the Florida Bar in 1992, and is admitted to practice before the United States District Court for both the Southern and Middle Districts of Florida and the United States Court of Appeals for the Eleventh Circuit. She is also a member of the American Bar Association (Litigation, Employment Law, Intellectual Property, and Law Firm Management Sections), the Dade County Bar Association, and the Miami Beach Bar Association. Gail is a member of the International Trademark Association (INTA), and served on the Round Table Committee from 1999-2001, and on the Alternative Dispute Resolution Committee in 2001.*

**ADAM M. MOSKOWITZ** *was born in Brooklyn, New York. In 1989, he obtained his B.A. degree in Political Science from Syracuse University, where he was the President of the Syracuse Varsity Debate Team. In 1993, Adam graduated cum laude from the University of Miami School of Law where he was the Managing Editor and Assistant Articles and Comments Editor of the* University of Miami Law Review*, and received numerous awards including the Dean's Merit Scholarship, the Hanna D. Mott National Scholarship, and various Jurisprudence Book awards.*

*Admitted to the Florida Bar in May 1993, Adam has also been admitted to practice as a member of the Trial Bar of the United States District Court for the Southern District of Florida and the United States Court of Appeals for the Eleventh Circuit. He is an active member and has served on various committees of the Florida Bar, the American Bar Association and the Dade County Bar Association.*

*Adam has served as counsel on various state and national class actions and is an adjunct professor in class action litigation at the University of Miami School of Law. He has participated in numerous seminars and lectures regarding state and federal class actions and has published articles in the* Florida Bar Journal *and other publications on class actions and commercial litigation. Adam has also served as Chairperson on numerous NASD securities arbitration panels.*

**DAVID L. ROSENDORF** *was born in Hollywood, Florida. He obtained a B.A. in English from Emory University in 1988, and in 1992, graduated cum laude from the University of Miami School of Law, where he was a member of the* University of Miami Law Review*, for which he contributed an article to a symposium issue on homelessness and the law, and was a recipient of a Dean's Honor Scholarship.*

LAW OFFICES KOZYAK TROPIN & THROCKMORTON, P.A.
2800 WACHOVIA FINANCIAL CENTER, 200 SOUTH BISCAYNE BOULEVARD, MIAMI, FLORIDA 33131 • TEL (305) 372-1800

David was admitted to the Florida Bar in February of 1994. He is admitted to practice before the United States District Court for the Southern District of Florida and the United States Court of Appeals for the Eleventh Circuit. He currently serves as a Director of the Bankruptcy Bar Association of the Southern District of Florida, and is also a member of the Dade County Bar Association. David has participated in seminars and contributed to articles on a number of bankruptcy issues, including involuntary bankruptcies, commercial landlord/tenant matters, and "new value" plans.

In September 1995, David rejoined the firm after concluding a one-year judicial clerkship for the Honorable Robert A. Mark, now the Chief Bankruptcy Judge for the Southern District of Florida.

**DETRA P. SHAW-WILDER** was born in Miami, Florida. Detra received her B.S. degree in 1990, from the University of Florida. In May 1994, she graduated cum laude from the University of Miami School of Law, where she was a member of the Inter-American Law Review and the International Moot Court Team.

Detra was admitted to the Florida Bar in 1994. She is also admitted to practice before the United States District Courts for the Southern District of Florida. Detra is a member of the American Bar Association and the National Bar Association.

She is quite active in numerous minority-oriented programs at the University of Miami School of Law and in the community. Detra served as a Director for the Young Lawyers Section of the Dade County Bar Association from 1995-1998, and Co-Chaired the DCBA/YLS Law Week Committee in 1996. She serves on the Dade County Bar Association Board of Directors, and has Co-Chaired the Dade County Bar Association Business and Banking Litigation Committee. Detra currently serves as Vice-President of Black Lawyers Association, Inc., and sits on the Board of the University of Miami Law-Week Committee.

**TUCKER RONZETTI** was born in Ft. Meade, Maryland, and obtained his B.A. degree in economics from Duke University in 1987. After working in mortgage banking, Tucker attended law school at the University of Miami, where he graduated magna cum laude, in the top ten of his class, in 1992, receiving the Order of the Coif. He served as editor-in-chief of the University of Miami Law Review, and was also a member of the Honor Council and the Iron Arrow Honor Society. After law school, Tucker clerked for U.S. District Court Judge Edward B. Davis of the Southern District of Florida. He has been named in Who's Who in American Law, is a member of Phi Delta Phi, and is AV rated by Martindale-Hubbell.

Tucker joined our firm in 2001, and specializes in civil and commercial litigation. Prior to joining KT&T, he served for over seven years as an Assistant County Attorney for Miami-Dade County, where he litigated and advised regarding commercial, labor, employment, civil rights, personal injury defense, construction, and appellate matters. He has also practiced with the firm of Valdes-Fauli, Cobb, Bischoff, Kriss & Mandler in the area of commercial litigation.

