**ORIGINAL**

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF FLORIDA

MIAMI DIVISION

Case No. 04-20314-CIV-ALTONAGA/Bandstra

EDWARD LIPUMA, on behalf of Himself
and All Others Similarly Situated and on
Behalf of the General Public,

        **Plaintiff**

vs.

AMERICAN EXPRESS COMPANY, a New
York Corporation, et al.,

        **Defendants.**

                CLASS ACTION

*BALL* INTERVENORS' PLEA IN INTERVENTION

Intervenors William David Ball and Roy Richison ("the Ball Intervenors" or "Intervenors"), plaintiffs in *William David Ball, et al. v. American Express Co., et al.*, Case No. CV024562, pending in San Joaquin Superior Court in the State of California, file this Plea in Intervention to assert and protect their rights and interests as well as those of similarly situated American Express credit cardholders. Intervenors request that the Court grant their motion to intervene in this action prior to entering an Order Preliminarily Approving Class Action Settlement.

## I.    INTRODUCTION

Intervenors are the representative plaintiffs in *Ball, et al. v. American Express Co., et al.*, Case No. CV024562 (Cal. Super. Ct., County of San Joaquin) (the "*Ball* Action"), a class action against American Express Company, American Express Travel Related Services, Inc., and American Express Centurion Bank (collectively "American Express"). (*See* Exhibit A to Declaration of Caryn Becker In Support of *Ball* Intervenors' Motion to Intervene ("Becker Decl.").) In the *Ball* Action, Intervenors have asserted claims on behalf of a California class of American Express cardholders who have been charged inflated foreign currency conversion fees over and above the 2% undisclosed fee that is the subject of the litigation pending before this Court.

Intervenors, who first received notice of this action and the settlement on September 9, 2004, *see* Becker Decl. ¶ 3, move to intervene in this action pursuant to Federal Rule of Civil Procedure 24(a)(2), because Edward LaPuma and his counsel are inadequate representatives of the rights and interests of Intervenors and the class of American Express cardholders they seek to represent in the *Ball* Action. As discussed herein, the settlement entered into by LaPuma and his counsel extinguishes Intervenors' claims without paying Intervenors or the class members they represent any compensation at all for the harm they suffered. The LaPuma settlement releases

- 1 -

American Express from Intervenors' claims that apart from the hidden 2% foreign currency surcharge, American Express applied improper and excessive foreign exchange rates. LiPuma and his counsel have agreed to such a release even though LiPuma neither pled claims related to such foreign exchange practices, nor litigated any such claims. Intervenors believe that LiPuma and his counsel failed to engage in any meaningful discovery or negotiation concerning Intervenors' claims, which are distinct from the claims asserted in this case.

## II.    THE *BALL* ACTION

Like LiPuma, Intervenors and similarly situated American Express cardholders were charged the 2% hidden transaction fee that is the subject of this action. But the *Ball* action expressly excludes all of those claims from its scope. (*See Ball* Compl. ¶ 1 ("Plaintiffs do not in this complaint challenge the 2% transaction fee or American Express' disclosure (or non-disclosure) of that 2% fee. Plaintiffs complain that American Express systematically charges cardholders in excess of 2% for foreign purchases").)

The *Ball* Plaintiffs have alleged that in addition to the 2% transaction fee involved in the LiPuma action and settlement, American Express's currency conversion practices result in additional surcharges to American Express cardholders. Specifically, The *Ball* Plaintiffs have alleged that American Express converts foreign currency into United States dollars at one rate, but then charges cardmembers a different, higher rate:

> In practice, American Express charges its customers an exchange rate different than the rate at which it actually exchanges the currency. This fact is hidden from American Express cardholders. With respect to purchases made in a foreign currency, American Express itself pays the merchant based on an interbank or other very favorable exchange rate available to high-volume currency traders (most likely the New York Fed rate). When billing the cardholder in U.S. dollars for the purchase, however, American Express first adds a 2% transaction fee, and then imposes a different, higher exchange rate on its cardholders than what American Express actually pays. The effective result of this

practice is that cardholders pay American Express much more than
the 2% spread that is disclosed in the Cardholder Agreement.

(*Ball* Compl. ¶ 17.)

This claim simply is not part of the LiPuma case.  It is a fraud above and beyond the

hidden 2% fee that is the focus of LiPuma, and the *Ball* class members are entitled to

compensation for the additional harm they suffered as a result of this separate practice.

Intervenors assert claims on behalf of themselves and all other similarly situated American

Express cardholders in California for violation of the Unfair Competition Law, Cal. Bus. & Prof.

Code §§ 17200, *et al.*, violation of the Consumers Legal Remedies Act, Cal. Civ. Code §§ 1750,

*et al.*, breach of the covenant of good faith dealing.

