UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF FLORIDA

MIAMI DIVISION

Case No. 04-CV-20314 Altonaga/Bandstra

NIGHT BOX
FILED

MAR 04 2005

CLARENCE MADDOX
CLERK, USDC / SDFL / MIA

| | |
|---|---|
| EDWARD LIPUMA, on Behalf of Himself and All Others Similarly Situated and on Behalf of the General Public, | ) ) ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) |
| | ) |
| AMERICAN EXPRESS COMPANY, et al., | ) |
| | ) |
| Defendants. | ) ) |

CLASS COUNSEL'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF APPLICATION FOR ATTORNEYS' FEES, REIMBURSEMENT OF EXPENSES, AND PAYMENT OF SERVICE AWARDS

## I.     INTRODUCTION

A $75 million cash fund has been created to pay class member claims, make charitable contributions on behalf of those class members who do not receive a financial recovery, and to pay the attorneys' fees and expenses awarded by the Court. In addition, Amex has paid for mailing individual notices to nearly nine million class members at a cost of approximately $3.1 million, has paid approximately $308,000 for extensive publication notice, and estimates it will pay

Case No. 04-CV-20314 Altonaga/Bandstra

approximately $3.6 million for the cost of claims administration. These are all costs that are typically borne by the class and deducted from a cash settlement fund. Thus, Amex's payment of these costs increases its cash contribution in this settlement to approximately $82 million.

Class Counsel were also able to negotiate significant injunctive relief. Amex has agreed to revise its disclosures relating to processing foreign transactions by conspicuously disclosing on both the billing statement and cardholder agreement Amex's methodology for processing foreign transactions, including the imposition of the 2% fee. The efforts of Class Counsel in achieving this excellent result are detailed in the Joint Declaration of Tucker Ronzetti, Christopher M. Burke, Kevin Landau and Allan Steyer in Support of Motion of Final Approval of Settlement, Including Payment of Attorneys' Fees, Expenses and Service Awards ("Joint Decl."), filed herewith.

For their efforts in creating this settlement, Class Counsel seek reimbursement of their reasonable out of pocket expenses of $227,085.81 and attorneys fees of $10,772,914.19 million, a fee of approximately 13.5% of the cash benefits obtained for the class. The percentage fee requested is reasonable under well-established Eleventh Circuit precedent, where percentage fees of 20%-30% are routinely awarded in cases of this type. Class Counsel's request is well below the typical fee award and even assuming Amex pays only the minimum amounts required under this settlement (a scenario that Amex states is not likely), the percentage fee request is still at the low end (approximately 22%) of the typical range of fee awards in class action cases.

A minuscule number of class members, relative to the size of the class, have submitted objections to some aspect of payment of the attorneys' fees requested. These objections are utterly without merit. Moreover, some were filed by "professional" objectors, as shown below, Class

2

Case No. 04-CV-20314 Altonaga/Bandstra

Counsel's fee request is supported by overwhelming case law in this Circuit and throughout the country.

For all the reasons explained below and in the Joint Declaration, and further supported by the Affidavit of Michael Hanzman filed herewith, Class Counsel submit that the requested fee and expense award in an aggregate amount of $11 million is fair and reasonable under applicable legal standards and should be approved.

## II.   CLASS COUNSEL'S ATTORNEYS' FEE AWARD IS APPROPRIATELY BASED ON A REASONABLE PERCENTAGE OF THE FUND THEIR EFFORTS CREATED.

### A.   Class Counsel Are Entitled to Payment from the Common Fund Created.

Lawyers who recover a "common fund" are entitled to reasonable attorneys' fees from the fund they created. *Boeing Co. v. Van Gemert,* 444 U.S. 472, 478 (1980). One rationale for such awards is that "persons who obtain the benefit of a lawsuit without contributing to its cost are unjustly enriched." *Id.* at 478.

The common fund approach is also grounded on a policy of encouraging counsel to act as "private attorneys general" to vindicate the rights of class members, most of whom have small individual claims:

> [C]ourts also have acknowledged the economic reality that in order to encourage "private attorney general" class actions brought to enforce ... laws on behalf of persons with small individual losses, a financial incentive is necessary to entice capable attorneys, who otherwise could be paid regularly by hourly-rate clients, to devote their time to complex, time-consuming cases for which they may never be paid.

*Mashburn v. National Healthcare, Inc.*, 684 F. Supp. 679, 687 (M.D. Ala. 1988).

As the Court explained in *In re Domestic Air Transp. Antitrust Litig.*, 148 F.R.D. 297 (N.D. Ga. 1993):

3

Case No. 04-CV-20314 Altonaga/Bandstra

The prevailing rule in the United States is that all parties are to bear their own costs in litigation. *Alyeska Pipeline Serv. Co. v. Wilderness Soc'y*, 421 U.S. 240, 95 S. Ct. 1612, 44 L. Ed. 2d 141 (1975). One of the recognized exceptions to the no-fee rule is the "common fund" case. Under this exception, class counsel are entitled to compensation for their services where a common fund is created by their efforts. *Camden I Condominium Ass'n v. Dunkle*, 946 F.2d 768, 771 (11th Cir. 1991). This exception "rests on the perception that persons who obtain the benefit of a lawsuit without contributing to its costs are unjustly enriched at the successful litigant's expense." *Boeing Co. v. Van Gemert*, 444 U.S. 472, 478, 100 S. Ct. 745, 62 L. Ed. 2d 676 (1980). Furthermore, courts have also recognized that in order to encourage "private attorney general" class actions brought on behalf of persons with small individual losses, a financial incentive is necessary to entice qualified attorneys to devote their time to complex, time-consuming cases for which they may never be paid.

> "[T]he financial incentive that class actions offer to the legal profession is a natural outgrowth of the increasing reliance on the "private attorney general for the vindication of legal rights; obviously this development has been facilitated by Rule 23.... Where it is not economically feasible to obtain relief within the traditional framework of a multiplicity of small individual suits for damages, persons may be without any effective redress unless they employ the class action device."

*Id.* at 348-49 (quoting *Deposit Guaranty Nat'l Bank v. Roper*, 445 U.S. 326, 338-39 (1980))

(footnote omitted).

Moreover, adequate compensation promotes the availability of counsel for plaintiffs:

> If the plaintiffs' bar is not adequately compensated for its risk, responsibility, and effort when it is successful, then effective representation for plaintiffs in these cases will disappear . . . We as members of the judiciary must be ever watchful to avoid being isolated from the experience of those who are actively engaged in the practice of law. It is difficult to evaluate the effort it takes to successfully and ethically prosecute a large plaintiffs' class action suit. It is an experience in which few of us have participated. The dimensions of the undertaking are awesome.

*Muehler v. Land O'Lakes, Inc.*, 617 F. Supp. 1370, 1375-76 (D. Minn. 1985) (awarding requested 35% fee).

## B.    The Percentage Approach Is Required in the Eleventh Circuit.

The proper manner to calculate attorneys' fees is to identify the fund created for the benefit of the class and to award counsel for the class a reasonable percentage of that fund as an attorneys'

4

Case No. 04-CV-20314 Altonaga/Bandstra

fee. "[I]n this circuit, attorneys' fees awarded from a common fund shall be based upon a reasonable percentage of the fund established for the benefit of the class." *Camden I Condominium Ass'n v. Dunkle*, 946 F.2d 768, 774 (11th Cir. 1991); *see also In re Sunbeam Sec Litig.*, 176 F. Supp.2d 1323,1333 (S.D. Fla. 2001). After carefully weighing the pros and cons of the percentage method and the lodestar/multiplier method, the Eleventh Circuit concluded:

> After reviewing *Blum*, the [Third Circuit] Task Force Report, and the foregoing cases from other circuits, we believe that the percentage of the fund approach is the better reasoned in a common fund case. Henceforth in this circuit, attorneys' fees awarded from a common fund shall be based upon a reasonable percentage of the fund established for the benefit of the class.

*Camden I*, 946 F.2d at 774. Since the Eleventh Circuit has expressly rejected the lodestar/multiplier approach in favor of the percentage of the fund method, the primary question before this Court is the appropriate percentage of the settlement fund to be awarded as attorneys' fees.

