# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF FLORIDA

### Miami Division

### Case No. 04-20314-Civ-ALTONAGA

**EDWARD LIPUMA**, on behalf of himself
and all others similarly situated
and on behalf of the general public,

       Plaintiff,

vs.

**AMERICAN EXPRESS COMPANY**, *et al.*,

       Defendants.

_____/

## ORDER GRANTING CLASS COUNSEL'S
## RENEWED APPLICATION FOR  ATTORNEY'S FEES,
## REIMBURSEMENT OF EXPENSES, AND PAYMENT OF SERVICE AWARDS

Before the Court is Class Counsel's Renewed Application for Attorney's Fees, Reimbursement of Expenses, and Payment of Service Awards.  [D.E. 479]; and Class Counsel's Response to Intervenor Hawthorn's Opposition to Renewed Application for Attorney's Fees; Motion to Strike, and Motion for a Show Cause Order Requiring Intervenor Hawthorn to Explain Why an Appeal Bond Should Not Be Required [D.E. 483].  The Court has carefully reviewed the parties' written submissions and applicable law.

The Court previously gave final approval to the Class settlement of this action.  *See Lipuma v. American Express Co.*, 406 F. Supp. 2d 1298 (S.D. Fla. 2005).  In the settlement, a $75 million cash fund was created to pay Class member claims, make charitable contributions on behalf of those Class members who do not receive a financial recovery, and to pay the attorney's fees and expenses awarded by the Court.  In addition, Defendants, American Express Company, *et al.* ("American

Case No.  04-20314-Civ-Altonaga

Express"), have paid for mailing individual notices to nearly nine million Class members at a cost of approximately $3.1 million, have paid approximately $308,000 for extensive publication notice, and estimate they will pay approximately $3.6 million for the cost of claims administration.  These are all costs that are typically borne by the class and deducted from a cash settlement fund.  Thus, American Express's payment of these costs increases its out-of–pocket cash contribution in this settlement to approximately $82 million.

Class Counsel were also able to negotiate significant injunctive relief.  American Express has agreed to revise its disclosures relating to processing foreign transactions by conspicuously disclosing on both the billing statement and cardholder agreement American Express's methodology for processing foreign transactions, including the imposition of the 2% fee.  Beyond that, American Express agreed not to raise its foreign currency rate adjustment prior to final approval, foregoing an additional $35 million in revenue.  *Id.* at 1323.  Thus, through the settlement, American Express committed approximately $117 million to benefit the Class.  *Id*.

For their efforts in creating this settlement, Class Counsel seek reimbursement of their reasonable out of pocket expenses of $227,085.81, and attorney's fees of $10,772,914.19 million, plus proportionate accumulated interest.  This constitutes a fee of approximately 13% of the Class's cash benefits, or approximately 9% of the Class's benefits if American Express's foregone revenue is included.  The percentage fee requested is reasonable under well-established Eleventh Circuit precedent, where percentage fees of 20%-30% are often awarded in cases of this type.

For the reasons explained below, the Court finds that the requested fee and expense award in an aggregate amount of $11 million is fair and reasonable under applicable legal standards, and is approved, as is the request for $10,000.00 service awards to the Class Representative Plaintiffs.

2

Case No.  04-20314-Civ-Altonaga

## Discussion

I.    **CLASS COUNSEL'S ATTORNEY'S FEE AWARD IS APPROPRIATELY BASED ON A REASONABLE PERCENTAGE OF THE FUND THEIR EFFORTS CREATED.**