LAW OFFICES KOZYAK TROPIN & THROCKMORTON, P.A.
2800 WACHOVIA FINANCIAL CENTER, 200 SOUTH BISCAYNE BOULEVARD, MIAMI, FLORIDA 33131 • TEL 305-372-1800

*Tucker has been an instructor of legal reasoning, research and writing at the University of Miami School of Law since 1992. He has served as vice chair to Florida Bar Grievance Committee 11(I), and is active in serving as attorney for the Eleventh Circuit's Guardian ad Litem pro bono program. He was admitted to practice in the State of Florida in 1992, and is also admitted to the Trial Bar of the Southern District of Florida (1993), the U.S. Eleventh Circuit (1996), and the U.S. Supreme Court (1998).*

## *OF COUNSEL*

***JANET L. HUMPHREYS*** *was born in Birmingham, Alabama, and obtained her BA degree, with highest honors, from the University of Alabama at Huntsville. Janet then attended law school at the University of Alabama, where she graduated first in her class in 1983 and served as associate editor for the University of Alabama Law Review. After law school, Janet clerked for U.S. District Court Judge Sam C. Pointer, Jr., Chief Judge of the Northern District of Alabama. She has also been recognized with a current listing in The Best Lawyers in America, published by Woodword/White, and is AV rated by Martindale-Hubbell.*

*After moving to Miami, Janet joined our firm in 1987 and quickly became a partner, specializing in commercial litigation including securities fraud, intellectual property, First Amendment, and employment matters. During this period, Janet taught various commercial litigation seminars and served as faculty for the National Institute of Trial Advocacy's Bankruptcy Advocacy Program.*

*In 1994, Janet joined Knight-Ridder, a newspaper company, as Associate General Counsel. While at Knight-Ridder, Janet was responsible for libel/First Amendment training and advice for all Knight-Ridder newspapers, intellectual property matters for all Knight-Ridder newspapers and businesses, and daily advice to Knight-Ridder's various businesses on subjects ranging from human resources to antitrust.*

*In March 1998, Janet returned to our firm to take a lead role in preparing and trying several large product liability cases. The first of these cases to be tried resulted in an $88.5 million verdict in favor of the firm's clients against DuPont, which was featured as a National Law Journal "Verdict of the Week."*

*She is admitted to practice in the states of Alabama (1983) and Florida (1986), and is a member of the American Bar Association, the Dade County Bar Association, and Association of Trial Lawyers of America, as well as being admitted to practice before the U.S. District Court for the Southern District of Florida and the Eleventh Circuit Court of Appeals.*

LAW OFFICES KOZYAK TROPIN & THROCKMORTON, P.A.

2800 WACHOVIA FINANCIAL CENTER, 200 SOUTH BISCAYNE BOULEVARD, MIAMI, FLORIDA 33131  •  TEL (305) 372-1800

## ASSOCIATES

**CARMEN CONTRERAS-MARTINEZ** *was born in Brooklyn, New York. In 1987, she obtained her Bachelor of Arts degree in Economics and Sociology from Harvard University. In 1994, she obtained her Juris Doctor degree from New York Law School. While in law school, Carmen was on the Dean's List and was recognized three years consecutively in Who's Who Among American Law Students, 11th, 12th, and 13th editions.*

*Prior to attending law school, Carmen worked for Citicorp, Retail Bank Division, for seven years. While at Citicorp, she was an Assistant Vice President and Assistant Branch Manager at the Wall Street and Fulton Street Branches in New York City. Carmen was an authorized commercial lender as well as a licensed investment counselor.*

*Carmen was admitted to the Florida Bar in 1996. She is a member of the Dade County Bar Association, the Dade County Defense Bar Association, and the American Bar Association.*

**SOLOMON GENET** *was born in Miami, Florida. In 1996, Sol graduated, cum laude, from Yeshiva University in New York City, where he obtained a B.A. in History. He graduated, magna cum laude, from the University of Miami School of Law in 1999, and was elected for membership in the Order of the Coif. Sol also served as a Staff Editor for the University of Miami Law Review, and was a Dean's Fellow in the University of Miami School of Law Academic Achievement Program.*

*Currently an Adjunct Professor in the University of Miami School of Law's Comparative Law LLM Program, Sol has also taught at St. Thomas University School of Law. Sol is also involved in local community groups as a member of City of Miami Beach Community Development Advisory Committee, and a Young President of Mount Sinai Hospital.*

*Sol is admitted to the Florida Bar, the New York State Bar, and the United States District Court for the Southern District of New York.*

*Prior to joining KT&T, Sol worked as an Associate in the Corporate Reorganization Department at the firm of Kronish Lieb Weiner & Hellman LLP, in New York City. Most recently, he served as a Judicial Law Clerk to Chief Judge Robert A. Mark, United States Bankruptcy Court, Southern District of Florida. He continues his focus on bankruptcy at Kozyak Tropin, working within our commercial bankruptcy practice.*