### III.   THE *BALL* PLAINTIFFS SHOULD BE ALLOWED TO INTERVENE.

Under Federal Rule of Civil Procedure 24(a)(2), Intervenors are entitled to intervene in

this action as a matter of right to protect their rights and interests and those of the class they seek

to represent in the *Ball* Action.  In the Eleventh Circuit, an applicant may intervene as of right

pursuant to Rule 24(a)(2) if:  (1) the application is timely; (2) the applicant has an interest in the

property or transaction that is the subject of the action; (3) disposition of the action would impair

or impede the applicant's ability to protect that interest; and (4) the applicant's interest is

inadequately represented by the existing parties.  *See, e.g., Stone v. First Union Corp.*, 371 F.3d

1305, 1308-09 (11th Cir. 2004).  Intervenors satisfy all four factors.

#### A.   The Interests of the American Express Cardholders Represented by Intervenors Are Not Adequately Represented by LiPuma or His Counsel.

Of the four requirements that must be satisfied to support intervention under Rule

24(a)(2), the touchstone is adequacy of representation.  Intervenors need show only that

representation of their interests by LiPuma and his counsel "may be inadequate."  The burden on

Intervenors to make this showing is "minimal."  *See id.* at 1311 (citing *Clark v. Putnam County*,

168 F.3d 458, 461 (11th Cir. 1999)).

The facts here demonstrate not only that LiPuma and his counsel "may be inadequate" to represent Intervenors' interests, but that LiPuma and his counsel actually have not represented the rights and interests of Intervenors and the American Express cardholders they represent.[1] First, the allegations of the *LiPuma* action are confined to the 2% hidden transaction fee that American Express charges for transactions in a foreign currency. Proof of that fact is that the Settlement compensates class members only for that transaction fee, by providing a refund of "the monetary amount paid by a Settlement Class Member as a result of the FX Rate Adjustment [defined as 'the 1%-2% increase in the currency conversion rate selected by American Express pursuant to its cardmember agreements.']" (*See* Amended Stipulation and Agreement of Settlement ¶¶ 1.12, 1.13, 2.5.) LiPuma and his counsel were unaware that American Express routinely **and systematically overcharges Intervenors** and similarly situated American Express cardholders by using unfavorable exchange rates that American Express itself does not pay. LiPuma and his counsel did not even plead those claims.

LiPuma and his proposed settlement would extinguish not only the claims raised by LiPuma in the instant case, but also all claims "that are, were, or could have arisen out of or been related in any way to American Express's foreign currency conversion practices and the disclosures relating thereto." This overly broad release would extinguish claims that LiPuma did not plead, did not litigate, and gave no consideration to in settlement negotiations. The interests of the *Ball* Intervenors or class members were in no way represented in connection with the

---

[1] Intervenors do not mean to imply that LiPuma's counsel failed to represent their clients adequately. Although both generally involve American Express' foreign currency exchange practices, the claims that Intervenors are pursuing are different than LiPuma's claims. LiPuma's counsel failed to represent the interests of Intervenors simply because Interevnors' claims were not part of LiPuma's case.

proposed settlement.

LiPuma's actions in releasing the *Ball* Plaintiffs' claims without compensation prove that their counsel have not – and cannot – adequately represent the rights of the *Ball* Plaintiffs and proposed class. For that reason alone the Court should grant Intervenors' motion.

Furthermore, LiPuma's lack of standing to assert Intervenors' claims precludes compliance with the applicable requirements of Federal Rule of Civil Procedure 23, including amendments to Rule 23 that took effect on December 1, 2003. LiPuma's counsel cannot satisfy the class counsel appointment procedures mandated by Fed. R. Civ. Proc. 23(g) in connection with the class represented by Intervenors. There is no indication that LiPuma's counsel satisfy the criteria set forth in Fed. R. Civ. Proc. 23(g)(1)(C), which requires a Court when appointing class counsel to consider, among other things, the work performed by counsel in identifying or investigating potential claims. Nor can LiPuma's counsel demonstrate that they otherwise will "fairly and adequately represent the interests of the class" represented by Intervenors. Fed. R. Civ. Proc. 23(g)(1)(B). The U.S. Supreme Court has held that the adequacy of representation of the rights of absent class members must be "the dominant concern" of the court in the settlement context. *Amchem Prods, Inc. v. Windsor*, 521 U.S. 591 (1997).

Finally, as described in Intervenor William S. Barrett's Plea in Intervention, the circumstances giving rise to the proposed settlement suggest that American Express may have engaged in a "reverse auction." Barrett alleges that LaPuma's counsel withheld material information from the Court and Intervenors.

There can be little doubt that LaPuma's counsel fail adequately to represent the interests of the *Ball* Intervenors and similarly situated American Express cardholders.