### C.    An Attorneys' Fee Award of Approximately 13% of the Funds Created is Reasonable.

The Eleventh Circuit has observed that "[t]here is no hard fast rule mandating a certain percentage of a common fund which may reasonably be awarded as a fee because the amount of any fee must be determined upon the facts of each case." *Camden I*, 946 F.2d at 774. However, the Eleventh Circuit stated that "district courts are beginning to view the median of this 20% to 30% range, i.e., 25%, as a "bench mark" percentage fee award which may be adjusted in accordance with the individual circumstances of each case." *Id.* at 775; *see also Waters v. Intern. Precious Metals Corp.*, 190 F.3d 1291 (11th Cir. 1999) (approving fee award where the district court determined that the benchmark should be 30% and then adjusted the fee award even higher based on the circumstances of the case); *Walco Inv., Inc. v. Thenen*, 975 F. Supp. 1468, 1470 (S.D. Fla. 1997) (quoting *Camdem I* and explaining 25% of the common fund is the benchmark). Finally, the

5

Case No. 04-CV-20314 Altonaga/Bandstra

*Camden I* court indicated that the factors set forth in *Johnson v. Georgia Highway Express, Inc.*, 488

F.2d 714, 717-19 (5th Cir. 1974) as well as the time required to reach a settlement, whether there

were substantial objections from class members, non-monetary benefits of the settlement, and the

economics involved in prosecuting a class action are among the factors that may be relevant to a

Court's determination of an appropriate percentage fee. *Camden I*, 946 F.2d at 775.

## III.    CONSIDERATION OF ALL RELEVANT FACTORS SUPPORTS A 13.5% FEE AWARD TO CLASS COUNSEL.

Class Counsel request the Court to award them attorneys' fees of $10,772,914.19

(approximately 13% of the value of the cash portion of the settlement). Assuming Amex pays only

$32.5 million to the class and to charities, $7 million in notice and claims administration, and $11

million in fees and expenses, the fee request will equate to approximately 22% of the cash funds paid

by Amex in this settlement. We submit that under any scenario this fee request is eminently

reasonable given Class Counsel's contingent fee risk, their financial contribution to the case, fees

paid in similar cases, the difficult questions at issue here, the outstanding work in obtaining this

excellent result for the Class, the time and labor of counsel, and the reaction of the Class.

### A.    The Contingent Nature of the Fee, the Financial Burden Carried by Class Counsel, and the Economics of Prosecuting a Class Action.

A determination of a fair fee for Class Counsel must include consideration of the contingent

nature of the fee, the wholly contingent outlay of out-of-pocket sums by Class Counsel, and the fact

that the risk of failure and nonpayment in a class action are extremely high. Numerous cases

recognize that attorneys' risk is "'perhaps the foremost' factor" in determining an appropriate fee

award. *Goldberger v. Integrated Resources, Inc.*, 209 F.3d 43, 54 (2d Cir. 2000) (citation omitted);

*accord Jones v. Diamond*, 636 F.2d 1364, 1382 (5th Cir. 1981) ("Lawyers who are to be

compensated only in the event of victory expect and are entitled to be paid more when successful

6

Case No. 04-CV-20314 Altonaga/Bandstra

than those who are assured of compensation regardless of result."); *see also Ressler*, 149 F.R.D. at 656 ("Numerous cases recognize that the attorney's contingent fee risk is an important factor in determining the fee award."); *Walters v. Atlanta*, 652 F. Supp. 755, 759 (N.D. Ga. 1985), *modified*, 803 F.2d 1135 (11th Cir.); *York v. Alabama State Bd. of Education*, 631 F. Supp. 78, 86 (M.D. Ala. 1986).

In *Behrens v. Wometco Enterprises, Inc.* 118 F.R.D. 534, 548 (S.D. Fla. 1988), *aff'd*, 899 F.2d 21 (11th Cir. 1990), the court noted that:

> Generally, the contingency retainment must be promoted to assure representation when a person could not otherwise afford the services of a lawyer....
>
> A contingency fee arrangement often justifies an increase in the award of attorneys' fees. This rule helps assure that the contingency fee arrangement endures. If this "bonus" methodology did not exist, very few lawyers could take on the representation of a class client given the investment of substantial time, effort, and money, especially in light of the risks of recovering nothing.

*Id.* (citations omitted) at 548. *See also, In re Sunbeam*, 176 F. Supp. 2d at 1335.

As Judge Nimmons, Jr. explained in *Ressler*:

> The Court is well aware that there are numerous contingent cases such as this where plaintiff's counsel, after investing thousands of hours of time and effort, have received no compensation whatsoever. Numerous cases recognize that the attorney's contingent fee risk is an important factor in determining the fee award.... In evaluating [the contingent fee] factor the Court will not ignore the pecuniary loss suffered by plaintiff's counsel in other actions where counsel received little or no fee.

149 F.R.D. at 656-57 (citations omitted).[1]

---

[1]     The Fourth Circuit made a similar observation in *McKittrick v. Gardner*, 378 F.2d 872, 875 (4th Cir. 1967):

> The effective lawyer will not win all of his cases, and any determination of the reasonableness of his fees in those cases in which his client prevails must take account of the lawyer's risk of receiving nothing for his services. Charges on the

7

Case No. 04-CV-20314 Altonaga/Bandstra

In addition, success before a jury in complex litigation is highly unpredictable. As one court observed in another class action: "It is known from past experience that no matter how confident one may be of the outcome of litigation, such confidence is often misplaced." *West Virginia v. Chas. Pfizer & Co.*, 314 F. Supp. 710, 743-44 (S.D.N.Y. 1970), *aff'd*, 440 F.2d 1079 (2d Cir. 1971).

The risk of succeeding at trial on liability issues is significant enough. However, the history of class action litigation is replete with cases in which plaintiffs succeeded at trial on liability, but recovered no damages or very small damages at trial or after appeal. *See, e.g., United States Football League v. National Football League*, 644 F. Supp. 1040, 1042 (S.D.N.Y. 1986) ("the jury chose to award plaintiffs only nominal damages, concluding that the USFL had suffered only $1.00 in damages"), *aff'd*, 842 F.2d 1335 (2d Cir. 1988); *MCI Communications Corp. v. American Tel. & Tel. Co.*, 708 F.2d 1081, 1166-67 (7th Cir. 1983), (judgment was remanded for new trial and damages). *Eisen v. Carlisle & Jacquelin*, 479 F.2d 1005 (2d Cir. 1973), *vacated on other grounds*, 417 U.S. 156 (1974), illustrates the risks faced by Class Counsel. *Eisen* was brought as an antitrust class action. After two trips to the Second Circuit and one to the Supreme Court, plaintiffs and the putative class and their counsel recovered nothing.

Class Counsel have received no compensation during the course of this litigation and have also incurred significant expenses in litigating on behalf of the class, none of which would have been recovered if the case was not successfully concluded. From the time Class Counsel filed suit, there existed a real possibility that they would achieve no recovery for the class and hence no compensation. Class Counsel's investment of time and expenses has always been at risk and wholly

---

basis of a minimal hourly rate are surely inappropriate for a lawyer who has performed creditably when payment of any fee is so uncertain.

LAW OFFICES KOZYAK TROPIN & THROCKMORTON, P.A.
2525 PONCE DE LEON, 9TH FLOOR, CORAL GABLES, FLORIDA 33134-6037 • TEL. (305) 372-1800

Case No. 04-CV-20314 Altonaga/Bandstra

contingent on the result they achieved.  Although Class Counsel have successfully concluded the

litigation, this result was not foreseeable at the outset.  The relevant risks must be evaluated from the

standpoint of plaintiffs' counsel as of the time they commenced the suit and not retroactively with

the benefit of hindsight.[2]   The financial risks borne by Class Counsel fully support the

appropriateness of the fee requested.

**B.     The Requested Fees Reflect the Market Rate in Other Complex,
         Contingent Litigation.**

The percentage method of awarding fees in class actions is consistent with, and is intended to

mirror, practice in the private marketplace where attorneys typically negotiate percentage fee

arrangements with their clients.  Individual clients often recognize that they lack the expertise or

time to monitor their attorneys' performance.  Thus, they select a compensation formula – the

contingent fee – that automatically aligns their attorneys' interest with their own.  Courts are

encouraged to look to the private marketplace in setting a percentage fee:

> The judicial task might be simplified if the judge and the lawyers bent their
> efforts on finding out what the market in fact pays not for the individual hours but for
> the ensemble of services rendered in a case of this character. This was a contingent
> fee suit that yielded a recovery for the "clients" (the class members) of $45 million.
> The class counsel are entitled to the fee they would have received had they handled a
> similar suit on a contingent fee basis, with a similar outcome, for a paying client.
> Suppose a large investor had sued Continental for securities fraud and won $45

---

[2]      Courts have made it clear that if, by reason of their professional skill and determined efforts,
plaintiffs' counsel are ultimately able to secure a settlement, that fact is not relevant to an assessment
of the degree of risk that they assumed at the time of filing the litigation. *See Harman v. Lyphomed,
Inc.*, 945 F.2d 969, 976 (contingent multiplier "is designed to reflect the riskiness of the case at the
outset."); *Skelton v. General Motor Corp.*, 860 F.2d 250, 258 (7th Cir. 1988), *cert. denied*, 493 U.S.
810 (1989) ("The point at which plaintiffs settle with defendants . . . is simply not relevant to
determining the risks incurred by their counsel in agreeing to represent them."); *Lindy Bros.
Builders, Inc. v. American Radiator & Standard Sanitary Corp.*, 540 F.2d 102, 112 (3d Cir. 1976)
("*Lindy II*").