   A.    **Class Counsel Are Entitled to Payment from the Common Fund.**

Lawyers who recover a "common fund" are entitled to reasonable attorney's fees from the fund they created.  *Boeing Co. v. Van Gemert,* 444 U.S. 472, 478 (1980).  One rationale for such awards is that "persons who obtain the benefit of a lawsuit without contributing to its cost are unjustly enriched."  *Id.* at 478.  The common fund approach "is also grounded on a policy of encouraging counsel to act as 'private attorneys general' to vindicate the rights of class members, most of whom have small individual claims."  *Pinto v. Princess Cruise Lines, Ltd.*, 2007 WL 853431, at *4 (S.D. Fla. Feb. 16, 2007) (quoting *Mashburn v. National Healthcare, Inc.*, 684 F. Supp. 679, 687 (M.D. Ala. 1988)); *In re Domestic Air Transp. Antitrust Litig.*, 148 F.R.D. 297, 348-49 (N.D. Ga. 1993).  The proper manner to calculate attorney's fees is to identify the fund created for the benefit of the class and to award counsel for the class a reasonable percentage of that fund as an attorney's fee.  "[I]n this circuit, attorneys' fees awarded from a common fund shall be based upon a reasonable percentage of the fund established for the benefit of the class."  *Camden I Condominium Ass'n v. Dunkle*, 946 F.2d 768, 774 (11th Cir. 1991); *see also In re Sunbeam Sec Litig.,* 176 F. Supp.2d 1323,1333 (S.D. Fla. 2001).

Thus, the primary question before the Court is the appropriate percentage of the settlement fund to be awarded as attorney's fees.

Case No.  04-20314-Civ-Altonaga

**B.      Consideration of all Relevant Factors Supports Class Counsel's Requested Fee Award.**

Class Counsel request the Court to award them attorney's fees of $10,772,914.19, approximately 13% of the value of the cash portion of the settlement.  The Eleventh Circuit has observed that "[t]here is no hard fast rule mandating a certain percentage of a common fund which may reasonably be awarded as a fee because the amount of any fee must be determined upon the facts of each case." *Camden I*, 946 F.2d at 774.  However, the Eleventh Circuit stated that "district courts are beginning to view the median of this 20% to 30% range, i.e., 25%, as a "bench mark" percentage fee award which may be adjusted in accordance with the individual circumstances of each case." *Id.* at 775; *see also Waters v. Intern. Precious Metals Corp.*, 190 F.3d 1291 (11th Cir. 1999) (approving fee award where the district court determined that the benchmark should be 30% and then adjusted the fee award even higher based on the circumstances of the case); *Walco Inv., Inc. v. Thenen*, 975 F. Supp. 1468, 1470 (S.D. Fla. 1997) (quoting *Camdem I* and explaining 25% of the common fund is the benchmark).  Finally, the *Camden I* court indicated that the factors set forth in *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714, 717-19 (5th Cir. 1974), as well as the time required to reach a settlement, whether there were substantial objections from class members, non-monetary benefits of the settlement, and the economics involved in prosecuting a class action, are among the factors that may be relevant to a Court's determination of an appropriate percentage fee. *Camden I*, 946 F.2d at 775.

Class Counsel have supplied declarations and affidavits establishing their time and expenses through March 1, 2005, shortly before their original Application was filed, and have also supplied the affidavit of an experienced class action practitioner, Michael Hanzman, who testifies about the

4

Case No.  04-20314-Civ-Altonaga

reasonableness of their request.  [D.E. 270-79.]

As explained below, Class Counsel's fee request is reasonable, given Class Counsel's contingent fee risk, their financial contribution to the case, fees paid in similar cases, the difficult questions at issue here, the work in obtaining the result for the Class, the time and labor of counsel, and the reaction of the Class.