**JOHN GRAVANTE III** *is a 1999 graduate of Florida Atlantic University, with a Bachelor of Arts in Literature. He received his Juris Doctor degree, summa cum laude, from the University of Miami School of Law in May 2002. While at the University of Miami, John was inducted into the Order of the Coif, and was a member of the University of Miami Law Review. He has also served as a Judicial Law Clerk to the Honorable Adalberto Jordan, United States District Court for the Southern District of Florida.*

LAW OFFICES KOZYAK TROPIN & THROCKMORTON, P A

2800 WACHOVIA FINANCIAL CENTER, 200 SOUTH BISCAYNE BOULEVARD, MIAMI, FLORIDA 33131 · TEL (305) 372-1800

John was admitted to the Florida Bar in 2002, and his professional focus is within the firm's commercial litigation practice.

**MINDY Y. KUBS** was born in Philadelphia, P.A. In 1991, Mindy graduated Phi Beta Kappa from the University of Florida, where she obtained a B.S. in Psychology. In May 1994, she graduated from the Law School at the University of Pennsylvania. While in law school, Mindy interned for the late Honorable Joseph L. McGlynn, Jr., U.S. District Court Judge for the Eastern District of Pennsylvania. She also interned at the City Solicitor's Office in the Environmental Litigation Department, and was a case advocate for the Custody and Support Assistance Clinic.

Mindy was admitted to the Florida Bar and the U.S. District Court, Southern District of Florida, in 1995. She began working for KT&T in November 1994, before beginning a five-year clerkship with the Honorable Raymond B. Ray, United States Bankruptcy Judge. She returned to the firm in October 2001, and her current practice focuses on commercial bankruptcy.

**TOM J. MANOS** was born in Coral Gables, Florida. He obtained his B.L.S. degree, *summa cum laude*, from Barry University in Miami Shores, Florida, and in 1999, his Juris Doctor degree, *magna cum laude*, from the University of Miami School of Law. While in law school, he served on the editorial board of the *University of Miami Law Review*, and his article regarding HMO litigation was selected for publication in that periodical. Additionally, Tom was on the Dean's List, received two CALI Awards in Legal Research and Writing, and was inducted into the Order of the Coif and Phi Delta Phi. He has also been recognized in *Who's Who: American Law Students*, 19th Edition. During his last year of law school, Tom served a judicial internship with United States District Court Judge, the Honorable William M. Hoeveler, of the Southern District of Florida.

Tom was admitted to the Florida Bar in 1999, and is also admitted to practice in the United States District Courts for the Southern, Middle, and Northern Districts of Florida, as well as in the United States Circuit Court of Appeals, Eleventh Circuit. He is a member of the Dade County Bar Association, the Dade County Defense Bar Association, the Bankruptcy Bar Association for the Southern District of Florida, the Association of Trial Lawyers of America, and the American Bar Association.

Prior to attending law school, Tom worked for eleven years as a paralegal at Fowler, White, Burnett, Hurley, Banick & Strickroot, P.A. This experience provided him with a diverse litigation background from which he now draws in his commercial litigation and bankruptcy practice at our firm. Tom also has a musical background, and has written and recorded several professional musical recordings in both English and Spanish. Prior to law school, Tom had two Spanish language songs that became hit records played in heavy rotation on Latin radio stations. He continues his interest in musical composition and record production.

LAW OFFICES KOZYAK TROPIN & THROCKMORTON, P.A.

2800 WACHOVIA FINANCIAL CENTER, 200 SOUTH BISCAYNE BOULEVARD, MIAMI, FLORIDA 33131 • TEL (305) 372-1800

Tom has appeared numerous times on the television programs *The Putney Perspective* and *This Week in South Florida* to discuss issues including the Florida nursing home crisis, federal funding for faith-based initiatives, the Cuban embargo, the proposed strategic defense system, President Bush's tax cuts, and the referendum on Miami-Dade County's equal rights ordinance. He has also recently authored an article that was selected for publication in the *Florida Bar Journal* entitled, "Florida's Nursing Home Reform and Its Anticipated Effect on Litigation." Tom has also authored several other legal articles including: "Take Half an Aspirin and Call Your HMO in the Morning–Medical Malpractice in Managed Care: Are HMOs Practicing Medicine Without a License?"; The Golden Years–Defending Nursing Homes From Abuse"; "The Requirement of 'Unanimity' Among Defendants in Removing a Case to Federal Court and Conflicts in Interpreting Case Law"; "Accommodating Mental Illness Under the Fair Housing Amendments Act"; and "That's Law-Biz!?–Abusive Practices by Some Entertainment Lawyers That Have Resulted in Bad Reviews for the Whole Profession."

Tom's current practice focuses on commercial litigation and bankruptcy, with additional practice areas including medical malpractice, HMO litigation, nursing home litigation, products liability, aviation, general liability, copyright, and entertainment law.