**B.      Intervenors' Application Is Timely.**

The determination of whether the timeliness requirement is met requires assessment of

four factors:

> (1) the length of time during which the would-be intervenor knew or reasonably should have known of his interest in the case before he petitioned for leave to intervene; (2) the extent of prejudice to the existing parties as a result of the would-be intervenor's failure to apply as soon as he knew or should have known of his interest; (3) the extent of prejudice to the would-be intervenor if his petition is denied; and (4) the existence of unusual circumstances militating either for or against a determination that the application is timely.

*Davis v. Southern Bell Tel. & Tel. Co.*, 149 F.R.D. 666, 669 (S.D. Fla. 1993) (citation omitted).

Here, the *Ball* Intervenors have moved in a timely manner to intervene. Intervenors learned of the *LiPuma* action and proposed settlement on September 9, 2004. *See* Becker Decl. ¶ 3. Intervenors' application is timely because they are filing their motion to intervene only one week later. The only prejudice to the existing parties that is relevant to the question of timeliness is that which would result from the would-be-intervenor's failure to request intervention as soon as they knew about their interest in the case. *See Meek v. Metro. Dade County*, 985 F.2d 1471, 1479 (11th Cir. 1993). Because the *Ball* Intervenors have sought intervention within seven days of learning of the *LiPuma* action, no prejudice can be claimed. Moreover, because Notice has not yet been sent to the *LiPuma* class members, this is the best and most financially prudent time to allow the *Ball* Intervenors to intervene to protect their interests.

**C.    Intervenors Have A Strong Interest in the Property at Issue.**

A Rule 24 "interest" has been defined as a "significantly protectable interest." *See, e.g., TIG Specialty Ins. Co. v. Financial Web.com*, 208 F.R.D. 336 (M.D. Fla. 2002) (citing *Donaldson v. U.S.*, 400 U.S. 517 (1971)). Intervenors have sufficient interest in this action to support intervention because they are members of the settlement class before the Court, and their claims are subject to the release in the settlement without compensation. Accordingly, the *Ball* Intervenors have a significant protectable interest sufficient for intervention. *See Piambino v.*

*Bailey,* 610 F.2d 1306, 1324 (5th Cir. 1980) (finding that intervenors had a sufficient interest in the property where "they would be bound by a final judgment which completely shut them off from any hope of monetary recovery.")

> A class member who claims that his "representative" does not adequately represent him, and is able to establish that proposition with sufficient probability, should not be put to the risk of having a judgment entered in the action which by its terms extends to him, and be obliged to test the validity of the judgment as applied to his interest by a later collateral attack. Rather he should, as general rule, be entitled to intervene in the action.

Fed. R. Civ. P. 24, Advisory Committee Notes to 1966 Amendment.

### D.    This Settlement Impairs and Impedes Intervenors' Ability to Protect Their Interests and Those of the American Express Cardholders They Represent.

This settlement impairs and impedes Intervenors' ability to protect their interests and those of the class members they represent in the *Ball* Action. This Court previously has enjoined the prosecution of state cases and has a motion before it to do the same with the *Ball* action. Moreover, the proposed settlement would extinguish the claims asserted by Intervenors, including their claims for violations of California statutory provisions, without adequate consideration. As the Fifth Circuit held in *Piambino*, intervenors with state law claims under California's Unfair Competition Law have the right to intervene in a federal action because they would be bound by a final judgment and their ability to protect their interests "would not only be impeded or impaired, but it would be utterly destroyed." 610 F.2d at 1324. Intervenors' rights would be irreparably harmed by approval of the proposed settlement. It is essential that they be permitted to intervene in this action to represent their rights and interests and those of similarly situated American Express cardholders, all of whom possess claims that are distinct from the claims in this case.

For the reasons discussed above, Intervenors are entitled to intervene in this action as a

matter of right pursuant to Federal Rule of Civil Procedure 24(a)(2) to protect their rights and

interests and those of the class of American Express cardholders they seek to represent in the

*Ball* Action.

## IV.   CONCLUSION

For the foregoing reasons, Intervenors respectfully request that the Court grant their

motion to intervene in this action and vacate the Preliminary Approval Order in its entirety.

Dated: September __, 2004

Respectfully submitted,

LIEFF, CABRASER, HEIMANN &
BERNSTEIN, LLP

By: *David S. Stellings/by CB*

David S. Stellings (State Bar No. DSS-5343), *pro hac vice application filed*
Caryn Becker (State Bar No. 196947), *pro hac vice application filed concurrently*
LIEFF, CABRASER, HEIMANN &
BERNSTEIN, LLP
780 Third Avenue
48th Floor
New York, NY 10017
Telephone: (212) 355-9500
Facsimile: (212) 355-9592

James B. Brown (State Bar No. 83355)
HERUM, CRABTREE, BROWN, INC.
2291 West March Lane, Suite B100
Stockton, CA 95207
Telephone: (209) 472 7700

438991 1

- 8 -