9

Case No. 04-CV-20314 Altonaga/Bandstra

million.   What would its lawyers have gotten pursuant to their contingent fee contract?

*In re Continental Illinois Sec. Litig.*, 962 F.2d 566, 572 (7th Cir. 1992).

This view was reiterated by Judge Mukasey in *In re RJR Nabisco Sec. Litig.*, [1992 Transfer Binder] Fed. Sec. L. Rep. (CCH) ¶96,984, at 94,268 (S.D.N.Y. 1992):

> What should govern such [fee] awards is not the essentially whimsical view of a judge, or even a panel of judges, as to how much is enough in a particular case, but what the market pays in similar cases.

In private litigation, attorneys regularly contract for contingent fees between 30% and 40% directly with their clients. *See Phemister v. Harcourt Brace Jovanovich, Inc.*, 1984-82 Trade Cas. (CCH) ¶66,234, at 66,995 (N.D. Ill. 1984) ("Contingent fee arrangements in non-class action damage lawsuits are the simple method of paying the attorney a percentage of what is recovered for the client. The more the recovery, the more the fee. The percentages agreed on vary, with one-third being particularly common."); *Kirchoff v. Flynn*, 786 F.2d 320, 323 (7th Cir. 1986) (observing that "40% is the customary fee in tort litigation" and noting, with approval, contract providing for one-third contingent fee if litigation settled prior to trial). These percentages are the prevailing market rates throughout the United States for contingent representation — but not necessarily in big case litigation.

In addition, National Economic Research Associates, an economics consulting firm, conducted surveys in 1995 and 1996 of fee awards in class actions. Using data from 433 class actions, the study reports the following: "Regardless of case size, *fees average approximately 32 percent of the settlement*." (Emphasis added.) Denise N. Martin, Vinita M. Juneja, Todd S. Foster, Frederick C. Dunbar, *Recent Trends IV: What Explains Filings and Settlements in Shareholder Class Actions?* at 12-13 (NERA Nov. 1996) (hereinafter "*Recent Trends IV*"). Another study released in

10

Case No. 04-CV-20314 Altonaga/Bandstra

1996 focused on class actions in four federal district courts: the Southern District of Florida, the

Northern District of California, the Eastern District of Pennsylvania, and the Northern District of

Illinois.  The Federal Judicial Center Study reported findings very similar to the NERA study:

"*Median rates ranged from 27% to 30%*.  Most fee awards in the study were between 20% and 40%

of the gross monetary settlement." (Emphasis added.)  Thomas E. Willging, Laural L. Hooper, and

Robert J. Niemic, *Empirical Study of Class Actions in Four Federal District Courts: Final Report to*

*the Advisory Committee on Civil Rules* at 69 (Federal Judicial Center 1996).

In making a determination of what constitutes a fair percentage fee, this Court should be

guided by such awards.  As the Eleventh Circuit stated in *Camden I*: "The majority of common fund

fee awards fall between 20% to 30% of the fund."  *Id.* at 774 (citing 1 Herbert B. Newberg, *Attorney*

*Fee Awards* '2.08, at 51 (1986)).  The court went on to note: "an upper limit of 50% of the fund may

be stated as a general rule, although even larger percentages have been awarded.  *Camden I*, 946

F.2d at 774-75.  In *Ressler v. Jacobson*, 149 F.R.D. 651, 655 (M.D. Fla. 1992), Judge Nimmons, Jr.

reviewed fee awards in similar case citing, among other cases, *Zinman v. Aemco Corp.*, [1978

Transfer Binder] Fed. Sec. L. Rep. (CCH) ¶96,325 (E.D. Pa. 1978) (fee equal to 50% of recovery);

*Howes v. Atkins*, 668 F. Supp. 1021 (E.D. Ky. 1987) (fee equal to 40% of recovery); *Van Gemert v.*

*Boeing Co.*, 516 F. Supp. 412 (S.D.N.Y. 1981) (fee equal to 36.2%); *In re Franklin Nat'l Bank Sec.*

*Litig.*, [1980 Transfer Binder] Fed. Sec. L. Rep. (CCH) ¶97,571 (E.D.N.Y. 1980) (fee equal to

34%); *Bello v. Integrated Resources, Inc.*, [1990-1991 Transfer Binder] Fed. Sec. L. Rep. (CCH)

¶95,731, at 98,471 (S.D.N.Y. 1990) (holding that the common range of fees is 20-50 percent).

LAW OFFICES KOZYAK TROPIN & THROCKMORTON, P.A.
2525 PONCE DE LEON, 9TH FLOOR, CORAL GABLES, FLORIDA 33134-6037 • TEL. (305) 372-1800

Case No. 04-CV-20314 Altonaga/Bandstra

Many recent decisions in this Circuit have awarded attorneys' fees in excess of the percentage sought

here, further confirming the fairness and reasonableness of the requested fee.[3]

Finally, the findings in the NERA study are consistent with many recent fee awards in class

action cases throughout the country, a very small sample of which are listed below:

- *In re Sunbeam Sec. Litig.*, 176 F. Supp. 2d 1323, 1334 (S.D. Fla. 2001) (25% fee award)

- *In re Rite Aid Corp. Sec. Litig.*, 146 F. Supp. 2d 706, 735-36 (E.D. Pa. 2001) (25% fee on $193 million settlement)

- *In re Ikon Office Solutions, Inc. Sec. Litig.*, 194 F.R.D. 166, 197 (E.D. Pa. 2000) (30% of net settlement of $111 million)

- *In re Aetna Inc. Sec. Litig.*, Civil Action MDL No. 1219, 2001 U.S. Dist. LEXIS 68 (E.D. Pa. Jan. 4, 2001) (30% fee awarded on $83 million settlement)

- *In re Prudential Secs. Ltd. P'ship Litig.*, 912 F. Supp. 97 (S.D.N.Y. 1996) (27% fee awarded on $110 million settlement)

- *In re Sumitomo Copper Litig.*, 74 F. Supp. 2d 393 (S.D.N.Y. 1999) (27% fee awarded on $116 million settlement)

- *In re Lease Oil Antitrust Litig.*, 186 F.R.D. 403 (S.D. Tex. 1999) (25% fee awarded on $190 million settlement)

---

[3]     *See, e.g., Waters v. Int'l Precious Metals Corp.*, 190 F.3d 1291 (11th Cir. 1999) (awarding 33 1/3%); *In re Sunbeam Sec. Litig.*, 176 F. Supp. 2d 1323 (S.D. Fla. 2001) (awarding 25%); *Diaz v. Hillsborough County Hosp. Authority*, 2000 WL 1682918 (M.D. Fla. Aug. 7, 2000) (awarding 30%); *see also Tapken v. Brown*, Case No. 90-0691-CIV-Marcus (S.D. Fla. 1995) (awarding 33%); *In re Int'l Recovery Corp. Sec. Litig.*, Case No. 92-1474-CIV-Atkins (S.D. Fla. 1994) (fee award represented 30% of class benefit); *In re Sound Advice, Inc. Sec. Litig.*, Case No. 92-6457-CIV-Ungaro-Benages (S.D. Fla. 1994) (awarding 30%); *In re Belmac Corp. Sec. Litig.*, Case No. 92-1814-CIV-T-23-(C) (M.D. Fla. 1994) (awarding 31%); *Holloway v. Chapnick*, Consol. Case No. 89-6572-CIV-Paine (S.D. Fla. 1994) (awarding 30%); *In re Perfumania, Inc. Sec. Litig.*, Case No. 92-1490-CIV-Marcus (S.D. Fla. 1993); (awarding 30%); *In re Royce Lab., Inc. Sec. Litig.*, Case No. 92-0923-CIV-Moore (S.D. Fla. 1993) (awarding 30%); *Kaser v. Swann*, Case No. 90-607-CIV-Orl-3A18 (M.D. Fla. 1993) (awarding 30%); *In re Home Shopping Network Sec. Litig.*, Case No. 87-428-T-13(A) (M.D. Fla. 1991) (awarding 33%).