> 1.  **The Contingent Nature of the Fee, the Financial Burden Carried by Class Counsel, and the Economics of Prosecuting a Class Action**

A determination of a fair fee for Class Counsel must include consideration of the contingent nature of the fee, the wholly contingent outlay of out-of-pocket sums by Class Counsel, and the fact that the risk of failure and nonpayment in a class action is significant.  Numerous cases recognize that attorneys' risk is "'perhaps the foremost' factor" in determining an appropriate fee award. *Goldberger v. Integrated Resources, Inc.*, 209 F.3d 43, 54 (2d Cir. 2000) (citation omitted); *accord Jones v. Diamond*, 636 F.2d 1364, 1382 (5th Cir. 1981) ("Lawyers who are to be compensated only in the event of victory expect and are entitled to be paid more when successful than those who are assured of compensation regardless of result."); *Behrens*, 118 F.R.D. at 548; *Walters v. Atlanta*, 652 F. Supp. 755, 759 (N.D. Ga. 1985), *modified*, 803 F.2d 1135 (11th Cir.); *York v. Alabama State Bd. of Education*, 631 F. Supp. 78, 86 (M.D. Ala. 1986).

In addition, success before a jury in complex litigation is highly unpredictable.  As one court observed in another class action: "It is known from past experience that no matter how confident one may be of the outcome of litigation, such confidence is often misplaced." *West Virginia v. Chas. Pfizer & Co.*, 314 F. Supp. 710, 743-44 (S.D.N.Y. 1970), *aff'd*, 440 F.2d 1079 (2d Cir. 1971).

Class Counsel have not received  compensation during the course of this litigation, and have

Case No.  04-20314-Civ-Altonaga

incurred significant expenses in litigating on behalf of the Class, none of which would have been recovered if the case was not successfully concluded.  From the time Class Counsel filed suit, there existed a real possibility that they would achieve no recovery and so no compensation.  *See Lipuma*, 406 F. Supp. 2d at 1319-22 (explaining the difficulties of Plaintiffs' claims).   Class Counsel's investment of time and expenses has always been at risk and wholly contingent on the result they achieved.  Although Class Counsel have successfully concluded the litigation, this result was not foreseeable at the outset.  The relevant risks must be evaluated from the standpoint of Plaintiffs' counsel as of the time they commenced the suit and not retroactively with the benefit of hindsight.  *See Pinto*, 2007 WL 853451, at \*5 & n.2.  Class Counsel's financial risks fully support the appropriateness of the requested fee.

### 2.        The Market Rate in Other Complex, Contingent Litigation

The percentage method of awarding fees in class actions is consistent with, and is intended to mirror, practice in the private marketplace where attorneys typically negotiate percentage fee arrangements with their clients.  *See Pinto*, 2007 WL 853431, at \*6.   In private litigation, attorneys regularly contract for contingent fees between 30% and 40% directly with their clients.  *Id.* (citing *Phemister v. Harcourt Brace Jovanovich, Inc.*, 1984-82 Trade Cas. (CCH) ¶ 66,234, at 66,995 (N.D. Ill. 1984) ("Contingent fee arrangements in non-class action damage lawsuits are the simple method of paying the attorney a percentage of what is recovered for the client.  The more the recovery, the more the fee.  The percentages agreed on vary, with one-third being particularly common."); *Kirchoff v. Flynn*, 786 F.2d 320, 323 (7th Cir. 1986) (observing that "40% is the customary fee in tort litigation" and noting, with approval, contract providing for one-third contingent fee if litigation settled prior to trial)).   As the Eleventh Circuit stated in *Camden I*: "The majority of common fund

Case No.  04-20314-Civ-Altonaga

fee awards fall between 20% to 30% of the fund."  946 F.2d at 774 (citing 1 Herbert B. Newberg,

*Attorney Fee Awards* §2.08, at 51 (1986)).

### 3.      The Novelty and Difficulty of the Questions at Issue

Courts have recognized that the novelty and difficulty of the issues in a case are significant

factors to be considered in making a fee award.  *See, e.g., Johnson*, 488 F.2d at 718.  Class actions

are inherently complex to prosecute because the legal and factual issues are complicated and uncertain

in outcome.  This case was no exception and involved challenging liability and damages issues.  *See*

*Lipuma*, 406 F. Supp. 2d at 1319-22, 23-24.