**CHERYL E. ZUCKERMAN** was born in Wappingers Falls, New York. In 1996, Cheryl graduated *cum laude* from the University of Maryland at College Park, where she obtained a B.A. in Psychology. In May 1999, she graduated *magna cum laude* from the University of Miami School of Law, where she was a member of the Editorial Board for the *University of Miami Law Review* and was elected for membership in the Order of the Coif. Cheryl also received the Dean's Certificate of Achievement Award for U.S. Constitutional Law II and Advanced Evidence.

Cheryl was admitted to the Florida Bar and the U.S. District Court, Southern and Northern Districts of Florida in September 1999.

# Exhibit C-2

# RESUME OF

# *GARWIN, BRONZAFT, GERSTEIN & FISHER, L.L.P.*

Garwin, Bronzaft, Gerstein & Fisher, L.L.P., has continually and successfully championed the rights of investors and consumers for over fifty years. Garwin, Bronzaft is well known around the United States for its skill in representing investors, consumers, small businesses and the public in class action suits involving such issues as:

- *The violation of investors' rights as a result of securities fraud or breaches of fiduciary duty;*

- *Antitrust violations, such as price-fixing and other anti-competitive practices;*

- *Unfair and deceptive trade practices;*

- *Deceptive insurance practices.*

Garwin, **Bronzaft, Gerstein & Fisher,** L.L.P. has been general or trial counsel in class action and stockholder derivative lawsuits where we have generated outstanding results on behalf of our clients for over fifty years.

Set forth below are a few examples of cases which Garwin, Bronzaft, Gerstein & Fisher have prosecuted as lead or co-lead counsel over the past few years alone:

(a)   *Gutter v. E.I. DuPont de Nemours, et al.*, Case No. 95-2152 (S.D. Fla.), (Lead Counsel) After over seven years of intensive litigation, after complete fact and expert discovery, this securities law violation case was settled in 2003 for $77.5 million in cash. *See e.g.*, 124 F.Supp.2d 1291 (S.D.Fla. 2000)

(b)   *In re Buspirone Antitrust Litigation*, MDL Docket No. 1413 (S.D.N.Y.), 185 F.Supp. 2d 340 (S.D.N.Y. 2002), (Co-Lead Counsel) granted summary judgment against Bristol Myers with

respect to certain patent infringement claims. Case was resolved after direct negotiation between our firm and counsel for the defendant for $220 million on behalf of a class of direct purchasers of Buspirone; *see also*, 208 F.R.D. 516 (S.D. N.Y. 2002) discussing issues of waiver of attorney client privilege with respect to matters placed at issue in the litigation. Settled in 2003 for $220 million. *See e.g.*, 185 F.Supp.2d 363 (S.D.N.Y. 2002); 210 F.R.D. 43 (S.D.N.Y. 2002)

(c)     *In re M&F Worlwide Corp. Shareholder Litigation*, Consolidated Civil Action No. 18502, V.C. Strine, (Co-Trial Counsel).   After complete discovery and a two-week trial, the defendants agreed in 2002, to the complete relief sought by the plaintiffs - rescission of a complex series of transactions valued by defendants' own evidence at over $130 million.

(d)     *Butler et al. v. Provident Mutual Life Insurance Company*, January Term, 1999, No. 007801 **(Court of Common Pleas-Philadelphia** County), (Co-Lead Counsel) After expedited efforts led by our firm, we successfully **preliminarily** and permanently enjoined a transaction we argued would **had denied Provident's policyholders** any compensation for their ownership interests in Provident **as part of a conversion of Provident** to a Mutual Holding Company. After defeat of this proposal, at our urging, Provident then successfully sought a partner   for a sponsored demutualization (Nationwide Financial Services) which delivered over $1 billion in compensation to Provident's eligible members.

(e)     *Sanders v. Wang, etc.*, Del. Ch., CA No. 16640, Steele, V.C. (November 8, 1999); (Co-Lead Counsel) The Court of Chancery concluded that a Compensation Committee of the Board "exceeded their authority" under a stock option plan in awarding shares to inside directors/officers in granting  judgment on the pleading for plaintiffs on behalf of nominal defendant Computer

2

Associates - settled for the return of in excess of $250 million in value of common stock for the Company. *See e.g.*, 1999 WL 1044880, 25 Del. J.Corp.L. 1036

(f)     *Chase v. Northwest Airlines Corp.*, 49 F.Supp.2d 553 (E.D. Mich. 1999), 197 F.Supp.2d 908 (E.D. Mich. 2002), (Lead Counsel) Successful withstanding a motion to dismiss a novel antitrust claim lodged against, *inter alia*, Northwest Airlines for "hidden cities" price ticketing practices and then successfully persuaded the District Court to certify a class of those impacted by "hidden cities" fares.