12

Case No. 04-CV-20314 Altonaga/Bandstra

- *In re Prison Realty Sec. Litig.*, Civil Action No. 3:99-0458, 2001 U.S. Dist. LEXIS 21942, (M.D. Tenn. Feb. 9, 2001) (30% fee awarded in $104 million settlement)

- *In re General Instruments Sec. Litig.*, No. 01-3051 (E.D. Pa. Dec. 27, 2001) (33-1/3% fee awarded on $48 million settlement)

- *In re PayPal Litig.*, No. C-02-1227-JF(PVT), 2004 U.S. Dist. LEXIS 22470 (N.D. Cal. Oct. 13, 2004) (awarding 30% fee over objections)

- *Cullen v. Whitman Med. Corp.*, 197 F.R.D. 136 (E.D. Pa. 2000) (awarding 33-1/3% of fee)

- *In re Mego Financial Corp. Sec. Litig.*, 213 F.3d 454, 463 (9th Cir. 2000) (upheld fee award of 33.3% of $1.725 million settlement)

- *Di Giacomo v. Plains All American Pipeline*, No. H-99-4137, Civil Action No. H-99-4137 (Consolidated), 2001 U.S. Dist. LEXIS 25532 (S.D. Tex. Dec. 18, 2001) (30% fee awarded on $24.1 million settlement)

- *In re Vesta, Ins. Group, Inc. Sec. Litig.*, Master File No. V-98-W-1407-S (N.D. Ala. Dec. 11, 2001) (30% fee awarded on $61 million settlement)

- *In re InaCom Corp. Sec. Litig.*, Master File No. 00-701 (D. Del. Jan 14, 2003) (33-1/3% fee awarded)

- *In re APAC Teleservices Inc. Sec. Litig.*, No. 97-CIV-9145(BJS) (S.D.N.Y. Dec. 11, 2001) (33-1/3% fee awarded)

- *In re Drkoop.com.*, No. 00-CA-427-JRN (W.D. Tex. Nov. 14, 2001) 33-1/3% fee awarded)

- *In re Schein Pharmaceutical, Inc. Sec. Litig.*, Master Docket No. 98-4311 (JCL) (D.N.J. Dec. 7, 2000) (33-1/3% fee awarded)

- *In re Future Healthcare Sec. Litig.*, Master File No. C-1-95-180 (S.D. Ohio Nov. 28, 2000) (33-1/3% fee awarded)

- *In re U.S. Interactive, Inc. Sec. Litig.*, Case No. 01-CV-522 (E.D. Pa. Oct. 20, 2003) (fee equal to 33% of total recovery, plus expenses)

- *In re Lifescan, Inc. Consumer Litig.*, Case No. C-98-20321-JF (N.D. Cal. Mar. 18, 2002) (fee equal to 33% of total recovery, plus expenses)

- *In re FirstPlus Financial Group, Inc.*, Master File No. 3:98-CV-2551-M (N.D. Tex. Oct. 14, 2003) (fee equal to 30% of recovery, plus expenses)

13

Case No. 04-CV-20314 Altonaga/Bandstra

- *In re MTI Technology Corp. Sec. Litig.*, Master File No. SACV-00-745-DOC(ANx) (C.D. Cal. July 28, 2003) (fee equal to 30% of recovery, plus expenses)

- *Harris v. Intel Corp.*, No. C-00-1528-CW(EMC) (N.D. Cal. July 15, 2003) (fee equal to 30% of recovery, plus expenses)

- *Warstadt v. Hastings Entertainment, Inc.*, Civil Action No. 2:00-CV-089-J (N.D. Tex. Mar. 10, 2003) (fee equal to 30% of recovery, plus expenses)

- *Silver v. UICI*, No. 3:99CV2860-L (N.D. Tex. Mar. 3, 2003) (fee equal to 30% of recovery, plus expenses)

- *Bryant v. Avado Brands, Inc.*, Civil Action No. 3:97-CV-83(DF) (M.D. Ga. Jan. 27, 2003) (fee equal to 30% of recovery, plus expenses)

- *In re Advanced Lighting Technologies, Inc. Sec. Litig.*, Master File No. 1:99CV836 (N.D. Ohio Jan. 27, 2003) (fee equal to 30% of recovery, plus expenses)

- *In re Micro Focus Sec. Litig.*, Master File No. C-01-1352-SBA (N.D. Cal. Dec. 17, 2002) (fee equal to 30% of recovery, plus expenses)

- *Berger v. Compaq Computer Corp.*, No. 98-1148 (N.D. Tex. Nov. 22, 2002) (fee equal to 30% of recovery, plus expenses)

- *In re VisionAmerica, Inc. Sec. Litig.*, Master File No. 3-00-0279 (M.D. Tenn. Aug. 26, 2002) (fee equal to 30% of recovery, plus expenses)

- *In re Landry's Seafood Restaurants, Inc. Sec. Litig.*, Master File No. H-99-1948 (S.D. Tex. June 13, 2002) (fee equal to 30% of recovery, plus expenses)

- *In re Unistar Financial Service Corp. Sec. Litig.*, Master File No. 3:99-CV-1857-M (N.D. Tex. Aug. 17, 2001) (fee equal to 30% of total recovery, plus expenses)

- *In re Stratosphere Corp. Sec. Litig.* Master File No. CV-S-96-00708-PMP-(RLH) (D. Nev. Dec. 6, 2000) (fee equal to 30% of recovery, plus expenses)

- *In re Transcrypt Int'l Sec. Litig.*, Master File No. 4:98CV3099 (D. Neb. Mar. 27, 2000) (fee equal to 30% of recovery, plus expenses)

- *In re MP3.com, Inc. Sec. Litig.*, Master File No. 00-CV-1873-NLS (S.D. Cal. July 12, 2001) (fee equal to 27.5% of recovery, plus expenses)

- *Thurber v. Mattel, Inc.*, No. CV-99-10368-MRP(CWx) (C.D. Cal. Oct. 1, 2003) (fee equal to 27% of recovery, plus expenses)

14

Case No. 04-CV-20314 Altonaga/Bandstra

- *In re Southern Pacific Funding Corp. Sec. Litig.*, No. CV-98-1239-MA (D. Or. Feb. 21, 2001) (fee equal to 27% of recovery, plus expenses)

## C.   The Novelty and Difficulty of the Questions at Issue

Courts have recognized that the novelty and difficulty of the issues in a case are significant factors to be considered in making a fee award. *See, e.g., Johnson*, 488 F.2d at 718. Class actions are inherently complex to prosecute because the legal and factual issues are complicated and uncertain in outcome. As set forth in the Joint Decl., this case was no exception and involved challenging liability and damages issues. Had this settlement not been achieved, difficult issues would be raised in connection with plaintiffs' efforts to prove Amex's liability and any resulting damages. These include the enforceability of Amex's arbitration clause, whether unconscionability is an adequate attack to defeat arbitration, whether the standards for TILA and unjust enrichment can be satisfied, the manageability of the nationwide class, and the viability of particular forms of relief, such as direct payment. Joint Decl., ¶¶54-57. As shown through the *Schwartz* litigation discussed in the Joint Declaration, many of these issues remain unsettled. *Id.* at ¶¶9-15, 55. These complex factual and legal questions were and would have continued to be the subject of fierce debate between Class Counsel and Amex's counsel. Given the difficulties presented and overcome through this settlement, the fee requested is more than reasonable.

## D.   The Skill, Experience and Reputation of Class Counsel

As the filings before the Court and prior oral presentations have established, the lawyers who have litigated for the Class have extensive experience in complex litigation. The standing and qualifications of Class Counsel are set forth as Exhibits to the Declarations and Affidavits submitted herewith and demonstrate that Class Counsel have been involved in many large complex cases. To litigate a case such as this requires counsel highly trained in class action matters and in the

15

Case No. 04-CV-20314 Altonaga/Bandstra

specialized issues the case presents. The skill of counsel must be commensurate with the novelty

and complexity of the issues in this case. From the outset, Class Counsel engaged in a concerted

effort to obtain the maximum recovery for Class Members. Their efforts did not stop until they

obtained the best possible result. Such quality, efficiency and dedication by Class Counsel should be

rewarded. *See, e.g., J.N. Futia Co. v. Phelps Dodge Indus., Inc.*, No. 78 Civ. 4547, 1982 U.S. Dist.