Had  this settlement not been achieved, difficult issues would have been raised in connection

with Plaintiffs' efforts to prove American Express's liability and any resulting damages.  These include

the enforceability of American Express's arbitration clause, whether unconscionability is an adequate

attack to defeat arbitration, whether the standards for TILA and unjust enrichment can be satisfied,

the manageability of the nationwide class, and the viability of particular forms of relief, such as direct

payment.  *See* Joint Decl. ¶¶ 54-57.  As shown through the *Schwartz* litigation discussed in the Joint

Declaration, many of these issues remain unsettled.  *Id*.  ¶¶ 9-15, 55.  These complex factual and legal

questions were and would have continued to be the subject of fierce debate between Class Counsel

and American Express's counsel.   Given the difficulties presented and overcome through the

settlement, the fee requested is reasonable.

### 4.      The Skill, Experience and Reputation of Class Counsel

As the filings and presentations before the Court established, the Class's lawyers have

extensive experience in complex litigation.   To litigate a case such as this requires counsel highly

trained in class action matters and in the specialized issues the case presents.  The skill of counsel

Case No.  04-20314-Civ-Altonaga

must be commensurate with the novelty and complexity of the issues, and it was in this case.

Moreover, in assessing the quality of representation by the Class Counsel, the Court also should consider the quality of the opposition. *See, e.g., Camden I,* 946 F.2d at 772 n.3; *Johnson,* 488 F.2d at 718; *Ressler v. Jacobson*, 149 F.R.D. 651, 654 (M.D. Fla. 1992).  American Express is represented by a law firm experienced in financial institution litigation.  The firm had vast resources at its disposal and consistently took tough positions to promote the interests of its client.  Thus, this factor also weighs in favor of the requested award.

### 5.    The Result Achieved for the Class

The result achieved is a major factor to consider in making a fee award.  *Hensley v. Eckerhart*, 461 U.S. 424, 436 (1983) ("critical factor is the degree of success obtained"); *see also King Resources*, 420 F. Supp. at 630 ("the amount of the recovery, and end result achieved are of primary importance, for these are the true benefit to the client"); *Behrens v. Wometco Enterprises, Inc.*, 118 F.R.D. 534, 547-48 (S.D. Fla. 1988) ("The quality of work performed in a case that settles before trial is best measured by the benefit obtained."), *aff'd*, 899 F.2d 21 (11th Cir. 1990).

The results achieved in the case support the requested fee.  Class counsel, through their efforts, have achieved monetary benefits of approximately $82 million, plus important injunctive relief for all American Express cardmembers.  Instead of facing additional years of costly litigation, Class members will now share in a substantial settlement fund and benefit from significant and immediate business practice changes.

Moreover, when determining the total value of a class action settlement for purposes of calculating the attorney's fee award, courts usually consider both the compensatory relief and the economic value of any prospective injunctive relief obtained for the class.  *See, e.g., Staton v. Boeing,*

8

Case No. 04-20314-Civ-Altonaga

*Co.*, 327 F.3d 938, 974 (9th Cir. 2003) ("courts should consider the value of the injunctive relief obtained as a relevant circumstance in determining what percentage of the common fund class counsel should receive as attorneys' fees") (internal quotation and citation omitted); *Pinto*, 2007 WL 853431, at *8.

In addition to a monetary recovery, important injunctive relief has been obtained for the Class. Though less capable of precise valuation, American Express's agreement to modify its cardmember agreements and statements constitutes the type of substantial non-monetary benefit for which courts have found that attorney compensation is warranted. While it may be that Class Counsel is eligible to seek fees based on the non-monetary relief obtained, the fee requested is justified without reliance on the value of the injunctive relief obtained.

### 6.    The Time and Labor of Class Counsel

At the time they filed their Application, Class Counsel had expended over 8,123 hours investigating the allegations, reviewing documents, interviewing relevant witnesses, and negotiating and documenting the settlement. Class Counsel have expended substantial additional time since then, addressing both the approval of the settlement through a two day evidentiary hearing conducted by the Court, appellate briefing, and overseeing the claims process. Therefore, the requested fees are reasonable in light of the time and labor involved.