(g)     *In re Cendant Corporation Derivative Action Litigation*, 189 F.R.D. 117 (D.N.J. 1999), 232 F.Supp.2d 327 (D.N.J. 2002), (Lead Counsel) Court found, *inter alia,* demand excused where board implicated in failing to oversee alleged management financial fraud and Certificate of incorporation liability exclusion for breach of fiduciary duty did not insulate directors – recovery of $54,000,000 for Cendant, and its shareholders.

(h)     *In re Cardizem CD Antitrust Litigation* 200 F.R.D. 326 (E.D. Mich. 2001), (Co-Lead Counsel) Certifying class of direct purchasers of diltiazem; 105 F. Supp.2d 618 (E. D. Mich. District Court 2000) found Noerr-Pennington doctrine inapplicable and finding antitrust claim stated under both *per se* rule and rule of reason; granting partial summary judgment for violation of antitrust law. Case recently settled for $110 million in cash.

(i)     *In re Nuveen Fund Litigation*, 1996 WL 347012, 1996 WL 328001, 1996 WL 328003, 1996 WL 328006, 1994 WL 505293, 1994 WL 505294 (N.D. Ill. 1996) (Lead Counsel) (a case addressing novel issues arising under the Investment Company Act and Minnesota Corporate law); *see also* 555 N.W. 2d 301 (MN App. 1996)      recovery of $24 million in cash for shareholders of Nuveen Funds.

(j)      *In re USACafes, L.P. Litigation*, 600 A.2d. 43 (Del. Ch. 1991), (Lead Counsel) - - a case recognizing for the first time under Delaware law, a fiduciary duty owed by directors of a Delaware corporate general partnership to its Delaware limited partner.

(k)      *Zapata v. Maldonado*, 430 A.2d 779 (Del. Supr. 1981) (Lead Counsel) -- unquestionably one of the most important decisions in stockholder derivative litigation.   The Delaware Supreme Court's decision halted a tidal wave of decisions that threatened to eliminate the derivative action as an effective barrier to corporate waste and mismanagement.

(l)      *Michelson v. Duncan*, 407 A.2d 211 (Del. Sup. 1979) (Lead Counsel) --a reversal in part of a dismissal of a derivative action predicated upon a shareholder ratification.  The Delaware Supreme Court defined and reinstated plaintiff's waste cause of action.

(m)      *Stein v. Orloff*, Del. Ch., CA No. 7276, 11 Del. J. Corp. L. 312, 1985 WL 11561 Hurtnetly, V.C. (May 30, 1985) (Lead Counsel) - finding demand excused where plaintiffs stated a claim for waste of corporate assets by alleging properly "the consideration received by corporation was so inadequate that no person of ordinary sound business judgment would deem it worth what corporation paid."

(n)      *Galef v. Alexander*, 615 F.2d 51 (2d Cir 1980) (Lead Counsel) --almost as important a decision as *Maldonado*, wherein Second Circuit reversed and remanded a business judgment dismissal of a derivative action.  The Second Circuit's decision strongly intimated that business judgment could not be used to dismiss a well pleaded proxy claim, regardless of state law.

(o)      *Halpern v. Armstrong*, 491 F. Supp. 365 (S.D.N.Y. 1980) (Lead Counsel) - - an important Section 14(a) decision by Judge Milton Pollack wherein he found material proxy

4

violations and thereby voided a number of transactions undertaken by Revlon, Inc., the corporation in question.

(p)  *Jacobs v. Adams*, 601 F.2d 176 (5th Cir. 1979) (Lead Counsel)--an important and total reversal of a district court's holding (1) that a New York executor may not prosecute a derivative action in Florida; and (2) that Florida law requires a plaintiff in a derivative action to make a demand on a corporation's shareholders before instituting suit.

## FIRM PARTNERS

*BERTRAM BRONZAFT* (retired December 31, 2003) graduated from Brooklyn College in 1955 with a B.S. in Economics (major in accounting). He graduated from Brooklyn Law School, with honors, in 1961, having been a member of Law Review. He was admitted to the New York State Bar in 1962 and began full-time practice in May 1965 associated with Sidney L. Garwin, Esq. He has been primarily engaged in the prosecution of stockholders' derivative and class action litigation ever since. Mr. Bronzaft has successfully prosecuted and resolved such litigation in Courts in Delaware, New York, Connecticut, Michigan, California, Indiana, Florida, Washington, Texas and Wisconsin. Mr. Bronzaft is admitted to practice before all of the Courts of the State of New York as well as the United States District Courts for the Southern and Eastern Districts of New York, the United States Courts of Appeal for the Second, Fifth, Seventh, Ninth and Eleventh Circuits.

Mr. Bronzaft is a member of the American Bar Association, the New York State Bar Association, the Federal Bar Council, and served on Chief Judge Jack Weinstein's *Discovery Oversight Committee* of the United States District Court, Eastern District of New York. He also was a member of Chief Judge Thomas C. Platt's *Civil Litigation Committee* of the same Court.