LEXIS 15261 (S.D.N.Y. Sept. 17, 1982).

Moreover, in assessing the quality of representation by the Class Counsel, the Court also

should consider the quality of the opposition. *See, e.g., Camden I*, 946 F.2d at 772 n.3; *Johnson*, 488

F.2d at 718; *Ressler v. Jacobson*, 149 F.R.D. 651, 654 (M.D. Fla. 1992); *Angoff v. Goldfine*, 270

F.2d 185, 192 (1st Cir. 1959). Amex is represented by one of the most experienced law firms in the

country in financial institution litigation. They had vast resources at their disposal and consistently

took tough positions to promote the interests of their client.

### E.    The Excellent Result Achieved for the Class

The result achieved is a major factor to consider in making a fee award. *Hensley v.*

*Eckerhart*, 461 U.S. 424, 436 (1983) ("critical factor is the degree of success obtained"); *see also*

*King Resources*, 420 F. Supp. at 630 ("the amount of the recovery, and end result achieved are of

primary importance, for these are the true benefit to the client"); *Behrens v. Wometco Enterprises,*

*Inc.*, 118 F.R.D. 534, 547-48 (S.D. Fla. 1988) ("The quality of work performed in a case that settles

before trial is best measured by the benefit obtained."), *aff'd*, 899 F.2d 21 (11th Cir. 1990).

We submit that the results achieved in the case fully support the requested fee. Class

counsel, through their efforts, have achieved monetary benefits of approximately $82 million, plus

important injunctive relief for all Amex cardmembers. This settlement is a significant achievement

and means that instead of facing additional years of costly litigation, class members will now share

16

Case No. 04-CV-20314 Altonaga/Bandstra

in a substantial settlement fund and benefit from significant and immediate business practice changes. There is little doubt that this settlement is a substantial positive result of hard fought litigation and negotiation.

Moreover, when determining the total value of a class action settlement for purposes of calculating the attorneys' fee award, courts usually consider both the compensatory relief and the economic value of any prospective injunctive relief obtained for the class. *See, e.g., Staton v. Boeing, Co.*, 327 F.3d 938, 974 (9th Cir. 2003) ("courts should consider the value of the injunctive relief obtained as a relevant circumstance in determining what percentage of the common fund class counsel should receive as attorneys' fees") (internal quotation and citation omitted); *Sheppard*, 2002 WL 2003206, at *7 (in valuing total settlement for percentage-based attorneys' fee award, court included $6.745 million in monetary relief and "an estimated $5 million in non-monetary, injunctive relief"); *Steiner*, 2001 WL 604035, at *4 ("Although the settlement in this action did not involve the payment of money by the defendants, counsel may nonetheless recover a fee if the settlement conferred a substantial non-monetary benefit").[4]

---

[4] *See also, Amalgamated Clothing & Textile Workers Union v. Wal-Mart Stores, Inc.*, 54 F.3d 69, 71 (2d Cir. 1995) (attorneys' fees may be awarded based on non-pecuniary benefit obtained for class); *Roberts v. Texaco, Inc.*, 979 F. Supp. 185, 199 (S.D.N.Y. 1997) (in determining fee award in employment discrimination case, court considered value of prospective wage increases and defendants' costs of initiating and maintaining internal civil rights task force); *In re Crazy Eddie Sec. Litig.*, 824 F. Supp. 320, 326 (E.D.N.Y. 1993) (in justifying fee award of 33.8%, court noted that "class counsel's efforts may reasonably be expected to have created a benefit beyond the immediate settlement proposed"); *Vizcaino v. Microsoft Corp.*, 290 F.3d at 1043, 1049 (9th Cir. 2002) ("[i]ncidental or non-monetary benefits conferred by the litigation are a relevant circumstance" in evaluating the reasonableness of attorneys' fees); *Shaw v. Toshiba America Information Systems, Inc.*, 91 F. Supp. 2d at 942, 971 (E.D. Tex. 2000) ("When considering the quality of the proposed Settlement Agreement, this Court considered both the monetary and the non-monetary benefits the class is to receive.").

17

Case No. 04-CV-20314 Altonaga/Bandstra

As the Supreme Court has recognized, the rationale of the common-fund doctrine "must logically extend, not only to litigation that confers a monetary benefit on others, but also to litigation 'which corrects or prevents an abuse which would be prejudicial to the rights and interests' of those others." *Hall v. Cole*, 412 U.S. 1, 5 n.7 (1973) (quoting *Mills v. Electric Auto-Lite Co.*, 396 U.S. 375, 396 (1970)); *see also, Kaplan v. Rand*, 192 F.3d 60, 70 (2d Cir. 1999) (noting "'well-established [rule] that non-monetary benefits, such as . . .deterring future misconduct by management may support a fee award") (quoting *Koppel v. Wien*, 743 F.2d 129, 134-35 (2d Cir. 1984)); *Kopet v. Esquire Realty Co.*, 523 F.2d 1005, 1008 (2d Cir. 1975) ("[A]s the Supreme Court has developed the 'common fund' rationale for awarding attorneys fees, assessment of such fees . . . may be predicated on the conferral of benefits which are neither monetary in nature nor explicitly sought on behalf of the entire group").

In addition to a monetary recovery, important injunctive relief has been obtained for the Class. Though less capable of precise valuation, AmEx's agreement to modify its cardmember agreements and statements constitutes the type of substantial non-monetary benefit for which courts have found that attorney compensation is warranted. Indeed, if plaintiffs had received no monetary damages in these settlements, Class Counsel would still have been entitled to attorneys' fees for obtaining the injunctive relief. *Steiner*, 2001 WL 604035, at *4. *Cf., City of Riverside v. Rivera*, 477 U.S. 561, 575 (1986) ("Congress made clear that it intended that the amount of fees awarded under [the Civil Rights Act] be governed by the same standards which prevail in other types of equally complex Federal litigation, such as antitrust cases and not be reduced because the rights involved may be nonpecuniary in nature.") (internal quotations omitted) (emphasis in original). While Class

18

Case No. 04-CV-20314 Altonaga/Bandstra

Counsel is eligible to seek fees based on the non-monetary relief obtained, the fee requested is fully justified without reliance on the value of the injunctive relief obtained.

### F.    The Time and Labor of Class Counsel

Class counsel have expended over 8,123 hours investigating the allegations, reviewing documents, interviewing relevant witnesses, and negotiating and documenting this settlement. Class counsel's efforts are more fully detailed in the Joint Declaration submitted herewith.

While the lodestar method is not the rule in this Circuit and counsel request a percentage award, an analysis of the time spent on this matter illustrates the fairness of the proposed fee. The aggregate lodestar for class counsel is $3,317,777.50. On a lodestar basis, the requested fee of $10,772,914.19 represents a 3.25 multiplier.

In a pre-*Camden I* case in this District, Judge King performed both methods of analysis and gathered cases on the range of fee awards under either method and noted that lodestar multiples "in large and complicated class actions" range from 2.26 to 4.5, while "three appears to be the average." *Behrens v. Wometco Enter.. Inc.*, 118 R.R.D. 534 (S.D. Fla) 1988). In fact, cases with much higher multipliers have been found reasonable in numerous other class actions. *See, e.g.. Grimshawe v. New York Life Insurance Co.*, Case No. 96-0746-Civ-Nesbitt (S.D. Fla. 1996) (percentage-based fee award equivalent to a multiple of 8.5). *Weiss v. Mercedes-Benz of N. America, Inc.*, 899 F. Supp. 1297, 1304 (D.N.J. 1995) (awarding fee that resulted in multiplier of 9.3); *In re Cendant Corp. Sec. Litig.*, 109 F. Supp. 2d 285, 288, 292 (D.N.J. 2000) (awarding 8% fee based on $3,250,000,000 settlement, representing 32.7 multiplier); *In re Rite-Aid Corp. Sec. Litig.*, 146 F. Supp. 2d 706, 735-36 (E.D. Pa. 2001) (awarding 25% fee representing 10.73 multiplier); *Roberts v. Texaco*, 979 F. Supp. 185, 200 (S.D.N.Y. 1997) (5.5 multiplier); *Di Giacomo v. Plains All American Pipeline, Inc.*, Civil Action No. H-99-4137 (Consolidated). 2001 U.S. Dist. LEXIS 25532 (S.D. Tex. Dec. 18,