### 7.    The Reaction of the Class

The Class's reaction has been highly favorable to Class Counsel's Application. Individual notices were mailed to 8.8 million Class Members; a summary notice was published in nine newspapers across the country. Out of the millions of Class members who have received notice, class Counsel have received only 10 objections to the payment of the attorney's fees requested (little more

Case No.  04-20314-Civ-Altonaga

than one per million class members).  The extremely small number of objections indicates the

overwhelming support (or lack of interest) of the Class.  *See Stoetzner v. United States Steel Corp.*,

897 F.2d 115, 118-19 (3d Cir. 1990) (concluding that when "only" 29 members of a 281 person class

(*i.e.*, 10% of the class) objected, the response of the class as a whole "strongly favors [the]

settlement"); *Elkins v. Equitable Life Ins. of Iowa*, No. CIVA96-296-CIV-7-17B, 1998 WL 133741,

at *28 (M.D. Fla. Jan. 27, 1998) ("[t]here have been only six objections received from a Class of

approximately 109,000 policy owners, which is a *de minimus* number" relative to the size of the

class); *Cotton v. Hinton*, 559 F.2d 1326, 1333 (5th Cir. 1977) (settlement approval affirmed despite

objections by half of the current employee class).

        The objections submitted to payment of attorney's fees raise six issues: (1) policy arguments

regarding any payment of fees; (2) amount of fees; (3) fee based on actual payout to class; (4) delay

in fee payment until class is paid; (5) low risk of non-payment; and (6) fee based on lodestar.  Each

of the issues raised by the objectors, including a recent objection to the Renewed Application (*see*

[D.E. 480]),[1] which is the subject of the Motion to Strike [D.E. 483], is without merit.

        A.      *Payment of attorney's fees in class actions.*  A number of objectors simply express

their disagreement with the recognized policy of the courts to award contingent fees based on the

recovery obtained in a class action.  These opinions are contrary to the established views of the

courts.  If counsel are not adequately compensated in successful cases of this type, then

representation of consumers will disappear:

---

        [1] The recent objection filed assumes that American Express is paying objectors who pursued an appeal of this case $3 million dollars that is to come from the Class settlement fund created by the Settlement approved, causing Class Counsel's attorney's fees to increase to $14 million, exceeding the fees described in the Class notice.  The assumption is factually incorrect, as explained in Class Counsel's Response.  (*See* [D.E. 483] at 7-8).

> The contingent fee and the class action are "the poor man's keys to the courthouse." Both vehicles allow the average citizen and taxpayer to have their injuries redressed and their rights protected.  Both permit persons of limited resources to obtain competent legal counsel, an essential ingredient in our adversary system of justice.

*Muchler,* 617 F. Supp. at 1375.

B.       *The amount of fees.*  Certain objectors make the assumption that the requested fees are excessive because they equate to 36% of the recovery obtained.  This calculation fails to include the $2.5 million charitable payment, the notice and administration costs and the fee payment itself. In most class action settlements, defendants pay a fixed sum from which all fees, expenses, notice and administration costs are deducted, prior to any payment to class members.   Moreover,  the  fee  is calculated as a percentage of the gross payment before deduction of any costs.  *See Camden I*, 946 F.2d at 774.  For the reasons already discussed, the requested fees are reasonable.