5

*BRUCE E. GERSTEIN* graduated from Bernard M. Baruch College of The City University of New York in 1972 with a Bachelor of Business Administration with a major in public accounting, and is a Certified Public Accountant licensed in the State of New York (inactive). He graduated from Brooklyn Law School with honors in 1977. For the six years prior to joining Garwin & Bronzaft in January 1978, Mr. Gerstein was an investigatory accountant specializing in the area of stockholder's derivative and class actions. Mr. Gerstein has been appointed lead counsel by numerous courts in connection with securities, antitrust, insurance and consumer class actions and has received approbations regarding the work he performed or oversaw. He has been awarded an AV rating by Martindale Hubbell.

Mr. Gerstein is admitted to practice in all of the Courts of the State of New York and the Court of Appeals for the Second, Third, Fifth, Seventh, Ninth and Eleventh Circuits. He is a member of the Association of the Bar of the City of New York and the New York County Lawyers' Association (the "NYCLA"), the Federal Bar Council and the Federal Courts Committee of the NYCLA.

*SCOTT W. FISHER* graduated from Rensselaer Polytechnic Institute in 1971 with a Bachelor of Science degree in Aeronautical Engineering. He received a Master of Arts in Mathematics Education in 1974 from Brooklyn College. Following his graduation from Rensselaer Polytechnic Institute, Mr. Fisher was an educator employed by the New York City Board of Education in a wide variety of pedagogical areas including curriculum development in mathematics.

Mr. Fisher graduated from Brooklyn Law School in 1982. Following his graduation from law school, he joined the firm of Garwin, Bronzaft & Gerstein, where he has worked on many major consumer class actions, stockholder class and derivative litigations. Mr. Fisher has been appointed

6

lead or co-lead counsel in various securities litigations. Most recently Mr. Fisher served as co-trial counsel in Delaware Chancery Court in the *M&F Worldwide Corp. Shareholder Litigation*, a case which resulted in a complete victory for M&F shareholders. He also had a prominent role in the pre-trial and trial proceedings of the fen/phen diet drug product liability class action litigation in New Jersey Superior Court in 1999, which was resolved as part of a global resolution of diet drug cases for in excess of $4 billion.

Mr. Fisher is admitted to the Bars of the State of New York and of the United States District Courts for the Southern and Eastern Districts of New York, the District of Arizona, the Eastern District of Michigan, the Courts of Appeal for the Second, Third, Seventh and Eleventh Circuits and the Supreme Court of the United States. Mr. Fisher is also a member of The Association of The Bar of The City of New York, The New York County Lawyers' Association and The New York State Bar Association.

*BARRY S. TAUS* graduated Cum Laude from the State University of New York at Albany in 1986 with a Bachelor of Science degree in Accounting.

Mr. Taus joined the firm of Garwin, Bronzaft, Gerstein & Fisher in 1988, where he has worked on numerous antitrust and stockholder class action and derivative litigations. He graduated from Brooklyn Law School in 1989.

Mr. Taus is admitted to the Bars of the State of New York and the United States District Court for the Southern District of New York. He is also a member of the Association of the Bar of the City of New York and the New York State Bar Association.

Mr. Taus is acting as Lead Counsel or Co-Lead Counsel in a number of major, complex antitrust litigations, including *In re Cardizem CD Antitrust Litigation* (E.D. Mich.); *In re Terazosin*

7

*Hydrochloride Antitrust Litigation* (S.D. Fla.); *In re Ciprofloxacin Hydrochloride Antitrust Litigation* (E.D. N.Y.); and *In re K-Dur Antitrust Litigation* (D.N.J.) (Motion for Appointment as Co-Lead Counsel pending). Mr. Taus is also taking an active role in *Louisiana Wholesale Drug Co., Inc. v. Bristol-Myers Squibb* (S.D.N.Y.) in which his firm is Co-Lead Counsel.

Mr. Taus had also taken a central, active role in many of the stockholder class actions and derivative actions in which his firm has been Lead Counsel (as detailed above), including *Rebenstock v. Fruehauf (Fruehauf Trailer); In Re Par Pharmaceutical Securities Litigation; and In Re F&M Distributors, Inc. Securities Litigation.*

*NOAH H. SILVERMAN* graduated from Grinnell College in 1986 with a Bachelor of Arts degree in Political Science.

Mr. Silverman graduated from Northwestern University School of Law in 1990 and has been with the firm since May 1991.

Mr. Silverman is admitted to the Bar of the State of New York and the United States District Court for the Southern and Eastern Districts of New York. He is a member of the Association of the Bar of the City of New York.

*BRETT H CEBULASH* graduated from the University of Virginia in 1984 with a Bachelor of Arts degree in Psychology.

Mr. Cebulash graduated cum laude from Brooklyn Law School in 1993 and has been with the firm since October 1993.

Mr. Cebulash is admitted to the Bar of the State of New York and the State of New Jersey and the United States District Court for the Southern and Eastern Districts of New York. He is a member of the Association of the Bar of the City of New York and the American Bar Association.