19

Case No. 04-CV-20314 Altonaga/Bandstra

2001) (30% fee representing 5.3 multiplier); *Boston & Maine Corp. v. Sheehan, Phinney, Bass & Green, P.A.*, 778 F.2d 890 (1st Cir. 1985) (multiplier of 6); *In re RJR Nabisco Sec. Litig.*, M.D.L. Docket No. 818 (MBM), 1992 U.S. Dist. LEXIS 12702, at *16 (S.D.N.Y. Aug. 24, 1992) (multiplier of 6); *In re Triangle Industries, Inc. Shareholders Litig.*, Civil Action No. 10,466, 1991 Del. Ch. LEXIS 203 (Del. Dec. 19, 1991) (6.6 multiplier); *Muchnick v. First Fed. Savings & Loan Assoc.*, Civ. A. No. 86-1104 (E.D. Pa. Sept. 30, 1986) (multiplier of 8.4);*Cosgrove v. Sullivan*, 759 F. Supp. 166, 169 (S.D.N.Y. 1991) (8.84 multiplier); *Perera v. Chiron Corp.*, Civ. No. 95-20725-SW (N.D. Cal. 1999, 2000) (9.14 multiplier); *Newman v. Caribiner Int'l, Inc.*, No. 99 CIV 2271 (S.D.N.Y. Oct. 19, 2001) (7.7 multiplier). Therefore, the requested fees are more than reasonable in light of the time and labor involved.

### G.     The Reaction of the Class

Individual notices were mailed to approximately nine million Class Members; a summary notice was published in 9 newspapers across the country. Out of the millions of class members who have received notice, class counsel have received only objections to the payment of the attorneys' fees requested (less than 1 out of 100,000 cardholders). The small number of objections indicates the overwhelming support of the class. *See Stoetzner v. United States Steel Corp.*, 897 F.2d 115, 118-19 (3d Cir. 1990) (concluding that when "only" 29 members of a 281 person class (*i.e.*, 10% of the class) objected, the response of the class as a whole "strongly favors [the] settlement"); *Elkins v. Equitable Life Ins. of Iowa*, No. CIVA96-296-CIV-7-17B, 1998 WL 133741, at *28 (M.D. Fla. Jan. 27, 1998) ("[t]here have been only six objections received from a Class of approximately 109,000 policy owners, which is a *de minimus* number" relative to the size of the class); *Cotton v. Hinton*, 559 F.2d 1326, 1333 (5th Cir. 1977) (settlement approval affirmed despite objections by half of the current employee class).

20

Case No. 04-CV-20314 Altonaga/Bandstra

The objections submitted to payment of attorneys' fees raise six distinct issues: (1) policy arguments regarding any payment of fees; (2) amount of fees; (3) fee based on actual payout to class; (4) delay in fee payment until class is paid; (5) low risk of non-payment; and (6) fee based on lodestar.[5] Each of the issues raised by objectors is without merit and, for the reasons explained herein and in the Joint Declaration, should be rejected by the Court.

1.      *Payment of attorneys' fees in class actions.*   A number of objectors simply express their disagreement with the recognized policy of the courts in this country to award of contingent fees based on the recovery obtained in a class action.   These opinions are contrary to the established views of the courts.   If counsel are not adequately compensated in successful cases of this type, then representation of consumers will disappear:

> The contingent fee and the class action are "the poor man's keys to the courthouse." Both vehicles allow the average citizen and taxpayer to have their injuries redressed and their rights protected.   Both permit persons of limited resources to obtain competent legal counsel, an essential ingredient in our adversary system of justice.

*Muchler,* 617 F. Supp. at 1375.

2.      *The amount of fees.*   Certain objectors make the incorrect assumption that the requested fees are excessive because they equate to 36% of the recovery obtained.   This calculation fails to include the $2.5 million charitable payment, the notice and administration costs and the fee payment itself.   In most class action settlements, defendants pay a fixed sum from which all fees, expenses, notice and administration costs are deducted, prior to any payment to class members.

---

[5]      As noted in the accompanying brief in support of approval of the settlement, a number of the attorneys who have filed objections on behalf of purported class members are considered "professional objectors" because they make it a practice to appear and object to the payment of attorneys' fees in cases across the country.

Case No. 04-CV-20314 Altonaga/Bandstra

Moreover, the fee is calculated as a percentage of the gross payment before deduction of any costs. *See Camden I*, 946 F.2d at 774. For the reasons discussed at length above, the requested fees are eminently reasonable and are lower than most percentage fees awarded in class actions in this Circuit and nationwide.

3.       *Fee based on actual payment to class.* The U.S. Supreme Court settled this issue in *Boeing Co. v. Van Gremert*, 444 U.S. 472, 1005 S. Ct. 745, 62 L. Ed. 2d 676 (1980). The Court ruled that class counsel are entitled to a reasonable fee based on the funds potentially available to the claimed, regardless of the amount actually claimed. This issue was also addressed by the Eleventh Circuit in *Waters*, 190 F. 3d at 1294 – 98, in which the court affirmed the award of attorneys' fund despite the possibility of reversion of funds to the defendants. The Eleventh Circuit explained: "[C]lass counsel are entitled to a reasonable fee based on the funds *potentially available to be claimed*, regardless of the amount actually claimed." *Waters v. International Precious Metals Corp.*, 190 F.3d 1291, 1297 (11th Cir. 1999) (quoting Herbert B. Newman & Alba Conte, *Newberg on Class Actions* § 14.03, at 14-15 (3d ed. 1992); *see also id.* at 1294 (explaining that fee awards are based on both claimed and unclaimed settlement funds based on *Boeing*, 444 U.S. at 477, 100 S. Ct. at 749). Beyond this, the volume of claims to date shows the entire fund will, in fact be paid out.

4.       *Delay in payment.* Class counsel commenced the prosecution of these cases in 2003 and to date have received no compensation for their out-of-pocket expenses or their substantial investment of time. Class counsel submit that payment of fees and expenses in accordance with the parties requested time table is fair, and no further delay is appropriate.

5.       *Low risk of non-payment.* The assertion that class counsel had a lower risk of non-payment is contradicted by the facts of this case. The substantial risks of non-payment faced by

22

Case No. 04-CV-20314 Altonaga/Bandstra

class counsel are discussed at length in the Joint Declaration and the memorandum in support of approval of the settlement. These risks included overcoming Amex's defense that cardholder agreements provided Amex with the ability to compel arbitration and that Amex and no additional disclosure obligations.

6.      *Lodestar-based fee. Camden I* clearly rejects using the lodestar method to award attorneys' fees: "[A]ttorneys' fees awarded from a common fund *shall be* based upon a reasonable percentage of the fund established for the benefit of the class." *Camden* I, 946 F. 2d at 774 (emphasis added). Moreover, when cross-checked using the lodestar method, Class Counsel's fee request is still a reasonable one, with a modest 3.25 multiplier.

For all the reasons discussed herein, including the attainment of important injunctive relief, we submit that the attorneys' fees requested by class counsel are not excessive and are exceedingly reasonable under all applicable standards.

## IV.   CLASS COUNSEL'S EXPENSES ARE REASONABLE AND WERE NECESSARILY INCURRED TO ACHIEVE THE BENEFIT OBTAINED.

Class counsel have incurred substantial out-of-pocket expenses in prosecuting this Litigation. These expenses are categorized in the declarations and affidavits of counsel submitted herewith.

The appropriate analysis to apply in deciding which expenses are compensable in a common fund case is whether the particular costs are of the type typically billed by attorneys to paying clients in the marketplace. *Harris v. Marhoefer*, 24 F.3d 16, 19 (9th Cir. 1994) ("Harris may recover as part of the award of attorney's fees those out-of-pocket expenses that 'would normally be charged to a fee paying client.'") (citation omitted). Therefore, it is proper to reimburse reasonable expenses even though they are greater than taxable costs. *Id. See also Miltland Raleigh-Durham v. Myers*, 840 F. Supp. 235, 239 (S.D.N.Y. 1993) ("Attorneys may be compensated for reasonable out-of-

23

Case No. 04-CV-20314 Altonaga/Bandstra

pocket expenses incurred and customarily charged to their clients, as long as they 'were incidental and necessary to the representation' of those clients.") (citation omitted). The categories of expenses for which counsel seek reimbursement here are the type of expenses routinely charged to hourly fee-paying clients and, therefore, should be reimbursed out of the common fund.