C.       *Fee based on actual payment to Class.*  The claims administrator has indicated the entire fund will be paid out, so factually this objection fails.  Also, legally, the U.S. Supreme Court settled this issue in *Boeing Co. v. Van Gremert,*  444 U.S. 472, 1005 S. Ct. 745, 62 L. Ed. 2d 676 (1980).  The Court ruled that class counsel are entitled to a reasonable fee based on the funds potentially available to be claimed, regardless of the amount actually claimed.  This issue was also addressed by the Eleventh Circuit in *Waters,* 190 F. 3d at 1294 – 98, where the court affirmed the award of attorney's fees despite the possibility of reversion of funds to the defendants.  The Eleventh Circuit explained: "[C]lass counsel are entitled to a reasonable fee based on the funds *potentially available to be claimed*, regardless of the amount actually claimed."  *Waters v. International Precious Metals Corp.*, 190 F.3d 1291, 1297 (11th Cir. 1999) (quoting Herbert B. Newman & Alba Conte, *Newberg on Class Actions* § 14.03, at 14-15 (3d ed. 1992); *see also id.* at 1294 (explaining

11

Case No.  04-20314-Civ-Altonaga

that fee awards are based on both claimed and unclaimed settlement funds based on *Boeing*, 444 U.S. at 477, 100 S. Ct. at 749).  Beyond this,  the volume of claims to date shows the entire fund will be paid out.

D.      *Delay in payment*.  Class Counsel commenced the prosecution of these cases in 2003 and to date have received no compensation for their out-of-pocket expenses or substantial investment of time.  Further delay in payment, to follow payment to the Class, is not appropriate.

E.      *Low risk of non-payment*.  The assertion that Class Counsel had a lower risk of non-payment is contradicted by the facts of this case.  The substantial risks of non-payment faced by Class Counsel are discussed at length in the Joint Declaration and the memorandum in support of approval of the settlement.  These risks included overcoming American Express's defense that cardholder agreements provided American Express with the ability to compel arbitration and that American Express had no additional disclosure obligations.

F.      *Lodestar-based fee*.  *Camden I* rejects using the lodestar method to award attorney's fees:  "[A]ttorneys' fees awarded from a common fund *shall be*  based upon a reasonable percentage of the fund established for the benefit of the class."  *Camden* I, 946 F.2d at 774 (emphasis added). When cross-checked using the lodestar method, Class Counsel's fee request is still reasonable, with a 3.25 multiplier, without considering the significant time spent since the initial Application.

Accordingly, the attorney's fees requested by Class Counsel are reasonable.

## II.      CLASS COUNSEL'S EXPENSES ARE REASONABLE AND WERE INCURRED TO ACHIEVE THE BENEFIT OBTAINED.

Class Counsel have incurred substantial out-of-pocket expenses in prosecuting this litigation. These expenses are categorized in the declarations and affidavits of counsel.

12

Case No.  04-20314-Civ-Altonaga

The appropriate analysis to apply in deciding which expenses are compensable in a common fund case is whether the particular costs are of the type typically billed by attorneys to paying clients in the marketplace.  *Harris v. Marhoefer*, 24 F.3d 16, 19 (9th Cir. 1994) ("Harris may recover as part of the award of attorney's fees those out-of-pocket expenses that 'would normally be charged to a fee paying client.'") (citation omitted).  Therefore, it is proper to reimburse reasonable expenses even though they are greater than taxable costs.  *Id*.  *See also Miltland Raleigh-Durham v. Myers*, 840 F. Supp. 235, 239 (S.D.N.Y. 1993) ("Attorneys may be compensated for reasonable out-of-pocket expenses incurred and customarily charged to their clients, as long as they 'were incidental and necessary to the representation' of those clients.") (citation omitted).  The categories of expenses for which Counsel seek reimbursement here are the type of expenses routinely charged to hourly fee-paying clients and, therefore, should be reimbursed out of the common fund.

Class Counsel were required to travel in connection with this litigation for depositions, hearings, meetings, and negotiations, and thus incurred substantial costs for meals and lodging.  The expenses in this category are reasonable in amount and are properly charged against the fund created.  *See In re McDonnell Douglas Equip. Leasing Sec. Litig.*, 842 F. Supp. 733, 746 (S.D.N.Y. 1994); *Genden v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 741 F. Supp. 84, 86 (S.D.N.Y. 1990).