8

*STEPHEN H. SCHWARTZ* graduated from Charter Oak College with a Bachelors in Business in 1988 and received his law degree from the University of Pennsylvania in 1991. At the University of Pennsylvania, Mr. Schwartz was awarded a Winston Fellowship in Law & Economics, and did his fellowship work in the field of creditors' rights. Prior to joining the firm in July 1998, he was employed by Milberg Weiss Bershad Hynes & Lerach LLP and Skadden Arps Slate Meagher & Flom, where he specialized in antitrust law and litigation. Mr. Schwartz is a member of the New York Bar and is admitted to practice before the United States District Courts for the Southern and Eastern Districts of New York.

Mr. Schwartz is acting as Co-Lead Counsel or a member of the Executive Committee in a number of class action antitrust litigations, including *In re Stock Exchange Options Trading Antitrust Litigation* (S.D.N.Y.), *In re Relafen Antitrust Litigation* (D. Mass.), and *In re Neurontin Antitrust Litigation* (D.N.J). He has also served as Lead Counsel or taken a central role in several of the firm's securities class and derivative actions, including *Dollens v. Zionts (In re Westell Technologies Derivative Litigation)* (N.D. Ill.), and *In re Buffets Securities Litigation* (D. Minn.)

*JOSEPH OPPER* graduated from Tufts University in 1970 with a Bachelor of Arts in Political Science. He graduated from Hofstra University School of Law in 1975. From 1985 to 1996 Mr. Opper was a member of the Antitrust Bureau of the New York State Department of Law and served as the Acting Bureau Chief from 1994-96. Immediately, prior to joining the firm in 2000, he was employed by Milberg Weiss Bershad Hynes & Lerach LLP, where he specialized in Antitrust and Human Rights litigation. From 1975-85 Mr. Opper practiced law at the Legal Aid Society in Brooklyn, New York.

Mr. Opper is a member of the New York Bar and is admitted to practice before the United States District Courts for the Southern and Eastern Districts of New York; United States Court of Appeals for the Second Circuit and United States Supreme Court.

*KEVIN S. LANDAU* graduated from Lehigh University in 1993 with a Bachelor of Arts degree in Government, with high honors.

Mr. Landau graduated from Brooklyn Law School in 1996, where he served on the Brooklyn Law Review. Mr. Landau has been employed by Garwin, Bronzaft, Gerstein & Fisher, L.L.P. since September 1996.

Mr. Landau is admitted to the Bar of the State of New York and is a member of the New York State Bar Association.

## **ASSOCIATES**

*ADAM STEINFELD* graduated from Brandeis University in 1994 with a Bachelor of Arts degree in Political Science.

Mr. Steinfeld graduated from Brooklyn Law School in 1997, where he served on the Brooklyn Law Review. Mr. Steinfeld has been employed by Garwin, Bronzaft, Gerstein & Fisher, L.L.P. since August, 1997.

Mr. Steinfeld is admitted to the Bars of the States of New York and Massachusetts.

*JAN BARTELLI* graduated from Syracuse University in 1993 with a Bachelor of Arts degree in English. She graduated from Brooklyn Law School in 1997, where she was a member of the Brooklyn Law Review and Moot Court. Prior to entering law school, Ms. Bartelli worked as a newspaper reporter for publications in New York City, New Jersey, and Connecticut. She has been employed by Garwin, Bronzaft, Gerstein & Fisher, L.L.P. since January 1998.

10

Ms. Bartelli is admitted to the Bars of the States of New York and New Jersey.

*ARCHANA TAMOSHUNAS* graduated from Williams College in 1995 with a Bachelor of Arts degree in Political Science and Studio Art.

Ms. Tamoshunas graduated from New York University School of Law in 1999, where she was a member of the Moot Court Board.  After graduating from law school, Ms. Tamoshunas was employed by the City of New York, representing the City in Family Court.  Ms. Tamoshunas has been employed by Garwin, Bronzaft, Gerstein & Fisher, L.L.P. since October 2002.

Ms. Tamoshunas is admitted to the Bar of the State of New York and is a member of the American Bar Association, The New York State Bar Association and the New York County Lawyers' Association.

*ANNE FORNECKER* graduated magna cum laude from James Madison University in 1996 with a Bachelor of Arts degree in Sociology.

Ms Fornecker graduated cum laude from Brooklyn Law School in 2002, where she was a member of Brooklyn Law Review.  Ms. Fornecker has been employed by Garwin, Bronzaft, Gerstein & Fisher, L.L.P. since January 2003.

Ms. Fornecker is admitted to the Bar of the State of New York.

*KIMBERLY HENNINGS* graduated cum laude from the University of Tampa in 2000 with a Bachelor of Science degree in Criminology.

Ms. Hennings graduated cum laude from Brooklyn Law School in 2003, and has been employed by Garwin, Bronzaft, Gerstein & Fisher, L.L.P. since October 2003.

Ms. Hennings is admitted to the Bar of the State of New Jersey and is awaiting admission to the Bar of the State of New York.