Class Counsel were required to travel in connection with this litigation for depositions, hearings, meetings, and negotiations, and thus incurred substantial costs for meals and lodging. The expenses in this category are reasonable in amount and are properly charged against the fund created. *See In re McDonnell Douglas Equip. Leasing Sec. Litig.*, 842 F. Supp. 733, 746 (S.D.N.Y. 1994); *Genden v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 741 F. Supp. 84, 86 (S.D.N.Y. 1990).

Photocopying costs are customarily reimbursed in common fund cases. *See McDonnell Douglas*, 842 F. Supp. at 746. Duplication of documents obtained from non-parties was necessary to the effective prosecution of this case. Countless documents were duplicated in multiple sets for use in analysis of the issues, in taking depositions, in discussing the issues with percipient witnesses and experts, and in preparing and taking this case to trial.

Other expenses include the costs of computerized research. It is standard practice for attorneys to use Lexis and Westlaw to assist them in researching legal issues. Indeed, courts recognize that these tools create efficiencies in litigation and, ultimately, save clients money. In approving expenses for computerized research, the court in *Gottlieb v. Wiles*, 150 F.R.D. 174, 186 (D. Colo. 1993), *rev'd on other grounds sub nom. Gottlieb v. Barry*, 43 F.3d 474 (10th Cir. 1994), underscored the time-saving attributes of computerized research as a reason reimbursement should be encouraged. The court also noted that hourly fee-paying clients reimburse counsel for computerized legal research. *Id.*

24

Case No. 04-CV-20314 Altonaga/Bandstra

Class Counsel submit that the expenses received are reasonable in amount and were necessary to the prosecution and settlement of this matter and should be approved as submitted.

## V.    SERVICE AWARDS FOR THE CLASS REPRESENTATIVES ARE APPROPRIATE

Representative Plaintiffs' Counsel request the Court to approve service awards in the amount of $10,000 for Representative Plaintiffs, Edward Lipuma and William S. Barrett.  The mailed and published notices advised class members that Representative Plaintiffs' Counsel would apply for service awards totaling $10,000.

As described in the Joint Declaration, the class representatives diligently and completely fulfilled their obligations as representatives for the class.  *See* Joint Decl. ¶¶73-76.  They stepped forward and pursued the classes' interests by filing suit on behalf of Class Members and undertaking the responsibilities attendant upon serving as class representatives.  Each has been involved in the negotiations and decision making and each has participated in discovery, including sitting for deposition.

In instituting this litigation, the Representative Plaintiffs have acted as private attorneys general seeking a remedy for what appeared to be a public wrong.  It is well recognized that private class action suits are a primary weapon in the enforcement of laws designed for the protection of the public.  In *Kahan v. Rosenstiel*, 424 F.2d 161, 169 (3d Cir. 1970), the United States Court of Appeals for the Third Circuit recognized that "the effectiveness of the securities laws may depend in large measure on the application of the class action device."  *Accord Cohen v. Uniroyal, Inc.*, 77 F.R.D. 685, 695 (E.D. Pa. 1977).  It is respectfully submitted that approval of these awards is warranted as a matter of policy and is appropriate under applicable precedents.

25

Case No. 04-CV-20314 Altonaga/Bandstra

Numerous courts have found it appropriate to specially reward named class plaintiffs for the benefits they have conferred. In *In re SmithKline Beckman Corp. Sec. Litig.*, 751 F. Supp. 525 (E.D. Pa. 1990), the court, in approving special awards to class representative plaintiffs, noted:

> Last, the Court agrees that special awards to the class representatives are appropriate. First, they have rendered a public service by contributing to the vitality of the federal Securities Acts. "Private litigation aids effective enforcement of the securities laws because private plaintiffs prosecute violations that might otherwise go undetected due to the SEC's limited resources." Second, the named plaintiffs, through their vigilance, have conferred a monetary benefit on a large class of purchasers of SmithKline common stock.

*Id.* at 535 (citations omitted). *Accord In re Granada Partnership Sec. Litig.*, 803 F. Supp. 1236 (S.D. Tex. 1992) ($5,000 to each representative plaintiff); *In re Dun & Bradstreet Credit Services Customer Litig.*, 130 F.R.D. 366 (S.D. Ohio 1990) (two incentive awards of $55,000, and three incentive awards of $35,000); *Bogosian v. Gulf Oil Corp.*, 621 F. Supp. 27 (E.D. Pa. 1985) (incentive awards of $20,000 to each of two plaintiffs); *Malanka v. de Castro*, Civil Action No. 85-2154-MC, 1990 U.S. Dist. LEXIS 18171 (D. Mass. Nov. 20, 1990) ($5,000 award to representative plaintiff); *In re Avon Products, Inc. Sec. Litig.*, 89 Civ. 6216 (MEL), 1992 U.S. Dist. LEXIS 17072 (S.D.N.Y. Nov. 5, 1992) ($5,000 to each of six class representatives); *Diamond v. Fogelman*, CV-90-0900 (CPS), 1992 U.S. Dist. LEXIS 12076 (E.D.N.Y. July, 30 1992) ($5,000 to named plaintiff); *In re REVCO Sec. Litig.*, *Arsam Co. v. Salomon Bros., Inc.*, Master File No. 851, Case No. 89CV593, 1992 U.S. Dist. LEXIS 7852 (N.D. Ohio May 5, 1992) ($200,000 to the named plaintiff); and *Enterprise Energy Corp. v. Columbia Gas Transmission Corp.*, 137 F.R.D. 240, 250-51 (S.D. Ohio 1991) ($50,000 to each class representative, aggregate award of $300,000).

Thus, given the ample authority, we respectfully request the Court to grant service awards in the amounts requested.

26

Case No. 04-CV-20314 Altonaga/Bandstra

## VI.   CONCLUSION

Class counsel have generated a $75 million settlement and substantial changes to Amex's disclosure practices, despite a highly risky case with substantial legal obstacles. This fee request is modest in proportion to the recovery, and well within the guidelines of case precedent, and their expenses are reasonable under the circumstances. Their fee and expense request, and the class representatives' modest incentive request, shall therefore be granted.

Respectfully submitted,

| | |
|---|---|
| GARWIN, GERSTEIN,<br>& FISHER, L.L.P.<br>Co-counsel for Plaintiffs<br>1501 Broadway – Suite 1416<br>New York, New York  10036<br>Tel: (212) 398-0055/Fax: (212) 764-6620 | KOZYAK TROPIN & THROCKMORTON, P.A.<br>Attorneys for Plaintiffs<br>2525 Ponce de Leon, 9th Floor<br>Coral Gables, Florida 33134<br>Telephone: (305) 372-1800<br>Telecopier: (305) 372-3508 |

By:_____
_____
Bruce E. Gerstein, Esq.                    Adam M. Moskowitz, FBN: 984280
Kevin Landau, Esq.                          Thomas A. Tucker Ronzetti, FBN: 965723


STEYER  LOWENTHAL BOODROOKAS          LERACH COUGHLIN STOIA
ALVAREZ & SMITH LLP                           & ROBBINS LLP
ALLAN STEYER                                      Co-counsel for Class Plaintiffs
D. SCOTT MACRAE                                 FRANK J. JANECEK, JR.
Co-counsel for Class Plaintiffs              BONNY E. SWEENEY
One California Street, 3rd Floor             CHRISTOPHER M. BURKE
San Francisco, CA  94111                       401 B Street, Suite 1700
Telephone:  415/421-3400                      San Diego, CA  92101
415/421-2234 (fax)                              Telephone:  619/231-1058
                                                      619/231-7423 (fax)

27

Case No. 04-CV-20314 Altonaga/Bandstra

| | |
|---|---|
| HULETT HARPER STEWART, LLP | SCHRAG & BAUM, P.C. |
| DENNIS STEWART | THOMAS F. SCHRAG |
| Co-counsel for Class Plaintiffs | JAMES S. BAUM |
| 550 West C Street, Suite 1600 | MICHAEL L. SCHRAG |
| San Diego, CA 92101 | 280 Panoramic Way |
| Telephone: 619/338-1133 | Berkeley, CA 94704 |
| 619/338-1139 (fax) | Telephone: 510/849-1618510/841-6050 (fax) |

Of Counsel:

BALLON STOLL BADER & NADLER,
P.C.
Irving Bizar, Esq.
1450 Broadway, 14th Floor
New York, New York 10018
Tel: (212) 575-7900/Fax: (212) 764-5060

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that a true and correct copy of the above and foregoing was provided

to Defendants' counsel for posting on the Claims Administration Website, forwarded to counsel for

Defendants and Intervenors by e-mail transmission, and forwarded to all the following parties on the

attached Service List by U.S. Mail on this 4th  day of March, 2005.