Photocopying costs are customarily reimbursed in common fund cases.  *See McDonnell Douglas*, 842 F. Supp. at 746.  Duplication of documents obtained from non-parties was necessary to the effective prosecution of this case.  Countless documents were duplicated in multiple sets for use in analysis of the issues, in taking depositions, in discussing the issues with percipient witnesses and experts, and in preparing and taking this case to trial.

Other expenses include the costs of computerized research.  It is standard practice for

Case No.  04-20314-Civ-Altonaga

attorneys to use Lexis and Westlaw to assist them in researching legal issues.   Indeed, courts

recognize that these tools create efficiencies in litigation and, ultimately, save clients money.   In

approving expenses for computerized research, the court in *Gottlieb v. Wiles*, 150 F.R.D. 174, 186

(D. Colo. 1993), *rev'd on other grounds sub nom. Gottlieb v. Barry*, 43 F.3d 474 (10th Cir. 1994),

underscored the time-saving attributes of computerized research as a reason reimbursement should

be encouraged.   The court also noted that hourly fee-paying clients reimburse counsel for

computerized legal research.   *Id*.

Class Counsel's expenses were reasonable, and so reimbursement is approved.

## III.   SERVICE AWARDS FOR THE CLASS REPRESENTATIVES ARE APPROPRIATE.

Representative Plaintiffs' Counsel request the Court to approve service awards in the amount

of $10,000 for Representative Plaintiffs, Edward Lipuma and William S. Barrett.   The mailed and

published notices advised Class members that Representative Plaintiffs' Counsel would apply for

service awards totaling $10,000.

As described in the Joint Declaration, the Class representatives diligently and competently

fulfilled their obligations as representatives for the class.   *See* Joint Decl. ¶¶ 73-76.   They stepped

forward and pursued the class' interests by filing suit on behalf of Class members and undertaking the

responsibilities attendant upon serving as class representatives.   Each has been involved in the

negotiations and decision making and each has participated in discovery, including sitting for

deposition.

In instituting this litigation, the Representative Plaintiffs have acted as private attorneys

general seeking a remedy for what appeared to be a public wrong."   It is well recognized that private

class action suits are a primary weapon in the enforcement of laws designed for the protection of the

Case No.  04-20314-Civ-Altonaga

public." *Pinto*, 2007 WL 853431, at *9.   Moreover, numerous courts have found it appropriate to specially reward named class plaintiffs for the benefits they have conferred.  *Id.*; *see also Allapattah Servs., Inc. v. Exxon Corp.*, 454 F. Supp. 2d 1185, 1218-19 (S.D. Fla. 2006).

Based on these principles, the Court grants service awards in the amounts requested.  The Class Representative Plaintiffs assisted throughout the litigation, in formulating the claims, responding to discovery (including sitting for extensive depositions), and negotiating and defending the settlement.  The $10,000 service awards are thus appropriate and justified in this case.

### Conclusion

For the foregoing reasons, it is

**ORDERED AND ADJUDGED** that Plaintiffs' Renewed Application **[D.E. 479]** is **GRANTED**.  Class Counsel have generated a $75 million cash fund and substantial changes to American Express's disclosure practices, despite a highly risky case with substantial legal obstacles. The fee request is within the guidelines of case precedent, and the expenses are reasonable under the circumstances.  The fee and expense request, and the Class representatives' incentive request, are therefore granted.

The Motion to Strike, and Motion for a Show Cause Order Requiring Intervenor Hawthorn to Explain Why an Appeal Bond Should Not Be Required **[D.E. 483]** is **DENIED** as moot in light of the foregoing approval.

**DONE AND ORDERED** in Chambers in Miami, Florida, this 14th day of September, 2007.

_____
**CECILIA M. ALTONAGA**
**UNITED STATES DISTRICT JUDGE**

cc:   Magistrate Judge Ted E. Bandstra
       counsel of record