11

Garwin, Bronzaft, Gerstein & Fisher, L.L.P. or its predecessor firms, Garwin, Bronzaft &
Gerstein, Garwin & Bronzaft and Sidney L. Garwin, while acting as part of a team of lawyers has
been actively involved in dozens of outstanding settlements over the past decades, including, without
limitation *In re Diet Drugs Product Liability Litigation*, MDL 1203, *Vadino v. America Home
Products Corp.*, Diet Drug Case Code #240; *In re Nasdaq Antitrust Litigation*; and *In re VMS
Securities Litigation.*

In addition to those cases identified at pp 1-5 above, among the following cases our firm has
also resolved as either sole lead or co-lead counsel:

| Title of Action | Approximate Amount of Benefits |
| --- | --- |
| *Robert Cicarell, et al. v. Provident Mutual Life Insurance Company* (Court of Common Pleas) | $30 Million in life insurance policy benefits and $15 million |
| *In re Saloman Bros. Derivative Litigation* (S.D.N.Y.) | $40 Million |
| *In Re F&M Distributors, Inc. Securities Litigation* (E.D. Mich.) | $20.25 Million plus accrued interest |
| *In re Jiffy Lube Securities Litigation* (D. Md.) | $9.5 Million plus accrued interest |
| *Tabankin v. Kemper Short Term Global Income Fund* (N.D. Ill.) | $7.5 Million and other consideration valued in excess of $12.5 Million |
| *In re Mutual Savings Bank Securities Litigation* (E.D. Mich.) | $12 Million plus accrued interest |
| *Beaumont, et al. and Levine, et al. v. American Can* (N.Y. Supreme) | $10.5 Million plus accrued interest |
| *Rebenstock v. Fruehauf (Fruehauf Trailer Corp.) and Rebenstock v. DeLoitte & Touche* (E.D. Mich.) | $10.6 Million in cash and securities |
| *In Re RAC Mortgage Investment Corporation Securities Litigation* (D. Md.) | $12 Million plus accrued interest |

12

| | |
|---|---|
| *In Re Par Pharmaceutical Securities Litigation* (S.D.N.Y.) | $20 Million in cash and securities |
| *In Re Interco Incorporated Shareholders Litigation* (Del. Ch. Ct.) | $18.5 Million plus accrued interest |
| *In Re Revlon Group, Inc. Shareholders Litigation* (Del. Ch. Ct.) | $60 Million |
| *Goldberg v. Americana Hotels and Realty Corp., et al. (D. of Mass.)* | $9.46 Million plus accrued interest |
| *In Re: American Dental Laser, Inc. Securities Litigation* (E.D. Mich.) | $8 Million |
| *In re Buffets, Inc. Securities Litigation* (D. of Minn.) | $7 Million plus accrued interest |
| *In re GCA Corporation Securities Litigation* (D. of Mass) | $5.5 Million plus 1.15 million warrants |
| *In re American Southwest Mortgage Securities Litigation* (D. Of Ariz.) | $5.2 million |
| *In re Shared Medical Securities Litigation* (E.D. Pa.) | $5 Million plus accrued interest |
| *Wechsler v. Abramowitz, Del. Ch. Civil Action No. 6681 and 6862* (Del. Ch. Ct.) | Increased Going Private Price from $14.50 per share to $22.875 per share |

Currently Garwin, Bronzaft, Gerstein & Fisher, L.L.P. is either lead counsel, co-lead counsel or chairman of the Executive Committee in a number of complex class actions. Those cases include, *In re Merrill Lynch Focus Twenty Fund Investment Company Act Litigation,* pending in the Eastern District of New York; *Robert Corwin, derivatively on behalf of JDS Uniphase, Inc. v. Martin A. Kaplan, et al.,* pending in the Northern District of California; *Gutter v. E.I. Dupont DeNemours Company et.al.,* 95-2152-CIV, pending in the United States District Court in the Southern Division for the Southern District of Florida, *Chase v. Northwest Airlines Corp. et al.,* 96-74711, pending in the United Stated District Court for the Eastern District of Michigan; *Butler v. Provident Mutual Life*

13

*Insurance Company et al*, January Term 1999 No. 780, pending in Pennsylvania Court Of Common Pleas - County of Philadelphia; *In re Terazosin Hydrochloride Antitrust Litigation*, pending in the United States District Court for the Southern District of Florida; *In re K-Dur Antitrust Litigation*, pending in the United States District Court for the District of New Jersey; and *Louisiana Wholesale Drug Company, Inc., v. Bristol-Myers Squibb Co.*, pending in the United States District Court for the Southern District of New York; *In Re Ciproflaxin Hydrochloride Antitrust Litigation*, pending in the United States District Court for the Eastern District of New York; *In re Relafen Antitrust Litigation* pending in the United States District Court For the Eastern District of Massachusetts; and *In re Remeron Antitrust Litigation*, pending in the United States District Court for the District of New Jersey.