28

CASE NO. 04-20314-CIV-ALTONAGA/BANDSTRA

SERVICE LIST

COUNSEL FOR THE DEFENDANTS AND INTERVENORS

Scott R. Shepherd
Shepherd Finkelman, Miller, et al.
1600 Southeast 17th Street Causeway
Ft. Lauderdale, FL 33316-1717

Spencer Aronfeld
Aronfeld & Associates, P.A.
3132 Ponce de Leon Blvd.
Coral Gables, FL 33134

Roberto Salazar
Law Office Roberto Salazar
4601 North McColl Road
McAllen, TX 78504

Austin Tighe
Feazell & Tighe
6300 Bridgepoint Parkway
Bridgepoint 2, Suite 220
Austin, TX 78730

Paul M. Weiss
Freed & Weiss, LLC
111 West Washington Street
Suite 1331
Chicago, Illinois 60602

L. Thomas Lakin
The Lakin Law Firm, P.C.
301 Evans Avenue, P.O. Box 27
Wood River, IL 62095-1127

Michael Caddell
Cynthia Chapman
Cory S. Fein
Caddell & Chapman
1331 Lamar, Suite 1070
Houston, TX 71370

Daniel C. Girard,
Sanjay M. Ranchod
Girard Gibbs & De Bartolomeo
601 California Street, Suite 1400
San Francisco, CA 94108

Scott Pearson
Julia B. Strickland
Marcos Sasso
Stroock & Stroock & Lavan LLP
Counsel for Defendant Amex
2029 Century Park East, Floor 18
Los Angeles, CA 90067-3086

David S. Stellings
Caryn Becker
Lieff, Cabraser, Heimann & Bernstein, LLP
780 Third Avenue, 48th Floor
New York, New York 10017

4

CASE NO. 04-20314-CIV-ALTONAGA/BANDSTRA

Richard Brian Simring
Richard Edmund Landman
Strook & Strook & Lavan, LLP
200 S. Biscayne Boulevard
Suite 3160
Miami, Florida 33131

**OBJECTORS**

Morgan D. Adams, Jr.
305 Columbia Ave.
Whitefish, MT  59937

Michael Baybak
4515 Ocean View Blvd.
Suite 305
La Canada, CA  91001

John S. Biersteker
116 Windjammer Lane
Third Lake, Illinois 60030-2624

Peter J. Connors, CEO
Remcon Plastics, Inc.
208 Chestnut Street
Reading, PA  19602

William H. Delavan
509 W. Fayette St.
Syracuse, NY  13204

Diana Fiedotin
10630 Wilkins Ave.
#201
Los Angeles, CA  90024

Robert Fuller
5854 E. Emille Zola Ave.
Scottsdale, AZ  85254

Guy P.Gadola, III
4060 Sarnac Dr.
Sharpsville, PA  16150

5

CASE NO. 04-20314-CIV-ALTONAGA/BANDSTRA

J. Rio Garrison
4202 Quebec Avenue
Prince George, VA  23875

Joseph B.Greenspan, MD
1217 Breakers West Blvd.
West Palm Beach, FL   33411-1881

Lance F. Heslsten
1180 N. 1165 W
Orem, UT  84057-2898

Joan S. Holman
2642 SW 18 Place
Gresham, OR  97080

James J. Kilsdonk
11609 Paradise Drive
Stone Harbor, NJ  08247

Harry E. Korner
25 Missions Palms East
Rancho Mirage, CA  92270

Michael A. Michaud
3831 Fenway Crossing
Marietta, GA  30062

J. Brian Moran
527 James St.
Morristown, NJ  07960

Robert Morgan
P.O. Box 822
Dauphin Island, AL  36528

Frank A. Reppenhagen
175 College St.
Buffalo, NY  14201

David J. Richards
7316 White Oak Drive
Lago Vista, TX  78654

Teresa Ridgeway
2609 Cameron Street
Mobile, AL  36607

6

Case No. 04-CV-20314 Altonaga/Bandstra

Heinz Rosen
2911 Sun Cove Drive
Kissimmee, FL  34746

HughW.Scott
P.O. Box 7376
Jackson, WY  83002

Theodore C. Slack
1408 Brickell Bay Drive
Apt. 1010
Miami, FL  33131

Ross W. Smith
P.O. Box 525
Glenbrook, NV  89413

T. Mark Stamm
10033 Chartwell Manor Ct.
Potomac, MD  20854

Joseph Zazeckie
P.O. Box 605
Hancock, NY  13783

Hans-Jochen Trost
1629 University Drive
Richardson, TX  75081

John C. O'Callahan
40 Salt Acres Road
Stonington, CT  06378

E.M. Selfe
2600 Arlington Ave. South
Apt. 84
Birmingham, AL  35205-4164

Steven Tannenbaum
192 Menderis Road
Swan Lake, New York 12783

Raul E. Garcia, Esq.
9200 South Dadeland Blvd., Suite 316
Miami, Florida  33156
*Attorney for Amy M. Bogran and Primie
Real Estate LLC*

Richard H. Critchlow, Esq.
Kenny Nachwalter, P.A.
201 South Biscayne Boulevard, Suite 1100
Miami, Florida  33131
*Attorney for Bridgestone/Firestone*

- 1 -

Case No. 04-CV-20314 Altonaga/Bandstra

Paul D. Kamenar, Esq.
Washington Legal Foundation
2009 Massachusetts Avenue, N.W.,
Washington, D.C. 20036
*Attorney for Clayton Robert Barker, III*

Michael J. McHale, Esq.
1925 Northeast Ricou Terrace,
Jensen Beach, Florida 34957
*Attorney for Dee J. Brasfield, III*

Nicholas Fausto, Esq.
671 Stokes Road, Suite 4-150
Medford, New Jersey 8055
*Attorney for DM Delluomo, Inc.*

Patrick E. Geraghty, Esq.
Geraghty Dougherty Edwards Goldberg McQuagge
Bosseler & Morgan, P.A.
2225 First Street,
Fort Myers, Florida 33901
*Attorney for Edward McNamara & Barbara Geraghty*

Leon Storie, Esq.
2824 Seventh Street,
Tuscaloosa, Alabama 35401
*Attorney for Jason Creamer & Joann Jannik*

Catherine Hite, Esq.
Catherine Hite, P.A.
799 Brickell Plaza, Suite 700
Miami, Florida 33131
*Attorney for Joseph C. Hawthorn*

David J. Richards
7316 White Oak Drive,
Lago Vista, Texas 78654

Robert L. Weinberg, Esq.
5171 N. Thirty-Seventh Road,
Arlington, Virginia 22207-1825

Tabitha Kirin
2745 Edgehill Avenue,
Bronx, New York 10463

Nicole A Moschetta
333 Locust Street,
Pittsburgh, Pennsylvania 15218

Benjamin R. Windsor
18 Forest Glen,
Pittsburgh, Pennsylvania 15228

Robert L. Weinberg
5171 N. Thirty-Seventh Road,
Arlington, Virginia 2207-1825

- 2 -

Case No. 04-CV-20314 Altonaga/Bandstra

Arturo Alfonso, Esq.
7821 Coral Way, Suite 125
Miami, Florida 33155
*Attorney for Rick Frazier, Andrea
Yatooma, Lenny Palmeri and Gregory
Yatooma*

Wade T. Howard, Esq.
600 Travis, Suite 6710
Houstonq, Texas  77002
*Attorney for Seth Silverman*

N. Albert Bacharach, Jr., Esq.
115 Northeast 6th Avenue,
Gainesville, Florida 32601
*Attorney for Stuart Yoes, William H. Yoes,
Milton J. Fontenots, Frank DeJulius,
Michael J. Rinis, Rinis Travel Service, Inc.,
William H. McWhorter and Suzanne M.*

Joseph W. Bauer, Esq.
29400 Lakeland Boulevard,
Wichliffe, Ohio  44092
*Attorney for The Lubrizol Corporation*

By: _____
Thomas A. Tucker Ronzetti

- 3 -